

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ARTURO GUILLERMO SALINAS, AND<br>ELISA HERNANDEZ HERRERA SALINAS<br><br>V.<br><br>CITY OF HARLINGEN, TEXAS; and<br>R.D. MOORE and JIM SCHOEPNER | CIVIL ACTION NO. B-98-162<br><br>**(AN ORAL HEARING IS REQUESTED)** |

## DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)

Respectfully Submitted,

Tom Lockhart (Attorney in Charge)
Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
RHughes@adamsgraham.com

Attorneys for Defendants, CITY OF HARLINGEN;
and R.D. MOORE and JIM SCHOEPNER

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; FAX: 956/686-1276

Associate Counsel for Defendant, R.D.MOORE

United States District Court
Southern District of Texas
FILED

DEC 14 1998

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO G. SALINAS, ET AL  {
                          {
V.                        {   CIVIL ACTION NO. B-98-162
                          {
CITY OF HARLINGEN, TEXAS, ET AL {

**DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendant CITY OF HARLINGEN, TEXAS; and R.D. MOORE and JIM SCHOEPNER and file their **DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)** and would show the Court as follows:

### I. Statement of Nature and Stage of the Proceedings

Plaintiffs Salinas sue for wrongful death under the (1) Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chap. 101); and (2) 42 USC § 1983. U.S. Border Patrol Agent Ricardo Salinas, was shot to death by a private citizen, Ernest Moore. Plaintiffs claim he used a rifle belonging to the Harlingen Police Department issued to his father, Harlingen Police Detective R.D. Moore.

Plaintiffs filed this suit on November 9, 1998. Defendants file their Motion to Dismiss under Fed.R.Civ.Pr. 12(b)(6). A companion motion has been filed by Defendants Moore and Schoepner based on qualified immunity.

1

## II. Statement of the Issues

1.  Whether a claim that a private citizen shot Ricardo Salinas using a rifle taken from Defendants' possession or control states an "excessive force" claim under either the Fourth or Fourteenth Amendments, U.S. Constitution.

2.  Whether the Complaint is an artful attempt to "plead around" the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that the Fourteenth Amendment Due Process Clause does not require public officials prevent a third party from harming Ricardo Salinas.

3.  Whether an exception exists to *DeShaney* for a risk of harm allegedly created by the Defendants if they did not force Ricardo Salinas to encounter the danger and the Defendants did not remove his ability to protect himself or escape the risk.

4.  Whether Plaintiffs have alleged that any deprivation of constitutional rights resulted from a municipal custom or policy.

5.  Whether Plaintiffs' allegations that Defendants' negligently failed to destroy or properly secure the rifle state a duty or breach of duty under state tort law.

## III. Plaintiffs' Allegations

Plaintiffs' Complaint, ¶ 10, alleges that U.S. Border Patrol Agent Salinas responded to a call for assistance in the apprehension of Ernest Moore at the residence of his father, Detective Moore. As Agent Salinas left the Moore residence, Ernest Moore shot him using a rifle issued to his father, Detective Moore. Complaint, ¶ 11.

The Complaint, ¶ 12, alleges that the City and Police Chief Schoepner issued the rifle to Det. Moore, leaving it to his discretion as to how to store it. There is no allegation that Det. Moore was incompetent or otherwise an improper person to whom to entrust a rifle; there is no

2

allegation that the City knew or should have known that Detective Moore was likely to entrust his weapon to incompetent third parties. There is no allegation that Detective Moore was in need of training or instruction on the proper storage and security of rifles.

The Complaint, ¶ 11, states that Detective Moore stored it in his home, and that his son took the rifle. However, there is no allegation that Detective Moore gave or entrusted the rifle to Ernest Moore. Instead, the Complaint, ¶ 19, asserts only that he failed to properly secure the rifle.

The Complaint, ¶ 17, alleges only one legal basis for liability under 42 USC § 1983: an "excessive force" claim under the Fourth Amendment, U.S. Const.

