26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**MAY 0 3 1999**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS | § | |
| AND ELISA HERNANDEZ HERRERA | § | |
| SALINAS | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-162 ✓ |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| R.D. MOORE AND | § | |
| JIM SCHOEPNER | § | |

AND

| | | |
|---|---|---|
| GILBERTO M. RODRIGUEZ, | § | |
| INDIVIDUALLY AND ON BEHALF OF | § | |
| HIS MINOR DAUGHTER, MEGAN | § | |
| SUZANNE RODRIGUEZ, AND | § | |
| STEPHEN L. WILLIAMS AND WIFE, | § | |
| ROBYN S. WILLIAMS, SURVIVING | § | |
| BENEFICIARIES OF THE DECEASED | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-163 |
| | § | |
| CITY OF HARLINGEN, TEXAS | § | |
| AND | § | |
| R.D. MOORE AND | § | |
| JIM SCHOEPNER | § | |

## PLAINTIFFS' RESPONSE
## TO DEFENDANTS' REPLY BRIEF
## AND DEFENDANTS' MOTIONS TO DISMISS

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs file this RESPONSE TO DEFENDANTS' REPLY BRIEF AND DEFENDANTS' MOTIONS TO DISMISS in both of these cases. Because these cases are uncommonly significant and involve issues of law which are of great consequence, Plaintiffs respond to Defendant's Reply Brief as follows:

# I.

## BASES OF RECOVERY

At the oral hearing on these issues, the Court inquired about, and Plaintiffs' counsel expressed his concern about, the liability of these Defendants under an "excessive force" claim based on Eighth Amendment of the U.S. Constitution. Plaintiffs' Amendment to the First Complaint alleges that Agents Ricardo Guillermo Salinas and Susan Lynn Rodriguez (the "Decedents") were "subjected to the deadly use of force in violation of rights to life guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution."[1] Thus, it is obvious that Plaintiffs are not conceding "that they have no valid theory under the U.S. Constitution, 4th Amendment," as Defendants attempt to conclude.[2] In Plaintiffs' Response to Defendants' Motion to Dismiss and Supporting Brief, Plaintiffs' counsel conceded that an **Eighth** Amendment claim was not being asserted, but did not concede as to the Fourth Amendment theory of liability as Defendants erroneously conclude.

After more factual investigation—even without formal discovery—and with a review of Defendants' representation about the applicable law after oral presentations, Plaintiffs' counsel is persuaded, unequivocally, that these plaintiffs are clearly entitled to pursue these cases, and recover their damages inflicted by the City of Harlingen under the doctrines of "state-created danger" and "special relationship."

Plaintiffs have pled a violation of their right to substantive due process based on (1) a "special relation" between Defendants and Decedents, and (2) the "state-created

---

[1]  Amendment to the First Complaint, ¶I.
[2]  Defendants' Reply, ¶I.

PLAINTIFFS' RESPONSE TO DEFENDANTS' REPLY BRIEF
AND DEFENDANTS' MOTIONS TO DISMISS

PAGE 2

danger" doctrine.  Defendants claim that there was no "special relation" because Agent Salinas was not involuntarily confined by Defendants at the time of the shooting.  *Walton v. Alexander,* 44 F.3d 1297, 1229 (5th Cir. 1995) (*en banc*); *Doe v. Hillsboro ISD,* 113 F.3d 1412, 1415 (5th. Cir. 1997) (*en banc*); however, the cases relied upon by Defendant were limited to custodial relationships where persons resided in a state facility, i.e., a school.  *Walton,* 44 F.3d at 1299; *Doe,* 113 F.3d at 1399.

The Fifth Circuit has identified "a very narrow class of persons who stand in a 'special relationship' with the state enjoys a clearly established constitutional right to some degree of state protection from known threats of harm by private actors."  *Walton,* 44 F.3d at 1299.  The Fifth Circuit does not, however, automatically extend the protections afforded a 'special relationship' to custodial situations in state facilities.  *Id.*

These cases are not custodial situations based on Plaintiffs' residing in a state facility, but on an affirmative duty to protect based on Defendants' creation of the danger by supplying the extremely dangerous semi-automatic military-type assault weapon which created the nexus of danger to Plaintiffs.

