56



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

'JUL 1 0 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS AND ELISA HERNANDEZ HERRERA SALINAS | § § § § | |
| V. | § § | |
| CITY OF HARLINGEN, TEXAS | § § | CIVIL ACTION NO. B-98-162 |
| AND | § § | JURY DEMANDED |
| R.D. MOORE AND JIM SHOEPNER | § § | |
| and | § § | |
| GILBERTO M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS, SURVIVING BENEFICIARIES OF THE DECEASED | § § § § § § § § | |
| V. | § § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS | § § | |
| AND R.D. MOORE AND JIM SHOEPNER | § § | |
| and | § § | |
| RAUL RODRIGUEZ | § § | |
| V. | § § | CIVIL ACTION NO. C-099-070 |
| CITY OF HARLINGEN, R.D. MOORE AND JIM SHEOPNER | § § | |

## COMPLAINT IN INTERVENTION

1.      Intervenor Plaintiffs' Motion to Intervene first having been granted, Intervenor

Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia file this Complaint in Intervention as Intervenor Plaintiffs, as authorized by Federal Rule of Civil Procedure.

## I. Preliminary Statement

2.  Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia are United States citizens and commence this action pursuant to 42 U.S.C. §1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws.

3.  Intervenor-Plaintiffs seek compensatory damages and reasonable attorneys' fees as authorized by and pursuant to 42 U.S.C. §1988,

## II. Jurisdiction

4.  42 U.S.C. §1983 and 42 U.S.C. §1988 provide jurisdiction over Intervenor Plaintiffs constitutional claims for redress, which are conferred on this Honorable Court by 28 U.S.C. 1343(a)(3). Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States. This Honorable Court has pendant jurisdiction over all claims asserted under the laws of the State of Texas pursuant to 28 U.S.C. §1367(a).

## III. Jury Trial Demand

5.  Intervenor Plaintiffs demand a trial by jury.

## IV. Parties

6.  Plaintiffs Arturo Guillermo Salinas and Elisa Hernandez Herrera Salinas are United

States citizens and are the surviving natural parents of Ricardo Guillermo Salinas, Deceased. Said Plaintiffs will be provided with a copy of Intervenor Plaintiffs' Complaint in Intervention by and through their attorneys of record, Broadus A. Spivey, Spivey & Ainsworth, P.C., 48 East Avenue, Austin, Texas 78701 and Michael Greenberg, Law Offices of Richard Pena, Barton Oaks Plaza, 901 Mopac, Suite 325, Austin, Texas 78746.

7.     Plaintiffs Gilberto M. Rodriguez, Individually and on behalf of his minor daughter, Megan Suzanne Rodriguez, are citizens of the United States and residents of Cameron County, Texas and are the surviving spouse and child, respectively, of Susan Lynn Rodriguez, Deceased. Plaintiffs Stephen L. Williams and Robyn S. Williams are and were at all times relevant hereto citizens of the United States and residents of Philadelphia, Tennessee and are the surviving parents of Susan Lynn Rodriguez, Deceased. Said Plaintiffs will be provided with a copy of Intervenor Plaintiffs' Complaint in Intervention by and through their attorneys of record, Broadus A. Spivey, Spivey & Ainsworth, P.C., 48 East Avenue, Austin, Texas 78701 and Michael Greenberg, Law Offices of Richard Pena, Barton Oaks Plaza, 901 Mopac, Suite 325, Austin, Texas 78746.

8.     Plaintiff Raul Rodriguez is an individual who is a citizen of the United States and at all times relevent hereto a resident of Cameron County, Texas. Said Plaintiff will be provided with a copy of Intervenor Plaintiffs' Complaint in Intervention by and through his attorney of record, Sonia Lopez, Law Offices of Ramon Garcia, 222 West University Drive, Edinburg, Texas 78539.

9.     Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus

R. Villanueva, Pedro Vela and Alberto R. Garcia are individuals who are citizens of the United States and at all times relevant hereto were residents of Cameron County, Texas.

