68

United States District Court
Southern District of Texas
FILED
AUG 1 7 2000
Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS AND ELISA HERNANDEZ HERRERA SALINAS | § § § § | |
| V. | § § | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, TEXAS | § § | JURY DEMANDED |
| AND | § § | |
| R.D. MOORE AND JIM SHOEPNER | § § | |
| and | § § | |
| GILBERTO M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS, SURVIVING BENEFICIARIES OF THE DECEASED | § § § § § § § § | |
| V. | § § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS | § § | |
| AND R.D. MOORE AND JIM SHOEPNER | § § § | |
| and | § § | |
| RAUL RODRIGUEZ | § § | |
| V. | § § | CIVIL ACTION NO. C-099-070 |
| CITY OF HARLINGEN, R.D. MOORE AND JIM SHEOPNER | § § § | |

**INTERVENORS' FIRST AMENDED MOTION TO INTERVENE
AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

## A. Introduction

1. Now Comes Intervenors Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia file this First Amended Motion To Intervene And Amended Memorandum In Support Of Motion To Intervene, as authorized by Federal Rule of Civil Procedure 24, and in support thereof would respectfully show unto the Court as follows:

2. On July 31, 2000, the Court struck Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela, and Alberto R. Garcia's Motion to Intervene and Memorandum in Support of Motion to Intervene [Dkt. No. 55] and Complaint in Intervention [Dkt. No 56]. The Court stated that it is was unable to determine whether the potential intervenors have a right to intervene based on the stricken motion [Dkt. No. 55] and Complaint in Intervention [Dkt. No. 56].

3. The Court requested that Intervenors file an amended motion specifically stating how they were injured and the role they played in the incident in question. Additionally, the Court requested that each motion contain a certificate of conference that indicates whether each Plaintiff and Defendant are opposed or unopposed to the motion. The requested certificate of conference is attached hereto.

4. Intervenor-Plaintiffs sued Defendants pursuant to 42 U.S.C. §1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws.

## B. Jurisdiction

5.  42 U.S.C. §1983 and 42 U.S.C. §1988 provide jurisdiction over Intervenor Plaintiffs constitutional claims for redress, which are conferred on this Honorable Court by 28 U.S.C. 1343(a)(3). Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States. This Honorable Court has pendant jurisdiction over all claims asserted under the laws of the State of Texas pursuant to 28 U.S.C. §1367(a).

## C. Argument

6.  The Court should grant Intervenors' motion to intervene because Intervenors have the right to intervene in this lawsuit under 42 U.S.C. 1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws.

7.  The Court should grant Intervenors' motion to intervene because Interenors' claim and the lawsuit have a common question of law or fact. Intervenors' claims and the claims in the existing lawsuit arise from a shooting incident on July 7, 1998 involving law enforcement officers and the son of a City of Harlingen Police Department detective.

8.  The granting of Intervenors' motion will not result in undue delay because the Defendants are already aware of the claims of the Intervenors and such claims will not cause surprise.

9.  The granting of Intervenors' motion will not prejudice the parties because the intervenors' claims and the claims of Plaintiffs can be prosecuted and discovery

conducted in similar fashion since the claims arise from the same incident. As above, Defendants are already aware of Intervenors' claims.

10. Intervenors' motion is timely in that the suit has only progressed to the initial discovery stages.

11. The Complaint in Intervention is filed contemporaneously with this motion.

12. Samuel Montemayor was dispatched to R.D. Moore's residence, the place of the shooting, prior to the shooting and remained their following the shooting. During the shooting, Montemayor witnessed Corporal Raul Rodriguez laying on the ground, bleeding, and crying out for help. After Corporal Raul Rodriguez had fallen, Montemayor ran to Corporal Raul Rodriguez's aid and pulled him behind some bushes in an effort to cover the wounded officer. The intensity and trauma of the event created in the mind of Montemayor the impression that the shooting lasted thirty (30) minutes, when in actuality the shooting lasted approximately thirty-eight (38) seconds. Since the time of the shooting, Montemayor has continued to suffer mental anguish. In addition to stress, trauma, and guilt, he has contemplated committing suicide on almost a daily basis. He states that if not for his son, who was born a week following the shooting, giving him reason to live, he would not be alive today. After the shooting, Montemayor's wife would cry almost every day because of the danger Montemayor was placed in; her depression intensified after the birth of their son. To date, Montemayor has had only one (1) counseling session with a mental health specialist, which occurred shortly after the shooting. He believes that he is in serious need of counseling. To his knowledge, he was never cleared or approved to go back to work by a physician, counselor, or his Sargent.

