IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 3 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS | § | |
| AND ELISA HERNANDEZ HERRERA | § | |
| SALINAS | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, TEXAS | § | |
| | § | JURY DEMANDED |
| AND | § | |
| | § | |
| R.D. MOORE AND JIM SHEOPNER | § | |
| | § | |
| and | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, | § | |
| INDIVIDUALLY AND ON BEHALF OF | § | |
| HIS MINOR DAUGHTER, MEGAN | § | |
| SUZANNE RODRIGUEZ, AND | § | |
| STEPHEN L. WILLIAMS AND WIFE, | § | |
| ROBYN S. WILLIAMS, SURVIVING | § | |
| BENEFICIARIES OF THE DECEASED | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-98-163 |
| | § | |
| CITY OF HARLINGEN, TEXAS | § | |
| | § | |
| AND R.D. MOORE AND | § | |
| JIM SHOEPNER | § | |
| | § | |
| and | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| V. | § | CIVIL ACTION NO. C-099-070 |
| | § | |
| CITY OF HARLINGEN, R.D. MOORE | § | |
| AND JIM SHOEPNER | § | |

## INTERVENORS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT IN INTERVENTION UNDER F.R.C.P. 12 (B)(6)

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv

INTERVENORS' RESPONSE TO DEFENDANTS' ASSERTION OF QUALIFIED
IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      Nature and Stage of the Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Issues Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     Intervenors Have Properly Pleaded Their Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Complaints Sufficiently Allege §1983 Causes of Action-The Law . . . . . . . 4

        B.      The Facts Alleged in the First Amended Complaint In Support That Satisfy 1983
                Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      Responses to Defendants' Enumerated Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      Due Process Claim Under the Fourteenth Amendment . . . . . . . . . . . . . . . . . . . 10

        B.      Official Policy Proximately Caused the Incident . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.      Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CAMPDF - www.fessio.com

# INDEX OF AUTHORITIES

*Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) . . . . 14

*Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 4

*Bower v. Devito*, 686 F.2d 616, 618 (7th Cir., 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cornelius v. Town of Highland Lake, Alabama*, 880 F.2d 348 (11th Cir. 1989) . . . . . . . . . . . . 5, 6

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*DeShaney v. Winnebago County, Wi.*, 489 U.S. 189, 109 S. Ct. 998 (1989) . . . . . . . . . . . 5, 6, 8

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) . . . . . 14

*John Doe v. Hillsboro I.S.D.*, 81 F.3d 1395, 1402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Johnson v. Dallas I.S.D.*, 38 F.3d 198 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Jones v. Phyfer*, 761 F.2d 642 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), cert. Denied. 459 U.S. 1105 (1983) (citation omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kennedy v. Baird*, 682 S.W.2d 377 388 (Tex.App.--El Paso 1984, no writ) . . . . . . . . . . . . . . . 13

*Lefall v. Dallas Independent School District*, 28 F.2d 3d 512, 524 (5th Cir. 1994) . . . . . 4, 5, 6, 7

*Malley v. Briggs*, 475 U.S.335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986) . . . . 14

*Martinez v. California*, 444 U.S. 277, 100 S.Ct., 553 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed. 2d 452 (1986) . . . 12, 13

*Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Praether v. Brant*, 981 S.W.2d 801 (Tex.App.--Houston [1st Dist.] 1998, no petn.) . . . . . . . . . 13

iii

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d. 277 (1991) . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 12

*Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1035 (11th Cir. 1987) . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Administrative Rules of the Texas Commission on Law Enforcement
    Section 211.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Civil Procedure
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
    Rule 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Texas Civil Practice and Remedies Code Annotated
    Chapter 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

United States Statutes
    42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 6, 8, 10

