115

United States District Court
Southern District of Texas
FILED

JUL 1 7 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |

---

**DEFENDANT'S REPLY TO PLAINTIFFS' (RAUL RODRIGUEZ AND ARTURO
G. SALINAS, ET AL. AND GILBERTO M. RODRIGUEZ, ET AL.)
RESPONSES TO SECOND MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant **CITY OF HARLINGEN** ("Harlingen") and files this Reply

to Plaintiffs' (Raul Rodriguez and Arturo G. Salinas, et al. and Gilberto M. Rodriguez, et al.)

Responses to Second Motion for Summary Judgment and would show the Court as follows:

# I.  GENERAL STATEMENT

Plaintiffs' Responses are wholly inadequate to support a state created danger claim because they fail to identify any evidence that Harlingen:

■   caused the Plaintiffs to be at the scene;

■   knew the Plaintiffs were at the scene and in immediate danger of serious risk of harm;

■   deprived Plaintiffs of defense or means of escape;

■   failed to warn Plaintiffs of any danger of which the law enforcement team did not already know.

## II.  GENERAL EVIDENTIARY OBJECTIONS

Harlingen objects to the numerous misstatements of the record and inconsistencies and improper speculation contained in Plaintiffs' Responses to Second Motion for Summary Judgment; by way of example:

■   on pp. 23 and 25, respectively, Plaintiffs state that at approximately 5:30 a.m. Sgt. Mike Garcia and Sgt. Foist already had information on Ernest Moore when the record clearly indicates that it was approximately 6:30 a.m.

■   on pp. 25 and 28, respectively, Plaintiffs, in an effort to attack his credibility, claim "Chief Scheopner does not recall exactly what he told Sgt. Foist"; however, the deposition testimony establishes Chief Scheopner described in detail the substance of that conversation including:

   a)   Scheopner asked for verification of the information given to him by the dispatcher and what was going on;

   b)   Shawn Foist advised of a teletype that there was a double murder in Rio Hondo and Ernest Moore was a suspect;

c)      Shawn Foist further advised that the sheriff's department had requested they come out to Moore's house because the sheriff's department was there and wanted to search the house, Moore was not cooperating; the sheriff's department found Ernest Moore's truck there and figured Ernest was in the area and requested that Scheopner go to the scene;

d)      Scheopner responded that he was just leaving the house behind them and for Foist to tell Moore to cooperate.

Plaintiffs' Exh. A, p. 180, (ll. 5-25).

■      on pp. 29 and 32, respectively, Plaintiffs refer to Exh. P and claim that it was foreseeable the BP agents would be present as part of an integrated law enforcement team effort that involved city, county and federal agencies. However, the statement on p. 1 of Exh. P concerning the joint law enforcement effort of city, county and federal agencies takes place <u>after</u> the San Benito shootings. The description of the law enforcement team before the shootings includes only the CCSD and the BP at their request. Exh. P, pp. 2 and 3.

■      on pp. 6 and 7, respectively, Plaintiffs claim that R.D. Moore put BP agents in harms way because he denied them entrance to his house. This argument is in direct conflict with the conclusive evidence that:

a)      the shootings occurred sometime after completion of the house search - Defendant's Second Motion for Summary Judgment ("2nd MSJ"), p. 11;

b)      the BP agents could have left the scene after being denied entrance - Defendant's 2nd MSJ, p. 10.

■ on pp. 6 and 7, respectively, Plaintiffs claim Harlingen did nothing to warn the law enforcement team of the danger and then admit the first thing R.D. Moore told the CCSD's deputies was that Ernest had done something, two powerful rifles were missing, Ernest was a good shot and would come back to kill them, pp. 22 and 24, respectively. Additionally, Plaintiffs take the position that a warning would have done no good because after the BP agents responded to the call (from CCSD) and went to the scene, they "were entrapped, and it was too late for them to back out of harm's way because they were already under Ernest Moore's murderous eye.", pp. 28 and 31.

### III.   SPECIFIC OBJECTIONS

■ Harlingen objects to Plaintiffs' Responses, Exh. G (Arnold Rodriguez Affidavit) and specifically to the last sentence of ¶ 5 and the last four sentences of ¶ 6 because they are speculative, conclusionary and without factual basis.

■ Harlingen objects to Plaintiffs' Responses, Exh. U (George Kirkham Affidavit with report), because the first sentence of the next to the last paragraph on p. 3 is speculative, contains an improper legal opinion and applies the wrong legal standard.

■ Harlingen objects to Plaintiffs' Responses, Exh. R (Joe Rubio sworn statement), in total because it contains numerous hearsay statements, improper speculation and is argumentative.

### IV.   ADDITIONAL SUMMARY JUDGMENT EVIDENCE

In response to Plaintiffs' unsupportable claims of spoliation and applicability of the *Grandstaff v. City of Borger* holding, Harlingen refers to the following Supplemental Summary Judgment evidence:

a)    Excerpts from deposition of Gale Lynn Jones (Exh. "Q");

b)    Additional excerpts from deposition of Kris Ledezma (Exh. "R");

c)    Copy of Scheopner's deposition notice with subpoena duces tecum (Exh. "S");

d)    Affidavit of Tom Lockhart (Exh. "T");

e)    Excerpts from deposition of Miguel P. Garcia (Exh. "U");

f)    Additional excerpts from deposition of Ralph Dwayne Moore (Exh. "V"); and

g)    Excerpts from deposition of Natalie F. Prim (Exh. "W").


## V.   NO SPOLIATION OF EVIDENCE

Plaintiffs offer no evidence to support their conclusionary spoliation argument and fail to identify what alleged material missing evidence would be contained on the tapes.

■    The cassette recordings off the master tapes were provided to Texas Ranger Jaramillo by the Cameron County Sheriff Department ("CCSD"), Border Patrol ("BP") and Harlingen Police Department ("HPD"), Defendant's 2nd MSJ, Exh. K, p. 6, ¶ 33, p. 12, ¶ 51 and p. 25, ¶ 85.

■    In a generally accepted routine practice, HPD master tapes were reused and recorded over, Exh. Q, p. 30, (l. 7) - p. 31, (l. 18), Exh. R, p. 9, (l. 24) - p. 10, (l. 7) and Plaintiffs' Exhibit S, ¶ 5.

■    Plaintiffs' first discovery request for the tapes was by subpoena duces tecum (No. 9) attached to the notice of Jim Scheopner's deposition dated May 10, 2000, Exhs. S and T.

■    There is no evidence of spoliation. The HPD master tapes in use on July 7, 1998 were recorded over under routine procedures with no bad faith well in advance of

Plaintiffs' discovery requests. *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (1975).

■ Plaintiffs had the opportunity to question the credibility of Jim Scheopner through the depositions of Sgt. Mike Garcia and dispatcher Melody Matlock; additionally, Plaintiffs have had the opportunity to challenge Scheopner through Sgt. Shawn Foist, who has been listed as a witness by Plaintiffs in their Supplement of Rule 26(a) Initial Disclosures (Dkt. No. 102) and who no longer works for HPD. Exh. U, p. 70, (ll. 11-15).

### VI.   NO EVIDENCE HARLINGE CREATTED AN OPPORTUNITY FOR ERNEST MOORE TO SHOOT THE PLAINTIFFS WHICH HE DID NOT HAVE OTHERWISE AND NO EVIDENCE OF PROXIMATE CAUSE

■ Ernest used his private guns and was proficient in the use, operation and shooting of the privately owned AR-15, SKS and M-1. Defendant's 2nd MSJ, Exh. F, p. 210, (ll. 3-17) and p. 211, (ll. 2-23).

