128

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 3 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, ET AL | { | JURY DEMANDED |
| and | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, ET AL | { | |
| and | { | |
| RAUL RODRIGUEZ | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN, ET AL | { | |

## DEFENDANT'S SUPPLEMENTAL BRIEF IN
## SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant CITY OF HARLINGEN and files this its

**SUPPLEMENTAL BRIEF IN SUPPORT OF SECOND MOTION FOR SUMMARY**

**JUDGMENT**, and would respectfully show the Court as follows:

I.

Based on considerably different facts from this case, a 5th Circuit panel recognized and

applied the "state created" danger doctrine to reverse summary judgment in favor of the

defendant police officer, but affirmed as to the defendant city. *McClendon v. City of Columbia*, ___ F.3d ___, 2001 WL 776813 (5th Cir. July 26, 2001). The court found facts sufficient to invoke the "state created" danger exception to *DeShaney*[1] as to the individual officer based upon his personal conduct, but the court held the "state created" danger claim was not applicable to the city because there was no evidence of a custom or a policy adopted with deliberate indifference. This holding establishes how far the Salinas, et al. Plaintiffs fall short on their claims against Defendant City of Harlingen.

## II.

Briefly, a 5th Circuit panel applied the "stated created" danger doctrine in the context of a police officer who deliberately gave a handgun to an informant to "protect" the informant from the plaintiff, knowing the informant had no other weapon available and knowing the immediate risk to the plaintiff. 2001 WL 776813, *1, 4. Loftin, a confidential informant for Officer Carney, had loaned his handgun to someone who then shot McClendon's cousin. *Id.* at *1. The police seized Loftin's gun in connection with that offense, so that he no longer had one. *Id.* at *1. The shooting provoked a quarrel between McClendon and Loftin; when the quarrel was at a boiling point, Loftin approached Officer Carney for a gun for "protection" because he was worried about the possibility of violence with McClendon. *Id.* at *1, 4. Carney admitted he knew of threats between the two and that Loftin had no other gun. *Id.* at *1, 4. Knowing this, he gave Loftin a gun that was evidence in another case. *Id.* at *4.

___

[1] *DeShaney v Winnebago County Soc Serv*, 489 U S. 189 (1989).

As to Officer Carney, the court concluded that the facts supplied the elements of the cause of action missing in earlier cases. *Id.* at *4.

First, there was a deliberate, intentional entrustment of the gun to the shooter, satisfying the requirement of affirmative conduct. *Id.* at *4. That is missing in this case. R.D. Moore did not hand his son the rifle, nor did he give him permission to take it. At its best, Plaintiffs' case is that he stored the rifle where his son could take it without permission.

Second, Officer Carney knew Loftin was involved in a violent dispute with McClendon and wanted the gun to "protect" himself from McClendon threats of violence. *Id.* at *4. Thus, when he acted, Officer Carney knew of a risk of immediate harm to a specific person, as required by *Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999). That is missing in this case. When R.D. Moore stored the rifle in the gun safe, he knew nothing of the events that would occur on July 6-7, 1998. Before Plaintiffs came to his house, Ernest had already seized the HPD rifle and R.D. Moore had warned the first CCSD deputy on the scene of the risk of harm.

Third, Officer Carney knew Loftin had no other guns available, thereby fulfilling the requirement that the officer create an opportunity for the third party to commit a crime that otherwise did not exist. *Id.* at * 4. That is missing in this case. The gun safe contained numerous privately owned guns, including an AR-15, a SKS, and an M-1 carbine, as well as ammunition for each of these semi-automatic rifles; which rifles, Ernest had used and was proficient with and were equally capable of inflicting death and injury.

Finally, the 5th Circuit noted that Officer Carney offered no evidence that he did not affirmatively place McClendon into a position that stripped him of the ability of self-defense or cut off McClendon's potential sources of private aid. *Id. at *3; see, Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997), *cert. denied,* 525 U.S. 822 (1998). The record in *McClendon* was silent about what occurred after Carney loaned Loftin the handgun or how the shooting occurred. Here, there is abundant evidence. No Harlingen official requested Plaintiffs go to the Moore residence. The law enforcement team knew they were in the vicinity of a homicidal person, who was armed with a high-powered rifle and might shoot them. All came armed. They came knowing the risk of harm in order to capture Ernest, not because they were ignorant of the risk or had no other choice.

## III.

Moreover, the panel sustained summary judgment for the City of Columbia, finding there was no evidence it adopted any policy or custom with deliberate indifference. *Id.* at *7-8. McClendon alleged that the City's policies were (1) a custom of letting officers keep evidence in their offices, and (2) a failure to train officers on proper dealings with informants, particularly after the chief of police became aware that Loftin was implicated in the first shooting. *Id.* at * 7, 8. The 5th Circuit affirmed summary judgment on the first ground because the evidence showed it was only an isolated incident, not a custom. *Id.* at * 7.

