United States District Court
Southern District of Texas
FILED

SEP 1 2 2001

Michael N. Milby
Clerk of Court

145

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| vs. | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| RAUL RODRIGUEZ | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiffs Gilberto M. Rodriguez, Individually and on Behalf of his minor Daughter, Megan Suzanne Rodriguez and the Estate of his Wife Susan Lynn Rodriguez, deceased; Stephen L. Williams and Robyn S. Williams, Surviving Parents of Susan Lynn Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, Individually and on Behalf of the Estate of their Son Ricardo Guillermo Salinas, deceased; and Raul Rodriguez file this reply to Defendant's Response to Plaintiffs' Motion for Reconsideration of Partial Summary Judgment and Memorandum in Support thereof.

## I. Introduction

On August 6, 2001, this Court granted in part the Defendant's Motion for Summary Judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive due process cause of action under the state created danger theory on the ground that the Defendant City of Harlingen did not legally cause the Plaintiffs' injuries. On August 16, 2001, pursuant to Fed. R. Civ. P. 59(e), Plaintiffs filed a motion for reconsideration and asked the Court to withdraw the partial summary judgment and to deny Defendant's Motion for Summary Judgment in all respects on the newly discovered evidence, Julie Cox's testimony. On August 29, 2001, Defendant filed its response to Plaintiffs' motion.

In the response, Defendant objected to Julie Cox's Affidavit on the grounds that Ms. Cox "does not affirmatively show that she has personal knowledge and is competent to testify about (a) which AR-15 Ernest Moore used in the shootings; and (b) which AR-15 Ernest Moore had used on prior occasions." (See Response at 3).

## II. Reply

Ms. Cox has personal knowledge and is competent to testify that the rifle used by Ernest Moore in the shooting resulting in the death of Border Patrol Agents Susan Rodriguez and Ricardo Salinas and causing serious injuries to Cameron County Deputy Sheriff Raul Rodriguez is the same rifle she observed him possessing and shooting on previous occasions. At the time of her interview, Ms. Cox was provided with a photograph of the rifle in question. See Ms. Cox's Affidavit, which is attached hereto as Exhibit "A" and incorporated herein for all purposes.

Defendant argues that there were two AR-15 rifles and Ms. Cox might not be able to distinguish between the two, one of which was privately owned by the Moores. The argument is without merit. Even though both are AR-15 weapons, they were made by different manufacturers. The one used by Ernest Moore in the shooting is an Olympic Arms and the one owned by R. D. Moore is a Colt AR-15. Ms. Cox definitively can identify the rifle used in the shooting because she lived with the Moores for about one year (see R. D. Moore's deposition at p. 77, l. 20-23, Exhibit "B") and saw Ernest use it many times (see Ms. Cox's Affidavit, Exhibit "A"). On the contrary, the Colt AR-15 was purchased by R. D. Moore from Captain Vasquez on June 9, 1998. (See Captain

Vasquez's deposition at p. 49, l 12-20, last two pages of Exhibit 7, Exhibit "C"). Ms. Cox moved out of R. D. Moore's house about two weeks prior to the shooting on July 7, 1998. (see R. D. Moore's deposition at p. 77, l. 7-19, Exhibit "B"). The evidence supports Ms. Cox's testimony that "the gun seen in the photograph is the same gun Ernest had used many times before." (see Ms. Cox's Affidavit, Exhibit "A").

The Court should consider the new evidence and grant the relief requested by this motion because the newly discovered evidence rebuts the Defendant's assertion that Ernest Moore randomly selected the gun in question from the gun cabinet in his room on the day of the shootings. The testimony of Ms. Cox clearly shows that the gun in question was the gun Ernest Moore intended to use for the killings. The evidence also shows that had the rifle in question not been in Ernest Moore's possession, Border Patrol Agents Rodriguez and Salinas and Deputy Sheriff Rodriguez may not have had to face the same level of danger that they faced on the morning of the shooting because Ernest Moore may not have had access to a gun to kill Agents Rodriguez and Salinas and injure Deputy Rodriguez. The Court will recall that the City has offered no evidence that indicates that a witness observed Ernest Moore going to the gun cabinet on the morning of the shooting. Certainly Ms. Cox's testimony raises genuine issues of material fact concerning the proximate cause determination that was the fulcrum of the Court's pretrial summary judgment.

