*146*

United States District Court
Southern District of Texas
ENTERED

OCT 1 8 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Arturo Guillermo Salinas, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-98-162 |
| | § | (consolidated with B-98-163 and B-99-70) |
| City of Harlingen, | § | |
| | § | |
| Defendant. | § | |

## ORDER

BE IT REMEMBERED that on October 18, 2001, the Court, having considered the Plaintiffs' Motion for Reconsideration of Partial Summary Judgment and Memorandum in Support Thereof [Dkt. No. 141], the Defendant City of Harlingen's Response to Plaintiff's Motion for Reconsideration of Partial Summary [Judgment] and Brief in Support Thereof [Dkt. No. 144], and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Reconsideration of Partial Summary Judgment and Memorandum in Support Thereof [Dkt. No. 145], **GRANTED** the Plaintiffs' Motion for Reconsideration of Partial Summary Judgment, **WITHDREW** the Partial Summary Judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive due process cause of action, and **DENIED** Defendant's Motion for Summary Judgment.

I.    Facts and Procedural Background

This case arises out of the tragic murders of Border Patrol Agents Susan L. Rodriguez and Ricardo Salinas and the wounding of Cameron County Sheriff Deputy Raul Rodriguez on July 7, 1998. The three victims were shot by Ernest Moore (E. Moore) in front of the house he shared with his father, R.D. Moore, as the victims were in the process of effecting a manhunt for E. Moore. E. Moore shot the officers with an AR 15 semi-automatic rifle which had been turned in to the Harlingen Police

1

CMsPDF - www.fesfa.com

Department by a private citizen for destruction.  Instead of destroying the gun, however, the Harlingen Police Department allowed R.D. Moore, a Harlingen Police Officer, to keep it in his home.  E. Moore kept the gun, along with other privately owned weapons, in a gun safe in E. Moore's bedroom.

The Plaintiffs, whose cases were consolidated in May 2000 [B-98-162 Dkt. No. 45; B-98-163, Dkt. No. 45; B-99-70, Dkt. No. 39], filed a 42 U.S.C. § 1983 claim against the City of Harlingen[1] for a violation of their Fourteenth Amendment substantive due process rights under the state created danger theory.  On August 2, 2001, this Court granted Summary Judgment in favor of the Defendant City of Harlingen on the issue of whether the City's deliberately indifferent failure to maintain a state weapons handling policy proximately caused the deaths and injuries on which this action is based. The partial summary judgment held, in relevant part, that: 1) there is no evidence to indicate that it was anything but happenstance that E. Moore selected a City-owned weapon instead of one of his own weapons in the gun safe in his bedroom; and
2) the Defendant City of Harlingen did not strip Agents Rodriguez and Salinas and Deputy Rodriguez of their ability to defend themselves or cut off potential sources of private aid. [See Dkt. No. 134 at 28].

On August 16, 2001, Plaintiffs moved for Reconsideration of Partial Summary Judgment ("Motion for Reconsideration") pursuant to Rule 59(e) [Dkt. No. 141].  The sole basis for the motion is newly discovered evidence, namely, the testimony of E. Moore's former girlfriend, Julie Cox.  See Motion for Reconsideration, Exh. "A" (Cox Affidavit A").  Plaintiffs maintain that Cox's testimony refutes the City of Harlingen's assertion that E. Moore randomly selected the gun on the day of the shootings. Specifically, Plaintiffs maintain that Cox Affidavit A "raises genuine issues of material fact regarding whether or not the City's failure to maintain a state weapons handling

---

[1]      Claims against the other Defendants, R.D. Moore and Jim Schoepner, were dismissed pursuant to the parties' agreed motion. [Dkt. No. 61]

2

CMPDF - www.texis.com

policy was a proximate cause of the wrongful deaths and injuries made the basis of this suit." See Plaintiffs' Motion for Reconsideration at 4;  Fed. R. Civ. P. 56.  Cox Affidavit A states that a) Cox was E. Moore's girlfriend for at least a year prior to the shootings; b) she lived in R.D. Moore's house with E. Moore for about a year; c) E. Moore had used the weapon in question many times before; d) E. Moore liked that gun; e) E. Moore had shot the gun in her presence both in front of R.D. Moore's house and at Cox's father's gun range; f) R.D. Moore allowed his son to use the gun on many occasions; and g) E. Moore carried the gun in a brown bag in his truck. [See Cox Affidavit A].  After the City's Response to Plaintiffs' Motion for Reconsideration, Cox was again interviewed by Lopez.  See Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Reconsideration of Partial Summary Judgment and Memorandum in Support Thereof, Exh. "A" ("Cox Affidavit B").[2]

Plaintiff now asks that the Court 1) grant the Motion for Reconsideration; 2) withdraw the partial summary judgment as to Plaintiffs' 42 U.S.C. §1983 Fourteenth Amendment substantive due process cause of action; 3) deny the partial summary judgment as to Plaintiffs' 42 U.S.C. §1983 Fourteenth Amendment substantive due process cause of action; and 4) grant any and all further relief that justice requires.

