

United States District Court
Southern District of Texas
FILED

JAN 1 0 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | CIVIL ACTION NO. B-98-162 |
| V. | { | JURY DEMANDED |
| CITY OF HARLINGEN | { | |
| and | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN | { | |
| and | { | |
| RAUL RODRIGUEZ | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN | { | |

**DEFENDANT'S REPLY IN SUPPORT OF RENEWAL AND SUPPLEMENTATION OF SECOND MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, **CITY OF HARLINGEN** ("Harlingen"), and files this its Reply in Support of Renewal and Supplementation of Second Motion for Summary Judgment and would show the Court as follows:

# I.

## NO EVIDENCE OF DELIBERATE CHOICE

Based on Julie Cox's deposition the Plaintiffs do not and cannot offer evidence that Ernest Moore's choice of the HPD Olympic Arms weapon was a deliberate choice and not happenstance.

Plaintiffs admit that Julie Cox photo Exh. No. 1 is the HPD Olympic Arms AR-15 used by Ernest Moore in the shooting and that Julie Cox photo Exh. No. 2 is the Moore privately owned Colt AR-15. Dkt # 145, p. 2 last paragraph; Dkt # 154, p. 8, fn 1 and p. 9, fn 2).

Julie Cox's unwaivering and conclusive testimony establishes, and she will so testify at trial, that when she left the Moore residence, Ernest's favorite rifle:

1) was the AR-15 identified in the Julie Cox Exh. 2 photograph; and

2) had just been purchased recently before the shootings by his dad with Ernest's money. Exh. X, Cox Depo. p. 87 (l. 18) - p. 88 (l. 14).

Therefore, Plaintiffs' argument of the time sequence involving Ms. Cox's observations of shooting the AR-15 is of no moment to the remaining issue before the Court. Furthermore, Plaintiffs' quotations are misleading and taken out of context. Early in Ms. Cox's deposition, in response to Ms. Lopez's questions, she testified she had observed Ernest shooting mostly the AK-47, SKS and MP-40 and other rifles; she observed him shoot an AR-15 only towards the end of their relationship. Exh. AA, Cox Depo. p. 19 (l. 14) - p. 20 (l. 18), p. 37 (l. 16) - p. 38 (l. 20).

Likewise, Plaintiffs' argument on pages 11 and 12 of the Response concerning an AR-15 in the gun bag in his pickup is of no moment to the only remaining issue before the Court. Furthermore, Ms. Cox's uncontradicted testimony was that Ernest carried his shotgun in the gun bag most of the time and she cannot testify that he ever had an AR-15 in his car. Exh. AA, Cox Depo. p. 107 (l. 17) - p. 109 (l. 13).

Cox's deposition makes it clear that at trial she will not testify for Plaintiffs on the critical issue. The only material favoring Plaintiffs is the affidavits they might use to impeach her. However, prior inconsistent statements are not admissible to prove the truth of the statement. Plaintiffs cannot call Ms. Cox for the primary purpose of offering prior inconsistent statements. (Dkt # 148, pp. 7, 8, 10-12)

## II.

## RENEWAL OF MOTION FOR SUMMARY JUDGMENT IS TIMELY

Plaintiffs complain that the renewal of the motion for summary judgment is improper and asks the Court solely to rethink what it has already thought through. The Court has discretion to reconsider the denial of a motion for summary judgment even in the absence of new material. *Millar v. Houghton,* 115 F.3d 348, 350 (5th Cir. 1997); *Enlow v. Tishomingo County, Miss.,* 962 F.2d 501, 507 (5th Cir. 1992), *reh. en banc denied,* 971 F.2d 750 (5th Cir. 1992). Plaintiffs reliance on *Bernhardt v. Richardson-Merrell, Inc.,* 892 F.2d 440, 443 (5th Cir. 1990) is misplaced. There, the defendant filed a motion to reconsider the denial of summary judgment. *Id.* At 442. Plaintiff did not timely file an affidavit in response to that motion and did not seek an extension of time under Federal Rule of Civil Procedure

56(f). *Id.* At 443. The Fifth Circuit affirmed noting that the trial court had stated it wished to reconsider the motion only on the original record and that plaintiffs had not sought any extension of time to file additional evidence. *Id.* In this case, the court denied the motion based on newly discovered evidence . Dkt # 146. The deposition did not occur until after the court ruled Cox's affidavit could be considered. It seems fundamentally unfair for Plaintiffs to obtain reconsideration based on "newly discovered" evidence and then ask the court to ignore a deposition showing the witness has recanted the "newly discovered" evidence as incorrect.

> "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1; ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 329 (1986).

