*164*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JAN 2 4 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| Arturo Guillermo Salinas, et al, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. B-98-162 |
| §(consolidated with B-98-163 and B-99-70) | |
| City of Harlingen, § | |
| § | |
| Defendant. § | |

**ORDER**

BE IT REMEMBERED that on January 24, 2002, the Court, having considered the Renewal of and Supplementation to Defendant's Second Motion for Summary Judgment [Dkt. No. 148], Defendant's Supplement of Exhibits to Renewal and Supplementation to Defendant's Second Motion for Summary Judgment, [Dkt. No. 153], and Plaintiffs' Response to Renewal of and Supplementation to Defendant's Second Motion for Summary Judgment and Memorandum in Support Thereof [Dkt. No. 154], **DENIED** the motion.

I.   **SUMMARY AND PROCEDURAL HISTORY**

A series of tragic circumstances led to the murder of Border Patrol Agents Susan L. Rodriguez and Ricardo G. Salinas and the injury of Cameron County Sheriff Deputy Raul Rodriguez on July 7, 1998. The Plaintiffs in this lawsuit are the immediate relatives of the murdered Border Patrol Agents and the wounded Cameron County Sheriff Deputy Raul Rodriguez. Plaintiffs Stephen L. Williams and Robyn S. Williams are the parents and Gilberto M. Rodriguez is the spouse of decedent Border Patrol Agent Susan L. Rodriguez. Gilberto M. Rodriguez has brought suit on his own behalf and on behalf of his and Susan L. Rodriguez' minor daughter Megan Suzanne Rodriguez. Plaintiffs Arturo Guillermo Salinas and Elisa Hernandez Herrera Salinas are

1

the parents of decedent Border Patrol Agent Ricardo G. Salinas.

The Plaintiffs initially filed three separate lawsuits. Those lawsuits were consolidated in May 2000 [B-98-162, Dkt. No. 45] [B-98-163, Dkt. No. 45] [B-99-70, Dkt. No. 39] after the Court ruled on motions to dismiss filed in each case [B-98-162, Dkt. No. 43] [B-98-163, Dkt. No. 43] [B-99-70, Dkt. No. 37]. The Court subsequently granted the Parties' agreed motion to dismiss all claims against the individual Defendants R.D. Moore and Jim Scheopner [Dkt. No. 61]. The remaining Defendant, the City of Harlingen, filed a motion for summary judgment in July 2000 [Dkt. No. 59]. The Plaintiffs asked the Court to continue submission of the City's summary judgment motion so they could complete additional discovery before filing a response [Dkt. No. 66]. The Court granted the Plaintiffs' motion and set deadlines for the submission of a renewed summary judgment motion [Dkt. No. 94]. The City then filed its Second Motion for Summary Judgment [Dkt. No. 100]. The City's Second Motion for Summary Judgment [Dkt. No. 100] was granted in part and denied in part. Upon Plaintiffs' Motion for Reconsideration of the Summary Judgment [Dkt. No. 141], the Court vacated its earlier partial grant of summary judgment and denied the Second Motion for Summary judgment [Dkt. No. 145]. The grant was based on affidavits which were taken when E. Moore's former girlfriend, Julie Cox, came forward just after the partial grant of summary judgment, and stated that E. Moore preferred the gun which had been placed in his father's care by the Harlingen Police Department. The Court now considers the Renewal of and Supplementation to Defendant's Second Motion for Summary Judgment [Dkt. No. 148].

The City argues in its pending motion for summary judgment that 1) Plaintiffs' 42 U.S.C. § 1983 claim for a violation of their Fourteenth Amendment substantive due process rights under the state created danger theory fails because a) the City's actions did not cause the Plaintiffs' injuries, b) the City did not strip the slain agents and deputy of the means of self-defense or escape, and c) the City had no actual knowledge of immediate danger to a known victim. The City further claims that 2) Plaintiffs' state law claims are barred by sovereign immunity, or fail on their respective merits. The City last 3) reasserts its previous objections to Plaintiffs' summary judgment evidence.

2

II.     **STANDARD FOR RULING ON A SUMMARY JUDGMENT MOTION**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). "In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Perenco Nigeria Ltd. v. Ashland Inc., 242 F.3d 299, 304-05 (5th Cir. 2001).

III.    **1983 State-Created Danger Theory**

The City argues that Plaintiffs' 42 U.S.C. §1983 claim for a violation of their Fourteenth Amendment substantive due process rights under the state-created danger theory must fail because the City did not cause Plaintiffs' injuries. Defendant here repeats the arguments upon which the Court ruled when it vacated and denied Defendants' Second Motion for Summary Judgment [Dkt. No. 142], and the Court will not revisit these arguments.