### IV. Complaint Fails to State "Excessive Force" Claim Under § 1983

A.  **Standard of Review**

Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that could be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996). However, the Complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

B.  **No Fourth Amendment "Excessive Force" Claim Absent A "Seizure" by Government Officers**

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 386, 393, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed. *Graham*, 490 U.S. at

3

394, 109 S.Ct. at 1870. The Fourth Amendment applies when the alleged use of excessive force arises from a search or seizure of the person. *Graham*, 490 U.S. at 394, 109 S.Ct. at 1871; *County of Sacramento v. Lewis*, ___ U.S. ___, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998). A "seizure" occurs only when government agents deliberately cause the termination of an individual's freedom through means intentionally applied to that individual. *Lewis, Id.* at 115; *Brower v. County of Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). If the Complaint does not show a "seizure" under the Fourth Amendment, then an "excessive force" claim can be sustained only under a Fourteenth Amendment "Substantive Due Process" analysis. *Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th Cir. 1998).

In *Lewis*, the Supreme Court made it clear that a Fourth Amendment "seizure" occurred only when the government caused an intended termination of freedom of movement through means intentionally applied to that individual. 118 S.Ct. at 1715 (instigating chase of motorcycle on which plaintiff was a passenger was not a Fourth Amendment "seizure"). Consequently, unintended injuries to bystanders or hostages during an arrest are not a "seizure" under the Fourth Amendment. *Lewis*, 118 S.Ct. at 1715; *Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir. 1990) (police officer who inadvertently shot hostages while aiming to hit kidnapper did not "seize" hostage for Fourth Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (accidental shooting of wife held hostage by husband was not a "seizure" under Fourth Amendment, even though police officers had surrounded their house and instructed wife to "get down"). Likewise, there is no Fourth Amendment claim when the force is not directed deliberately at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 147 (D.C.Puerto Rico 1998).

4

Moreover, the application of force must be done by a state official, not a private citizen. A State's failure to protect an individual against violence caused by another citizen generally does not constitute a § 1983 claim. *DeShaney*, 489 U.S. at 195-200, 109 S.Ct. at 1003-1006; *Martin v. City of League City*, ____ F.Supp. 2d ____, 1998 WL 692421, *2 (S.D.Tex. 1998). The termination of individual liberty must be caused by the <u>government</u>. *Brower*, 489 U.S. at 597, 109 S.Ct. at 1381. The plaintiff must rely on "Substantive Due Process" under the Fourteenth Amendment when their constitutional right to life has been terminated by other than a seizure by a law enforcement officer. *Lewis*, 118 S.Ct. at 1716. *See, also, Schaefer*, 153 F.3d at 797 (husband's physical control over wife/hostage precluded Fourth Amendment claim that police had "seized" her).

    C.    No Fourteenth Amendment "Excessive Force"
           <u>Claim if Force Applied by Private Citizen</u>

Even were Plaintiffs to replead to assert an "excessive force" claim under Fourteenth Amendment Due Process Clause, the pleadings would fail for the same reason; the actor intentionally applying the force is not a public official. If plaintiff claims that a private citizen committed the act of violence, then plaintiff's Fourteenth Amendment claim rests on "Substantive Due Process," not "excessive force." *See, Salas v. Carpenter*, 980 F.2d 299, 306-09 (5th Cir. 1992).

In *Salas*, plaintiffs brought a wrongful death suit for the death of a hostage, when the sheriff's negotiation tactics failed and the kidnapper shot the abductee. The Fifth Circuit stated that "artful pleading" could not obscure that there was no deprivation of any Fourteenth Amendment Due Process right. 980 F.2d at 306. A claim that the sheriff failed to prevent harm

5

done by a third party was a "Substantive Due Process" claim that could survive, if at all, if the court permitted an exception to *DeShaney*. 980 F.2d at 308-310.

*Petta v. Rivera, supra*, can easily be distinguished because (1) DPS troopers applied the "excessive force," not private citizens; and (2) the DPS troopers used excessive force to arrest the driver which force also injured the passengers. *Petta* indicates Fourth and Fourteenth Amendment cases overlap at several points. 143 F.3d at 912-914. Therefore, an "excessive force" claim under Fourth Amendment Due Process would still require (1) public official applied the force that caused injury; and (2) the officers used excessive force to seize someone. Here, neither is the case. Plaintiffs do not allege "excessive force" was used to arrest Ernest Moore or anyone else.