The doctrine of state-created danger appeared first in a Supreme Court opinion which held that "[w]hile the State may have been aware if the dangers that [Plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render [Plaintiff] more vulnerable to them" and that "[u]nder these circumstances, the State had no constitutional duty to protect [Plaintiff]."  *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 201 (1989).  Defendants assert that the "state-created danger" allegation fails because no other Fifth Circuit decision has ever adopted it as an exception to *DeShaney.*  As Hon. Edith Jones stated in *Doe,* "the state-created danger

doctrine applies only when the state actor creates the dangerous situation in which a third-party causes the harm." *Doe*, 81 F.3d at 1405. The Fifth Circuit did not apply the state-created danger doctrine because that factual situation did not closely resemble and substantiate the concept set out in *DeShaney*.

However, the peculiar, aggravated facts of the present cases necessitate and support the application of the state-created danger concept:

(1)     Decedents were placed and affirmatively obligated to be present at Moore's residence because of their sworn law enforcement duty;

(2)     Defendants did in fact place the extremely dangerous AR-15 military semi-automatic assault rifle in an inadequately protected place, and made it available to a person whom Defendants knew to be unstable—the son one of the Defendants—in accordance with the City's own policy and custom but in violation of State standards;

(3)     Had this unusually dangerous weapon not been so carelessly "stored and kept" in violation of the City's own rules, this disaster would not have resulted nor the opportunity created for the "third party" to commit the pernicious crime against Decedents; and

(4)     Defendant Moore "ordered" the two Border Patrol Agents off his premises and right into the face of danger.

"The key to the state-created danger cases lies in the state actor's culpable knowledge and conduct in affirmatively placing an individual in a position of danger." *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997). Defendant Schoepner knew that placing a weapon specifically designed for military combat situations into the hands

of Defendant Moore when it should have been destroyed (or at least properly stored)

created an unusual and extremely dangerous environment.

In citing *Salas v. Carpenter*, Defendants fail to bring to the attention of this Court

that although the absence of a special relationship has been generally held to preclude a

due process claim based upon a failure to provide protective services, the Fifth Circuit

has enunciated that there is a denial of due process when the state 1) creates the dangers

faced, 2) played a part in their creation, and 3) made the plaintiff more vulnerable to

them:

> "[i]f the State puts a man in a position of danger from private persons and
> then fails to protect him, it will not be heard to say that its role was merely
> passive; it is as much an active tortfeasor as if it had thrown him into a
> snakepit." *Salas v. Carpenter*, 980 F.2d 299, 309 (5th Cir. 1992), citing
> *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

The *Salas* case upon which Defendants rely also articulates that:

> "a constitutional duty to protect an individual against private violence may
> exist in a non-custodial setting if the state has taken affirmative action
> which increases the individual's danger of, or vulnerability to, such
> violence beyond the level it would have been at absent state action." *Id.*

The factual situation in these cases creates a violation of substantive due process

claim rights and a claim based on a 'special relation,' that it parallels the circumstances

under which the Fifth Circuit says that the state-created danger theory applies. There

was, in fact, a nexus between the activity out of which the violation occurred and the

duties and obligations of Defendants.

Defendants Schoepner and Moore clearly violated the rights of all citizens

guaranteed under the Fourteenth Amendment: the right to life and liberty. Although the

Supreme Court has indicated that qualified immunity is an affirmative defense, the

Supreme Court has also cautioned that civil rights claims should be construed in the light most favorable to the plaintiff, accepting the factual allegations in the complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160 (1993). Any attempt to dilute the right to life and liberty down to a violation of state or federal law undermines the guarantees of our Constitution.