10. Police Detective Ralph D. Moore is and was at all relevant times a resident of Cameron County, Texas. Ralph D. Moore was employed as a police officer by the City of Harlingen, Texas and acted under color of law as a police office and a Detective employed by the City of Harlingen. It was and is Detective Moore's responsibility and duty not to improperly possess deadly weapons and to properly secure deadly weapons coming to his possession, care, custody or control from the City of Harlingen, all to prevent their access to, and unlawful use by, others against citizens. It is also Detective Moore's responsibility and duty to know and to comply with minimum constitutional requirements and to know and to comply with all constitutional and lawful policies, procedures, practices and customs of the City of Harlingen, Texas. It was Detectives Moore's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the State of Texas, governing the performance of his duties and not to be intentionally, deliberately, or consciously indifferent to any of those responsibilities or to the constitutional rights of others. In all of these responsibilities material to this lawsuit, he failed while acting under color of state law. Said Defendant will be provided a copy of Intervenor Plaintiffs' Complaint in Intervention by and through his attorneys of record Tom Lockhart, Adams & Graham, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas 78550 and Walter J. Passmore, Passmore, Walker & Twenhafel, L.L.P., 2424 North 10th, Suite 200, McAllen, Texas 78502.

11.   Police Chief Jim Shoepner was at all relevant times employed as the Chief of Police

for the City of Harlingen Police Department and acted under color of law in that

capacity.  It was Police Chief Sheopner's responsibility and duty to ensure that all

deadly weapons, owned or tuned into the Harlingen Police Department or coming

into its possession, custody, and control, and those of any of its personnel, were

properly stored and secured in the custody of the Harlingen Police Department, so

that, among other things, those weapons would not be accessible to anyone other

than designated police personnel and so that no one other than designated police

personnel could use them.  It was also Chief Sheopner's responsibility and uty to

know and to comply with minimum constitutional requirements; to know and to

comply with all lawful policies, procedures, practices and customs of the City of

Harlingen; and to implement and to enforce proper policies and procedures to

ensure that the Harlingen Police Department and its personnel were not

intentionally, deliberately, or consciously indifferent to the lives and safety of

citizens, including its own and other law enforcement officers.  It was Chief

Sheopner's responsibility to know and to comply with all laws, including the

Constitution and laws of the United States and of the State of Texas, governing the

performance of his duties and the duties of all police officers employed by the City

of Harlingen Police Department, and not to be, and not to allow officers to be,

intentionally, deliberately, or consciously indifferent to any of his or their

responsibilities or to the constitutional rights of others.  In all of those

responsibilities material to this lawsuit, he failed while acting under color of state

law.  Said Defendant will be provided a copy of Intervenor Plaintiffs' Complaint in

Intervention by and through his attorney of record Tom Lockhart, Adams & Graham, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas 78550.

12.  The City of Harlingen, Texas, is a municipality and a political subdivision of the State of Texas, located with the boundaries of the Brownsville Division of the United States District Court for the Southern District of Texas, where all acts and omissions alleged herein occurred. It was and is the responsibility of the Defendant City of Harlingen, Texas, to properly hire, train, supervise, test, and discipline City of Harlingen Police Department officers and to implement and to enforce proper policies and procedures to ensure that it and its officers were and are not intentionally, deliberately, or consciously indifferent to the constitutional rights and to the lives and safety of citizens, including law enforcement officers. It was and is the City of Harlingen's responsibility and duty to promulgate, to implement, and to enforce policies and procedures regarding the disposal, storage and security of deadly weapons over which it and its personnel had and have jurisdiction, possession, care, custody, or control. Said Defendant will be provided a copy of Intervenor Plaintiffs' Complaint in Intervention by and through their attorney of record Tom Lockhart, Adams & Graham, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas 78550.

13.  In all things, all officers and employees of the City of Harlingen who are identified by name or reference herein at all times acted in bona fide pursuance of general authority to act for the City of Harlingen on the subjects and matters to which their acts relate, which acts were and are imputed to the City of Harlingen. Harlingen Chief of Police Jim Scheopner had final authority to make and establish policy

governing the operation of the City of Harlingen Police Department, and the conduct of its officers and personnel.  Harlingen Chief of Police Jim Scheopner had full authority to resign or remove himself as Chief of Police of the City of Harlingen Police Department at any time.