However, after his two weeks of paid workman's compensation benefits expired, he did return to work even though he did not believe he was mentally, physically, or emotionally ready to return to work. As a direct and proximate result of the occurrence made the basis of this lawsuit, Intervenor, Samuel Montemayor, would show that as a proximate result of each of the Defendant's negligence, as stated hereinabove, Intervenor, Samuel Montemayor, suffered the following injuries and damages: mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; and loss of earning capacity.

13. While on patrol, Officer Heron Vidales was called by Dispatch and told to proceed to the area where suspect Ernest Moore's vehicle was last reported. Shortly thereafter, Vidales overheard Robert Rodriguez on the radio stating that he had the suspect's vehicle in sight. Immediately, Vidales proceeded to the location of Rodriguez and the suspect vehicle, which was where the shooting took place. After the shooting began, Vidales witnessed Corporal Raul Rodriguez laying on the ground, with blood covering his arm. He then witnessed a Deputy pull Corporal Raul Rodriguez toward cover. Vidales describes the shooting as sounding like automatic fire. After the shooting had stopped, Vidales witnessed a Border Patrol Agent lying on the ground, in front of his vehicle, with a gunshot wound to the back of his head. Vidales then witnessed another agent giving mouth to mouth recessitation to a female agent who had sustained multiple gunshot wounds. In his meeting with his treating psychologist, Vidales reported feelings of guilt and shame

because he believed it was his job to apprehend the suspect, not the duty of the Border Patrol Agents. Vidales also stated that he was suffering from sleep disturbances, stress, and nightmares, including nightmares that he was covered in snakes. Additionally, he suffered from a loss of appetite. Vidales also felt angry at the department and edgy when he returned to work. As a direct and proximate result of the occurrence made the basis of this lawsuit, Intervenor, Heron Vidales, would show that as a proximate result of each of the Defendant's negligence, as stated hereinabove, Intervenor, Heron Vidales, suffered the following injuries and damages: mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; and loss of earning capacity.

14. Officer Robert Rodriguez was dispatched, by radio, to respond with lights and siren to 311 Catherine Street in Rio Hondo regarding shots fired and two subjects that were down. While in route, Rodriguez was advised that the suspect's last name was Moore. Rodriguez then obtained a description and location of the suspect's vehicle and began searching for the vehicle. After making visual contact with the vehicle and pursuing the vehicle, Rodriguez lost sight of the vehicle. Shortly thereafter, Rodriguez re-acquired the suspects vehicle, which was parked at the residence of R.D. Moore. Rodriguez remained at the scene of the shooting at all times. When the shooting began, Rodriguez witnessed the suspect firing a black assault rifle toward the Border Patrol Agents. He then drew his weapon and began firing at the suspect. Rodriguez witnessed Corporal Raul Rodriguez lying on the