2A Moore's Federal Practice, Para 12.07 at p. 12-63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS<br>AND ELISA HERNANDEZ HERRERA<br>SALINAS | §<br>§<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, TEXAS | §<br>§ | JURY DEMANDED |
| AND | §<br>§ | |
| R.D. MOORE AND JIM SHEOPNER | §<br>§ | |
| and | §<br>§ | |
| GILBERTO M. RODRIGUEZ,<br>INDIVIDUALLY AND ON BEHALF OF<br>HIS MINOR DAUGHTER, MEGAN<br>SUZANNE RODRIGUEZ, AND<br>STEPHEN L. WILLIAMS AND WIFE,<br>ROBYN S. WILLIAMS, SURVIVING<br>BENEFICIARIES OF THE DECEASED | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS | §<br>§ | |
| AND R.D. MOORE AND<br>JIM SHEOPNER | §<br>§<br>§ | |
| and | §<br>§ | |
| RAUL RODRIGUEZ | §<br>§ | |
| V. | §<br>§ | CIVIL ACTION NO. C-099-070 |
| CITY OF HARLINGEN, R.D. MOORE<br>AND JIM SHOEPNER | §<br>§ | |

**INTERVENORS' RESPONSE TO DEFENDANTS' MOTION TO
DISMISS COMPLAINT IN INTERVENTION UNDER F.R.C.P. 12 (B)(6)**

TO THE HONORABLE JUDGE OF THIS COURT:

Intervenors, Samuel Montemayor, Heron L. Vidales, Robert Rodriguez, Jesus R. Villanueva, Pedro Vela and Alberto R. Garcia, file this RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT IN INTERVENTION UNDER F.R.C.P 12 (B)(6) in each of the above-referenced cases.

## I. Nature and Stage of the Proceeding

Intervenors brought suit pursuant to 42 U.S.C. §1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws, and the Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code Ann., Chap. 101). A concerned citizen delivered to the City of Harlingen Police Department an AR-15 assault rifle and specifically requested that it be destroyed. Detective R.D. Moore took possession of that assault rifle for the City of Harlingen assuring the citizen that it would be destroyed. It was not.

Defendants' issuance of that AR-15 assault rifle, their improper use and storage of that weapon pursuant to municipal policy, and their individual acts endangered Intervenors. The Defendants' acts resulted in Ernest Moore, son of Defendant Detective R.D. Moore, having access to and use of that AR-15, while Moore was fleeing from the law after committing another double homicide with another assault rifle (which was wrestled from him at the scene of that double homicide) earlier that very same morning, all of which caused injuries to Intervenors. That AR-15 is a military assault rifle, which carries a high capacity of ammunition and fires ultra high velocity anti-personnel ammunition.

Defendants filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(6), a companion motion

-2-

based on qualified immunity, and supplements.  Intervenor's Amended Complaint clearly states viable causes of action pursuant to the Due Process Clause of the Fourteenth Amendment and Texas state law.

## II. Issues Before The Court

1. Whether Intervenors have properly pled a violation of a right secured by the Constitution or laws of the United States of America.

2. Whether Intervenors have properly pled that the violation of that right was proximately caused by a person acting under color of law.

3. Whether Intervenors have properly pled that the violation of constitutional rights by the City of Harlingen resulted from municipal custom or policy.

4. Whether Defendants Detective R.D. Moore and Chief of Police Jim Scheopner are shielded from liability under the doctrine of qualified immunity.

5. Whether Intervenors have properly pled negligence liability under Texas State Tort Law.

## III. Standard Of Review

Defendants' motion to dismiss Intervenors' cases fail to cite key authorities, and it misinterprets well-established principles of law.  Based on the specific allegations in the Amended Complaint, which must be taken as true and which must be construed in a light most favorable to plaintiffs, Intervenors have alleged facts sufficient to state proper claims under federal and state law.