■ There is no evidence that Ernest Moore had previously fired the HPD AR-15 more than one time. Plaintiffs' Exh. F, p. 142 (ll. 4-25).

■ Plaintiffs have the burden of proof on the elements of their § 1983 claim, including proximate cause. Because the City has pointed out how the record lacks proof of these elements and offered evidence negating them, Plaintiffs have the burden to offer credible admissible evidence. *Celotex Corp. v. Garrett*, 47 U.S. 317, 325 (1986). They claim it is just speculation that Ernest Moore would have chosen the other weapons instead of taking none, quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944). They omit the part of the quoted passage where the Supreme Court notes that the focus is on "the reasonableness of the

particular inference or conclusion drawn by the jury." *Id.* Plaintiffs wholly fail

to identify any evidence which reasonably supports their desired conclusion.

**VII.   NO HARLINGEN POLICIES CAUSED A CONSTITUTIONAL
VIOLATION AND THERE WAS NO RATIFICATION OF
UNCONSTITUTIONAL CONDUCT**

■   Plaintiffs' arguments about "policy" fail because each argument is missing a

critical element; none of the alleged customs or decisions can be linked to a

definite risk that HPD rifle would fall into civilian hands:

a)      There is no evidence of a history of unauthorized civilian use of HPD

weapons;

b)      There is no evidence of a pattern or practice of accepting guns for

destruction and assigning them to police officers;

c)      Scheopner did not learn until later after the shooting that Pirtle claimed the

AR-15 had been turned in for destruction.  Plaintiffs' Exh. A, p. 49, (ll.

16-18);

d)      Scheopner did not know Ernest Moore and had no knowledge of Ernest

being involved in any criminal activities.  Plaintiffs' Exh. A, p. 63, (ll. 4-

17); and

e)      There is no evidence Scheopner condoned officers' letting family members

take guns or giving access to civilians.  *Palmer v. City of San Antonio*, 810

F.2d 514, 516 (5th Cir. 1987) is inapplicable.

■   Each of the alleged policies is missing the critical requirement that it must be

adopted with deliberate indifference to the certainty that a constitutional

deprivation will result. *Piotrowski v. City of Houston*, 237 F.3d 567, 579, 581 (5th

Cir. 2001) , *petition for cert. filed*, ____USLW ____ (No. 00-1811, June 5, 2001);

■ The alleged violations of state law cannot prove Harlingen adopted an actionable custom or policy because the focus is the deliberate indifference to the certainty that a *constitutional* violation will result. Moreover, Plaintiffs rely on state statutes having nothing to do with safeguarding weapons. *See* 37 TEX. ADMIN. CODE § 211.104 [renumbered, now § 217.21] (requiring proficiency in *firing* of weapons); TEX. CODE OF CRIM. PROC. ANN. art. 18.19 (Vernon Supp. 2001) (dealing with weapons seized as evidence of a criminal offense).

## VIII. *GRANDSTAFF V. CITY OF BORGER*, 767 F.2d 161, (5TH Cir. 1985) DOES NOT APPLY TO THIS CASE

Plaintiffs' reliance on the holding in *Grandstaff* is misplaced because:

■ "*Grandstaff* has not enjoyed wide application in this circuit." *Snyder v. Trepagnier*, 142 F.2d 791, 797 (5th Cir. 1998), *cert. dism'd* 119 S.Ct. 1423 (1999).

■ "The *Grandstaff* panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations..." "Sheriff Ledbetter defended his deputies afterward, but it is undisputed that in doing so he was accepting their version of what happened. Unlike almost any conceivable version of the *Grandstaff* episode, that version did not show that the deputies' actions were manifestly indefensible. Sheriff Ledbetter did not defend lawless conduct, and it is unreasonable to infer from his defense of his men a county policy approving reckless police behavior." *Coon v. Ledbetter*, 780 F.2d 1158, 1161, 1162 (5th Cir. 1986).

■ R.D. Moore told Scheopner after the shootings that:

   a)   Mrs. Pirtle turned the rifle in without conditions. Plaintiffs' Exh. A, p. 49, (ll. 19-23); and

b)      Ernest stole the key to gun safe.  Plaintiffs' Exh. A, p. 103, (ll. 5 and 6).

■      Furthermore, Harlingen's post incident investigation and actions differ markedly from *Grandstaff* because once City Management got involved in the investigation:

a)      Moore was verbally reprimanded.  Exh. V, p. 176, (l. 15) - p. 177, (l. 24);

b)      Scheopner was demoted.  Exh. W, p. 47, (l. 20) - p. 49, (l. 24);

c)      There were admissions of error.  Plaintiffs' Response, pp. 15, 17, 33-37 and 17, 19, 20, 37-41, respectively; and

d)      Changes were made in the HPD weapon's handling practices and procedures.  Plaintiffs' Responses, pp. 34 and 37, respectively.

## IX.   NO EVIDENCE OF ADDITIONAL ELEMENTS OF FEDERAL CAUSE OF ACTION

In Plaintiffs' Responses to Second Motion for Summary Judgment, they fail to identify any evidence that Harlingen:

■      placed or caused the Plaintiffs to be at the scene.

■      stripped the Plaintiffs of their ability or motive to defend themselves or escape.

■      failed to warn the Plaintiffs of any danger which the law enforcement team did not already know.

■      knew there was a substantial risk of serious harm to specific known victims, i.e. Susan Rodriguez, Ricardo Salinas and Raul Rodriguez.  *See Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 (5th Cir. 1999).

## X.   STATE LAW CLAIMS FAIL

■      There is no evidence that R.D. Moore gave his son permission to take the rifle.

■ Failure to perform the alleged promise with Mrs. Pirtle to destroy the rifle does not create a duty or breach of a duty owed to Plaintiffs under Texas law. *See Ft. Bend County Drain. Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991).

■ TECLOSE regulations and HPD directives concerning proficiency in use of firearms and assignment of weapons was for the purpose of ensuring that officers can effectively and safely fire their weapons; they do not create a duty because Plaintiffs are not in a class which these requirements seek to protect, nor are these injuries of the type these requirements were written to prevent. *See Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Praesel v. Johnson*, 967 S.W.2d 391, 395 (Tex. 1998).

## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, Defendant requests the Court consider its additional evidence and continues to move for summary judgment that the remaining claims of all Plaintiffs in these causes be dismissed and they take nothing against Defendant.

Respectfully submitted,

By: _____
Tom Lockhart
Admissions ID No. 2257
Texas State Bar No. 12473500
Roger W. Hughes
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant,
CITY OF HARLINGEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 17th day of July, 2001, to the following counsel of record and interested parties:

Attorneys-in-Charge for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

    Mr. Broadus A. Spivey          **Via CMRRR# 7000 1670 0013 4635 2296**
    **SPIVEY & AINSWORTH, P.C.**
    48 East Avenue
    Austin, Texas  78701-4320

Attorney-in-Charge for Plaintiff, RAUL RODRIGUEZ:

    Ms. Sonia Lopez             **Via CMRRR# 7000 1670 0013 4635 2302**
    **LAW OFFICES OF RAMON GARCIA, P.C.**
    222 West University Drive
    Edinburg, Texas  78539

TOM LOCKHART

# APPENDIX
## TABLE OF CONTENTS

**EXHIBIT REF.**                                **EXHIBITS**

Q ............    Excerpts from deposition of Gale Lynn Jones

R ............    Additional excerpts from deposition of Kris Ledezma

S ............    Copy of Scheopner's deposition notice with subpoena duces tecum