The failure to train theory failed because McClendon could not show any such policy was the result of deliberate indifference. A claimant proves deliberate indifference by

showing either (1) the City consciously chose to not train officers after being on notice that its current regimen had failed to prevent misconduct and injuries; or (2) a single incident with proof of the possibility of recurring situations that presents an obvious potential for violations of constitutional rights and the need for training. *Id.* at *7, 8; *Conner v. Travis County*, 209 F.3d 794, 797 (5th Cir. 2000); *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000), *en banc reh. denied*, 211 F.3d 127 (5th Cir. 2000).

Proof of a single instance of misconduct resulting in harm is generally insufficient to prove deliberate indifference. *McClendon, * 8; Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998), *cert. dism'd by agreement*, 526 U.S. 1083 (1999). The fact that there are no other instances of harm undercuts the deliberate indifference claim. *Conner*, 209 F.3d at 797. The 5th Circuit has found the "single instance" theory viable only where there is a complete failure to provide any training on any subject to an inexperienced officer with a record of recklessness. *McClendon, *8 citing Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000). It must be obvious the failure to train would lead to injury; this stringent standard requires unmistakable culpability and clearly connected causation. *Id.* at *8. The failure to train officer Carney on a specific subject did not meet this rigorous standard. *Id.* Likewise, McClendon failed to show that the police chief's failure to act when informed Loftin was implicated in an earlier shooting caused Officer Carney to loan a gun to Loftin. *Id.* at *8.

Plaintiffs' Responses (Raul Rodriguez and Salinas, et al. and Rodriguez, e t al., pp. 30 and 33 respectfully), specifically identify only two "policies" as the moving force that caused the shooting: (1) a policy of not destroying weapons intending for destruction, and (2) a

policy of permitting officers to take weapons home to store them. Their first argument fails for the same reason as did McClendon's first argument. There is no widespread practice of officers failing to destroy weapons turned in to HPD for destruction.

Their second policy (as well as arguments about assigning the AR15 to Moore) fails because they do not show the decision was made with deliberate indifference. There are no prior instances of officers being assigned weapons who then allowed third parties to take them and injure others. HPD had only four rifles. Def. Exh. E, p. 37 (l. 14-24). Capt. Vasquez and Moore were to only officers issued such rifles. Def. Exh. E. pp. 27 (l. 18) - 28 (l. 7), 45 (l.5-9)

The policies further fail under the "single incident" theory because: (1) Scheopner did not know, until after the incident, that Mrs. Pirtle said she wanted the rifle destroyed, Exh. E, p. 48 ( l. 10) - p. 49 ( l. 21); and (2) Moore was proficient in firing the rifle and had no history of recklessness with weapons. Def. Exh. E, pp. 32(6) - 33 (l. 12), 34 (l. 8) - 35 (12), 158 (l.19) - 159 (l. 12); Pltf Exh. F, p. 131 (l. 13-20). The same reasons defeat the claimed failures to train about properly safeguarding rifles or to comply with TECLOS to prove annually on a firing range accuracy in firing the rifle. These are specific subjects; a failure to train on a limited subject is usually insufficient culpable conduct under a "single incident" theory. *Id.* at *8. The record bears this out. Scheopner believed Moore and Vasquez were sufficiently experienced to know not to let civilians or family members use the rifles. Def. Exh. E, p. 39 (l. 13-19). He would not have approved of such personal use of the rifle. Pltf Exh. A, p. 69 (l. 8) - 70 (l. 6). HPD officers met TECLOS annual proof as to handguns and

shotguns, but not rifles, because the only firing range available to them did not meet regulations for firing rifles.  Pltf Exh. E.

## IV.

Finally, nothing in *McClendon* affects Defendant Harlingen's arguments that there is no evidence of proximate cause for the federal or state law claims.

## V.

The recent *McClendon* opinion, as applied to the facts of this case, compels the conclusion that the elements necessary to apply the doctrine of "state created" danger to the City of Harlingen are missing, as established in the summary judgment record.

Respectfully submitted,

By: _____

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant,
CITY OF HARLINGEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this _30_ day of July, 2001, to the following counsel of record and interested parties:

Attorneys-in-Charge for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

Mr. Broadus A. Spivey                    **Via Facsimile: (512) 474-1605**
**SPIVEY & AINSWORTH, P.C.**             **CMRRR 7099 3400 0018 1886 4396**
48 East Avenue
Austin, Texas  78701-4320

Attorney-in-Charge for Plaintiff, RAUL RODRIGUEZ:

Ms. Sonia Lopez                          **Via Facsimile: (956) 381-0825**
**LAW OFFICES OF RAMON GARCIA, P.C.**
222 West University Drive                **CMRRR 7099 3400 0018 1886 4389**
Edinburg, Texas  78539

TOM LOCKHART