For the reasons set forth in Plaintiffs' motion for reconsideration of the partial summary judgment and this reply, Plaintiffs' motion for reconsideration of the partial summary judgment should be granted because the newly discovered evidence raises genuine issues of material fact regarding whether or not the City's failure to maintain a safe weapons handling policy was a proximate cause of the wrongful deaths and injuries made the basis of this suit.

### III. Prayer

WHEREFORE premises considered, Plaintiffs pray that this Honorable Court:

  A. Grant this Motion for Reconsideration of the Court's Partial Summary Judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive due process cause of action;

B.  Withdraw the partial summary judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive due process cause of action;

C.  Deny the partial summary judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive due process cause of action; and

D.  Grant any and all further relief that justice required.

Respectfully submitted,

SPIVEY & AINSWORTH
48 East Avenue
Austin, Texas 78701-4320
512-474-6061
512-474-1605 (fax)

By: _____
BROADUS SPIVEY
State Bar No. 00000076
Federal I.D. No. 11146
PRICE AINSWORTH
State Bar No. 00950300
Federal I.D. No. 8065
FRANCIS PAN
State Bar No. 15443300
Federal I.D. No. 26385

RICHARD PENA
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747
512-327-6884
512-327-8354 (fax)

**ATTORNEYS–IN–CHARGE FOR PLAINTIFFS ARTURO G. SALINAS, ET AL AND GILBERTO M. RODRIGUEZ, ET AL**

```
                    LAW OFFICE OF RAMON GARCIA, P.C.
                    222 West University Drive
                    Edinburg, TX 78539
                    956-383-7441
                    956-381-0825 (Fax)

         By:        _____
                    RAMON GARCIA
                    State Bar No. 07641800
                    Federal I.D. No. 3936
                    SONIA I. LOPEZ
                    State Bar No. 24003862
                    Federal I.D. No. 23501
```

**ATTORNEYS-IN-CHARGE FOR PLAINTIFF RAUL RODRIGUEZ**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on September 12, 2001, to counsel of record for Defendant via U.S. mail:

Mr. Tom Lockhart
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429

ATTORNEYS FOR DEFENDANT CITY OF HARLINGEN

_____
SONIA I. LOPEZ

STATE OF TEXAS § 
§ 
COUNTY OF HIDALGO §

# AFFIDAVIT

Before me, the undersigned notary, on this day personally came and appeared JULIE LYNN COX, to me well known, and who, after being by me duly sworn did say:

"My name is Julie Lynn Cox. I am over the age of 21 years, and am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

On July 7, 1998, I was at 311 Catherine Street in Rio Hondo, Texas, with the Morin family. On that date, Ernest Moore appeared at the residence and shot and killed Delia Morin and Margarita Flores.

I was Ernest Moore's girlfriend for at least a year prior to the shooting and had lived with him at his parents home in San Benito, Texas. The AR-15 semi-automatic gun that was used to kill the two Border Patrol Agents and seriously injure a Cameron County Sheriff's Deputy on the morning of July 7, 1998, had been utilized by Ernest Moore many times before.

I am able to ascertain that the gun that Ernest used in the San Benito shooting was the same gun he had used before because I was provided with a photograph of the gun that had been used in the shootings by Ms. Sonia I. Lopez. The gun seen in the photograph is the same gun Ernest had used many times before.

Ernest Moore liked that gun and had in my presence shot the gun in front of his house and at my father's gun range. R.D. Moore allowed his son to use this gun on many occasions. Ernest would also carry this gun in a brown bag in his truck.

Further, Affiant sayeth not.

_Julie Cox_
JULIE LYNN COX

Sworn to and subscribed before me by Julie Lynn Cox on this the 6th day of September, 2001.