II    Standard of Review

The Federal Rules of Civil Procedure do not provide for a "Motion for Reconsideration" in *haec verba*." See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990). "In the context of a 'reconsideration' of a grant of summary judgment, the court of appeals in Lavespere found that a motion 'so denominated' should be treated as either a motion 'to alter or amend' under Fed. R. Civ. P. 59(e) or a motion for 'relief from judgment' under Rule 60(b).  If such a motion is filed within ten days of entry of judgment, it is considered under Rule 59(e); if filed after

---

[2]       See note 5, infra.

3

CutePDF - www.fastio.com

that time, the motion is considered under Rule 60(b). " Lavespere, 910 F.2d at 173.
Since this motion was filed within ten days of the entry of summary judgment,[3] the Court
considers it under Rule 59(e).

A moving party must satisfy at least one of the following criteria to prevail on a
Rule 59(e) motion: 1) the motion is necessary to correct a manifest error of fact or law;
2) the movant presents newly discovered or previously unavailable evidence; 3) the
motion is necessary in order to prevent manifest injustice; and 4) the motion is justified
by an intervening change in the controlling law. See Fields v. Pool Offshore, 1998 WL
43217, *2 (E.D. La. Feb. 3, 1998) aff'd, 182 F.3d 353 (5th Cir. 1999). The Court has
considerable discretion in ruling on a Rule 59 motion. See Wallace v. Texas Tech.
Univ., 80 F.3d 1042, 1052 (5th Cir. 1996). The Court also has a duty to strike a balance
between the need to bring the litigation to an end and the need to render a just decision
on the basis of the facts. See Lavespere, 910 F.2d at 174. Although there is no Fifth
Circuit authority on the granting of a Rule 59 motion based on previously unavailable
evidence, there is authority that applies the first element of the second basis for
granting a Rule 59 motion. A Rule 59 motion may be granted on the basis of newly
discovered evidence if "1) the facts discovered are of such a nature that they would
probably change the outcome;[4] 2) the facts alleged are actually newly discovered and
could not have been discovered earlier by proper diligence; and 3) the facts are not
merely cumulative or impeaching." See Farm Credit Bank of Texas v. Guidry, 110 F.3d
1147, 1154 (5th Cir. 1997).

III    The City's Objections to Admissibility

Under Rule 56(e), affidavits must be "made on personal knowledge, shall set
forth such facts as would be admissible in evidence, and shall show affirmatively that

---

[3]    From August 2- August 16, only ten days passed for purposes of time
computation under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6.

[4]    A discussion of this prong of the standard is contained in footnote 9, infra.

4

the affiant is competent to testify to the matters stated therein." Diaz v. Methodist
Hosp., 46 F.3d 492, 495 (5th Cir. 1995). The City of Harlingen objects to Cox's first
affidavit[5] as well as attorney Sonia Lopez's affidavit[6] on grounds of personal knowledge,
admissibility (hearsay) and competence to testify about the matters contained in the
affidavit.

A.    Personal Knowledge and Competence

In her first affidavit, Cox states that "the AR 15 semi-automatic gun that was
used to kill the two Border Patrol Agents and seriously injure a Cameron County
Sheriff's Deputy on the morning of July 7, 1998 had been utilized by Ernest Moore
many times before. He liked that gun . . ." Cox Affidavit A. Cox states in her second
affidavit, given September 6, 2001, that she was able to ascertain that the gun used in
the shootings was the same gun she had observed in E. Moore's possession because
during her interview attorney Lopez provided her with a photograph of the gun. See
Cox Affidavit B.  The City of Harlingen objects to Cox's affidavit on the grounds that it
does not affirmatively show that she has personal knowledge and is competent to
testify about which AR 15 rifle E. Moore used on prior occasions, and which AR 15
E. Moore used on the day of the shootings, since she was not present on that day.

The Court finds that Cox's Affidavits affirmatively show that her identification of
the weapon is based on her personal knowledge.  In her first and second affidavits, she

---

[5]      Cox's first affidavit, filed with the Motion for Reconsideration, is substantially the
same as Cox's second affidavit, which was filed with Plaintiff's Reply to Defendant's Response
to Plaintiffs' Motion for Reconsideration of Partial Summary Judgment, with one notable
exception.  The second affidavit, which the Court considers supplemental, states that the gun
Cox viewed in a photograph shown to her by Lopez is the same the gun she witnessed in his
possession many times before.