With respect to the arguments on deliberate indifference, the City cited and discussed the Fifth Circuit case decided after the initial ruling on the summary judgment. *See, Cozzo v. Tangipahoa Parish Council,* 262 F.3d 401 (5th Cir. 2001). With respect to the state law claims, the original Order (Dkt # 134) did not discuss or rule on them. Moreover, the City has urged new grounds to dismiss the state law claims, i.e., that sovereign immunity is not waived for them by the Texas Tort Claims Act. Plaintiffs Response does not address or refute the sovereign immunity defense.

**WHEREFORE, PREMISES CONSIDERED**, Defendant City of Harlingen prays that its Motion for Summary Judgment be granted.

Respectfully submitted,

By: _____
**TOM LOCKHART**
Admissions ID No. 2257
Texas State Bar No. 12473500
**ROGER W. HUGHES**
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY OF HARLINGEN, TEXAS

# VERIFICATION

THE STATE          )
                   :
OF TEXAS           )

**BEFORE ME**, the undersigned Notary Public, on this the 13th day of December 2001, personally appeared **TOM LOCKHART**, who, upon his oath, duly stated as follows:

"My name is **TOM LOCKHART**. I am over the age of 18 years and am fully competent to testify and have personal knowledge of the facts contained herein and they are true and correct.

I am lead counsel for the Defendant City of Harlingen in the above styled and numbered case.

I attended and participated in the deposition of Julie Lynn Cox taken on December 12, 2001. The attached Exhibit AA is a true and correct copy of excerpts from such deposition and truly and accurately reflect the deposition testimony given by Julie Lynn Cox."

Further affiant sayeth not.

_____
TOM LOCKHART

**SUBSCRIBED AND SWORN TO** before me, the undersigned Notary Public, by the said **TOM LOCKHART** on this the 10th day of January, 2002, to which witness my hand and seal of office.

MARIA S. MARTINEZ
Notary Public
State of Texas
Comm. Exp. 11-14-2004

_____
Notary Public in and for the State of Texas

PRINT OR TYPE NAME: Maria S. Martinez

MY COMMISSION EXPIRES: 11-14-2004

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 10th day of January, 2002, to the following counsel of record and interested parties:

---

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

| | |
|---|---|
| Mr. Broadus A. Spivey<br>**SPIVEY & AINSWORTH, P.C.**<br>48 East Avenue<br>Austin, Texas 78701-4320 | *CMRRR # 7000 1670 0000 0477 1165* |

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

| | |
|---|---|
| Ms. Sonia Lopez<br>**LAW OFFICES OF RAMON GARCIA, P.C.**<br>222 West University Drive<br>Edinburg, Texas 78539 | *CMRRR # 7000 1670 0000 0477 1158* |

_____
TOM LOCKHART

# EXHIBIT "AA"

CERTIFIED COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ARTURO G. SALINAS, ET AL | |
| VS. | CIVIL ACTION B-98-162 |
| CITY OF HARLINGEN | |
| and | |
| GILBERTO M. RODRIGUEZ, ET AL | |
| VS. | CIVIL ACTION B-98-162 |
| CITY OF HARLINGEN | |
| and | |
| RAUL RODRIGUEZ | |
| VS. | CIVIL ACTION B-98-162 |
| CITY OF HARLINGEN | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF
JULIE LYNN COX
DECEMBER 12, 2001

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION of JULIE LYNN COX produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 12th day of December, 2001, from 10:29 p.m. to 1:35 p.m., before JUDITH HENNIGH, CSR in and for the State of Texas, reported by oral stenography at the offices of Ramon Garcia, Edinburg, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

================================================================
HENNIGH-QUIN COURT REPORTERS
Box 3036, Edinburg, Texas 78540
(956) 383-8887 / Fax 380-2050
Toll Free (800) 892-6305
================================================================

CERTIFIED COPY

1  of Ernest's friends, David, for approximately a year.
2  How long before you began your relationship with Ernest
3  had you actually met him for the first time?
4      A   The relationship with David that I first met
5  Ernie?
6      Q   Uh-huh.
7      A   Me and David were going out for, oh god, that's
8  even longer ago. I couldn't tell you, to tell you the
9  truth, I could not tell you. I don't remember.
10     Q   Did you-all ever go out together?
11     A   No, not together, we'd just go to his house.
12     Q   Did you-all go socialize in any place, in any --
13     A   No, just at his residence.
14     Q   Okay. During that period of time before you
15  actually moved in with Ernest, had you ever seen Ernest
16  shoot any weapons?
17     A   Yeah, he shot all his guns because David --
18  David got the idea about AK-47s and guns like that and
19  he started buying some and Ernie showed us, you know,
20  some of the guns and stuff.
21     Q   So prior to moving into Ernest's home in
22  November of 1997, you had seen Ernest shoot several
23  weapons?
24     A   Not several, but I've seen him shoot a few, yes.
25     Q   Okay. And when you say "a few," how many are we

                                                           20

1  talking about?