Defendant attaches to its newest Motion to Dismiss a deposition by Julie Cox. Cox states in the deposition that she was mistaken about which rifle E. Moore preferred when she made the affidavits which were the basis for the Court's vacating its first

3

partial grant of summary judgment, and previously misidentified it as the one belonging to the City, when in fact his favorite rifle was a different one [Dkt. No. 148 Ex, X pp. 40, 45-46, 48-49, 103-106]. The rifle Cox identifies in the deposition as E. Moore's favorite was an AR 15 which R.D. Moore purchased from a Captain Vasquez about a month before the shootings, not the one belonging to the HPD. According to Defendant, "[i]f called to testify live at trial, Ms. Cox will testify that the rifle identified as the privately owned, just purchased with Ernest's money, AR-15 is the one that Ernest liked best." [Dkt. No. 148].

  Defendant states that the elements of "state created danger" are not met because Cox now states that her earlier affidavits were inaccurate [Dkt. No.148 at 3].[1] For the reasons stated below, the Court is not convinced that Cox's statements in her deposition are definitive. The Court holds that an issue of fact remains with regard to the issue of which gun Cox saw. She states in her deposition that she was unaware of the existence of two AR 15's, having believed at the time of her affidavits in attorney Lopez's office that there was only one AR 15 in the Moore home. Defendant is quick to point out that Ms. Cox's deposition testimony is at odds with the affidavits submitted in the last summary judgment proceeding, and that she states that she is now sure that the gun she witnessed Ernest favoring was the family-owned AR 15. However, the deposition does not eliminate all questions of fact. Although Cox states in her deposition that E. Moore's favorite AR 15 rifle was the one which R.D. Moore purchased from Captain Vasquez, she then goes on to say that she had seen him shooting this same favorite gun at her parents' house "more than a month or so" before the shooting spree. [Dkt. No. 154 Ex. A 131-132]. The family-owned gun was purchased from Vasquez on June 9, 1998, three weeks prior to her departure and roughly a month before the shooting.

---

  [1] Defendant points out that the "state created danger" theory may no longer be viable in the Fifth Circuit after that court rehears en banc the case of McClendon v. City of Columbia, 258 F.3d 432 (5th Cir. 2001) rh'g en banc granted. The Court notes simply that the law, as it presently stands, allows for such a theory to be asserted. The Court will not attempt to speculate what the Fifth Circuit will or will not do in the pending case.

4

Cox's deposition states that E. Moore had not been at her parents' house, much less shooting any guns, for at least a month. Moreover, Ms. Cox states that E. Moore used an AR 15 at her father's range during the previous year, 1997. [Dkt. No. 154 Ex. A 127-129]. Nor is there evidence about which rifle he carried in his truck. The Court is therefore not convinced that, as Defendant argues, "[b]ased on Julie Cox's deposition the Plaintiffs do not and cannot offer evidence that Ernest Moore's choice of the HPD Olympic Arms weapon was a deliberate choice and not happenstance." [Dkt. No 157 at 2]. It is for the trier of fact to determine Ms. Cox's credibility, and to decide what parts to believe, if any, of her conflicting statements. See United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989); see also Hawk v. Oldson, 326 U.S. 271, 278 (1945). The motion for summary judgment is therefore **DENIED**.

IV     Sovereign Immunity for Negligence Claims

The City last asserts that it has not waived its sovereign immunity under the Texas Tort Claims Act, and therefore cannot be sued under it for negligence. Sovereign immunity against state tort claims is waived against the City if the death or injury arises out of the use of tangible personal property. Tex. Civ. P. & Rem. Code § 101.021. Defendant is correct in asserting that "it is not enough that some property was involved; sovereign immunity is not waived unless the use of property actually caused the injury," Texas Dept. of Criminal Justice v. Miller, 51 S.W.3d 583, 588 (Tex. 2001). However, whether the City's giving the AR 15 to R.D. Moore, who in turn allowed his son easy access to it, is the very issue here. This issue is what distinguishes the case from Gonzales v. City of El Paso, 978 S.W.2d 619, 623-24 (Tex. App. -El Paso 1998) and City of Columbus v. Barnstone, 921 S.W.2d 268, 272 (Tex. App. -Houston [1st Dist. 1995) in which the government entity was responsible in a proprietary or supervisory manner, but in no way misused any property itself; in those cases the injuries were caused entirely by private citizens. Here, the City not only failed to destroy the AR 15, as was its duty, it misused the rifle by wrongly conferring it upon one of its officers, who in turn wrongly gave his son access to it. Defendant confuses the issue by portraying E. Moore's actions as the sole cause of the officers' and agents' injuries and deaths. The

Court here reiterates that it has previously ruled that a fact question remains as to whether the City was a cause of the decedents' demise. Until this issue is decided by the trier of fact, the Court will not rule on whether sovereign immunity is waived. Summary judgment on this issue is therefore **DENIED**.

V.  <u>Previously Asserted Objections to Plaintiffs' Summary Judgment Evidence</u>

For the reasons stated in the Court's vacateur and denial of summary judgment for the Defendants [Dkt. No. 145], Plaintiffs' summary judgment evidence is proper.

DONE at Brownsville, Texas, this 24th day of January, 2002.

Hilda G. Tagle
United States District Judge