Whether asserted under Fourth or Fourteenth Amendment, Plaintiffs' "excessive force" claims must fail. No government employee intentionally and deliberately applied force to Agent Salinas to deliberately terminate his freedom. Rather, he was shot by a private citizen. Plaintiffs' "excessive force" claim is precisely the kind of "artful pleading" condemned in *Salas*.

## V. Complaint Fails to Raise Substantive Due Process Claim

Shorn of rhetoric, the core of Plaintiffs' Complaint is that a private citizen shot Agent Salinas, using a rifle allegedly taken from Det. Moore due to inadequate security measures. Claims of injury to hostages and bystanders from police action can succeed only through "Substantive Due Process" under the Fourteenth Amendment. However, the Fourteenth Amendment "Due Process" Clause does not require government officials to prevent third parties from harming the plaintiff. The Fifth Circuit has yet to adopt the "state-created" danger doctrine as an exception to *DeShaney*. Even if this Court were to find the doctrine viable, the Complaint fails to state such a claim.

6

Claims of injury to hostages and innocent bystanders can arise only under the Fourteenth Amendment Due Process Clause, i.e., "Substantive Due Process." *Lewis*, 118 S.Ct. at 1716; *Schaefer*, 153 F.3d at 797; *Medeiros*, 153 F.3d at 169; *Petta*, 143 F.3d at 901. However, the Courts have been reluctant to expand "Substantive Due Process" claims; courts are cautioned to exercise the utmost care in breaking new ground by invoking that doctrine. *Washington v. Glucksberg*, 521 U.S. ___, 117 S.Ct. 2258, 2269, 138 L.Ed.2d 772 (1997); *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068-1069, 117 L.Ed.2d 261 (1992). The Supreme Court has generally restricted, rather than expanded, Substantive Due Process claims. *See, for example, Washington*, 521 U.S. at ___, 117 S.Ct. at 2275 (no right to assisted suicide); *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1993) (no right under Substantive Due Process to be free from criminal charges initiated without probable cause).

    A.    Supreme Court and Fifth Circuit Have Not Extended "Substantive Due Process" to Require <u>Defendants Prevent Harm By A Private Citizen</u>

In *DeShaney*, the Supreme Court plainly stated that the Fourteenth Amendment's Due Process Clause was triggered only by affirmative government action and put no duty on government officials to act to prevent a third party from harming the claimant. 489 U.S. at 196-197, 109 S.Ct. at 1004. The court neither approved nor disapproved of a rule imposing liability if the State created the risk of harm to which it forced the claimant to suffer, i.e., an exception for "stated-created" danger. *Id.*

Though often asked to do so, the Fifth Circuit has consistently declined to adopt the "state-created danger" rule. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) *cert. denied* ___ U.S. ___, 119 S.Ct. 65 (1998); *Doe v. Hillsboro*, 113 F.3d 1412, 1415 (5th Cir.

7

1997) (en banc); *Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir. 1994) *cert. denied* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). The Fifth Circuit has cast doubt on whether it is a viable exception to *DeShaney*. *Lefall v. Dallas ISD*, 28 F.3d 521, 530 (5th Cir. 1994). In *Johnson*, the Court questioned whether it could ever meet the "demanding standard for constitutional liability." 38 F.3d at 201.

Though the Fifth Circuit has not declined to adopt the "state-created danger" rule, it has described its elements as:

1. The government officials must create the dangerous situation;

2. They must know the situation is dangerous;

3. The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4. They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of his ability for self defense.

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201. The officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997). The official must have actual knowledge that the risk of harm exists. *Doe*, 113 F.3d at 1415.