## II.

## PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS

A.   DEFENDANTS' DUE PROCESS DUTY BASED ON A "SPECIAL RELATIONSHIP" HAS NOT BEEN DEFEATED

In *DeShaney*, the Supreme Court did hold that, generally, nothing in the due process clause of the Fourteenth Amendment creates an affirmative duty on the part of the state to "protect the life, liberty, and property of its citizens against invasions by private actors." *DeShaney*, 489 U.S. at 195, but this same case also makes it clear that even though the state's awareness of a risk of harm to an individual will not suffice to impose an affirmative duty to provide protection, the State may have a corresponding duty to protect **if** the state creates the danger confronting the individual. *DeShaney*, 489 U.S. at 201. The absence of a constitutional duty to protect its [citizens] does not mean that a state may affirmatively create a dangerous situation and place [citizens] in harm's way without acquiring a corresponding duty to protect those [citizens] from resulting violations of their constitutional rights. *Robbins v. Maine Sch. Admin. Dist. No. 56*, 807 F.Supp.11, 13 (D.Me. 1992).

The Fifth Circuit has said that the dispositive factor is whether the state has in some way placed the plaintiff in a dangerous situation that would not otherwise have existed is the act more appropriately characterized as an affirmative act or omission on that State's part. *Randolph*, 130 F.3d at 731. The Fourth Circuit justified the application of the doctrine as stated by the Supreme Court in *DeShaney*,

> "When the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive. In such instances, the state is not merely accused of a failure to act; it becomes much more akin to an actor directly causing the harm to the injured party. At most, these cases stand for the proposition that state actors may not disclaim liability when they themselves throw others to the lions. *Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir.1995).

In fact, this very issue of state-created danger is before the 5th Circuit at this time in the case of *Piotrowski v. City of Houston*. Id., 95-4045, U.S.D.C. Southern Dist of Texas, Houston Div.(May 7, 1998). Judge Hittner recognized and applied the state-created danger theory of liability in rendering his final judgment order, as brought to the attention of this court by counsel for the Defendants. Id. Other courts have also identified that a duty does exist when a defendant takes an affirmative action to create, enhance, or exacerbate the danger that caused the specific harm to the plaintiff. *Park v. City of Atlanta*, 938 F.Supp. 836, 843 (N.D. Ga. 1996); *Plumeau v. Yamhill County School District*, 907 F.Supp. 1423, 1443 (D.Ore. 1995); *Robbins*, 807 at 887.

**B.    A "STATE-CREATED DANGER" CLAIM HAS PROPERLY BEEN ALLEGED**

The Supreme Court in *DeShaney* states that "[w]hile the state may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their

creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 at 201.

While the Fifth Circuit has not yet been confronted by cases that contain the facts necessary to constitute state-created danger, numerous other courts have confronted cases which involve dangerous situations created by the government and have properly held that such does create municipal liability.

1. The 7th Circuit Court of Appeals has noted that "*DeShaney* leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Reed v. Garner*, 986 F.2d 1122, 1125 (7th Cir.), *cert denied*, 510 U.S. 947, 114 S.Ct. 389 (1993).

2. The 2nd Circuit had interpreted the *DeShaney* analysis to imply that "an allegation that [the government] in some way assisted in creating or increasing the danger to the victim" or private violence implicates a duty to protect under the Due Process Clause. *Dwares v. City of New York*, 985 F.2d 94, 99 (2nd Cir. 1993).

3. In the present case, the facts clearly confirm that Defendants played an integral part in posing an unreasonable risk to Plaintiffs' decedents that caused their eventual constitutional injury: loss of their lives.

## C. THIS PARTICULAR WEAPON

Defendants knew that the instrument given Defendant Moore was not a standard weapon:

1. The AR-15 is a semi-automatic assault rifle with an unusually high-velocity .223 caliber ammunition;

2. It was created by the military as anti-personnel ammunition specifically designed to accommodate a high capacity of ammunition and extreme lethality per bullet for combat situations;

3. Defendants knew that the destructive nature of the AR-15 posed an increase risk of harm to any individuals that might come into contact with it.

Defendants' decision not to destroy the weapon (placed in Defendants' care at the request of the citizen who turned it in for destruction) or to at least properly store it confirms a deliberate indifference to the safety of the individuals they were to protect, and created the very danger that Plaintiffs' decedents were exposed to and the actual injury they suffered.