## V. Facts

### Background

14.   In 1996, a Harlingen citizen, Sylvia Pirtle, a physician's wife, delivered possession and ownership of an AR-15 semi-automatic assault rifle to the Harlingen Police Department, for one - and only one - purpose; to destroy it.  She was afraid of burglary and that the assault rifle could fall into the dangerous hands of criminals.

15.   Chief of Police Sheopner possessed and controlled the rifle as custodian for the Harlingen Police Departmetn and the City of Harlingen, Texas.

16.   Contrary to the sole and express purpose for which Ms. Pirtle transferred to the Harlingen Police Department, the AR-15 semi-automatic assault rifle was never destroyed.

17.   Instead, Chief of Police Scheopner and the City of Harlingen officially issued, approved, allowed, or ratified the issuance of the AR-15 semi-automatic assault rifle to Harlingen Police Detective R.D. Moore for use as a service weapon, on condition, representation or agreement that he store the assault rifle in the trunk of his assigned unit.

18.   Detective Moore never initially trained or qualified in the proficient use of that AR-15 assault rifle before it was issued to him or before the incident.  Detective Moore neither demonstrated nor was ever required to demonstrate his proficiency in the

use of that AR-15 assault rifle before it was issued to him or before the incident. Those omissions constituted an intentional, deliberate, or conscious indifference by all defendants to the lives and safety of citizens, including law enforcement officers.

19.  Those omissions did not even remotely meet existing minimum statewide proficiency standards for that type of weapon. Those standards had already been in place and had even been published, on a statewide basis, since January 5, 1988 - for more than ten years prior to the incident of which all defendants had actual and constructive notice by virtue of §211.104 of the Administrate Rules of the Texas Commission on Law Enforcement Officer Standards and Education.

20.  Detective Moore never did comply, nor was he ever required to comply, with those minimum standards by the City of Harlingen or by Chief Jim Sheopner, who issued, approved the issuance, allowed, or ratified the issuance to Detective Moore of that weapon. This occurred, even though (1) the owner of that weapon had tendered it to the Harlingen Police Department on condition that it be destroyed and even though (2) Detective Moore performed no duties which entailed or ever involved his use of that AR -15 assault rifle, and finally, even though (3) the City of Harlingen and its Police Department had no SWAT team or Emergency Response Team - for which team, when it existed years earlier, Detective Moore had never been trained nor was ever a member - which entailed or required the use of that AR-15 assault rifle.

21.  The City of Harlingen and Chief Sheopner never requested nor required the return of that AR-15 assault rifle by Detective Moore and never changed his status of duty because of their non-compliance with that minimum standard, nor did they require

or enforce any order or directive to, or condition imposed on, or representation or agreement by Detective Moore that he at all times safe-house said weapon in the trunk of his assigned unit.

22. The AR-15 assault rifle was stored at Detective Moore's residence. Detective Moore stored the rifle in the bedroom of Ernest Moore, Detective R.D. Moore's son, in a Remington rifle safe, not in the trunk of his assigned police unit.

23. Detective Moore's son, Ernest Moore, was known to be psychologically unstable, the medical recipient of psychological drugs, and a cocaine user.

24. Detective Moore knew that his son, Ernest Moore, had access to the contents of the rifle safe and to that AR-15 assault rifle.

25. Before July 7, 1998, the City of Harlingen had determined that the performance by Jim Sheopner of his duties as Chief of Police of the City of Harlingen was neither competent nor reliable. Despite that, the City of Harlingen, acting through its final policymakers with power to remove Jim Sheopner as Chief of Police, did not remove him before the tragic July 7, 1998 incident.

26. Before July 7, 1998, Jim Sheopner knew his performance of his duties as Chief of Police of the Harlingen Police Department was neither competent nor reliable; yet, he did not remove himself from that position, which was an intentional, a deliberate, or a conscious indifference to the safe and proper operation of the Harlingen Police Department and to the lives and safety of citizens, including law enforcement officers it was supposed to protect.

27. Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia were employed and on duty as

Cameron County Deputy Sheriffs on July 7, 1998 in Cameron County, Texas.

28.     On the morning of July 7, 1998, a double homicide was committed in San Benito,

Texas.  Ernest Moore was the suspect.  He lived at the home of his parents,

Detective and Mrs. R.D. Moore.  Law enforcement agents began their search for the

double homicide suspect, Ernest Moore, at the Moore's house.