ground, shouting that he was hit and repeating "my arm, my arm." Rodriguez also witnessed the female Border Patrol Agent lying on the ground with multiple gunshot wounds. After the shooting, Rodriguez experienced flashbacks of the gunman, shooting of the deputies, and sleep disturbances, e.g. nightmares. Additionally, he suffered from stress and trauma, for which he sought counseling. The shooting also effected Rodriguez's wife who experienced nightmares about the shooting, and his ten (10) year old son, who suffered from Post Traumatic Syndrome and was prescribed Paxil for depression. His son's symptoms included clinging and nightmares, all of which contributed to Officer Rodriguez's stress and depression levels. Subsequent to the shooting, the stress and trauma produced by the shooting caused Rodriguez and his wife to divorce. Officer Rodriguez is presently under the care of John Teer at Valley Baptist Medical Center. Both Rodriguez and his wife continue to suffer from stress and nightmares following the shooting. At work, Rodriguez has feelings of anxiety and uneasiness, such that he is quick to draw his weapon at the smallest change in his environment, e.g. surprise from the barking of a dog. As a direct and proximate result of the occurrence made the basis of this lawsuit, Intervenor, Robert Rodriguez, would show that as a proximate result of each of the Defendant's negligence, as stated hereinabove, Intervenor, Robert Rodriguez, suffered the following injuries and damages: mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; and loss of earning capacity.

15. Officer Jesus Villanueva was dispatched to R.D. Moore's residence prior to the

shooting and remained there following the shooting. During the shooting, Villanueva witnessed the firing on the Border Patrol Agents, returned gunfire (approximately 31 rounds), and felt personal pressure to drop the gunman. Upon witnessing the agent who received a gunshot wound to the back of the head, Villanueva began experiencing feelings of guilt and contemplated quitting. After the gunman was dropped, Villanueva assisted other officers in handcuffing him and dragging him from the bushes. Following the shooting, Villanueva was rushed by EMS to the Valley Baptist Medical Center Emergency Room. While working the crime scene, Villanueva became weak and collapsed. When he arrived at the emergency room, he was treated for dehydration and anxiety. He was later released from the hospital, prescribed Xanax for his anxiety, and instructed to rest. Shortly after the shooting, Villanueva began suffering from flashbacks of the gunman and the gunning down of the deputies. Additionally, Villanueva began experiencing sleep disturbances and loss of appetite. He and his wife also began experiencing problems in their relationship. Villanueva distanced himself from his wife, and eventually the problems became so great that Villanueva and his wife divorced. During the first counseling session with his psychologist, James A. Freeberg, it was recommended that Villanueva not return to work because of the ongoing anger he was experiencing and the potential for displacement. Villanueva was placed off duty for an additional two weeks and scheduled for further counseling. When Villanueva first returned to work, prior to the recommendation that he take two weeks off from work, he felt uneasy and as if there were unresolved emotions and feeling within him. He experienced anxiety, a loss of patience, and

was looking for conflict; he believed that he could "loose it" at any time. On one occasion, shortly after the shooting, Villanueva was checking an assault rifle to see if it was loaded when he started shaking from viewing and holding the weapon. During a routine traffic stop, Villanueva quickly became angry with the motorist and wished the motorist would "start" something with him. This edginess and impatience increased in the weeks following the shooting. As a direct and proximate result of the occurrence made the basis of this lawsuit, Intervenor, Jesus Villanueva, would show that as a proximate result of each of the Defendant's negligence, as stated hereinabove, Intervenor, Jesus Villanueva, suffered the following injuries and damages: physical pain and suffering in the past; mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; and loss of earning capacity.

16. Officer Pedro Vela was dispatched to R.D. Moore's residence prior to the shooting and remained there following the shooting. During the shooting, Vela took cover by jumping into a ditch. He landed directly on his knee, injuring the cartilage in his knee and causing him great discomfort and pain. On September 11, 1998, Vela underwent Arthroscopic surgery to remove the torn cartilage. Following the surgery, Vela underwent several months of physical therapy, took prescription drugs for pain and discomfort, and needed crutches or a cane to walk. The injury suffered at the shooting also prevented Vela from returning to work for several months. As a direct and proximate result of the occurrence made the basis of this lawsuit,

Intervenor, Pedro Vela, would show that as a proximate result of each of the Defendant's negligence, as stated hereinabove, Intervenor, Pedro Vela, suffered the following injuries and damages: physical pain and suffering in the past; physical pain and suffering, which in reasonable medical probability he will suffer in the future; mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; physical impairment, which in reasonable medical probability he will suffer in the future; lost wages; and loss of earning capacity.