Under FED. R. CIV. P. 12(b)(6), Defendants, as movants, bear the burden of demonstrating that Intervenors' First Amended Complaint in Intervention fails to state a proper claim.  2A *Moore's Federal Practice*, ¶12.07, at p.12-63.  "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem, Sales, Inc. v. Avondale Shipyards,*

*Inc.,* 677 F2d 1045, 1050 (5ᵗʰ Cir. 1982), cert. denied. 459 U.S. 1105 (1983) (citation omitted).  *See also Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5ᵗʰ Cir. 1985).)  The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.  Accordingly, a court must not dismiss a complaint, unless it appears beyond doubt that the plaintiff can prove **no** set of facts in support his claims that would entitle him to relief.  *Leffall v. Dallas Independent School District,* 28 F.3d 512, 524 (5ᵗʰ Cir. 1994).  (Emphasis added).

In evaluating Defendants' motion, the court must construe the complaint liberally, accept the facts as alleged, and resolve any doubts in favor of the plaintiffs.  *Crowe v. Henry,* 43 F.3d 198, 203 (5ᵗʰ Cir. 1995).  The complaint need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Schultea v. Wood,* 47 F.3d 1427 (5ᵗʰ Cir. 1995)(en banc).  A court may not grant a motion to dismiss, "unless it appears beyond a doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief..." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); and *Leffal v. Dallas I.S.D.,* Id., at 524.  Even a cursory reading of Intervenors' Amended Complaint in Intervention reveal that they satisfy the notice pleading requirement of the Federal Rules and contain allegations that, if accepted as true, would entitle Plaintiffs to relief.

## IV. Intervenors Have Properly Pleaded Their Claims

### A.    The Complaints Sufficiently Allege §1983 Causes of Action-The Law

The Amended Complaints allege a deprivation of the right to life guaranteed by the Due Process Clause of the Fourteenth Amendment in violation of 42 U.S.C. §1983.  To establish a claim under §1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting

-4-

under color of law." *John Doe v. Hillsboro I.S.D.*, 81 F.3d 1395, 1402 (citing *Leffal*, 28 F.2d at 525).

The Amended Complaint alleges the violation of Intervenors' Fourteenth Amendment protection against deprivation of life without due process of law. The Complaint also alleges that Detective R.D. Moore's Police Chief Jim Scheopner's and the City Harlingen's actions and Harlingen Police Department policies, established by Chief Scheopner, proximately caused the violation of Intervenors' right to life.

Intervenors allege facts evidencing Defendants' culpable conduct that proximately caused and was the force that gave rise to the actions of Ernest Moore and the physical and emotional injury to Intervenors. The peculiar, aggravated facts of this case trigger well established exceptions to the general principle that §1983 does not recognize third-party liability under the color of law. *DeShaney v. Winnebago County, Wi.*, 489 U.S. 189, 109 S.Ct. 998 (1989). Third party actors do not generally act under color of law, giving rise to §1983 liability.

The Amended Complaint alleges facts sufficient to warrant the application of the special relationship exception to *DeShaney*, the special danger exception to *DeShaney*, and the state-created danger exception. *Doe v. Hillsboro Independent School District*, 81 F3d. 1395 (5th Cir. 1996) (special relationship and state-created danger exceptions explained and applied, not adopted based on factual insufficiencies of case); *Cornelius v. Town of Highland Lake*, Alabama 880 F.2d 348 (11th Cir. 1989). (Special relationship and special danger exceptions explained.)

Intervenors have asserted facts sufficient for a finding of liability within the well established exceptions clothing third-party actors with liability under color of law. Defendants have not correctly analyzed the court opinions and test of application that they did cite. Defendants have re-characterized these doctrines as something they are not and have "adapted" the doctrine of "state-

created danger" to reach ill-founded conclusions of no action under color of law.

There is a clear delineation between separate, well-establish and accepted theories of §1983 liability based on the actions of third parties. The Fifth Circuit specified such distinctions and considerations and applied those theories separately in *Doe v. Hillsboro Independent School District* Id., 113 F.3d 1412, 1414 (5th Cir. 1997)(en banc).