T ............    Affidavit of Tom Lockhart

U ............    Excerpts from deposition of Miguel P. Garcia

V ............    Additional excerpts from deposition of Ralph Dwayne Moore

W ............    Excerpts from deposition of Natalie F. Prim

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO GUILLERMO SALINAS    ) (
AND ELISA HERNANDEZ         ) (
HERRERA SALINAS             ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-98-162
                            ) (
CITY OF HARLINGEN, TEXAS,   ) (
R.D. MOORE, AND             ) (
JIM SCHEOPNER               ) (
                            ) (
        AND                 ) (
                            ) (
GILBERTO M. RODRIGUEZ,      ) (
INDIVIDUALLY AND ON         ) (
BEHALF OF HIS MINOR         ) (
DAUGHTER, MEGAN SUZANNE     ) (
RODRIGUEZ, AND STEPHEN L.   ) (
WILLIAMS AND WIFE, ROBYN    ) (
S. WILLIAMS, SURVIVING      ) (
BENEFICIARIES OF THE        ) (
DECEASED                    ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-98-163
                            ) (
CITY OF HARLINGEN, TEXAS,   ) (
R.D. MOORE, AND             ) (
JIM SCHEOPNER               ) (
                            ) (
AND                         ) (
                            ) (
RAUL RODRIGUEZ              ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-99-070
                            ) (
CITY OF HARLINGEN, R. D.    ) (
MOORE, AND JIM SCHEOPNER    ) (

- - - - - - - - - - - - - - - - - - - - - - - - - - -
        ORAL DEPOSITION OF GALE LYNN JONES
                  APRIL 26, 2001
- - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER

COPY

DEFENDANT'S
EXHIBIT

"Q"

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsvi.
(956)618-2366   (956)428-0755   (956)542-1020

Deposition of GALE LYNN JONES, who resides in Cameron County, Texas, taken by PRICE AINSWORTH, Attorney for the Plaintiffs, reported by MAUREEN STINGLEY, Certified Court Reporter in and for the State of Texas, on APRIL 26, 2001, in the offices of ADAMS & GRAHAM, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas, pursuant to the Federal Rules of Civil Procedure.

APPEARANCES

COUNSEL FOR PLAINTIFFS ARTURO GUILLERMO SALINAS AND ELISA HERNANDEZ HERRERA SALINAS; and GILBERTO M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS, SURVIVING BENEFICIARIES OF THE DECEASED:

    PRICE AINSWORTH
    SPIVEY & AINSWORTH, P.C.
    48 East Avenue
    Austin, Texas 78701

COUNSEL FOR DEFENDANT CITY OF HARLINGEN, TEXAS:

    TOM LOCKHART
    ADAMS & GRAHAM, L.L.P.
    222 East Van Buren, West Tower
    Harlingen, Texas 78550

ALSO PRESENT:  Roy Rodriguez

09:36  1  been done with the master tapes as far as storing those
09:36  2  that were used on this computer that would take any
09:36  3  calls from 911, old emergency lines or radio
09:36  4  transmissions?
09:36  5      A.  They were all kept in a drawer right there by
09:36  6  the Dictaphone.
09:36  7      Q.  When a tape is full, how do you know that, a
09:36  8  master tape?
09:36  9      A.  The computer beeps, tells you that it's almost
09:36  10  ending the tape, and the standard procedure was that
09:36  11  you eject the tape, take it out, place it in a box, and
09:37  12  you put the date you took it out.  You initial it -- at
09:37  13  least, I did.  A lot of them didn't.  And then you take
09:37  14  the next tape, stick it in, you format it, and then you
09:37  15  hit "Play/Record," and they start recording.
09:37  16      Q.  And then the used tape, the full tape, is
09:37  17  placed there in a drawer there in the dispatch office?
09:37  18      A.  Right.
09:37  19      Q.  And those are kept somehow chronologically as
09:37  20  to how they were removed?
09:37  21      A.  Right.  We had enough tapes that -- the way I
09:37  22  remember, we had enough tapes that if I were -- let's
09:37  23  say I were to take these two tapes, and these were the
09:37  24  two tapes that I was recording and I had just taken
09:37  25  them out and placed them in here, and I took the next

09:37 1  two, I wouldn't be getting back to these probably for a

09:37 2  month or two because I had enough tapes, unless some of

09:37 3  them went bad, which there are a couple in there that

09:37 4  did go bad.

09:37 5      Q.  And generally speaking, how long would a master

09:37 6  tape last in the machine?  Were they there for a day,

09:37 7  six months?

09:37 8      A.  I remember three days.  In three days --

09:37 9  because the old system we had, the old reel-to-reel,

09:37 10  was a 24-hour deal.  And at the end of 24 hours, you

09:37 11  would take it out, throw it in a box, whatever day it

09:38 12  was -- if it was the 20th, it would go in box 20.  And

09:38 13  then at midnight, the 21st, you would take out 21,

09:38 14  stick it on there, and it would be for 24 hours.

09:38 15      These would last for three or four days,

09:38 16  and then they were put in a box, and they wouldn't be

09:38 17  come back to until, like I said, maybe a month, a month

09:38 18  and a half, two months.

09:38 19      Q.  I guess if you had a busy day or a busy night

09:38 20  or two, you could fill up a tape faster than three

09:38 21  days, but generally speaking, they lasted for three

09:38 22  days?

09:38 23      A.  Right.

09:38 24      Q.  And whichever dispatcher was on duty when the

09:38 25  tape became full and the computer beeped, that person

BRYANT & STINGLEY, INC.
McAllen     Harlingen     Brownsville
(956)618-2366  (956)428-0755  (956)542-1020

ERRATA SHEET/SIGNATURE PAGE

PAGE LINE  CHANGE                                    REASON

13    7   Change Location to Identification

72    8,9  July 5th, 1998   I think he meant July 7th, 1998

        I, GALE LYNN JONES, have read the foregoing
transcript and hereby affix my signature that same is
true and correct, except as noted above.

_____
GALE LYNN JONES

THE STATE OF TEXAS

COUNTY OF CAMERON

            SUBSCRIBED AND SWORN TO BEFORE ME, the
undersigned authority on this the _25th_ day of
_May_, 2001.

IDOLINA Y. JAUREGUI
Notary Public
STATE OF TEXAS
My Comm. Exp. Apr 2, 2002

_____
Notary Public in and for
The State of Texas

ORIGINAL

BRYANT & STINGLEY, INC.
McAllen          Harlingen         Brownsville
(956) 618-2366   (956) 428-0755   (956) 542-1020

*(left margin, vertical)* BRYANT & STINGLEY, INC. RECEIVED  5-25-01  DATE

*(left margin, vertical)* (Maureen)  vs.  City of Harlingen

1                    REPORTER'S CERTIFICATE

2                    I, MAUREEN STINGLEY, Certified Court

3    Reporter, certify that the witness, GALE LYNN JONES,

4    was duly sworn by me, and that the  deposition is a

5    true and correct record of the  testimony given by the

6    witness on APRIL 27, 2001; that the deposition was

7    reported by me in stenograph and was subsequently

8    transcribed under my supervision.

9                    I FURTHER CERTIFY that I am not a

10   relative, employee, attorney or counsel of any of the

11   parties, nor a relative or employee of such attorney or

12   counsel, nor am I financially interested in the action.

13

14                   WITNESS MY HAND on this the *2nd* day of

15   *May*              , 2001.

16

17

18

19

20

21   *Maureen Stingley*
     MAUREEN STINGLEY, CSR NO. 691
22   Expiration Date: 12/31/02
     Bryant & Stingley, Inc.
23   2010 East Harrison
     Harlingen, Texas 78550

24

25

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956)618-2366   (956)423-0755   (956)542-1020

Deposition of KRIS LEDEZMA, who resides in Cameron County, Texas, taken by SONIA LOPEZ, Attorney for the Plaintiffs, reported by MAUREEN STINGLEY, Certified Court Reporter in and for the State of Texas, on APRIL 27, 2001, in the offices of ADAMS & GRAHAM, L.L.P., 222 East Van Buren, West Tower, Harlingen, Texas, pursuant to the Federal Rules of Civil Procedure.