ADELITA GOMEZ
Notary Public
STATE OF TEXAS
My Comm Exp Apr 28, 2002

_Adelita Gomez_
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

PLAINTIFF'S EXHIBIT "A"

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                   BROWNSVILLE DIVISION

ARTURO GUILLERMO SALINAS   )(
AND ELISA HERNANDEZ        )(
HERRERA SALINAS            )(
                           )(
VS.                        )(  CIVIL ACTION NO. B-98-162
                           )(
CITY OF HARLINGEN, TEXAS,  )(
R.D. MOORE, AND            )(
JIM SCHEOPNER              )(
                           )(
        AND                )(
                           )(
GILBERTO M. RODRIGUEZ,     )(
INDIVIDUALLY AND ON        )(
BEHALF OF HIS MINOR        )(
DAUGHTER, MEGAN SUZANNE    )(
RODRIGUEZ, AND STEPHEN L.  )(
WILLIAMS AND WIFE, ROBYN   )(
S. WILLIAMS, SURVIVING     )(
BENEFICIARIES OF THE       )(
DECEASED                   )(
                           )(
VS.                        )(  CIVIL ACTION NO. B-98-163
                           )(
CITY OF HARLINGEN, TEXAS,  )(
R.D. MOORE, AND            )(
JIM SCHEOPNER              )(
                           )(
AND                        )(
                           )(
RAUL RODRIGUEZ             )(
                           )(
VS.                        )(  CIVIL ACTION NO. B-99-070
                           )(
CITY OF HARLINGEN,         )(
R.D. MOORE, AND            )(
JIM SCHEOPNER              )(

---------------------------------------------------
         ORAL DEPOSITION OF RALPH DWAYNE MOORE
                     MAY 23, 2000
                      VOLUME 2                COPY
---------------------------------------------------

   REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER

                   BRYANT & STINGLEY, INC.
      McAllen         Harlingen          Brownsv[ille]
   (956)618-2366   (956)428-0755      (956)542-
```



PLAINTIFF'S EXHIBIT "B"

13:20 1 illegally searched his room trying to find some drugs,
13:20 2 and found a short straw in one of her zipper purses,
13:20 3 which indicates to me that's possible drug use.
13:20 4     Q.  And is that when you -- I hate to use the
13:20 5 word -- confronted Ernest, but talked to Ernest about
13:20 6 it?
13:20 7     A.  And I told Ernest that after we had found the
13:20 8 straw that I wasn't going to condone any drug use in my
13:20 9 house, "Whether it was in your room or not, that I live
13:20 10 here and I'm a law enforcement officer, and I can't
13:20 11 condone it, or I'll have to, you know, take the proper
13:20 12 steps and throw her out, or either you get rid of her,
13:20 13 tell her to quit or get out, one or the other."
13:20 14     Q.  And do you know what happened as a result of
13:20 15 that conversation?
13:20 16     A.  He apparently told her to get out.
13:20 17     Q.  And when would that have been in connection
13:20 18 with the July 7th incident?
13:21 19     A.  Probably two weeks prior.
13:21 20     Q.  Okay.  How long had they lived together at that
13:21 21 time?
13:21 22     A.  Like I say, somewhere between eight months and
13:21 23 a year, somewhere in that area.
13:21 24     Q.  And had all that time they lived in that room
13:21 25 in your house?

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3   ARTURO GUILLERMO SALINAS    )(
     AND ELISA HERNANDEZ         )(
 4   HERRERA SALINAS             )(
                                 )(
 5   VS.                         )(  CIVIL ACTION NO. B-98-162
                                 )(
 6   CITY OF HARLINGEN, TEXAS,   )(
     R.D. MOORE, AND             )(
 7   JIM SCHEOPNER               )(
                                 )(
 8          AND                  )(
                                 )(
 9   GILBERTO M. RODRIGUEZ,      )(
     INDIVIDUALLY AND ON         )(
10   BEHALF OF HIS MINOR         )(
     DAUGHTER, MEGAN SUZANNE     )(
11   RODRIGUEZ, AND STEPHEN L.   )(
     WILLIAMS AND WIFE, ROBYN    )(
12   S. WILLIAMS, SURVIVING      )(
     BENEFICIARIES OF THE        )(
13   DECEASED                    )(
                                 )(
14   VS.                         )(  CIVIL ACTION NO. B-98-163
                                 )(
15   CITY OF HARLINGEN, TEXAS,   )(
     R.D. MOORE, AND             )(
16   JIM SCHEOPNER               )(
                                 )(
17   AND                         )(
                                 )(
18   RAUL RODRIGUEZ              )(
                                 )(
19   VS.                         )(  CIVIL ACTION NO. B-99-070
                                 )(
20   CITY OF HARLINGEN, R. D.    )(
     MOORE, AND JIM SCHEOPNER    )(              COPY
21   ----------------------------------------------------
22          ORAL DEPOSITION OF JOSEPH BENNETT VASQUEZ
                       MAY 14, 2001
23   ----------------------------------------------------
24   REPORTED BY MAUREEN STINGLEY, CERTIFIED COURT REPORTER
25
```