[6]      Lopez's Affidavit states that the factual allegations that form the basis for the
Plaintiffs' Motion for Reconsideration are true and correct.  Defendant objects to the declaration
by Lopez that Cox's testimony is true, because Lopez does not have personal knowledge and is
incompetent to testify to such matters.  To the extent that Lopez claims personal knowledge of
the truth of Cox's affidavit, the second paragraph of Lopez's affidavit is struck from the
summary judgment record.

states that she saw E. Moore shooting the gun on at least two occasions as well as carrying it in his truck. Cox Affidavit B states that Cox knows that the gun in the photograph is the one she previously saw in his possession. It is reasonable to infer that her identification is based on the personal knowledge she gained from the occasions she described in her affidavits. Her personal knowledge is thus demonstrated.[7]

B.    Inadmissible Hearsay

The City argues that any information Cox has regarding which rifle was used in the shootings is also necessarily based on inadmissible hearsay.[8] The Court notes that whether anyone told Cox that the rifle in the photograph is the same rifle used in the shootings is of no moment. Cox's testimony is not being offered to show which rifle was used in the shootings; it is being offered to show that E. Moore used a particular rifle frequently.

IV    The Motion for Reconsideration Based on Newly Discovered Evidence

A.    Due Diligence

Plaintiffs maintain that despite due diligence, they were unable to locate Cox before the partial summary judgment was issued. The burden is on the movant to show that despite due diligence, the evidence would not have been discovered. Diaz v. Methodist Hosp., 46 F.2d 492, 496 (5th Cir. 1995).

---

[7]    The City of Harlingen also objects to Cox's competence to distinguish the AR 15 rifle used in the shootings from the other AR 15, the SKS, the AK 47, or the M-1 rifles owned by the Moores. For the reasons outlined above, the Court finds that Cox has personal knowledge and is competent to testify as to which rifle she saw, and the City has offered no evidence to the contrary.

[8]    The City also argues that any information Cox has regarding which rifle she observed in E. Moore's possession is necessarily based on inadmissible hearsay– i.e., E. Moore or someone else telling her which rifle it was. See Defendant's Response to Plaintiff's Motion at 7. Having found that Cox's identification of the gun is based on personal knowledge, the Court rejects this argument. See Part IIIA supra.

In <u>Diaz</u>, the court held that the patient was not entitled to a new trial based on new evidence in the form of an affidavit which tended to negate defendants' claims on a central issue. Contrary to the patient's assertion that she had no reason to question the veracity of the defendants' claims, the court believed "a prudent litigant would independently investigate such a pivotal issue and be less than willing to adopt blindly the statements of the opposing party." <u>Id</u>. at 496. Largely for this reason, the court rejected appellant's argument that despite due diligence she was unable to elicit this testimony, especially in light of a five-year discovery period. <u>Id</u>.

Unlike <u>Diaz</u>, in which the plaintiff chose not to pursue a particular line of inquiry, Lopez's affidavit indicates that the attempts to locate and interview Cox were numerous and spanned "several months" but that they were unable to locate her. <u>See</u> Lopez Affidavit ¶ 3. Although the City points out that a Cameron County Sheriff's Department Investigator did manage to interview Cox on July 7, 1998 [Dkt. No. 100 Ex. L. p. 3], the very same day the shootings occurred, there is no evidence that she was available after that time, and Plaintiffs did not file their claim until November 11, 1998. The City's contention that "apparently [Cox] was available for deposition" is also unsupported by the record. <u>See</u> Defendant's Response to Plaintiffs' Motion. "Rule 59 requires a moving lawyer to be duly diligent, not a prophet." <u>Henley v. FMC Corp.</u>, 2001 WL 733110 (4th Cir. 2001). Although Plaintiffs have not supplied the Court with details of the attempts to contact Cox, the Court concludes that Plaintiffs' attorney's accounts of numerous and protracted attempts demonstrate the requisite due diligence.

B.   <u>Newly Discovered/ Previously Unavailable Evidence</u>

A Rule 59 motion should not be granted on the grounds of new evidence that could have been adduced while the summary judgment motion is pending. <u>See</u> <u>Publishers Res., Inc. v. Walker-Davis Publ'g, Inc.</u>, 762 F.2d 557, 561 (7th Cir. 1985). Newly discovered evidence is that which is truly newly discovered or could not have been found by due diligence. <u>See</u> <u>Atlantic States Legal Found. v. Karg Bros.</u>, 841 F. Supp. 51 (N.D.N.Y. 1993); <u>Wainwright v. Doria</u>, 65 F.3d 171 (7th Cir. 1995) (explaining

7

that "newly discovered" evidence actually means "not previously discoverable" evidence; not simply evidence which was not known before judgment).