2       A    Maybe three or so, three or four.

3       Q    What guns were these?

4       A    Mostly rifles.  It was an AK-47 and, I think,
5  and SKS and an MP-40.

6       Q    Were any of those guns an AR-15?

7       A    No.

8       Q    So prior to moving in with Ernest Moore in
9  November of 1997, you can recall him shooting at AK-47,
10 and SKS and an MP-40.

11      A    Yes.

12      Q    Is that correct?

13      A    Yes.

14      Q    Do you recall him shooting any other weapons
15 prior to you moving in with him in November of 1997?

16      A    Yu mean before that?

17      Q    Yes.

18      A    No.

19      Q    You stated that David showed him his AK-47; is
20 that correct?

21      A    No, Ernie showed David his guns and that's why
22 David started buying guns for himself.

23      Q    Okay, but it wasn't that David was introducing
24 Ernie --

25      A    No, no.

**HENNIGH-QUIN COURT REPORTERS**
**CERTIFIED SHORTHAND REPORTERS**

1    A    Yes.

2    Q    Okay. Would then, I then be correct in stating,
3 then, that in some time either in 1996, when you were
4 dating David, or 1997 when you were dating David, it's
5 your understanding that during some period of time
6 therein Ernest attended a mental institution?

7    A    Yes.

8    Q    Other than using cocaine or marijuana, was there
9 any other drugs that Ernest used?

10   A    Not that I was aware of, no.

11   Q    When you moved in to live with Ernest, and I
12 know that our first recollection, or your first
13 recollection is at least November of 1997; is that
14 correct?

15   A    Uh-huh.

16   Q    What other guns other than the AK-47, the SKS
17 and the MP-40 do you ever recall him shooting after you
18 moved in with him?

19   A    After?

20   Q    Yes, ma'am.

21   A    I don't know, besides -- repeat it again.

22   Q    You mentioned earlier that prior to moving in
23 with Ernest you recall him shooting, you stated, a few
24 weapons, you said not several, but a few.

25   A    Uh-huh.

38

1    Q    And you mentioned the AK-47, an SKS and an
2  MP-40; is that correct?
3    A    Yes.
4    Q    Once you moved in with him, what weapons do you
5  recall him ever shooting once you moved in in November
6  of 1997?
7    A    In the whole time that I was with him?
8    Q    Yes.
9    A    He shot the AR-15.
10   Q    Okay.  Is the AR-15 the only gun that you recall
11 him shooting after you moved in with him?
12   A    There's a couple of other ones, but he had more
13 than, you know.
14   Q    Was the AR-15 the gun that he mostly shot?
15   A    No, not mostly.
16   Q    After you were there with him?
17   A    But see, he had just recently got that, so he
18 didn't have it very long, so this was like towards the
19 end of our relationship that he had been shooting that
20 gun.
21             MR. LOCKHART:  Which gun?
22             WITNESS:  Can I --
23             MR. LOCKHART:  Yeah, I mean you said AR-15,
24 is that the one you're talking about?
25             WITNESS:  Yes, yes.

**HENNIGH-QUIN COURT REPORTERS**
CERTIFIED SHORTHAND REPORTERS

107

1   A   Yes.

2   Q   -- took place. And one of those attachments is
3   exhibit number 7, let me get the court reporter to mark
4   that as number next to your deposition.

5   A   I think it's number 5, it's number five.

6   Q   Okay, the second page of exhibit number 5.

7   A   Yes.

8   Q   All right, and you see there what looks like an
9   invoice.

10  A   Yes, sir.

11  Q   And it describes a Colt sporter that was being
12  sold for looks like 900 bucks.

13  A   Yeah.

14  Q   And in the upper right-hand corner you see the
15  date on that as June 7th, '98; is that right?

16  A   Yes.

17  Q   Now when Ernest would carry one of these AR-15s
18  in his truck, in his pickup he would put it in a brown
19  paper bag, is that right, or a brown bag?

20  A   I don't know if he had the AR-15 with him, but
21  he had -- I know he had a gun bag in there.

22  Q   Okay --

23  A   He had a gun bag.

24  Q   You mean like a rifle case?

25  A   Yes, exactly, that's what you call it, a rifle.

108

1   Q   And I take it on some occasion you saw him take
2   a rifle out of that rifle case for rifle practice.
3   A   Yes.
4   Q   For shooting practice.
5   A   Yes.
6   Q   Okay, and then I guess he put it back in the
7   case.
8   A   Yeah, he carried a shotgun in there most the
9   time.
10  Q   Okay , all --
11  A   No, just -- usually he would have that in his
12  car, in the brown bag, the shotgun.
13  Q   Okay, so he would take one gun out and put
14  another one in, I guess, from time to time, or would he
15  have two guns in one case?
16  A   No, I think he just put one.  I'm not really
17  sure on that.  Sometimes I wouldn't, you know, pay too
18  much mind.
19  Q   Well I'm not asking you if every time you got in
20  the truck did you check to see what was in the bag.
21      From time to time you knew there was a shotgun
22  in the rifle case that was in Mr. Moore's pickup.
23  A   I knew there was a weapon in there, yes.
24  Q   Okay, and on at least one occasion you saw him
25  take an AR-15 out to practice with it.