    B.    **Complaint Fails to State Facts Showing Defendants Put Agent Salinas In A Dangerous Environment <u>and Stripped Him of the Ability to Defend Himself</u>**

Here, the allegations conclusively acknowledge that Defendants did not force Agent Salinas into a dangerous situation nor did they strip him of his ability of self defense. Here, though Agent Salinas allegedly responded to a call for help, he had no duty to obey the alleged request. Agent Salinas' freedom of action conclusively disproves this element. *See, for example,*

AUG-11-1999 16:57 FROM ADAMS & GRAHAM,LLP TO 19565482598 P.10
Case 1:98-cv-00162 Document 7 Filed in TXSD on 12/14/1998 Page 10 of 18

*Randolph*, 130 F.3d at 731; *Callis v. Sellars*, 931 F.Supp. 504, 513, 520 (S.D.Tex. 1996); *Summar v. Bennett*, 157 F.3d 1054, 1059 (6th Cir. 1998).

In *Randolph*, the state social worker convinced a mentally retarded plaintiff to live in a halfway house; plaintiff accidentally injured herself when she encountered a neighbor's diabetic syringe. The Fifth Circuit held that Randolph's freedom of movement precluded any "state-created danger" argument. 130 F.3d at 731.

In *Summar*, the parents of a murdered confidential informant filed a § 1983 suit against police officers who had revealed the informant's identity in response to discovery in a criminal suit. After the informant's name was revealed, the criminal defendant directed an accomplice to murder the informant. 157 F.3d at 1057. The Sixth Circuit upheld a dismissal of the complaint against a "state-created danger" Fourteenth Amendment claim. The Court found it critical that the decedent voluntarily elected to serve as a confidential informant, knowing the risk that he might have to testify and reveal his identity. 157 F.3d at 1059.

In *Callis*, plaintiff claimed she had been sexually molested by a traffic officer. The police department convinced her to assist in a "sting" operation, in which she agreed to meet the traffic officer under the surveillance and protection of the two detectives. Plaintiff alleged that, during the first meeting of the "sting," the traffic officer again molested her and the detectives failed to intervene. The Houston Division (Atlas, J.) held that the allegations failed to raise the "state-created danger" doctrine. 931 F.Supp. at 520. The Court concluded that, because the plaintiff volunteered to put herself into this situation, her conduct failed to raise the "state-created danger" theory, if it were adopted. *Id.* at 513, 520.

Simply because Agent Salinas came to the Moore residence did not make him more vulnerable. *See, for example, Randolph*, 130 F.3d at 731 (social worker's encouragement of

9

plaintiff to live at halfway house did not create opportunity that would not otherwise have existed for crime to occur). The Complaint fails to show that the Defendants stripped Agent Salinas of means to defend himself and cut off from all sources of aid. He was free to leave when he chose. The Complaint, ¶ 11, states he was *leaving* the house when shot. There can be no claim that Harlingen did or could force a federal agent into a position of harm from which he could not extricate himself. *Compare, Johnson,* 38 F.3d at 202.

    C.    No Complaint Defendants Knew of
              <u>Specific Risk of Harm to Agent Salinas</u>

Moreover, the pleadings must show actual knowledge of the risk of harm which they have created. *Johnson,* 38 F.3d at 201. Therefore, Plaintiffs' pleadings must show that Defendants were actually aware of an extreme risk of harm that a private citizen would acquire the weapon and shoot Agent Salinas. *Johnson,* 38 F.3d at 201-02; *Lefall,* 28 F.3d at 531. The pleading is totally devoid of anything that would suggest actual knowledge by Defendants that, absent adequate security of weapons, rifles were certain to be stolen and used to kill other peace officers.

    D.    No Complaint That Defendants' Conduct Meets the
              <u>Substantive Due Process "Shocks the Conscience" Test</u>

A Substantive Due Process claim requires proof that the public officer's actions were so grossly disproportionate to the need for action under the circumstances that they were inspired by zeal rather than carelessness and amounted to an abuse of official power that shocks the conscience. *Lewis,* 118 S.Ct. at 1717-1718; *Petta,* 143 F.3d at 902. Gross negligence is insufficient. *Lewis, Id.* at 1718. While the standard is sufficiently flexible to take into account all the circumstances, the standard is still conduct would "shock the conscience." *Id.* at 1719-1720. Mere labels such as "reckless, oppression, fraud or malice" are insufficient to state a Substantive Due Process claim. *Id.* at 1720-1721.