Defendant Schoepner's decision to "assign" the AR-15 to Defendant Moore and his failure to provide that Defendant Moore was adequately trained constituted both deliberate indifference and reckless disregard.

> "Inadequate training could serve as a basis for imposing Section 1983 liability on local government...where the failure to train amounts to a reckless disregard for or deliberate indifference to the rights of persons within the [government's] domain. *City of Springfield, Mass v. Kibbe*, 107 S.Ct.1114, 1121.

The Justices of the Supreme Court have unanimously agreed that a failure to train would be so certain as to result in constitutional violations as reflect the "deliberate indifference" to constitutional rights required for the imposition of municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Had Defendant Schoepner chosen not to allow Defendant Moore to keep the weapon at his home, a third party could not have taken it out of Officer Moore's home.

Had Defendant Schoepner required that Defendant Moore be adequately trained as to the possession of AR-15, Decedents' lives would not have been destroyed by the AR-15.

Defendants are therefore responsible for creating the zone of danger that surrounded the possession of the assault weapon. Defendants' actions, and the results that flowed from those actions, form the basis of the state-created danger that injured Plaintiffs.

## III.

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity is a good-faith defense necessary to ensure that "public officials are able to act forcefully and decisively in their jobs" and that "talented candidates [are] not deterred by the threat of damage suits from entering public service." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The origins of qualified immunity are two-fold:

(1) to assume good-faith reliance on the part of defendants acting on behalf of the state pursuant to law which they assume is valid—thereby exposing defendants to only objective inquiries, and

(2) to address public policy concerns underlying suits against government officials.

Qualified immunity does not shield state officials from pervasive or unreasonable risks that they pose to citizens, or to egregious dangers that results from their actions. Qualified immunity does not allow state officials to create their own policy, use that policy to violate the constitutional rights of others, and then stand behind it as immunity

from suit. "Qualified immunity is available only to officials sued in their personal capacities, not in their official capacities." *Reyna v. City of Weslaco*, 944 S.W.2d 657, 661 (Tex.App. 1991), citing *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985).

Defendants appear to be arguing that because a bright line has not been drawn from the case law, there is no need to distinguish between what is a state-created danger and what is not. That proposition is wrong. Where a §1983 claim centers on procedures prescribed in the state statute, "it plainly implicates state and its authority in deprivation of constitutional rights, such that there was state action for purposes of §1983 action." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

The two are not exclusive. Section 211.104 : Texas Commission on Law Enforcement Officer Standards and Education sets the minimum standards for annual firearms proficiency. Section 211.104 is the law of the State of Texas <u>and</u> the City of Harlingen. It directly affects law enforcement and ensures public safety and protection to life, liberty, and property as guaranteed by the Constitution. Attempting to separate relevant questions of federal law from state law in a case that deeply meshes the constitutional rights protected by both is an error. No creative analogy is required to perceive the shocking consequences of recklessly allowing a deadly assault weapon to be readily accessible to the hands of a third party.

A.  **DEFENDANTS' CUSTOM OR POLICY WAS THE PROXIMATE AND PRODUCING CAUSE OF THE INJURY TO PLAINTIFFS**

The question is whether the governmental official if the final policymaking authority for the government. Justice Tom Reavley observed in the *Grandstaff* case that,

"A city may violate a person's civil rights through a formally declared policy, i.e., by direct orders or promulgations, or through an informal acceptance of a course of action by its employees, i.e., custom or usage..." *Grandstaff v. City of Borger, Tex.*, 779 F.2d 1129 (5th Cir. 1986).

In this case, Defendant Schoepner, as Chief of Police, possessed the authority to hire, supervise, and train personnel, and to make other decisions relevant to the protections upon which the public relies. By making the types of decisions that were not reviewable by a higher authority, Defendant Schoepner himself created the very decisions that became customary usage and police department policy. It was Defendants' duty to adequately train and supervise members of the police force in the storage and use of dangerous weapons such as the AR-15, and to implement procedures fit to the needs of the police department. When the City of Harlingen and Defendant Schoepner assigned a highly dangerous assault weapon to Defendant Moore without adequate training, allowing Moore to take the weapon home to keep it at his home, Defendants created the very policy that enabled this disaster to occur. Defendant Schoepner was acting in his role as Chief of Police for the City of Harlingen when he adopted such an unconstitutional policy.