29.     Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus

R. Villanueva, Pedro Vela and Alberto R. Garcia, along with other law enforcement

officers, were involved in that search at the R.D. Moore house.

30.     Detective Moore was at the residence.  He already knew his son, Ernest Moore, had

taken the AR-15 assault rifle, knew his son was mentally unstable, knew his son was

prescribed medication to stabilize himself, knew his son was upset over a girlfriend,

knew his son had a violent temper, knew his son was a good shot, and knew —

before the law enforcement officers arrived at the scene — that his son, that very

morning, was already "in some shit . . ." or " . . . some deep shit . . .", and suspected

his son was hiding nearby.  Despite all of that, Detective Moore never timely

warned — or caused anyone to timely warn — the law enforcement officers of all

those facts and that Ernest Moore posed a serious and substantial threat to anyone

approaching that area or the residence.

31.     The law enforcement officers, including Cameron County Deputy Sheriffs and

Border Patrol Agents approached the Moores' residence in an attempt to search for

the double homicide suspect, Ernest Moore, son of Detective Moore.

32.     At that same time, other Cameron County Deputies were in or approaching the area

that surrounded the Moores' house, also attempting to search for the double

homicide suspect, Ernest Moore.

33.  Detective Moore told the Border Patrol Agents that they did not have his consent to enter his house, as his son, Ernest, was not an illegal alien, and turned them away.

34.  As the Border Patrol Agents left the Moores' residence, Ernest Moore opened fire at the law enforcement officers on the scene with the AR-15 assault rifle, shooting from a nearby cornfield.

35.  Border Patrol Agents Salinas and Rodriguez were shot and killed and Cameron County Deputy Raul Rodriguez was also shot with the AR-15 assault rifle. Cameron County Deputies Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia sustained physical, mental and emotional injuries due to the shooting of the AR-15 assault rifle which the City of Harlingen and the Chief of Police, Jim Sheopner had allowed Detective Moore to have — the very weapon that a concerned citizen had turned into the City of Harlingen Police Department for destruction.

## VI. Federal Claims and Causes of Action

36.  Intervenor Plaintiffs hereinto incorporate by reference and repeat all allegations contained in paragraphs 1-35 hereof.

## Defendant - Detective R.D. Moore

37.  Detective Moore, acting under color of law as a police officer of the City of Harlingen Police Department, created the very danger that killed Border Patrol Agents Salinas and Rodriguez; wounded Cameron County Deputy Raul Rodriguez and inflicted physical, mental and emotional injuries upon Cameron County Deputies Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R.

Villanueva, Pedro Vela and Alberto R. Garcia, by allowing — and by continuing to allow — his son, Ernest Moore, access to the AR-15 assault rifle, when he knew his son was mentally unstable, knew his son was supposed to be on prescription medication to stabilize himself, knew his son was upset over his girlfriend, knew his son was a good shot, knew his son had that AR-15 assault rifle, and knew — before the law enforcement officers ever arrived on the scene — that his son, Ernest Moore, that very day was already ". . . in some shit" or ". . . in some deep shit."

38.  In conjunction therewith and otherwise, Detective Moore was guilty of the following and additional acts and omissions, all of which constituted an intentional, deliberate, or conscious indifference to the lives and safety of others; all of which were proximate and producing causes of the injuries to Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez; and all of which violated the constitutional rights of Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and Border Patrol Agents Salinas and Rodriguez and laws that were clearly established at the time:

(A)  Detective Moore received, accepted, possessed, and kept the AR-15 assault rifle, without first qualifying in the proper use, safe storage, and a demonstrated proficient use of that AR-15 assault rifle.

(B)  Detective Moore allowed his son, Ernest Moore, access to the AR-15 rifle.

(C)  Detective Moore did not effectively deny his son access to the AR-15 rifle.

(D)  Detective Moore did not store said weapon in the trunk of his assigned unit.

(E)     Detective Moore, though a police officer, failed to timely warn other officers at the scene and officers enroute to the scene - or to cauase them to be warned — that his son, Ernest Moore, posed a serious and substantial risk to their lives and safety.