17. Officer Alberto R. Garcia was dispatched to R.D. Moore's residence prior to the shooting and remained there after the shooting commenced. Following the shooting, Garcia experienced sleep disturbances, including nightmares about the gunman and the shooting of the agents. He also began to shut out his family and distance himself from his loved ones due to the emotional distress he was suffering. At work and in his personal life, Garcia had feelings of anxiety and uneasiness. On Garcia's first day back at work, he was called to the scene of a reported shooting. When he arrived, he heard the sound of a gunshot. Because of his uneasiness and anxiety about the shooting and returning to work, he assumed that he was being shot at and took evasive action. Garcia drove his car into a ditch and injured his knee, requiring medical attention at Baptist Valley Medical Center. To date, Garcia continues to suffer from nightmares, cold sweats, and feelings of guilt. As a direct and proximate result of the occurrence made the basis of this lawsuit, Intervenor, Alberto R Garcia, would show that as a proximate result of each of the Defendant's

negligence, as stated hereinabove, Intervenor, Alberto R. Garcia, suffered the following injuries and damages: physical pain and suffering in the past; physical pain and suffering, which in reasonable medical probability he will suffer in the future; mental anguish in the past; mental anguish, which in reasonable medical probability he will suffer in the future; medical expenses in the past; medical expenses, which in reasonable medical probability he will suffer in the future; physical impairment, which in reasonable medical probability he will suffer in the future; and loss of earning capacity.

18. For the above reasons, Intervenors Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia ask the Court to grant their Motion to Intervene as Intervenor Plaintiffs, and for such other and further relief, at law or in equity, to which they are justly entitled.

Respectfully submitted,

O'NEILL & BALEGA, P.C.
490 Renaissance Plaza
70 N.E. Loop 410
San Antonio, Texas 78216
Telephone: (210) 344-4455
Facsimile: (210) 344-4902

By: _____
SEAN F. O'NEILL
State Bar No. 15288150

ATTORNEY-IN-CHARGE FOR
INTERVENOR PLAINTIFFS, Samuel
Montemayor, Heron L. Vidales, Robert
Rodriguez, Jesus R. Villanueva, Pedro
Vela and Alberto R. Garcia

## CERTIFICATE OF CONFERENCE

This is to certify that I, Sean F. O'Neill, attorney for Intervenors in the above referenced cause have spoken with Broadus Spivey, attorney in charge for Plaintiffs and he is not opposed to Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I have spoken with Tom Lockhart, attorney in charge for Defendants and said counsel is opposing to Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I have spoken with Walter J. Passmore, attorney in charge for Defendant R.D. Moore and said counsel is opposing to Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I have made several attempts to speak with Sonia Lopez, Law Offices of Ramon Garcia, attorneys for Plaintiff Raul Rodriguez and said was not available to discuss Intervenors' Motion to Intervene and the filing of the above Complaint in Intervention. I will continue to attempt contact with Ms. Lopez and this Certificate of Conference accordingly once I have ascertained her approval or opposition.

_____
SEAN F. O'NEILL

## **CERTIFICATE OF SERVICE**

     This is to certify that a true and correct copying of the foregoing has been sent by certified mail, return receipt requested mail on this the 15th day of August, 2000.

Broadus A. Spivey
Spivey & Ainsworth, P.C.
48 East Avenue
Austin, Texas 78701

Michael Greenberg
Law Offices of Richard Pena
Barton Oaks Plaza
901 Mopac, Suite 325
Austin, Texas 78746.

Sonia Lopez
Law Offices of Ramon Garcia,
222 West University Drive
Edinburg, Texas 78539

Tom Lockhart
Adams & Graham, L.L.P.
222 East Van Buren
West Tower
Harlingen, Texas 78550

Walter J. Passmore
Passmore, Walker & Twenhafel, L.L.P.
2424 North 10th, Suite 200
McAllen, Texas 78502

SEAN F. O'NEILL

ClibPDF - www.fastio.com