The "special relationship" exception to non-liability arises from *DeShaney v. Winnebago County*, and its progeny. Our courts have adopted the special relationship analysis to access liability in instances when the state should become responsible for the actions of third parties. This analysis is applied where a special relationship exists between the victim and the third party or between the victim and the government officials. See *Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir. 1983).

The Fifth Circuit's application of the "special relationship" doctrine attached when the state knew that the victim, as distinguished from the public at large, faced a danger because of that relationship. Specifically, the law looks to whether there is reason for a duty to exist that extends to particular individuals (Intervenors in this matter) where there might be no extending duty to the general public. See *DeShaney*; *Martinez v. California*, 444 U.S. 277, 100 S.Ct, 553 (1980) *Doe v. Hillsboro*, 113 F.3d 1412, 1414 (5th Cir. 1997)(en banc).; *Leffall v. Dallas I.S.D.* 28 F.3d 512, 524 (5th Cir. 1994); *Cornelius v. Town of Highland Lake*, Al. 880 F2d 348, 353 (10th Cir. 1989).

In addition to the special-relationship analysis, a duty may exist on the state's part under §1983 when the state was aware that the plaintiff faced as special danger that the general [public did not face. *Bower v. Devito*, 686 F.2d 616, 618 (7th Cir, 1982); *Jones v. Phyfer*, 761 F.2d 642 (11th Cir. 1985); *Cornelius v. Town of Highland Lake*, Al., 880 F.2d 348, 353 (11th Cir. 1989). Judge Posner two years after writing the initial Seventh Circuit opinion for *DeShaney*, revisited the idea of this

-6-

party actor clothed in the color of law, holding, **"[if the state puts a man in a position of danger and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."**

*Bowers* at 618.

The Fifth Circuit has repeatedly discussed the third-party exception, based on a state-created danger, though it has never sustained liability based on the "state-created danger" exception, But, because of each prior case's own factual deficiencies. *Doe v. Hillsboro I.S.D.* 113 D.3d 1412, 1414 (5th Circ. 1997)(en banc).

As Fifth Circuit Judge Edith Jones observed, "the key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." (Quoting *Wideman v Shallowford Community Hospital , Inc.*, 826 F.2d 1030. 1035 (11th Cir. 1987). Judge Jones continued, Thus the environment created by the state actors must be dangerous' they must know it is dangerous; and, to be liable they must have used their authority to create an opportunity that would not otherwise have existed for the third-party's crime to occur." The Fifth Circuit has applied the "state-created danger" doctrine and has "assumed arguendo that it recognized the claim,: but in *Leffal* and ten subsequent cases quoting *Leffall* it simply found that the facts of those cases did not to fall within the "state-created danger" exception. *Doe v. Hillsboro I.S.D.*, Id. at 1414; See *Johnson v. Dallas, I.S.D.*, 38 F.3d 198.

**B.    The Facts Alleged In the First Amended Complaint In Support That Satisfy 1983 Causes of Action**

Certain facts alleged in Intervenors'  First Amended Complaint support causes of action

-7-

under § 1983 within the exceptions described in *DeShaney*.  The following specific facts regarding the special relationship and the state-created danger exceptions establish the liability of each Defendant under 42 USC § 1983:

- Defendants all *knew* the AR-15 semi-automatic assault rifle was turned in to the Harlingen Police Department for only one purpose: **to be destroyed.**

- Defendants all *knew* that it was a dangerous weapon.

- Defendants all *knew* that it was not destroyed (as was required by State administrative laws), but was transferred to Detective Moor, at his request, even though:

  - Detective Moore was not trained in its use.

  - Detective Moore did not demonstrate his proficiency in its use and operation.

  - Detective Moore was supposed to, but did not, keep the assault rifle in his police unit.  Instead, he kept it in his residence, where his son, Ernest Moore, lived and had access to the weapon.

- The City of Harlingen issued the AR-15 semi-automatic assault rifle, to Detective Moore, in accordance with the City's Police Department policy, without training, contrary to State administrative laws for issuing firearms.