## APPEARANCES

COUNSEL FOR PLAINTIFFS ARTURO GUILLERMO SALINAS
AND ELISA HERNANDEZ HERRERA SALINAS; and GILBERTO
M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS
MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND
STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS,
SURVIVING BENEFICIARIES OF THE DECEASED:

    SONIA LOPEZ
    LAW OFFICES OF RAMON GARCIA
    222 West University Drive
    Edinburg, Texas  78539

COUNSEL FOR DEFENDANT CITY OF HARLINGEN, TEXAS:

    TOM LOCKHART
    ADAMS & GRAHAM, L.L.P.
    222 East Van Buren, West Tower
    Harlingen, Texas 78550

BRYANT & STINGLEY, INC.
McAllen      Harlingen      Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO GUILLERMO SALINAS    ) (
AND ELISA HERNANDEZ         ) (
HERRERA SALINAS             ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-98-162
                            ) (
CITY OF HARLINGEN, TEXAS,   ) (
R.D. MOORE, AND             ) (
JIM SCHEOPNER               ) (
                            ) (
        AND                 ) (
                            ) (
GILBERTO M. RODRIGUEZ,      ) (
INDIVIDUALLY AND ON         ) (
BEHALF OF HIS MINOR         ) (
DAUGHTER, MEGAN SUZANNE     ) (
RODRIGUEZ, AND STEPHEN L.   ) (
WILLIAMS AND WIFE, ROBYN    ) (
S. WILLIAMS, SURVIVING      ) (
BENEFICIARIES OF THE        ) (
DECEASED                    ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-98-163
                            ) (
CITY OF HARLINGEN, TEXAS,   ) (
R.D. MOORE, AND             ) (
JIM SCHEOPNER               ) (
                            ) (
AND                         ) (
                            ) (
RAUL RODRIGUEZ              ) (
                            ) (
VS.                         ) (  CIVIL ACTION NO. B-99-070
                            ) (
CITY OF HARLINGEN, R. D.    ) (
MOORE, AND JIM SCHEOPNER    ) (

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    ORAL AND VIDEOTAPED DEPOSITION OF KRIS LEDEZMA
                  APRIL 27, 2001
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER

DEFENDANT'S
EXHIBIT

"R"

BRYANT & STINGLEY, INC.
    McAllen        Harlingen        Brownsv
(956)618-2366   (956)428-0755   (956)542-1020

13:06 1    to take it down.

13:06 2        A.  Okay.

13:06 3        Q.  And first of all, as well, I just want you to

13:06 4    understand that the testimony that you give today has

13:06 5    the same effect as if you were in a courtroom in front

13:06 6    of a jury and in front of a judge and you were

13:06 7    testifying.

13:06 8        A.  Okay.

13:06 9        Q.  Ms. Ledezma, have you ever been given an

13:06 10   opportunity to listen to all of the radio communication

13:06 11   and telephone communication that occurred on July 7th,

13:06 12   1998?

13:06 13       A.  No.

13:06 14       Q.  Have you ever listened to any communications

13:06 15   that took place on July 7th of 1998?

13:06 16       A.  Probably for about two minutes, as the whole

13:06 17   thing was still happening, because we weren't clear.  I

13:06 18   believe it was like a minute or two after they advised

13:06 19   the agents were down and Raul had been hit.  I was

13:06 20   clear on it, but my supervisor wasn't, who was standing

13:06 21   behind me.  So they went back to rewind just a second

13:06 22   of the tape just to make sure that what we heard was

13:07 23   correct.

13:07 24       Q.  Okay.  And let me ask you this:  Is there a

13:07 25   tape-recording of all of the radio communications that

13:07  1    come into the dispatcher's office?

13:07  2        A.   Like right now?

13:07  3        Q.   Back in 1998.

13:07  4        A.   Yes.  It was on an old system.  It was a

13:07  5    Dictaphone, and it was the old reel-type tapes, which

13:07  6    are only kept for like 30 days at a time, and then they

13:07  7    are erased and used over again.

13:07  8        Q.   And on July 7th of 1998, what were you doing on

13:07  9    that day?

13:07  10        A.   Sitting in dispatch.  It was -- everything

13:07  11    started, I guess, about 4:00 or 5:00-something in the

13:07  12    morning with the 911 call that people had been shot in

13:07  13    Rio Hondo.

13:07  14        Q.   And on July 7th, 1998, you were the dispatcher

13:07  15    for the Cameron County Sheriff's Department?

13:07  16        A.   Yes, ma'am.

13:07  17        Q.   Was there anyone else in the dispatcher's

13:07  18    office working with you that morning?

13:07  19        A.   Working with me, no.  I believe there were

13:08  20    about three officers in dispatch with me that had just

13:08  21    brought in a prisoner, and everybody was getting ready

13:08  22    to leave as the 911 phone rang, and I picked it up, and

13:08  23    just screaming on the other end, and a female advising

13:08  24    me that three people had just been shot.  So one of the

13:08  25    deputies -- while I was still on the phone, one of the

```
 1              ERRATA SHEET/SIGNATURE PAGE

 2    PAGE LINE  CHANGE                        REASON

 3    _____

 4    _____

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14       I, KRIS LEDEZMA, have read the foregoing
      transcript and hereby affix my signature that same is
15    true and correct, except as noted above.

16                    _____

17                        KRIS LEDEZMA

18    THE STATE OF TEXAS

19    COUNTY OF CAMERON

20             SUBSCRIBED AND SWORN TO BEFORE ME, the

21    undersigned authority on this the _____ day of

22    _____, 2001.

23

24                    _____
                          Notary Public in and for
25    _____     The State of Texas
```

1              REPORTER'S CERTIFICATE

2              I, MAUREEN STINGLEY, Certified Court

3    Reporter, certify that the witness, KRIS LEDEZMA, was

4    duly sworn by me, and that the  deposition is a true

5    and correct record of the  testimony given by the

6    witness on APRIL 27, 2001; that the deposition was

7    reported by me in stenograph and was subsequently

8    transcribed under my supervision.

9              I FURTHER CERTIFY that I am not a

10   relative, employee, attorney or counsel of any of the

11   parties, nor a relative or employee of such attorney or

12   counsel, nor am I financially interested in the action.

13

14             WITNESS MY HAND on this the _2nd_ day of

15   _May_____, 2001.

16

17

18

19

20

21   _Maureen Stingley_

22   MAUREEN STINGLEY, CSR NO. 691
     Expiration Date: 12/31/02

23   Bryant & Stingley, Inc.
     2010 East Harrison

24   Harlingen, Texas 78550

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO GUILLERMO SALINAS   ) (
AND ELISA HERNANDEZ        ) (
HERRERA SALINAS            ) (
                           ) (
VS.                        ) ( CIVIL ACTION NO. B-98-162
                           ) (
CITY OF HARLINGEN, TEXAS,  ) (
R.D. MOORE, AND            ) (
JIM SCHEOPNER              ) (
                           ) (
        AND                ) (
                           ) (
GILBERTO M. RODRIGUEZ,     ) (
INDIVIDUALLY AND ON        ) (
BEHALF OF HIS MINOR        ) (
DAUGHTER, MEGAN SUZANNE    ) (
RODRIGUEZ, AND STEPHEN L.  ) (
WILLIAMS AND WIFE, ROBYN   ) (
S. WILLIAMS, SURVIVING     ) (
BENEFICIARIES OF THE       ) (
DECEASED                   ) (
                           ) (
VS.                        ) ( CIVIL ACTION NO. B-98-163
                           ) (
CITY OF HARLINGEN, TEXAS,  ) (
R.D. MOORE, AND            ) (
JIM SCHEOPNER              ) (
                           ) (
AND                        ) (
                           ) (
RAUL RODRIGUEZ             ) (
                           ) (
VS.                        ) ( CIVIL ACTION NO. B-99-070
                           ) (
CITY OF HARLINGEN, R. D.   ) (
MOORE, AND JIM SCHEOPNER   ) (

---

AFFIDAVIT REGARDING THE DEPOSITION OF KRIS LEDEZMA

---

I, Maureen Stingley, Certified Court Reporter in and for the State of Texas, do hereby certify that, after reporting and transcribing the deposition of Kris Ledezma on April 27, 2001, that the original transcript was sent to her on May 4, 2001, as indiciated on the Receipt for Certified Mail, and that we have not received any verification from the U.S. Postal Service concerning delivery of this transcript, nor have we had the errata sheet returned from Kris Ledezma.