                         BRYANT & STINGLEY, INC.
              McAllen         Harlingen         Brownsville
           (956)618-2366   (956)428-0755   (956)542-1___



PLAINTIFF'S EXHIBIT "C"

```
14:33  1   have the scope were the Mini 14 and the AR-15; is that
14:33  2   right?
14:33  3        A.   Yes.
14:33  4        Q.   And those were the two that were under --
14:33  5        A.   Detective Moore.
14:33  6        Q.   -- Detective Moore?
14:33  7        A.   In his custody.  The chief placed them in his
14:33  8   office.
14:33  9        Q.   And the two Remingtons --
14:33 10        A.   Were in my office.
14:33 11        Q.   -- were in your office.  Now, did the other
14:33 12   Remington have a scope on it?
14:33 13        A.   Yes, sir.
14:33 14        Q.   And did you tell me the caliber on that one?
14:33 15        A.   .243 Winchester.  That's the caliber.
14:34 16        Q.   And both the 30.06 and the .243 had scopes?
14:34 17   I think I asked that.
14:34 18        A.   Yeah, those two in my office had scopes.
14:34 19        Q.   Okay, I was wondering what this is.  This is an
14:34 20   Agreed Judgment in the State of Texas vs. Guadalupe
14:34 21   Perales, it looks like, and we have marked it as
14:34 22   Exhibit No. 6.  Can you tell me what that is?  Is that
14:34 23   how this other Remington came in?
14:34 24        A.   Yes.  Right down here at the bottom, one
14:34 25   Remington .243 rifle, serial No. 8254826.  It was
```

OMB NO. 1512-0129

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**FIREARMS TRANSACTION RECORD PART I - OVER-THE-COUNTER**

TRANSFEROR'S TRANSACTION SERIAL NUMBER

NOTE: Prepare in original only. All entries on this form must be in ink. See Important Notices, Definitions and Instructions.

## SECTION A - MUST BE COMPLETED PERSONALLY BY TRANSFEREE (BUYER)

1. TRANSFEREE'S (Buyer's) NAME (Last, First, Middle): Moore, Ralph Dwayne
   ☑ MALE  ☐ FEMALE
2. HEIGHT: 5'11"
3. WEIGHT: 190
4. RACE: White
5. RESIDENCE ADDRESS: Cameron, Co. Rt 1 Box 297 San Benito TX 78586
6. DATE OF BIRTH: MONTH 12 DAY 2 YEAR 46
7. PLACE OF BIRTH (City): Harlingen   STATE OR FOREIGN COUNTRY: TX

8. CERTIFICATION OF TRANSFEREE (Buyer) - Questions a. through l. must be answered with a "yes" or a "no" inserted in the box at the right of the question.

   a. Are you the actual buyer of the firearm indicated below? If you answer no to this question the dealer cannot transfer the firearm to you. (See Important Notice 1.) — Yes
   b. Are you under indictment or information in any court for a crime for which the judge could imprison you for more than one year? An information is a formal accusation of a crime made by a prosecuting attorney. — No
   c. Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence? (See Important Notice 3 and EXCEPTION.) — No
   d. Are you a fugitive from justice? — No
   e. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? — No
   f. Have you ever been adjudicated mentally defective or have you been committed to a mental institution? — No
   g. Have you been discharged from the Armed Forces under dishonorable conditions? — No
   h. Are you an alien illegally in the United States? — No
   i. Have you ever renounced your United States citizenship? — No
   j. Are you subject to a court order restraining you from harassing, stalking, or threatening an intimate partner or child of such partner? (See Important Notice 4 and Definition 4.) — No
   k. Have you been convicted in any court of a misdemeanor crime of domestic violence? This includes any misdemeanor conviction involving the use or attempted use of physical force committed by a current or former spouse, parent, or guardian of the victim or by a person with a similar relationship with the victim. (See Important Notice 5 and Definition 5.) — No
   l. Are you a citizen of the United States? — Yes

   m. What is your State of residence? Texas
   If you are not a citizen of the United States, you have a State of residence only if you have resided in the State for at least 90 days prior to the date of this sale. (See Definition 6.)