As a general proposition, where evidence is offered which, while unknown to a party until after a judgment is granted, is uniquely within that party's control, the evidence is not considered newly discovered. See Becerra v. Asher, 921 F. Supp. 1538 (S.D. Tex. 1996) aff'd 105 F.3d 1042 (5th Cir. 1997); Thibodeaux v. Executive Jet Int'l, 2001 WL 845460 (E.D. La. 2001) (where the defendants offered new affidavits of people who had already submitted affidavits, the court held that "the information contained in the supplemental affidavits was available to Defendant when it first filed its Motion for Summary Judgment.")  In the instant case, unlike Becerra, the witness was not uniquely within any party's control.

Nor did Plaintiffs or their attorneys, through miscommunication or for some other reason, miscalculate the importance of the evidence or choose not to investigate it.  By way of example, where evidence is available to a party but is not communicated to the party's attorney, the evidence is not considered newly discovered. See Farm Credit Bank of Texas v. Guidry, 110 F.3d 1147, 1155 (5th Cir. 1997); Roach v. Stasstny, 104 F.2d 559, 562 (7th Cir. 1939); Diaz, 46 F.2d 492; but see Dupre v. Chevron, 930 F. Supp. 248 (E.D. La. 1996) vacated and remanded on other grounds 20 F.2d 154 (5th Cir. 1994) ("[Plaintiff] argues that she did not realize the importance of [a newly offered document although she did have access to it prior to the summary judgment].  While the plaintiff's showing is not a particularly strong one, the Court finds that it meets the lesser showing required under Rule 59(e).")

Unlike the plaintiffs in the cases listed above, Plaintiffs and their attorneys did not make a decision not to locate Cox and whatever testimony she may have.  To the contrary, understanding that Cox was a key witness in this proceeding, Plaintiffs made diligent efforts to locate her over a period of months.  There is every indication that Plaintiffs were interested in interviewing Cox.

8

The Court is also satisfied that Cox was "unavailable" within the meaning of the Rule. Plaintiffs have offered an adequate explanation for the unavailability of this evidence prior to summary judgment. See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658 n.1 (5th Cir. 1999) ("Matador's failure to explain why the evidence was not available prior to the district court's grant of summary judgment constitutes a valid basis for denying Matador's Motion for Reconsideration"). Lastly, the fact that Cox was interviewed by Plaintiffs within three days of her contacting Lopez supports Plaintiffs' position that her testimony was considered key.

## C.    Changed Outcome[9]

The City argues that "Cox's affidavit [Cox Affidavit A] does not require a different result on either of the two key conclusions [that Ernest Moore picked the gun as a matter of "happenstance" and that the City of Harlingen did not strip the victims of their ability to defend themselves or cut off sources of private aid]." Defendant's Response to Plaintiffs' Motion for Reconsideration of Partial Summary [Judgment] and Brief in Support Thereof ("Response to Plaintiffs' Motion"); see note 9 supra.

### i.    Happenstance

The City argues that the affidavit is merely cumulative of Plaintiffs' earlier argument that E. Moore had used the rifle before. [Dkt. No. 106, Plaintiffs' Response to

---

[9]     Defendants cite United States v. 41 Cases, 420 F.2d 1126, 1132 (5th Cir. 1970) for the proposition that "[t]he evidence must effectively require a different result." See Defendant's Response to Plaintiffs' Motion at 5. This standard appears slightly inconsistent with the afore-cited standard from Farm Credit Bank v. Guidry, 110 F.3d 1147, 1154 (5th Cir. 1997); p. 4, supra ("the facts discovered are of such a nature that they would *probably* change the result") (emphasis added). However, the Court notes that 41 Cases and Guidry both addressed motions for a new trial after a verdict. The Court acknowledges that in such cases, the creation of a fact question is insufficient to warrant a new trial, see 41 Cases at 1132, citing United States v. Articles of Drugs Labeled in part Quick-o-ver, 274 F. Supp. 443, 448 (D. Md. 1967), since the finder of fact has determined the facts during trial. In the present case, however, there has been no trial. For this reason, the Court finds that predicting the ultimate result after trial is inappropriate, and is outside the role of the Court. In a summary judgment context, the creation of a material issue of fact is sufficient for a grant of summary judgment to be reconsidered.