**HENNIGH-QUIN COURT REPORTERS**
CERTIFIED SHORTHAND REPORTERS

```
                                                              109
 1      A    Yes.
 2      Q    And I've tried to ask you this ten times.  As to
 3 when that was, you can't pin that down exactly for me?
 4      A    I can't.
 5      Q    But you know that he had replaced the shotgun
 6 that was in that case at some point with an AR-15.
 7      A    No.  I don't remember him ever having the AR-15
 8 in his car.  I do and then I just can't remember.  I
 9 don't want to say I do and I don't want to say I don't,
10 because I'm not going to make something up.  This gets
11 confusing and it's a blur sort of.
12      Q    Okay.
13      A    I don't know.
14      Q    Would he ever have on, as best you can recall,
15 more than one gun case in his car?
16      A    No, I never seen another gun case in his car.
17      Q    Now let me switch forward, then, and ask you a
18 few questions about the July 7th shootings.
19      A    Yes.
20      Q    And I apologize if we're going over and over
21 this, but tell me what's the first thing you remember
22 that happened at the Morin house on July 7th, 1998, how
23 did you know something was amiss?
24      A    Like how I knew when everything just went?  He
25 had -- the brother "Blue," they called him "Blue."  I
```

```
                                                              137
                       CERTIFIED COPY
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                        BROWNSVILLE DIVISION
ARTURO G. SALINAS, ET AL    *
VS.                         *     CIVIL ACTION B-98-162
CITY OF HARLINGEN           *
GILBERTO RODRIGUEZ, ET AL   *
VS.                         *
CITY OF HARLINGEN           *
RAUL RODRIGUEZ              *
VS.                         *
CITY OF HARLINGEN           *
                   DEPOSITION OF JULIE LYNN COX
                         DECEMBER 12, 2001
                       REPORTER'S CERTIFICATION
```

I, JUDITH HENNIGH, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JULIE LYNN COX, was duly sworn by me and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on the 13th day of December, 2001, to the Deponent, % McAllen Country Club, McAllen, Texas, for examination, signature and return to me by the 11th day of January, 2002.

That the amount of time used by each party at the deposition is as follows:

```
        Ms. Lopez:      1:50
        Mr. Lockhart:   0:11
        Mr. Ainsworth:  0:49
```

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes Counsel for all parties of record:

**HENNIGH-QUIN COURT REPORTERS**
CERTIFIED SHORTHAND REPORTERS

138

     Ms. Sonia I. Lopez, Counsel for Raul Rodriguez, 222 West University, Edinburg, Texas 78539;

     Mr. Price Ainsworth, Spivey & Ainsworth, Counsel for Gilberto Rodriguez, et al, 48 East Avenue, Austin, Texas 78701;

     Mr. Tom Lockhart, Adams & Graham, Counsel for Defendants, 222 West Van Buren, Harlingen, Texas  78550.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 13th day of December, 2001.

_____
JUDITH HENNIGH, TEXAS CSR #1752
Expiration Date: 12/31/02
Hennigh-Quin Court Reporters
Box 3036, Edinburg, Texas  78539
956/383-8887 or 800/892-6305

COURT COST:   $ 1384.00

**CERTIFIED COPY**

**HENNIGH-QUIN COURT REPORTERS**
CERTIFIED SHORTHAND REPORTERS

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | CAUSE NO. B-98-162 |
| | * | US DISTRICT COURT |
| COUNTY OF HIDALGO | * | BROWNSVILLE DIVISION |

    I, JUDITH HENNIGH, Texas Certified Shorthand Reporter #1752, do hereby certify that the foregoing copy of the deposition of JULIE LYNN COX, reported in the foregoing numbered and styled cause by me, is a true and correct copy of the original deposition herein as duly certified and delivered by me.

    CERTIFIED TO this the 13th day of December, 2001.

                                  _____
                                  JUDITH HENNIGH
                                  Certified Shorthand Reporter
                                  Texas CSR #1752
                                  Expires 12/31/02
                                  Hennigh-Quin Court Reporters
                                  Box 3036, Edinburg, Texas  78540
                                  956/383-8887 / Fax 380-2050
                                  Toll Free 1 800/892-6305

**CERTIFIED COPY**

**HENNIGH-QUIN COURT REPORTERS**