The Complaint wholly fails to state that Defendant Moore acted with deliberate indifference or that his conduct "shocks the conscience." Under *Lewis*, Plaintiffs have failed to state a Substantive Due Process claim against Defendant Moore.

The only allegation against Police Chief Schoepner is that, with deliberate indifference, he failed to provide adequate training and supervision concerning use and security of the rifle. Complaint, ¶ 13. The Complaint is devoid of any facts showing how, under the circumstances, his alleged failure to train meets the "shocks the conscience" test. Plaintiffs do not allege that Det. Moore was deficient in his knowledge concerning proper use or storage; they do not allege Defendants knew of circumstances that would show the weapon would most certainly be taken without permission and used to commit violence.[1] The Complaint, ¶ 12, alleges that the City of Harlingen was deliberately indifferent by entrusting Officer Moore with possession of the rifle and giving him unfettered discretion as to its use or storage. Again, ¶ 12 is devoid of any facts showing how entrusting Det. Moore with possession of the rifle without restrictions on its use or storage meets the "shock the conscience" test.

### VI. Complaint Fails to State Facts That Show How A City Policy Caused the Incident

Defendant City of Harlingen is not vicariously liable for the acts of its employees. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 63 L.Ed.2d 61 (1978). To hold the City liable, Plaintiffs must show that a final policymaker for the police department adopted a "policy" with a deliberate indifference to its known or obvious consequences. *Bd. of County Comm. of Bryan County v. Brown*, ____ U.S. ____, 117 S.Ct. 1382, 1388, 138 L.Ed.2d

---

[1] To the extent that the Complaint, ¶ 13, makes a similar "failure to train" allegation against Defendant City of Harlingen, it is deficient for the same reasons.

11

227 (1997). To the extent the Complaint asserts claims against Police Chief Schoepner and Det. Moore in their "official capacities," then this suit is treated as one against the City alone, for which Plaintiffs must still prove the injuries resulted from a City "policy." *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). To survive a Rule 12(b)(6) challenge, the Complaint must state facts, not conclusions, describing the policy and its relation to the constitutional violation. *Spillier v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

The Complaint, ¶¶ 12-13, is not clear whether Plaintiffs allege that the City had an *explicit* policy to entrust weapons without instructions on security or that the City simply had no policy at all. The latter cannot be a "policy" for the purposes of § 1983. A failure to adopt a policy may not serve as a basis for a § 1983 policy, unless the failure amounts to an *intentional* choice, not merely an unintentional oversight. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Doe v. Dallas I.S.D.*, 153 F.3d 211, 217 (5th Cir. 1998).

Assuming the Complaint alleges the policy was an intentional choice, it still fails to state a "policy" actionable via § 1983. To qualify as a "policy" for § 1983 liability, the "policy" must be unconstitutional on its face or adopted with deliberate indifference to the certainty that a constitutional violation will result. *Snyder v. Trepagnier*, 142 F.3d 791, 795-796 (5th Cir. 1998); *Gonzalez v. Ysleta ISD*, 969 F.2d 745, 754-760 (5th Cir. 1992). For the official to adopt such a policy with deliberate indifference, the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

See, for example, *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1060 (9th Cir. 1998) In *Huffman*, the county sheriff had a policy requiring all deputies to carry firearms at all times, even off-duty. An off-duty deputy became embroiled in a drunken bar fight over a woman and

shot the plaintiff. 147 F.3d at 1056. The Ninth Circuit affirmed summary judgment against a claim that the county policy of carrying firearms at all times without specific warnings concerning the danger of becoming drunk was insufficient. A failure to give warnings or instructions did not establish the county's policies violated the Constitution. *Id.* at 1060.