The Supreme Court has said that in proving inadequate training, plaintiff must show reckless disregard or deliberate indifference in the training in order to establish the requisite "causal connection between omissions in a police training program and affirmative misconduct by individual officers in a particular instance." *Canton*, 489 U.S. at 378. The 'deliberate indifference' standard has to do with what is required to establish the municipal policy as the "moving force" behind the constitutional violation. *Canton*, 489 U.S. at 388 n.8. The Supreme Court has also recognized municipal liability where an

act or decision of a policymaker directly effected a constitutional deprivation. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). In such cases where the final policymaker caused a constitutional deprivation, the Fifth Circuit has held that there are no real problems with respect to issues of fault or causation. *Bennett v. Pippin*, 74 F.3d 578, 586 & n.5 (5th Cir. 1996).

In this case, Defendants were the moving force that caused Plaintiffs' decedents constitutional deprivation and produced their injury and death. By creating and utilizing their procedure in order to possess the weapon, Defendants essentially adopted and gave credence to such as official policy. The AR-15 was a anti-personnel military-type assault weapon that Defendants knew was capable of causing immense injury. Defendants knowingly created the zone of danger that surrounded the AR-15 and are liable for the constitutional injury to Plaintiffs that resulted. Defendants label this an 'isolated error'. Unfortunately, isolated errors often cause isolated deaths. Regardless, it is no less excusable. Defendant's adopted policy was the producing cause of Plaintiff's decedents deprivation of life and liberty.

## IV.

## CONCLUSION

Plaintiffs assert their Due Process claim based on the affirmative duty owed to them by Defendants given the state-created danger that caused the violation of the Fourteenth Amendment rights of their Decedents. Qualified immunity is not proper where the egregious acts of state officials strips citizens of the protections afforded by the Constitution, and the public welfare should not be subject to the unreasonable risks and offensive practices of a few.

Although the Fifth Circuit has yet to apply the state-created danger doctrine to any case that has come before it, the particular facts of this case indicate that this is the time for such application.

A dilemma exists in 12(b)(6) motions that is appropriate to address in this case. It is the delay that is imposed upon this delicate process and which inevitably--and adversely--impacts the effort to get to the true facts before they disappear. This concern was so well expressed in a dismissal for want of prosecution case (which is just as applicable to FRPC 12(b)(6) cases) by Hon. Tom Reavley when he was a justice on the Supreme Court of Texas:

> Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place of fact finding, and possibilities for error multiply rapidly as time elapses between the original fact and its judicial determination. If the facts are not fully and accurately determined, then the wisest judge cannot distinguish between merit and demerit. If we do not get the facts right, there is little chance for the judgment to be right.

*Southern Pacific Transp. Co. v. Stoot*, 530 S.W.2d 930 (Tex. 1975).

WHEREFORE, Plaintiffs respectfully request this Court to deny Defendants Motions to Dismiss and allow Plaintiffs to proceed immediately with preparation for a speedy trial of these cases.

Respectfully submitted,

BROADUS A. SPIVEY
SPIVEY & AINSWORTH, P.C.
48 East Avenue
Austin, TX  78701
512+474-6061
fax: 512+474-1605

Mr. Richard Pena
Mr. Michael Greenberg
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747

By _____
    Broadus A. Spivey
    State Bar No. 18955000

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on April 27, 1999, to all counsel of record and interested parties via facsimile and U.S. mail:

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
ATTORNEYS FOR DEFENDANT

Mr. Walter J. Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
2424 North 10th St, Suite 201
McAllen, Texas 78501
ATTORNEYS FOR DEFENDANT

_____
Broadus A. Spivey

3163P.011

CAMPDF - www.fenlo.com