(F)     Detective Moore failed to return said weapon to the City of Harlingen Police Department for safe keeping away from other at times when he was not storing it in his assigned unit.

## Defendant, Chief of Police Sheopner

39.     Intervenor Plaintiffs hereinto incorporate by reference and repeat all allegations contained in paragraphs 1-38 hereof.

40.     In conjunction therewith and otherwise, Chief of Police Jim Sheopner was guilty of each of the additional and following acts and omissions, each and all of which constituted an intentional, a deliberate, or a conscious indifference to the lives and safety of citizens (including law enforcement officers), each and all of which proximately caused and resulted in the violations of constitutional and other rights of Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and Border Patrol Agents Salinas and Rodriguez and laws that were clearly established at the time by:

(A)     Issuing, authorizing, approving and ratifying the issuance of the AR-15 assault rifle to Detective Moore and by allowing him to keep it when he was not trained and qualified on the use of the weapon, had not demonstrated his proficiency with the weapon, performed no duties for which the weapon was or would be appropriate, before the incident, and was not trained in the safe

storage of the weapon away from dangerous and other persons who might have access to the weapon before the incident.

(B)     Not enforcing the condition, representation or agreement that Detective Moore store the AR-15 assault rifle in the turnk in his unit assigned to him away from other persons.

(C)     Not adopting and not enforcing policies which required that every officer, including Detective Moore, first be trained in the proper use, proficiency, and storage of every weapon and first demonstrate his or her proficiency in every weapon before it was ever issued or turned over to the officer.

(D)     Not adopting and not enforcing a policy that no weapon be issued to or approved for use by an officer, unless the officer was assigned to a position for which the use of that weapon was appropriate.

(E)     Allowing Detective Moore to have and take possession of and keep the AR-15 assault rifle that had been turned over to the City of Harlingen Police Department by a concerned citizen for destruction so that it could never fall into the wrong hands and hurt someone.

(F)     Not disciplining Detective Moore for allowing his son, Ernest Moore, access to the AR-15 assault rifle, which Ernest Moore used to kill and injure others.

(G)     No first training and requiring Detective Moore to demonstrate his proficiency in the use and safe storage of the AR-15 before it was issued to Detective Moore.

## Defendant, City of Harlingen

41.     Intervenor Plaintiffs hereinto incorporate by reference and repeat all allegations

contained in paragraphs 1-40 hereof.

42.  Before July 7, 1998, serious deficiencies in the operation of the City of Harlingen
     Police Department under Chief of Police Jim Sheopner were reported to, and came
     to the attention of, the City of Harlingen.  The City of Harlingen further knew that
     Harlingen Chief of Police Jim Sheopner did not intend to — and before the incidnet
     did not — make any changes or efforts to materially improve the operation of the
     City of Harlingen Police Department.  Before the incident, the City of Harlingen did
     not replace Jim Sheopner as Chief of Police with a competent and reliable Chief of
     Police.

43.  In conjunction with all of the foregoing and otherwise and with an intentional, a
     deliberate, or a conscious indifference to the lives and safety of citizens, including
     Intervenor Plaintiff and Plaintiffs, the City of Harlingen adopted or maintained,
     through its final policymakers, unconstitutional policies and customs, and failed to
     implement constitutional and proper policies and procedures, which proximately
     caused or resulted in the violation of the constitutional rights of Intevenor Plaintiffs
     and Plaintiffs secured to them under the Constitution and law of the United States of
     America and in the injuries to Cameron County Deputies Raul Rodriguez, Samuel
     Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela
     and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez
     and in all resulting damages, by, among other things, the following additional items:

     (A)  Issuing, authorizing, approving, and ratifying the issuance of the AR-!5
          assault rifle to Detective Moore, who , before the issuance to him of the
          weapon and who, before the incident, was not trained in the use of the

weapon, had not demonstrated his proficiency on the weapon, performed no duties for which the weapon would be or was appropriate, and was not trained in the safe storage of the weapon away from dangerous persons who might have access to the weapon.

(B)     Not enforcing the condition, representation or agreement regarding the storage by Detective Moore of the AR-15 assault rifle in the unit assigned Detective Moore and away from other persons before the incident.