- On the morning of July 7, 1998, Defendants all *knew* that Ernest Moore was the suspect in a double homicide in Rio Hondo that lead law enforcement directly to the residence of Detective Moore, where Ernest Moore lived, in search of Ernest Moore.

- Detective Moore and Defendants *knew* that Moore's son was nearby; that his son was in serious trouble; that the AR-15 semi-automatic assault rifle entrusted to Detective

-8-

Moore was missing and in all reasonable probability was in the possession of his son; and that Ernest Moore was proficient with that rifle--all before Intervenors arrived at the scene.

- Nevertheless, Defendants did absolutely nothing to warn law enforcement officers, including Intervenors, of the missing weapon that disappeared along with Ernest Moore.

- Defendants all *knew* of the dangerous position into which their actions placed officers, but the Defendants did nothing to warn or protect them from this specific danger which they created for Intervenors, and which proximately caused the physical and emotional injury to Intervenors.

- Intervenors held a special relationship with Ernest Moore because they intended to confront, apprehend, and arrest Ernest Moore for the Rio Hondo shooting massacre. This relationship was one of direct confrontation and was unique, distinct from the public at large.

- These officers, who were duty bound to confront, apprehend, and arrest Ernest Moore, faced special danger because Detective R. D. Moore permitted Ernest Moore, an armed, fugitive murderer faced with imminent arrest, access to the Harlingen owned AR-15.

### V. Response to Defendants Enumerated Arguments

Defendants raise the following five issues in their motion to dismiss: (a) Fourteenth Amendment due process liability; (b) causation; (d) qualified immunity; and (e) State law claims. None of these issues warrant dismissal of the Complaint.

-9-

## A.     Due Process Claim Under the Fourteenth Amendment

Intervenors' Amended Complaint in Intervention alleges sufficient facts under the law necessary to maintain § 1983 action based on the peculiar and aggravated facts of this case.   Again, Quoting Judge Jones, "When state actors knowingly place a person in danger, the due process clause of the Constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state custody.   The key to the state-created danger cases lies in the state actors' culpable knowledge and conduct in 'affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, *or* cutting off potential sources of private aid.'" *Johnson v. Dallas I.S.D.*, 38 F.3d 198, (5th Cir. 1994) (quoting *Wideman v. Shallowford Community Hospital*, 826 F.2d 1030 (11th Cir. 1987).

The Amended Complaint alleges actual knowledge of the risk of harm that the State did create.  Detective Moore and the other Defendants had to know that his method of storing the AR-15 semi-automatic assault rifle allowed Ernest Moore to arm himself with the unusually dangerous weapon; that Ernest was in the vicinity of the Moore house; that Ernest posed a violent threat; that law enforcement officers were arriving at the scene and would attempt to apprehend Ernest Moore; and that none of the Defendants warned the Intervenors of those dangers.

Knowing all of this, Detective Moore spoke telephonically with Police Chief Jim Scheopner, before the Intervenors and other law enforcement officers arrived at the Moore house, but Defendants warned none of the officers before or after they arrived at the scene that Ernest Moore had the City of Harlingen AR-15 semi-automatic rifle.   Intervenors and other law enforcement officers faced special danger because of their special relationship to Ernest Moore.

The Intervenors and other law enforcement officers were intending to confront, apprehend, and arrest

-10-

Ernest Moore for the Rio Hondo shooting. *Id* at 30.

The Amended Complaint alleges that the Defendants' deliberate indifference to the Intervenors' safety was a proximate cause of Intervenors' physical and emotional injuries. Specifically, the Amended Complaints allege that Chief Jim Scheopner diverted the AR-15 semi-automatic assault rifle to Detective R. D. Moore.

The amended complaints also allege that Chief Scheopner, pursuant to his own policy, issued the assault rifle and permitted the use, storage, and possession of the assault rifle contrary to all State standards and protocols for firearms. Further, the Amended Complaint alleges that Detective Moore stored the assault rifle in his cocaine-using, Prozac-prescribed, unstable son's room and thereby permitting access to that weapon by Ernest Moore.