Maureen Stingley
Certified Court Reporter No. 691

STATE OF TEXAS

COUNTY OF CAMERON

Before me, _Idolina Y. Jauregui_ a Notary Public, on this day personally appeared Maureen Stingley, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office this 17th, day of July, 2001.



IDOLINA Y JAUREGUI
Notary Public
STATE OF TEXAS
My Comm Exp Apr 2 2002

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

Z 735 445 812

## Receipt for
## Certified Mail

No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

| Sent to Kris Ledezma | |
|---|---|
| Street and No. P.O. Box 17935 | |
| P.O., State and ZIP Code Port Isabel TX | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, and Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date  5-4-01 | |

PS Form **3800**, March 1993

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO GUILLERMO SALINAS AND ELISA HERNANDEZ HERRERA SALINAS, Plaintiffs | § § § § § | |
| V. | § § | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, TEXAS; R.D. MOORE; AND JIM SCHOEPNER, Defendants AND | § § § § § § | |
| GILBERTO M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS, SURVIVING BENEFICIARIES OF THE DECEASED | § § § § § § § | |
| V. | § § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS; R.D. MOORE; AND JIM SCHEOPNER, Defendants AND | § § § § § | |
| RAUL RODRIGUEZ, Plaintiff | § § § | |
| V. | § § | CIVIL ACTION NO. B-99-070 |
| CITY OF HARLINGEN, R. D. MOORE, AND JIM SCHEOPNER, Defendants | § § § § § | |

1



DEFENDANT'S EXHIBIT

"S"

## NOTICE OF INTENT TO TAKE VIDEO-TAPED ORAL DEPOSITION WITH SUBPOENA DUCES TECUM

TO:   Defendants CITY OF HARLINGEN, TEXAS; R. D. MOORE and JIM SCHOEPNER, by serving the Attorney-In-Charge, Tom Lockhart and Roger W. Hughes, Adams & Graham, L.L.P., P. O. Drawer 1429, Harlingen, Texas 78551-1429; and Mr. Walter J. Passmore, Passmore, Walker & Twenhafel, L.L.P., P. O. Drawer 3766, McAllen, Texas 78502-3766, Individual Counsel for Defendant, R. D. Moore:

PLEASE TAKE NOTICE that Plaintiffs intend to take the video-taped oral deposition of JIM SCHOEPNER on May 18, 2000, beginning at 9:00 a.m., at the Law Offices of Tom Lockhart, Adams & Graham, 222 E. Van Buren, West Tower, Harlingen, Texas 78551, to be used as evidence in the above entitled and numbered cause. Said deposition shall continue from day to day until completed and shall be taken before a certified shorthand reporter from the offices of Bryant & Stingley, Inc., 2010 E. Harrison, Harlingen, Texas 78550.

A Subpoena Duces Tecum shall issue requiring the witness to appear and produce at the time of said deposition the materials set forth on Exhibit "A", attached hereto and made a part thereof.

Respectfully submitted:

RAMON GARCIA
LAW OFFICES OF RAMON GARCIA
222 West University Drive
Edinburg, Texas 78539
956/383-7441          956/381-0825 (fax)
Fed ID # 23501

RICHARD PENA
LAW OFFICES OF RICHARD PENA
Barton Oaks Plaza Two
901 S. MoPac, Suite 325
Austin, Texas 78746-5747
512/327-6884          512/327-8354 (fax)

2

BROADUS A. SPIVEY
SPIVEY & AINSWORTH
48 East Avenue
Austin, Texas 78701
512/474-6061
512/474-1605 (fax)

By: _____

Broadus A. Spivey
State Bar #18955000
S. D. Federal ID # 11146

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this instrument has been served upon the following counsel of record for the Defendants by certified mail, return receipt requested, on the 10th day of May, 2000:

Mr. Tom Lockhart                    Mr. Walter J. Passmore
Mr. Roger W. Hughes                 Passmore, Walker & Twenhafel
Adams & Graham                      P. O. Box 3766
P O. Drawer 1429                    McAllen, Texas 78502-3766
Harlingen, Texas 78551-1429

_____
Broadus A. Spivey

3163D.003

3

# EXHIBIT "A"

For the purposes of this exhibit "incident" shall mean the shooting of Ricardo Salinas and Susan Rodriguez, deceased, and the surrounding events.

1.  A copy of all City of Harlingen Police Department policies or protocol related to the maintenance or storage of firearms.

2.  A list of weapons turned in by citizens to the Harlingen Police Department for destruction or confiscated at crime scenes in June, 1995, and in July, 1998.

3.  Records of where weapons (mentioned in #2) went after receipt and a record of which of these weapons were actually destroyed.

4.  A copy of the receipt given to Silvia Pirtle when she turned in the AR-15 rifle, later used in the incident, to Harlingen Police Department for destruction.

5.  Sheriff's Office vehicle gasoline log for July 6 and 7, 1998, on the vehicle operated by Deputy Sheriff Rodriguez.

6.  Both rifles: AK-47 and AR-15.

7.  All internal memos between R.D. Moore and Jim Schoepner which reference Moore's custodial duties assigned to him regarding evidence or weapons in the City of Harlingen Police Department's inventory.

8.  All photographs taken in connection with the July 7, 1998, shooting or the investigation into the events of the incident.

9.  The complete City of Harlingen Police Department dispatcher's radio transcript or tape of July 7, 1998, between the hours of 4 am and 9 am.

10. Video-taped footage of the incident taken by Cameron County Police vehicles or otherwise taken in connection with the investigation of the incident.

11. All pathologist photographs of Ernest Moore's tattoos.

12. A copy of Ernest Moore's criminal record.

13. Roberto Rodriguez's report regarding his observations July 7, 1998, including all field notes.

14. All field notes or reports of City of Harlingen Police Department Officers reporting to the scene at the Moore house on July 7, 1998.

15. Sheriff Omar Lucio's report referencing the events of July 7, 1998.

16. Robinson's report referencing the investigation into the events of July 7, 1998.

17.  Complete autopsy reports for Ernest Moore, Susan Rodriguez and Ricardo Salinas.

18.  All witness statements or records of interviews taken in connection with the incident.

19.  An inventory list of firearms at the R.D. Moore residence the day of the incident.

20.  Any and all Ernest Moore's medical records and bills including psychological treatment or counseling.

21.  The complete personnel file for R.D. Moore, including any special requests for time off work because of son's psychological therapy or medical appointments.

THE STATE         )
:
OF TEXAS         )

**BEFORE ME**, the undersigned Notary Public in and for the State of Texas, on this day personally appeared **TOM LOCKHART**, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

"My name is **TOM LOCKHART**. I am over the age of twenty-one (21) years; am in all respects competent to testify about and have personal knowledge of the following facts:

I am a practicing attorney licensed by the State Bar of Texas in May 1975.