I CERTIFY THAT THE ABOVE ANSWERS ARE TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO ANSWERS "YES" TO ANY OF THE QUESTIONS 8b THROUGH 8k IS PROHIBITED FROM PURCHASING OR POSSESSING A FIREARM. I ALSO UNDERSTAND THAT THE MAKING OF A FALSE ORAL OR WRITTEN STATEMENT OR THE EXHIBITING OF ANY FALSE OR MISREPRESENTED IDENTIFICATION WITH RESPECT TO THIS TRANSACTION IS A CRIME PUNISHABLE AS A FELONY. I FURTHER UNDERSTAND THAT MY REPETITIVE PURCHASE OF FIREARMS FOR THE PURPOSE OF RESALE FOR LIVELIHOOD AND PROFIT WITHOUT A FEDERAL FIREARMS LICENSE IS A VIOLATION OF LAW. (SEE IMPORTANT NOTICE 6)

TRANSFEREE'S (Buyer's) SIGNATURE: RD Moore   DATE: 6-9-98

## SECTION B - TO BE COMPLETED BY TRANSFEROR (SELLER)

THE PERSON DESCRIBED IN THIS SECTION HAS IDENTIFIED HIMSELF/HERSELF TO ME IN THE FOLLOWING MANNER:

9. TYPE OF AND NUMBER ON IDENTIFICATION (Driver's license or identification which shows name, date of birth, place of residence, and signature. Purchasers who are aliens must provide a valid government-issued photo identification. See Instructions to Transferor 1 and 2).
   Tex DL 04073289
10. TYPES AND DATES OF ADDITIONAL IDENTIFICATION REQUIRED FOR ALIENS (e.g., utility bills or lease agreements. See Instruction to Transferor 2).

On the basis of (1) the statements in Section A; (2) the verification of identity noted in Section B; and (3) the information in the current list of Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s), described below and on the back, to the person identified in Section A.

| 11. TYPE (Pistol, Revolver, Rifle, Shotgun, etc.) | 12. MODEL | 13. CALIBER OR GAUGE | 14. SERIAL NO. | 15. MANUFACTURER (and importer, if any) |
|---|---|---|---|---|
| 1. Rifle | Sporter | .223 | MH014141/17141 | Colt |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

EXHIBIT NO. 7  5-14-01  Vasquez  Maureen Singley

Complete ATF F 3310.4 for multiple purchases of handguns (See Instruction to Transferor 7.)

16. TRADE/CORPORATE NAME AND ADDRESS OF TRANSFEROR (Seller) (Hand stamp may be used.)
    JOSEPH B. VASQUEZ
    412-7571
    212 E. JACKSON, HARLINGEN, TEXAS 78550

17. FEDERAL FIREARMS LICENSE NO. (Hand stamp may be used.)
    JOSEPH B. VASQUEZ
    412-7571
    212 E. JACKSON, HARLINGEN, TEXAS 78550
    FFL 5-74-031-01-0J-38500

THE PERSON ACTUALLY MAKING THE FIREARMS SALE MUST COMPLETE ITEMS 18 THROUGH 20.

18. TRANSFEROR'S (Seller's) SIGNATURE: Joseph B Vasquez
19. TRANSFEROR'S TITLE: Owner
20. TRANSACTION DATE: 6-9-98

ATF F 4473 (5300.9) PART I (4-97) PREVIOUS EDITIONS ARE OBSOLETE

| | | | |
|---|---|---|---|
| CUSTOMER'S ORDER NO. 27571 | | DATE | 6-7-96 |

JOSEPH E. VASQUEZ
212 E. JACKS - HARLINGEN, TEXAS 78550
FFL 5-74-031-01-0J-38500

**NAME:** R. D. Moore
**ADDRESS:**
**CITY, STATE, ZIP:** Harlinger Police Dept.

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT | MDSE RETD | PAID OUT |
|---|---|---|---|---|---|---|

| QUAN. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | | | |
| 2 | 1 Colt Sporter | | 900.00 |
| 3 | #MH044174 | | |
| 4 | | | |
| 5 | | | |
| 6 | Tax | | 74.25 |
| 7 | | | |
| 8 | | | |
| 9 | | | 974.25 |
| 10 | | | |
| 11 | | | |
| 12 | | | |

RECEIVED BY

RDC4705

**KEEP THIS SLIP FOR REFERENCE**
ORIGINAL

ClibPDF - www.fastio.com