9

CutePDF - www.tesloa.com

Defendant's Second Motion for Summary Judgment p. 29; Dkt. No. 110 Plaintiff Raul Rodriguez's Response to Defendant's Motion for Summary Judgment p. 26]. The two documents to which the City refers the Court, however, are pleadings, not evidence. Cox's testimony stands alone as the <u>only</u> evidence from which it can be inferred that E. Moore's choice of weapon was just that– a deliberate choice– not happenstance. This issue is at the core of the proximate cause determination which was the basis for the granting of partial summary judgment for the Defendant. Because E. Moore died in the shootout that followed the murders, only circumstantial evidence is available for the fact finder to use in determining whether E. Moore's choice of weapon was a deliberate choice rather than happenstance. Due to the circumstantial nature of the evidence available, Cox's affidavits raise genuine issues of material fact as to proximate cause.

ii    <u>Ability to Defend/Sources of Private Aid</u>

Because there is a genuine issue of material fact as to whether the City's lack of a weapons policy created the danger and whether that policy was the cause of the incident, the consideration of whether the City's lack of policy stripped the victims of an opportunity to defend themselves or cut off sources of potential aid becomes secondary. In <u>Piotrowski v. City of Houston</u>, 237 F.3d 567 (5th Cir.) <u>reh'g en banc denied</u> 251 F.3d 1591 (5th Cir. 2001), the court considered whether the City of Houston increased the danger of harm to a victim when its agents assisted her assailant and his private investigator in harassing, intimidating, and eventually shooting her. The court reasoned that City did not violate the victim's due process rights by failing to protect her from the danger it created because the victim failed to show that the City <u>increased</u> the danger to her, since the assailant had attempted before, with no assistance from City employees, to kill her. <u>Piotrowski</u>, 237 F.3d at 584-85. In the instant case, however, a fact issue remains whether E. Moore's favorite rifle was City-owned, and whether his frequent possession and use of that <u>particular</u> weapon was a factor in his choice when he went on the shooting spree and which resulted in harm to the victims. Unlike <u>Piotrowski</u>, in which the perpetrator's intentions were signaled through other actions; i.e., that he would have attacked the victim through one means or another, in the

10

present case there is little to indicate whether E. Moore intended to use this weapon or randomly selected it. Therefore, the issue of whether the AR 15 was his preferred weapon also creates a material issue of fact as to whether the state's lack of weapons policy which allowed him access to this weapon increased the danger to the victims, or whether he would have gone on a shooting spree had he never possessed this gun. The Court therefore holds that there is a potential change in the outcome of the proceeding due to the creation of a material fact with regard to the first holding.

V.    Conclusion

In attempting to strike the proper balance between the need to bring the litigation to an end and the need to render a just decision on the basis of the facts, the Court should consider, among other things, 1) the reasons for the moving party's defaults; 2) the importance of the omitted evidence to the moving party's case; 3) whether the evidence was available to the nonmovant before the nonmovant responded to the summary judgment motion; 4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.   See Lavespere, 910 F.2d 174.

The Court concludes that the evidence, obtainable only through a previously absent witness, is central to Plaintiffs' case and no unfair prejudice is worked upon the City of Harlingen if the case is reopened. Had this case gone to trial, and this previously unavailable witness came forward during the trial despite not being on the witness list, it would have been within the Court's discretion to allow her to testify for purposes of avoiding manifest injustice, unless, for example, there was evidence that Plaintiffs were responsible for her unavailability. Fed. R. Civ. P. 37(c)(1); 8A Charles Alan Wright et al., Federal Practice and Procedure § 2289.1 (2d ed. 1994) (explaining that the automatic exclusion provision of Rule 37(c)(1) is ""softened by the proviso that it should not apply if the offending party's failure to disclose was 'substantially justified.'"). Using similar reasoning, it is not an abuse of this Court's discretion to grant the motion for reconsideration to allow Cox's testimony to be heard in order to avoid manifest injustice. See Fields, 1998 WL 43217, *2 (A rule 59(e) motion may be granted

11

to prevent manifest injustice). Therefore the Court holds that the affidavit, as newly discovered evidence, is grounds for vacating the summary judgment in that it creates a material issue of fact on whether the City created an opportunity that otherwise would not have existed for Ernest Moore to go on a shooting spree.  See Piotrowski, 237 F.3d at 576. Accordingly, the Motion for Reconsideration is hereby **GRANTED,** the partial summary judgment as to Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment substantive Due Process cause of action is **WITHDRAWN** and summary judgment for the Defendant is **DENIED.**

DONE at Brownsville, Texas, this 18th day of October, 2001.

Hilda G. Tagle
United States District Judge

12