Here, the Complaint wholly fails to state facts showing that the City's policymakers adopted such a policy with knowledge or awareness of a substantial risk that the rifle would be taken and used to harm other people. The Complaint does not allege that Det. Moore's alleged failure to safeguard the rifle itself amounts to deliberate indifference or "conscience shocking" behavior on his part; it alleges only that his actions amounted to negligence. Because Plaintiffs do not claim that Det. Moore's acts were a constitutional violation, there is either no "policy" or the "policy" was not a moving force that caused constitutional violation.

### VII. State Law Claims

Plaintiffs do not claim that Defendants entrusted the rifle to Ernest Moore. Rather, their pleading is premised on the theory that he took it without Detective Moore's knowledge or consent. The negligence claim focuses on inadequate security for the rifle, not entrustment to Ernest Moore.

Texas cases have held that a negligent entrustment of a firearm to an incompetent user may be actionable. *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex.App.-El Paso 1984, no writ); *Praether v. Brandt*, 1998 WL 754644, *4 (Tex.App.-Houston [1st Dist.] 1998, no petn.). However, neither *Praether* nor *Kennedy* stated that there can be liability for failing to prevent the weapon from being taken without permission.

To the extent the Complaint alleges that Defendants negligently failed to destroy the rifle, it fails to state facts creating a state law tort duty. Whether the facts raise a legal duty exists to

13

exercise ordinary care is a law question for the Court to decide. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The Court must weigh the nature of the risk, the foreseeability of the risk, and the probability of injury against the utility of the defendant's conduct, imposing a burden upon the defendant to guard against said injury, and the magnitude of such a burden. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289-90 (Tex. 1996). The foreseeability of harm is not alone sufficient to create a duty to exercise ordinary care. *Golden Spread Council*, 926 S.W.2d at 290-291; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Generally, a person has no duty to protect another from the criminal acts of a third party or otherwise control a third party to prevent harm. *Walker v. Harris*, 1924 S.W.2d 375, 377 (Tex. 1996).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN, TEXAS; and R.D. MOORE and JIM SCHOEPNER pray the above and foregoing be taken under submission and upon hearing same, the Court grant the relief requested, dismiss all or part of the claims alleged, or grant any other such further relief to which they may show themselves entitled.

Respectfully submitted,

By: _____
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants, CITY OF HARLINGEN, TEXAS; R.D. MOORE and JIM SCHOEPNER

OF COUNSEL:

ADAMS & GRAHAM, L.L.P.
Roger W. Hughes
Texas State Bar No. 10229500

PASSMORE, WALKER & TWENHAFEL, L.L.P.
Walter J. Passmore
State Bar No. 15560400
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; FAX: 956/686-1276
Attorney for R.D. MOORE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 14th day of December 1998, to the following counsel of record and interested parties:

Attorney for Plaintiffs, ARTURO G. SALINAS, ET AL:

Mr. Michael Greenberg         Fax   (512) 327-8354
LAW OFFICES OF RICHARD PENA, P.C.         CM RRR Z 348 018 992
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, TX 78746-5747

Attorney of record for Defendant, R.D. MOORE, in His Individual Capacity:

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P. O. Drawer 3766
McAllen, TX 78502-3766

_____
TOM LOCKHART

LAW OFFICES OF
# ADAMS & GRAHAM, L.L.P.
AFFILIATED WITH HILL GILSTRAP ADAMS & GRAHAM, L.L.P.

222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, Texas 78551
TEL (956) 428-7495   FAX (956) 428-2954

AFFILIATE OFFICES
AUSTIN
CHICAGO
DALLAS/FORT WORTH
LITTLE ROCK

## FAX TRANSMISSION SHEET

DATE: 8/11/99                     OUR FILE NO.: H1023

RECEIVER'S FAX NO.: (956) 548-2598

TO: U.S. District Courthouse

ATTN: Butch Barbosa

FROM: Tom Lockhart

RE: Civil Action No. B-98-162

NUMBER OF PAGES (including this page): 17

SENDER: Mery

### CONFIDENTIALITY NOTICE
This document and the documents that accompany this telecopy transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity stated on this form. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly forbidden and prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange for the disposition of the original documents.