(C)     Not adopting and enforcing policies, before the incident, which required that every officer first be trained in the proper use and storage of every weapon and first demonstrate his proficiency on every weapon before it was issued to the officer, including Detective Moore.

(D)     Not adopting and enforcing a policy before the incident that no weapon be issued to or approved for use by an officer, including Detective Moore, unless the officer, including Detective Moore, was then assigned to a position for which the use of that weapon was appropriate.

(E)     Not disciplining an officer, including Detective Moore, who either violated the rights of another that are secure by the Constitution and law of the United States or the State of Texas or who made or allowed an unsafe use of a weapon, or who allowed access to a weapon by someone other than the officer to whom it was issued and for whose sole possession and use it was approved.

(F)     Allowing Jim Scheopner to serve as Chief of Police for the City of Harlingen, before the incident, but after his lack of competence and reliability to serve

had come to the attention of the final policymakers having the power to remove him from the position before this incident.

(G)    Not first training and requiring Detective Moore to demonstrate his proficiency in the proper use and safe storage of the AR-15 assault rifle before it was issued to Detective Moore.

44.    The facts stated above through paragraphs 43 clearly constitute intentional, deliberate, or conscious indifference to well-known standards in the management of a municipal police department in the disposal of, training on, demonstrated proficiency in the use of, the handling of, and the sage storage of weapons, which , among other things and along with all other allegations set forth above, proximately caused the injuries to Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez. Intervenor Plaintiffs state that the above and foregoing violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution, for which redress is provided by 42 U.S.C. §1983 and for which Defendants are liable.

## VII.  Pendant Claims Under Texas Law

### Statement of Liability

45.    Intervenor Plaintiffs hereunto incorporate by reference and repeat the allegations of paragraphs 1-44 of this Intervenor Plaintiff Complaint in Intervention.

46.    The City of Harlingen is liable to Intervenor Plaintiff under §101.021 of the Texas Civil Practice and Remedies Code (The Texas Tort Claims Act) because of the negligent and other wrongful uses by Detective Moore, Chief of Police Jim

Scheopner, and other personnel of the City of Harlingen of the AR-15 assault rifle as tangible personal property, which, singularly or in any combination with one another, proximately caused and resulted in injuries to Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez and in all resulting damages to Intervenor Plaintiffs and Plaintiffs, which acts and omissions included, among other things:

(A)  Physically delivering the weapon to Detective Moore when it was not then or before the incident rather than destroying it.

(B)  Physically delivering the weapon to Detective Moore when it was not then or before the incident appropriate to his duties.

(C)  Physically delivering the weapon to Detective Moore without first requiring him to be trained and to demonstrate his proficiency in its proper and safe storage.

(D)  Physically storing the assault rifle in a gun case where it was accessible to someone other than Detective Moore, rather than in the patrol unit assigned to Detective Moore, where it would have been accessible only to Detective Moore.

(E)  Physically storing the asault rifle in an operable or serviceable condition, ready for use, while it was accessible to someone other than Detective Moore (including Ernest Moore), rather than first rendering it inoperable and unusable to anyone other than Detective Moore.

(F)  Detective Moore using a telephone at his residence before the incident for

purposes other than to warn law enforcement officers enroute to the scene, or to cause the same to be done, of the serious and substantial risk posed by Ernest Moore to the lives and safety of law enforcement officers.

(G)     The negligent implementation by Harlingen Chief of Police Jim Sheopner, Detective Moore and other personnel of the City of Harlingen of any policies that resulted in or contributed to or proximately caused injuries to injuries to Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez, including but not limited to, a policy of not implementing or enforcing policies, procedures, and regulations concerning the disposition, issuance and storing of weapons.

47.   The City of Harlingen is further liable to Intervenor Plaintiffs because of the operable and usable condition of the weapon and the maintenance of the weapon in an operable and usable condition before the incident that allowed its use by one to whom it was not assigned, Ernest Moore, allowing him to injure Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia and kill Border Patrol Agents Salinas and Rodriguez, on July 7, 1998.

48.   Under the circumstances described above through paragraphs 46, Chief of Police Jim Sheopner was guilty of various acts and omissions of negligence that proximately caused and resulted in injuries to Cameron County Deputies Raul Rodriguez, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R.