The Amended Complaint alleges that Defendants knew Ernest was ". . . in deep shit . . . " after the Rio Hondo shooting, and that Ernest had re-armed himself with the AR-15, because Detective Moore had spoken to Ernest Moore and Detective Moore had spoken to Chief Scheopner.

Additionally, Detective Moore then spoke with Chief Scheopner by telephone. Afterwards, Intervenors and other law enforcement officers arrived at the Moore house but were never warned by Detective Moore or Chief Scheopner that Ernest Moore was armed, or in the vicinity, or, as known to them, posed a violent threat.

Finally, the City of Harlingen never disciplined Chief Scheopner or Detective Moore for any of the above conduct. *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

In each of these alleged instances the Defendants' acted with deliberate indifference and these acts taken individually and as a whole, each and all, shock the conscience.

-11-

**B.**     **Official Policy Proximately Caused the Incident**

Intervenors must prove injury from a City policy or custom in order to hold the City of

Harlingen liable. Two fact situations can lead to a municipality's liability under § 1983 for the acts

of its officials.

First, a municipality's final policymakers are held effectively to have made policy or

condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate

officers or employees. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d

452 (1986). *Turner v. Upton County, Texas,* 915 F.2d 133, 136 (5th Cir. 1990). When an officer

commits unconstitutional acts and is never disciplined, the municipality implicitly ratifies and adopts

that unconstitutional conduct as official policy, and municipal liability then results. *Grandstaff v.*

*City of Borger,* 767 F.2d 161 (5th Cir. 1985). An injured Plaintiff is not likely to document proof of

policy or disposition, either of the policymaker or throughout the police force. *Id.* at 171. The court

must accept that the Plaintiff may encounter difficulties in making that proof, because of the lack

of credible witnesses and the avenues for dispute and distraction over the actual facts of each specific

incident. *Id.* The disposition of the policymaker must be inferred circumstantially from conduct of

the officer and the policymaker. *Id.* Following any catastrophic and incompetent performance,

where there are no reprimands, no discharges, no admissions of error, and no changes made in

policy, the court and jury can accept that this is "the way things are done" in that municipality. *Id.*

If prior policy had been violated, a court and jury could expect to see a different reaction; if officers'

conduct is not acceptable to a police chief, a court and jury expects to see changes made. *Id.*

Second, the municipality may be held liable for the illegal or unconstitutional actions of its

final policymakers themselves as they engage in the setting of goals and the determination of how

those goals will be achieved. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292 (1986). *Turner v. Upton County, Texas,* 915 F.2d 133, 136 (5th Cir. 1990).

Intervenors' Amended Complaint specifically alleges how the unconstitutional actions of the City of Harlingen's final policymakers, including Chief of Police Scheopner, were a proximate and producing cause of Intervenors' injuries. Additionally, consistent with *Grandstaff v. Borger,* the Complaint alleges that the City of Harlingen ratified Detective R. D. Moore's conduct, as is evidenced by the City's failure to censure, discipline, or reprimand Detective Moore after he improperly received, possessed, and stored the AR-15 rifle and after he failed to warn *fellow law officers* of a known, avoidable danger. *Id.*

## C.    State Law Claims

Intervenors clearly alleged acts of negligence in the use of tangible personal property by the City of Harlingen that proximately caused this incident. Proximate cause includes and embraces both forseeability and cause in fact and does not have to be asserted more specifically. Defendants cannot challenge the application of § 101.021 of the Texas Tort Claims Act to Harlingen's liability. Defendants do not question liability of Detective Moore or Chief Scheopner, under Texas State law. The only cases cited by the Defendants on this point do not address a situation in which a municipality negligently fails to prevent a weapon from being taken from the municipality. *Kennedy v. Baird,* 682 S.W.2d 377, 388 (Tex.App.--El Paso 1984, no writ); *Praether v. Brant,* 981 S.W.2d 801 (Tex.App.--Houston [1st Dist.] 1998, no petn.).