On July 16, 1998, I was retained to represent the City of Harlingen on the July 7, 1998 Ernest Moore shooting incident.

Plaintiffs' first discovery requests for the HPD dispatch tapes was in the subpoena duces tecum attached to Notice of Jim Scheopner's deposition dated May 10, 2000."

Further affiant sayeth not.

_____
**TOM LOCKHART**

**SWORN TO AND SUBSCRIBED** before me, the undersigned authority, by the said **TOM LOCHKART** on the 17th day of July, 2001, to certify which witness my hand and seal of office.

MARIA S. MARTINEZ
Notary Public
State of Texas
Comm. Exp. 11-14-2004
Notary Seal

_____
Notary Public in and for THE STATE OF TEXAS
Print Name:    MARIA S. MARTINEZ
My Commission Expires: 11-14-2004



**DEFENDANT'S EXHIBIT**

"T"

```
 1           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
 2                  BROWNSVILLE DIVISION

 3   ARTURO GUILLERMO SALINAS   )(
     AND ELISA HERNANDEZ        )(
 4   HERRERA SALINAS            )(
                                )(
 5   VS.                        )(  CIVIL ACTION NO. B-98-162
                                )(
 6   CITY OF HARLINGEN, TEXAS,  )(
     R.D. MOORE, AND            )(
 7   JIM SCHEOPNER              )(
                                )(
 8          AND                 )(
                                )(
 9   GILBERTO M. RODRIGUEZ,     )(
     INDIVIDUALLY AND ON        )(
10   BEHALF OF HIS MINOR        )(
     DAUGHTER, MEGAN SUZANNE    )(
11   RODRIGUEZ, AND STEPHEN L.  )(
     WILLIAMS AND WIFE, ROBYN   )(
12   S. WILLIAMS, SURVIVING     )(
     BENEFICIARIES OF THE       )(
13   DECEASED                   )(
                                )(
14   VS.                        )(  CIVIL ACTION NO. B-98-163
                                )(
15   CITY OF HARLINGEN, TEXAS,  )(
     R.D. MOORE, AND            )(
16   JIM SCHEOPNER              )(
                                )(
17   AND                        )(
                                )(
18   RAUL RODRIGUEZ             )(
                                )(
19   VS.                        )(  CIVIL ACTION NO. B-99-070
                                )(
20   CITY OF HARLINGEN, R. D.   )(
     MOORE, AND JIM SCHEOPNER   )(
21   - - - - - - - - - - - - - - - - - - - - - - - - - - -
22           ORAL DEPOSITION OF MIGUEL P. GARCIA
                      MARCH 28, 2001
23   - - - - - - - - - - - - - - - - - - - - - - - - - - -
24    REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER
25
```

**DEFENDANT'S EXHIBIT**

"U"

1        Oral deposition of MIGUEL P. GARCIA, who

2   resides in Cameron County, Texas, taken by SONIA LOPEZ,

3   Attorney for the Plaintiffs, reported by MAUREEN

4   STINGLEY, Certified Court Reporter in and for the State

5   of Texas, on MARCH 28, 2001, in the offices of ADAMS &

6   GRAHAM, L.L.P., 222 East Van Buren, West Tower,

7   Harlingen, Texas, pursuant to the Federal Rules of

8   Civil Procedure.

9

10                      APPEARANCES

11

     COUNSEL FOR PLAINTIFFS ARTURO GUILLERMO SALINAS
12   AND ELISA HERNANDEZ HERRERA SALINAS; and GILBERTO
     M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS
13   MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND
     STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS,
14   SURVIVING BENEFICIARIES OF THE DECEASED:

15        FRANCIS PAN
          SPIVEY & AINSWORTH, P.C.
16        48 East Avenue
          Austin, Texas 78701
17
          SONIA LOPEZ
18        LAW OFFICES OF RAMON GARCIA
          222 West University Drive
19        Edinburg, Texas  78539

20   COUNSEL FOR DEFENDANT CITY OF HARLINGEN, TEXAS:

21        TOM LOCKHART
          ADAMS & GRAHAM, L.L.P.
22        222 East Van Buren, West Tower
          Harlingen, Texas 78550
23

24

25

16:27  1      A.  I don't know what time -- when he came on.  I

16:27  2   really couldn't tell you back in '98 how long he had

16:27  3   been there because I don't know when he came on.

16:27  4      Q.  He had certainly not been there 17 years or 15

16:28  5   years?

16:28  6      A.  No, ma'am.

16:28  7      Q.  Had he been there 10 years?

16:28  8      A.  It was less than that.

16:28  9      Q.  Less than five?

16:28 10      A.  It might have been around five.

16:28 11      Q.  Do you know where Sergeant Foist is at now?

16:28 12      A.  No, ma'am.

16:28 13      Q.  Do you know why he no longer is at the

16:28 14   Harlingen Police Department?

16:28 15      A.  No, ma'am.

16:28 16      Q.  Do you know why Sergeant Foist was disciplined?

16:28 17      A.  I didn't hear you.

16:28 18      Q.  Do you know why Sergeant Foist was disciplined?

16:28 19      A.  No, I don't.

16:28 20      Q.  Did you know that Sergeant Foist had been

16:28 21   disciplined?

16:28 22      A.  I had heard rumor of it, but I really --

16:28 23      Q.  And what was that rumor?

16:28 24      A.  I don't recall.

16:28 25      Q.  But you recall that there was a rumor that

*Returned to Crt reporter 4/30/01* 149

(m)

```
 1              ERRATA SHEET/SIGNATURE PAGE

 2    PAGE LINE  CHANGE                        REASON

 3     8    20   CASINTINO                     Misspell

 4    138   25   Several years back (Not 1998) → It was prior to 199...

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14       I, MIGUEL P. GARCIA, have read the foregoing
      transcript and hereby affix my signature that same is
15    true and correct, except as noted above.

16                     _____
                       MIGUEL P. GARCIA
17

18    THE STATE OF TEXAS

19    COUNTY OF CAMERON

20            SUBSCRIBED AND SWORN TO BEFORE ME, the

21    undersigned authority on this the  30th  day of

22    April            , 2001.

23    ⎧ NOTARY PUBLIC ⎫  MARIA S. MARTINEZ    Maria S. Martinez
                         Notary Public
24    ⎨ STATE OF TEXAS ⎬ State of Texas       _____
                         Comm. Exp. 11-14-2004 Notary Public in and for
25    ⎩             ⎭                         The State of Texas
```

1                    REPORTER'S CERTIFICATE

2            I, MAUREEN STINGLEY, Certified Court

3    Reporter, certify that the witness, MIGUEL P. GARCIA,

4    was duly sworn by me, and that the  deposition is a

5    true and correct record of the  testimony given by the

6    witness on MARCH 28, 2001; that the deposition was

7    reported by me in stenograph and was subsequently

8    transcribed under my supervision.

9            I FURTHER CERTIFY that I am not a

10   relative, employee, attorney or counsel of any of the

11   parties, nor a relative or employee of such attorney or

12   counsel, nor am I financially interested in the action.

13

14            WITNESS MY HAND on this the _10th_ day of

15   _April_____, 2001.