Villanueva, Pedro Vela and Alberto R. Garcia and the deaths of Border Patrol

Agents Salinas and Rodriguez, when such acts and omissions were ones which no

similarly situated chief of police could reasonably have believed were proper, under

the circumstances.  These acts and omissions including, among others:

(A)   Not ordering the destruction of the weapon before it was delivery to

Detective Moore.

(B)   Not ordering the destruction of the weapon before the incident.

(C)   Allowing the weapon to be transferred or delivered or ratifying its transfer or

delivery to Detective Moore.

(D)   Not requiring Detective moore to return the weapon to the City of Harlingen

Police Department before the incident.

(E)   Not adopting and not enforcing policies and procedures of the City of

Harlingen Police Department concerning the destruction, issuance,

possession, custody, training, demonstration of proficiency using, and safe

storing of, away from persons other than the ones to whom they were

assigned, the weapon before the incident.

(F)   Not adopting and enforcing a policy before the incident that no weapon be

issued to or approved ofr use by an officer, including Detective Moore,

unless the officer, including Detective Moore, was then assigned to a

position for which the use of that weapon was approved.

(G)   Not requiring Detective Moore to be trained on the proper use and safe

storage of, and to demonstrate his proficient use of the AR-15 assault rifle at

any time before the incident.

(F)     Not resigning or removing himself as Chief of Police before the incident.

49.   In conjunction with all of the foregoing and otherwise, Detective Moore was guilty
      of each and all of the following additional acts and omissions of negligence that
      proximately caused injuries to Cameron County Deputies Raul Rodriguez, Samuel
      Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela
      and Alberto R. Garcia and the deaths of Border Patrol Agents Salinas and Rodriguez
      and all resulting damages to Intervenor Plaintiffs and Plaintiffs:

(A)     Not destroying the AR-15 assault weapon before the incident.

(B)     Taking possession of and keeping the AR-15 assault rifle before being trained
        on its proper and sage use and storage and before demonstrating a proficient
        use of that weapon.

(C)     Not returning the AR-15 assault rifle to the Harlingen Police Department
        before the incident.

(D)     Accepting and possessing the assault rifle at all.

(E)     Failing to store the weapon in the trunk of his assigned unit away from
        access to it by others.

(F)     Storing the weapon in a gun case at his home, where it was accessible to
        Ernest Moore.

(G)     Storing the weapon in a gun case at his home, where Ernest Moore lived, in
        an operable and serviceable condition ready for use while it was accessible
        to and usable by Ernest Moore.

(H)     Failing to timely warn - and failing to cause anyone else to timely warn —
        law enforcement officers enroute to and at the scene of the incident of the

serious and substantial risks to the lives and safety of law enforcement officers posed by Ernest Moore on July 7, 1998, prior to the killings at the scene.

50. No municipality, chief of police, detective, or other similarly situated law enforcement official or officer above mentioned could reasonably have believed that his conduct, on these various occasions and instances described above, was proper, under the circumstances.

### VIII. Damages

51. As a proximate result of the incident, Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia sustained bodily, mental and emotional injuries on July 7, 1998.

52. By reason of all of the above and foregoing, Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia have been damaged in an amount in excess of the minimum jurisdictional limits of the Court for which they now sue.

53. Defendants' acts and omissions, as set out above, are proximate causes of Intervenor Plaintiffs Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia's damages, including, but not limited to:  (1) Physical pain and mental anguish in the past; (2) Physical pain and mental anguish, which in reasonable probability, will be suffered in the future; (3) Medical expenses in the past; (4) Medical expenses, which in reasonable medical probability, will be incurred in the future; (5) Physical

impairment in the past; (6) Physical impairment, which in reasonable probability, will be suffered in the future; (7) Physical disfigurement in the past; (8) Physical disfigurement, which in reasonable probability, will be suffered in the future; (9) Lost wages in the past; (10) Loss of wage earning capacity in the future.