## D.    Immunity

The immunity issue raised by this case is not one of sovereign immunity, but instead is one of qualified immunity. The doctrine of qualified immunity ordinarily shields a government official

performing discretionary functions from liability for civil damages, provided his actions meet the test of "objective legal reasonableness." *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). The court should assess the "objective reasonableness" of an officer's actions in light of legal rules that were "clearly established" at the time those actions were taken. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court must take care to identify the relevant "clearly-established law" at the proper level of generality, so that the defense of qualified immunity will serve its intended purpose, i.e., to allow officers "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson,* 483 U.S. at 639-40, 107 S.Ct. at 3038-39, quoting *Davis v. Scherer (citation omitted).* To that end, for a right to be "clearly established," its "contours . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. At 3039. It is not necessary, however, that prior cases have held the particular action in question unlawful; "but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Id.*, citing *Mitchell,* 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 N. 12 and *Malley v. Briggs,* 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986). *Petta v. Rivera,* 143 F.3d 895, 900 (5th Cir. 1998).

In *Siegert v. Gilley,* the Supreme Court clarified the "analytical structure" for addressing a claim of qualified immunity. 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991). Once a defendant pleads a defense of qualified immunity, the trial judge must determine "whether the plaintiff has alleged a constitutional violation at all" under current law. *Id.* At 232. If the plaintiff has done so, the judge then determines whether the defendant's actions were "objectively reasonable" with reference to "clearly established law" at the time of the conduct in

-14-

question *Id.* at 231.

The Amended Complaint alleges that the issuance of a weapon to an officer, specifically Detective R. D. Moore, who had no training, no proficiency, or instruction in the care and use of the gun (specifically not for an AR-15 assault rifle) directly violates a statewide standard long embodied in § 211.104 of the Administrative Rules of the Texas Commission on Law Enforcement Officer Standards and Education.  The Amended Complaint alleges that the specific standard had been adopted by the Harlingen Police Department and published statewide since 1988.  Chief Scheopner, Intervenors allege, impliedly established policy, through repeated action, that training and proficiency (mandated to prevent the types of harms that are the basis for this lawsuit), were not necessary in the Harlingen Police Department, despite Texas State standards to the contrary.

## CONCLUSION

WHEREFORE, Intervenors respectfully request this Court to deny Defendants' Motions to Dismiss.  Alternatively, if this Court should conclude that Intervenors' pleadings are deficient, Intervenors request leave to file a Second Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

O'NEILL & BALEGA, P.C.
900 Isom Road, Suite 220
San Antonio, Texas 78216
Telephone: (210) 344-4455
Facsimile: (210) 344-4902

By: _____

SEAN F. O'NEILL
State Bar No. 15288150

ATTORNEY-IN-CHARGE FOR
INTERVENOR PLAINTIFFS, Samuel
Montemayor, Heron L. Vidales, Robert
Rodriguez, Jesus R. Villanueva, Pedro
Vela and Alberto R. Garcia

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copying of the foregoing has been sent by certified mail, return receipt requested mail on this the 21st day of August, 2000.

Broadus A. Spivey
Spivey & Ainsworth, P.C.
48 East Avenue
Austin, Texas 78701

Michael Greenberg
Law Offices of Richard Pena
Barton Oaks Plaza
901 Mopac, Suite 325
Austin, Texas 78746

Sonia Lopez
Law Offices of Ramon Garcia,
222 West University Drive
Edinburg, Texas 78539

-16-

...

Tom Lockhart
Adams & Graham, L.L.P.
222 East Van Buren
West Tower
Harlingen, Texas 78550

Walter J. Passmore
Passmore, Walker & Twenhafel, L.L.P.
2424 North 10th, Suite 200
McAllen, Texas 78502

SEAN F. O'NEILL

-17-

ChilPDF - www.fasio.com