16

17

18

19

20

21   _Maureen Stingley_____

     MAUREEN STINGLEY, CSR NO. 691

22   Expiration Date: 12/31/02
     Bryant & Stingley, Inc.

23   2010 East Harrison
     Harlingen, Texas 78550

24

25

BRYANT & STINGLEY, INC.
      McAllen          Harlingen         Brownsville
  (956)618-2366    (956)428-0755    (956)542-1020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO GUILLERMO SALINAS )(
AND ELISA HERNANDEZ )(
HERRERA SALINAS )(
)(
VS. )(  CIVIL ACTION NO. B-98-162
)(
CITY OF HARLINGEN, TEXAS, )(
R.D. MOORE, AND )(
JIM SCHEOPNER )(
)(
    AND )(
)(
GILBERTO M. RODRIGUEZ, )(
INDIVIDUALLY AND ON )(
BEHALF OF HIS MINOR )(
DAUGHTER, MEGAN SUZANNE )(
RODRIGUEZ, AND STEPHEN L. )(
WILLIAMS AND WIFE, ROBYN )(
S. WILLIAMS, SURVIVING )(
BENEFICIARIES OF THE )(
DECEASED )(
)(
VS. )(  CIVIL ACTION NO. B-98-163
)(
CITY OF HARLINGEN, TEXAS, )(
R.D. MOORE, AND )(
JIM SCHEOPNER )(
)(
AND )(
)(
RAUL RODRIGUEZ )(
)(
VS. )(  CIVIL ACTION NO. B-99-070
)(
CITY OF HARLINGEN, )(
R.D. MOORE, AND )(
JIM SCHEOPNER )(

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
ORAL DEPOSITION OF RALPH DWAYNE MOORE
MAY 23, 2000
VOLUME 2                    ORIGINAL
- - - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsv
(956) 618-2366   (956) 428-0755   (956) 542-

DEFENDANT'S
EXHIBIT

"V"

APPEARANCES

COUNSEL FOR PLAINTIFFS ARTURO GUILLERMO SALINAS
AND ELISA HERNANDEZ HERRERA SALINAS; and GILBERTO
M. RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF HIS
MINOR DAUGHTER, MEGAN SUZANNE RODRIGUEZ, AND
STEPHEN L. WILLIAMS AND WIFE, ROBYN S. WILLIAMS,
SURVIVING BENEFICIARIES OF THE DECEASED:

        BROADUS A. SPIVEY
        SPIVEY & AINSWORTH
        48 East Avenue
        Austin, Texas 78701


COUNSEL FOR PLAINTIFF RAUL RODRIGUEZ:

        SONIA LOPEZ
        LAW OFFICES OF RAMON GARCIA
        222 West University Drive
        Edinburg, Texas 78539


COUNSEL FOR DEFENDANTS CITY OF HARLINGEN, TEXAS,
JIM SCHEOPNER, AND R.D. MOORE:

        TOM LOCKHART
        ADAMS & GRAHAM, L.L.P.
        222 East Van Buren, West Tower
        Harlingen, Texas 78550

COUNSEL FOR DEFENDANT R.D. MOORE, INDIVIDUALLY:

        WALTER J. PASSMORE
        PASSMORE, WALKER & TWENHAFEL, L.L.P.
        2424 North 10th, Suite 200
        McAllen, Texas 78502

15:52 1    A. Not that I am aware of.

15:52 2    Q. Who told you to speak to Mr. Robinson?

15:52 3    A. I don't recall.

15:53 4    Q. On how many occasions have you spoken to

15:53 5  Mr. Robinson?

15:53 6    A. Just the one.

15:53 7    Q. How long was your conversation with him for?

15:53 8    A. I might have talked with him for maybe 30

15:53 9  minutes.

15:53 10   Q. How long was the statement that you gave to

15:53 11 Mr. Castillo?  How many pages was that statement?

15:53 12   A. One and a half, maybe.  I'm not really certain.

15:53 13   Q. Did you sign it?

15:53 14   A. Yes.

15:53 15   Q. Were you ever disciplined as a result of any

15:53 16 events dealing with the incident in question?

15:53 17   A. Was I ever disappointed?

15:53 18   Q. Disciplined.

15:53 19   A. Was I ever disciplined?

15:53 20   Q. Yes, sir.

15:53 21   A. No.

15:54 22   Q. You kind of seemed to me like you hesitated.

15:54 23 Was there any reason for your hesitation?

15:54 24   A. Well, Joe La Beau gave me a verbal reprimand, I

15:54 25 believe.  And I'm not even sure it was a reprimand.

15:54  1      Q.  When was that?

15:54  2      A.  It was before he left, sometime after --

15:54  3   sometime in '99, I believe, early '99.

15:54  4      Q.  And that verbal reprimand, what was it that he

15:54  5   stated to you?

15:54  6      A.  I don't recall.  It was just a verbal

15:54  7   reprimand, not to do it again.

15:54  8      Q.  Not to do what again?

15:54  9      A.  Take a rifle home, or something, I guess.

15:54 10      Q.  You say, "I guess," but I need to know and the

15:54 11   jury needs to know, what was the reason for the

15:54 12   reprimand?  Do you know?  Was a reason offered to you?

15:54 13      A.  It was the handling of the gun, I'm assuming

15:54 14   that --

15:54 15           MR. PASSMORE:  Don't assume anything.

15:55 16   Just relate what you know from personal knowledge.

15:55 17      A.  It was the handling of the weapon.

15:55 18      Q.  What with regards to the handling of the

15:55 19   weapon?

15:55 20      A.  I don't specifically recall what he told me

15:55 21   about the handling of the weapon.

15:55 22      Q.  Who else was present when he gave you this

15:55 23   verbal reprimand?

15:55 24      A.  Captain Archer and Captain Vasquez.

15:55 25      Q.  Did he ever give you or send you a written

ERRATA SHEET/SIGNATURE PAGE - Volume 2

PAGE LINE   CHANGE                              REASON

| | | | |
|---|---|---|---|
| 181 | 6,7,9,12,20 | Larry was at home the *earlier in the* evening of July 6th | |
| 182 | 13,15 | See page 222, line 2-14; page 228 | |
| 184 | 14, | line 23 - page 230 line 6 | |
| 185 | 9,8 | | |

193   16,18,25; page 194, line 5 - Also a call from Chief Schapper and another man who Rob of Crust was coming to work. See page 205 line 1 - page 206 line 16; page 223 line 1-13; page 225 line 12-18.

Page 123 ~~line 1~~ - 16 - I purchased the weapon for the dept in Austin, Tx from GT Distributors and brought it back.

158   5   should be Sig sauer P-239

I, RALPH DWAYNE MOORE, have read the foregoing transcript and hereby affix my signature that same is true and correct, except as noted above.

*Ralph Dwayne Moore*
RALPH DWAYNE MOORE

THE STATE OF TEXAS

COUNTY OF CAMERON

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority on this the ___22nd___ day of __June__ 2000.

*Maria S. Martinez*
Notary Public in and for
The State of Texas

MARIA S. MARTINEZ
Notary Public
STATE OF TEXAS
My Comm Exp Nov 14, 2000

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956) 618-2366   (956) 428-0755   (956) 542-1020

```
1      ERRATA SHEET/SIGNATURE PAGE – Volume 2

2    PAGE LINE  CHANGE                      REASON

3    201  15  answer should be No

4    169  25  page 170 line 6 Larry was burying grandmother

5    at the time.

6    226  10  answer yes; line 12 answer is No;

7    line 14 answer is none. line 23 answer is the

8    number stayed the same.

9    _____

10   _____

11   _____

12   _____

13   _____

14        I, RALPH DWAYNE MOORE, have read the foregoing
15   transcript and hereby affix my signature that same is
     true and correct, except as noted above.

16                       Ralph Dwayne Moore
                         _____
17                       RALPH DWAYNE MOORE

18   THE STATE OF TEXAS

19   COUNTY OF CAMERON

20             SUBSCRIBED AND SWORN TO BEFORE ME, the

21   undersigned authority on this the   22nd   day of

22       June                        2000.

23

24                       Maria S. Martinez
                         _____
25                       Notary Public in and for
                         The State of Texas
```

MARIA S. MARTINEZ
Notary Public
STATE OF TEXAS
My Comm. Exp Nov 14, 2000

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956) 618-2366   (956) 428-0755   (956) 542-1020

REPORTER'S CERTIFICATE

1

2          I, MAUREEN STINGLEY, Certified Court

3  Reporter, certify that the witness, RALPH DWAYNE MOORE,

4  was duly sworn by me, and that the deposition is a true

5  and correct record of the testimony given by the

6  witness on MAY 23, 2000; that the deposition was

7  reported by me in stenograph and was subsequently

8  transcribed under my supervision.