## IX. Exemplary Damages

54.   The acts and omissions giving rise to the claims above stated were committed with that amount of conscious indifference which shows or tends to show malice or ill intent on the part of the above — identified or referenced officers and employees of the City of Harlingen.  Such conduct on the part of each of the above — identified or referenced officers and employees of the City of Harlingen was intentional, willful, or grossly negligent conduct which shows an entire want of care to the rights of Intervenor Plaintiffs.  The acts and omissions of the above — identified and referenced officers and employees of the City of Harlingen were bona fide in pursuance of the general authority to act for the City of Harlingen on the subjexts or matter to which they relate.  Therefore, all Defendants are liable to Intervenor Plaintiffs for exemplary damages in an amount to be determined by this Honorable Court and the jury.

## Prayer

55.   Wherefore, Intervenor Plaintiffs pray that this Honorable Court:

(A)   Enter judgment against Defendants, jointly and severally, on behalf of Intevenor Plaintiffs for compensatory damages in an amount not to exceed the jurisdictional limits of the Court;

(B)   Grant a trial by jury on all issues triable to a jury;

(C)     Grant Intervenor Plaintiffs any and all additional relief to which they may

appear to be entitled, including statutory and reasonable attorney fees

pursuant to 42 U.S.C. 1988 of the Federal Civil Rights Act, pre-judgment

interest, post-judgment interest, and all of their costs herein expended.

(D)     Enter judgment against Defendants, jointly and severally, on behalf of

Intervenor Plaintiffs for exemplary damages in an amount to be determined

by this Honorable Court and the jury.

Respectfully submitted,

O'NEILL & BALEGA, P.C.
900 Isom Road, Suite 220
San Antonio, Texas  78216
Telephone:  (210) 344-4455
Facsimile: (210) 344-4902

By:

SEAN F. O'NEILL
State Bar No. 15288150

ATTORNEY-IN-CHARGE FOR
INTERVENOR PLAINTIFFS, Samuel
Montemayor, Heron L. Vidales, Robert
Rodriguez, Jesus R. Villanueva, Pedro
Vela and Alberto R. Garcia

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copying of the foregoing has been sent by
certified mail, return receipt requested mail on this the _____ day of July, 2000.

Broadus A. Spivey
Spivey & Ainsworth, P.C.
48 East Avenue
Austin, Texas 78701

Michael Greenberg
Law Offices of Richard Pena
Barton Oaks Plaza
901 Mopac, Suite 325
Austin, Texas 78746.

Sonia Lopez
Law Offices of Ramon Garcia,
222 West University Drive
Edinburg, Texas 78539

Tom Lockhart
Adams & Graham, L.L.P.
222 East Van Buren
West Tower
Harlingen, Texas 78550

Walter J. Passmore
Passmore, Walker & Twenhafel, L.L.P.
2424 North 10th, Suite 200
McAllen, Texas 78502

_____
SEAN F. O'NEILL

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copying of the foregoing has been sent by certified mail, return receipt requested mail on this the ⌊⌀⌋day of July, 2000.

Broadus A. Spivey
Spivey & Ainsworth, P.C.
48 East Avenue
Austin, Texas 78701

Michael Greenberg
Law Offices of Richard Pena
Barton Oaks Plaza
901 Mopac, Suite 325
Austin, Texas 78746.

Sonia Lopez
Law Offices of Ramon Garcia,
222 West University Drive
Edinburg, Texas 78539

Tom Lockhart
Adams & Graham, L.L.P.
222 East Van Buren
West Tower
Harlingen, Texas 78550

Walter J. Passmore
Passmore, Walker & Twenhafel, L.L.P.
2424 North 10th, Suite 200
McAllen, Texas 78502

_____
SEAN F. O'NEILL

## CERTIFICATE OF CONFERENCE

This is to certify that I, Sean F. O'Neill, attorney for Intervenors in the above referenced cause have spoken with Broadus Spivey, attorney in charge for Plaintiffs and he is not opposed to Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I have attempted to speak with Sonia Lopez, Law Offices of Ramon Garcia, attorneys for Plaintiff Raul Rodriguez and Tom Lockhart, attorney in charge for Defendants and the above counsel were not available to discuss Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I will continue to attempt contact with Ms. Lopez and Mr. Lockhart and amend this Certificate of Conference accordingly once I have ascertained their approval or opposition.

_____
SEAN F. O'NEILL