9          I FURTHER CERTIFY that I am not a

10  relative, employee, attorney or counsel of any of the

11  parties, nor a relative or employee of such attorney or

12  counsel, nor am I financially interested in the action.

13          WITNESS MY HAND on this the 31st day of

14  _____, 2000.

15

16

17  _____

18  MAUREEN STINGLEY, CSR NO. 691
    Expiration Date: 12/31/00
19  Bryant & Stingley, Inc.
    2010 East Harrison
20  Harlingen, Texas 78550

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILE DIVISION

ARTURO G. SALINAS, ET AL     * CIVIL ACTION NO. B-98-162
                                *
v.                                     *
                                *
CITY OF HARLINGEN, TEXAS, ET AL; *
                                *
and                                  *
                                *
GILBERTO M. RODRIGUEZ, ET AL    *
                                *
v.                                    * CIVIL ACTION NO. B-98-162
                                *
CITY OF HARLINGEN, TEXAS, ET AL; *
                                *
and                                  *
                                *
RAUL RODRIGUEZ                    *
                                *
v.                                    *
                                *
CITY OF HARLINGEN, TEXAS, ET AL. * CIVIL ACTION NO. B-98-162

Videotaped Deposition of NATALIE F. PRIM, taken

by attorney for the Plaintiffs at the offices of Wierzbicki

& Stephenson, 220 West Garden Street, Suite 801, Pensacola,

Florida, commencing at 11 a.m. on the 25th day of April,

2001, before Gina Hawkins, Registered Professional Reporter

and Notary Public.



COPY

DEFENDANT'S EXHIBIT

"W"

2

APPEARANCES

FOR THE PLAINTIFF:      PRICE AINSWORTH, ESQUIRE
                        Spivey & Ainsworth, P.C.
                        48 East Avenue
                        Austin, Texas 78701

FOR THE DEFENDANT:      TOM LOCKHART, ESQUIRE
                        Adams & Graham, L.L.P.
                        222 E. Van Buren, West Tower
                        Harlingen, Texas 78551-1429

VIDEOGRAPHER:           TOMMY GRICE

---

INDEX OF WITNESS

NATALIE F. PRIM                                        PAGE

     DIRECT EXAMINATION BY MR. AINSWORTH               3

CERTIFICATE OF OATH                                    100
CERTIFICATE OF REPORTER                                101

---

INDEX OF EXHIBITS

PLAINTIFF'S NO.:

     1 - City Manager's Report to the City
         Commission                                    13

     2 - Statement from the City Manager               51

Wierzbicki & Stephenson Court Reporting Service

1  police role in Harlingen a political appointment, or is it

2  an appointment that is made by the mayor, or how is that

3  accomplished in Harlingen?

4      A      In Harlingen it's a city manager's

5  recommendation to the city commission, and then they take

6  a vote on it.

7      Q      And does the police chief serve at the will of

8  the city manager?

9      A      Yes.

10     Q      And so the -- I mean by that the city manager

11 has the capacity to fire, to demote or whatever?

12     A      Yes.

13     Q      And I guess from time to time you've got to

14 make a decision, do we need a new city police chief?

15     A      Yes.

16     Q      And that falls on the shoulders of the city

17 manager to determine when that time is up or when it's ripe,

18 I guess?

19     A      Yes.

20     Q      In this particular instance Police Chief

21 Scheopner was eventually demoted from police chief; is that

22 right?

23     A      Yes.

24     Q      Was that relative to this incident where the

25 border patrol agents were killed?

1        A       Well, it all happened at about the same time,

2   but it was just a series of issues that I think just told me

3   that it was time to make a change.

4               And the department was growing, and I felt it

5   was in the best interest of the department to consider

6   change.

7        Q       It's my understanding that eventually Chief

8   Scheopner resigned as a lieutenant or at lieutenant's pay;

9   is that right?

10       A       He resigned his position of chief and asked to

11  be reinstated as lieutenant.

12       Q       And then eventually resigned from that

13  position as well?

14       A       Well, I don't know about that.  He was a

15  lieutenant when I left Harlingen last year.

16       Q       Okay.  And that would have been your decision,

17  as city manager, to ask Chief Scheopner for his resignation

18  and then to reinstate him at lieutenant; is that right?

19       A       It was my -- yes, it would have been within my

20  authority.

21       Q       The second half of that question, the

22  multi-phase question, I'm sorry.  Do you then make the

23  decision to put him on at lieutenant, or does the new police

24  chief make the decision, or how does that work?

25       A       No.  I just gave him a memo and said, you know

1  effective immediately you're a lieutenant, and you can

2  return to the department and take up your job.

3          And then he would be under the supervision of a

4  chief or an acting chief in this case.

5      Q    And did you do a written memo to Chief

6  Scheopner?

7      A    I believe he wrote me a memo that said, "I

8  would like to be reinstated back to my former position."

9  He was in, you know, a state of turmoil, and he felt that

10 this -- it was best.

11         And there had been a lot of turmoil and

12 disturbance to him, and it was something he had wanted.

13 So, I wrote him a memo back and said you're reinstated as a

14 lieutenant.

15     Q    Was his memo to you in response to a memo where

16 you had asked for his resignation, or is that what prompted

17 you to ask for his resignation?

18     A    He had been out on administrative leave during

19 the time of the review, and he had been out a period of

20 about seven weeks, eight weeks, whatever it was during the

21 time that we did this.

22         So, I think it gave him some -- a chance to

23 think things over, and just I think the relationship had

24 been deteriorating, in all fairness, for a while.

25     Q    What is administrative review?


                 Wierzbicki & Stephenson Court Reporting Service

# DO NOT WRITE ON TRANSCRIPT – ENTER CHANGES HERE

**In Re: Salinas vs City of Harlington**

| PAGE | LINE | CORRECTION |
|------|------|------------|
| 89 | 10 | "my" – should be "me" |
| 96 | 18 | "in" – ? delete |

Under Penalties of perjury, I declare I have read my deposition and that it is true and correct subject to any changes in form or substance entered here.

5/21/01
Date

Natalie Prim
Deponent: Natalie Prim

1          CERTIFICATE OF OATH

2   STATE OF FLORIDA  )

3   COUNTY OF ESCAMBIA)

4

5          I, the undersigned authority, certify that

6   NATALIE F. PRIM, appeared personally before me and was duly

7   sworn.

8          WITNESS my hand and official seal this 26th day of

9   April, 2001.

10                              Gina Hawkins

11                         Gina Hawkins, RPR

12                                          

13

14

15

16

17

18

19

20

21

22

23

24

25

Wierzbicki & Stephenson Court Reporting Service

## CERTIFICATE OF REPORTER

STATE OF FLORIDA )

COUNTY OF ESCAMBIA)

    I, Gina Hawkins, Registered Professional Reporter, certify that I was authorized to and did stenographically report the foregoing deposition; and that the transcript is a true record of the testimony given by the witness; that the witness did not waive reading and signing.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in this action.

Gina Hawkins
Registered Professional Reporter

Wierzbicki & Stephenson Court Reporting Service