17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | United States District Court |
| CITY OF HARLINGEN, TEXAS; | § | Southern District of Texas |
| | § | FILED |
| And | § | FEB 0 8 2002 |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | Michael N. Milby |
| | § | Clerk of Court |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## JOINT PRETRIAL ORDER

---

TO THE HONORABLE JUDGE TAGLE, U.S. DISTRICT COURT:

COME NOW, Giberto M. Rodriguez, individually and on Behalf of his minor Daughter, Megan Suzanne Rodriguez and the Estate of his Wife Susan Lynn Rodriguez, deceased; Stephen L. Williams and Robyn S. Williams, Surviving Parents of Susan Lynn Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, individually and on Behalf of the Estate of their Son Ricardo Guillermo Salinas, deceased, Raul Rodriguez, Plaintiffs and City of Harlingen, Defendant, in the above reference action, filing their Joint Pretrial Order.

1.  **Appearance of Counsel**

    a.  For Plaintiffs Gilberto M. Rodriguez, individually and on Behalf of his minor Daughter, Megan Suzanne Rodriguez and the Estate of his Wife Susan Lynn Rodriguez, deceased; Stephen L. Williams and Robyn S. Williams, Surviving Parents of Susan Lynn Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, individually and on Behalf of the Estate of their Son Ricardo Guillermo Salinas, deceased:

        **Broadus Spivey**
        State Bar No. 00000076
        Federal I.D. No. 11146
        **Price Ainsworth**
        State Bar No. 00950300
        Federal I.D. No. 8065
        **Francis Pan**
        State Bar No. 15443300
        Federal I.D. No. 26385
        **SPIVEY & AINSWORTH, P.C.**
        48 East Avenue
        Austin, TX 78701
        512+474-6061
        512+474-1605 (fax)

        **Richard Pena**
        Law Offices of Richard Pena, P.C.
        Barton Oaks Plaza Two
        901 MoPac, Suite 325
        Austin, Texas 7746-5747
        512+327-6884
        512+327-8354 (fax)

    b.  For Plaintiff Raul Rodriguez

        **Ramon Garcia**
        State Bar No. 07641800
        Federal I.D. No. 3936
        **Sonia Lopez**
        State Bar No. 24003862
        Federal I.D. No. 23501
        **LAW OFFICES OF RAMON GARCIA, P.C.**
        222 West University Drive
        Edinburg, Texas 78539
        Telephone: 956/383-7441
        Telecopier: 956/381-0825

c.    For Defendant City of Harlingen, Texas

**Tom Lockhart**
State Bar No. 12473500
Federal I.D. No. 2257
**Roger W. Hughes**
Federal I.D. No. 5950
State Bar No. 1022950
**ADAMS & GRAHAM, L.L.P.**
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
Telephone:  956/428-7495
Telecopier: 956/428-2954

## 2.    Statement of the Case

On July 7, 1998, U.S. Border Patrol Agents Susan Lynn Rodriguez and Ricardo (Rick) Salinas, and Cameron County Deputy Sheriff Raul Rodriguez were shot by Ernest Moore, Detective Moore's adult son, with a Harlingen Police Department AR-15 semi-automatic rifle, which has been identified as a 5.56 mmNATO caliber Frankfort Arsenal, model XM 177e2 semi-automatic rifle, .223 caliber, serial #FA0698 (C11).  The agents were killed and Deputy Rodriguez was seriously injured.

Beneficiaries of deceased U.S. Border Patrol Agents Susan Rodriguez and Ricardo Salinas on behalf of themselves and the estates of Susan Rodriguez and Ricardo Salinas, deceased, and Raul Rodriguez, a Deputy Sheriff of Cameron County, Texas, brought suits against the City of Harlingen, Texas pursuant to 42 USC §1983 and the Texas Tort Claims Act (TEX. CIV. PRAC. & REM. CODE ANN., Chap. 101).

## 3.    Jurisdiction

This Court has jurisdiction over the case at bar under 42 U.S.C. § 1983; 42 U.S.C. § 1988; 28 U.S.C. § 1343(a)(3); and 28 U.S.C. § 1331.

4.    **Motions**

The motions are pending before the court:

a.    Defendant's Renewal and Supplementation of Defendant's Second Motion for Summary Judgment;

b.    Motion in Limine filed by Plaintiffs Arturo Guillermo Salinas, et al and Gilberto M. Rodriguez, et al.;

c.    Motion in Limine filed by Defendant;

d.    Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a); and

e.    Defendant's Motion to Strike Newly Designated Expert Robert Rodriguez.

5.    **Contention of Parties**

The Plaintiffs claim that the City of Harlingen is liable for certain constitutional deprivations, including violations of the Plaintiffs' substantive due process rights pursuant to "state created danger" that resulted from an official policy of the municipality:  (1) the environment created by the City of Harlingen was dangerous; (2) the City knew it was dangerous; and (3) the City used its authority to create an opportunity that would not otherwise have existed for the third party's crime to have occurred.  Such violations, Plaintiffs contend, proximately and actually caused the deaths of Susan Lynn Rodriguez and Ricardo Guillermo Salinas as well as the serious injuries inflicted upon Raul Rodriguez.  The Plaintiffs also assert that the City of Harlingen is liable under the Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) for Chief Scheopner and Detective Moore's negligent and wrongful us of the AR-15 rifle in the scope of their employment.  More specifically, Plaintiffs claim that the shootings were the acts of a private citizen for which the City of Harlingen, Texas has responsibility under federal and state law:

a.     Harlingen policy decision or policymaker actions created an opportunity for the shootings to occur because Ernest had access to the AR-15 rifle in question.

b.     Harlingen policy decisions or policymakers' actions effectively stripped Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez of their ability to defend themselves or cut off potential sources of private aid.

c.     Harlingen policy decisions and policymaker actions were done with deliberate indifference to a substantial risk of serious harm to Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez.

d.     Harlingen policy decisions and policymaker actions were a proximate cause of the deprivation, deaths, and injuries at issue.

e.     There is a proximate cause to support the state law claims.

f.     There is a negligent entrustment of the subject rifle to support the state law claims.

Defendant says that the shootings were the acts of a private citizen for which it has no responsibility under federal or state law.

a.     No Harlingen policy decision or policymaker action created an opportunity that would not have otherwise existed for the shootings to occur because Ernest had access to privately owned equally powerful rifles.

b.     No Harlingen policy decision or policymaker action effectively stripped Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez of their ability to defend themselves or cut off potential sources of private aid because the law enforcement team, Cameron County Sheriff Department ("CCSD") and U.S. Border Patrol ("BP"), were at the scene to capture a heavily armed homicidal suspect and the team was fully aware of the danger of being shot.

c.      No Harlingen policy decision was made or policymaker action taken with knowledge of an immediate danger to known victims; Harlingen did not know Ernest Moore was going to shoot Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez with an HPD rifle.

d.      No Harlingen policy decision or policymaker action was done with deliberate indifference to a substantial risk of serious harm to Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez.

e.      No Harlingen policy decision or policymaker action was a proximate cause of the deprivation, deaths, and injuries at issue.

f.      There is no proximate cause to support the state law claims.

g.      There is no negligent entrustment of the subject rifle to support the state law claims.

6.    **Admissions of Fact**

a.      On July 7, 1998, 25 year old Ernest Moore was the suspect in violent homicides committed with a privately owned AK-47 in Rio Hondo.

b.      When the Cameron County Sheriff Department pursued and found his vehicle near his father R.D. Moore's house, south of San Benito, it began a manhunt to capture Ernest and summoned the Border Patrol to assist.

c.      After the Cameron County Sheriff Department approached R.D. Moore at his residence, they contacted Harlingen Police Department to assist in getting Mr. Moore to cooperate.

d.      Ernest Moore shot and killed agents Border Patrol Agents Susan Lynn Rodriguez and Ricardo Salinas and seriously wounded Cameron County Sheriff Raul

Rodriguez.

e.     The gun used by Ernest Moore was a Harlingen Police Department AR-15 semi-automatic rifle, which has been identified as a 5.56 mmNATO caliber Frankfort Arsenal, model XM 177e2 semi-automatic rifle .223 caliber, serial #FA0698 (C11).

7.     **Contested Issue of Fact**

**Plaintiffs' Contested Fact Issues:**

a.     Was the City of Harlingen negligent in allowing the entrustment of the AR-15 rifle to a person (Ernest Moore) who was not qualified in its use or storage?

b.     Did Chief Scheopner and Detective Moore fail to properly store and safeguard the AR-15 rifle from being easily accessible to others including Ernest Moore?

c.     Were the deaths and personal injuries in question proximately caused, as that term is defined by the Court, by the negligence of Chief Scheopner and Detective Moore acting within their scope of employment for the deaths of Agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas and the personal injury of Deputy Raul Rodriguez?

d.     Were the deaths of Agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas and the personal injury of Deputy Raul Rodriguez caused, as that term is defined by the Court, either pursuant to a governmental custom, policy, ordinance, regulation of the City of Harlingen or pursuant to a "custom" which was performed that had not been formally adopted by an appropriate decision of the City of Harlingen?

e.     What sum of money, if paid now in cash, would fairly and reasonably compensate the surviving family members of Susan Rodriguez, deceased; the surviving family

members of Ricardo Salinas, deceased; and Raul Rodriguez for their damages resulting from these deaths and injuries, respectively, past and future, sustained by them?

**Defendant's Contested Fact Issues:**

a.      None of Harlingen's alleged policies or decisions caused or could have prevented the shooting.

b.      Harlingen did not cause Ernest Moore, R.D. Moore's adult son, to take the HPD rifle or give him the means and opportunity to commit these crimes which he did not already have.

c.      Harlingen did not strip CCSD and BP of the means to defend themselves or to escape.

d.      Harlingen Police Chief, Jim Scheopner, did not know these victims were at the scene or were in immediate danger of being shot.

e.      There is no proximate cause for either the federal or state claims.  Also, ,Ernest Moore's acts were  a superseding and intervening cause that was not foreseeable.

f.      Whenever Ernest took the rifle from the gun safe at R.D. Moore's house, it was by happenstance and the HPD AR-15 was only one of many equally powerful guns in the safe.  Among the other fully functional rifles in the same safe were a privately owned AR-15, and two other high powered semi-automatic rifles, SKS and M-1 Carbine, as well as ammunition for all of them.

g.      R.D. Moore did not give his son Ernest permission to take the HPD AR-15 rifle. If Ernest had taken the privately owned AR-15 or the SKS or M-1 in the same vault, Ernest could have as easily and effectively killed Border Patrol Agents

Salinas and Susan Rodriguez and seriously wounded Deputy Sheriff Raul
Rodriguez.

h.  No policy or decision made by Chief Scheopner was made with deliberate
indifference, nor was any such policy or decision a cause of the shootings. Chief
Scheopner was not aware of any reason that Det. Moore was unfit to possess or
store the HPD rifle; he was not aware of any prior incidents in which HPD rifles
were given by police officers to family members or third parties or police officers
had given permission to family members or third parties to use or possess HPD
rifles.

i.  No policy or decision made by any city policymaker was made with deliberate
indifference, nor was any such policy or decision a cause of the shootings.  There
is no HPD pattern or practice of accepting guns for destruction and assigning them
to police officers. No city policymaker was aware of any reason that Det. Moore
was unfit to possess or store the HPD rifle; no city policymaker was aware of any
prior incidents in which HPD rifles were given by police officers to family
members or third parties or police officers had given permission to family
members or third parties to use or possess HPD rifles.

j.  There was no deliberate indifference.  No decision or policy was made or adopted
under circumstances under which it was obvious that a constitutional violation
would result.

k.  The acts or omissions in question do not shock the conscience.

8.    **Agreed Propositions of Law**

Plaintiffs' state law claims are governed by the Texas Tort Claims Act (TEX. CIV. PRAC. & REM. CODE ANN., Chap. 101).

9.    **Contested Propositions of Law**

**Plaintiffs' Contested Propositions of Law**

a.    Police Chief James Sheopner of Harlingen Police Department at all times acted in bona fide pursuance of his general authority to act for the City of Harlingen in the area of law enforcement, which acts were and are imputed to the City of Harlingen. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, (1986); *Thomas v. Sams*, 734 F.2d 185, 192, (5th Cir. 1984), cert. denied, 472 U.S. 893 (1985).

b.    Police Chief James Sheopner of Harlingen Police Department as the final policymaker for the law enforcement of the City of Harlingen is held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees of Harlingen Police Department. *See Pembaur. v. City of Cincinnati*, 475 U.S. 469, (1986); *Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir. 1990).

c.    When Det. R. D. Moore committed unconstitutional acts and was never disciplined, the City implicitly ratifies and adopts that unconstitutional conduct as official policy, and municipal liability then results. *Grandstaff v. City of Borger*, 767 F.2d 161, 171-72 (5th Cir 1985).

d.    If Det. R. D. Moore knew that his action as to the safeguard of the AR-15 in question would be approved by Chief Scheopner at the time of his action, then the causation requirement had been met. *Palmer v. City of San Antonio*, 810 F.2d 514,

516 (5th Cir. 1987).

e.    The fact that the Fifth Circuit Court did not reject outright the state-created danger doctrine implies that the Court would adopt the theory if presented with a case meeting the elements described by the Court in *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997); *Johnson v. Dallas Independent School District*, 38 F.3d 198, 201 (5th Cir. 1994)as follows:

   (1)    The government officials must create the dangerous situation;

   (2)    They must know the situation is dangerous;

   (3)    The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

   (4)    They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of his ability for self-defense.

f.    The Fifth Circuit has adopted the state-created danger doctrine in *McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001).

g.    Harlingen Police Department's deliberate reuse of the tapes and the spoliation of the tapes' content create a jury issue regarding that content. *Caoaritta v. Entergy Corporation*, 168 F.3d 754, 755 (5th Cir 1999); *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir 1975).

h.    A firearm is a deadly weapon per se, Tex. Penal Code sec. 1.07(a)(11)(A) (Vernon 1974).

i.    The City is liable for the deaths of Susan Lynn Rodriguez and personal injury of Raul Rodriguez so cause by the use of the AR-15 in question. Tex. Civ. Prac. & Rem. Code § 101.021(2).

j.      The City is charged with responsibility for the use of the AR-15 in question where the control of the weapon has passed to another." *Kennedy v. Baird*, 682 S.W.2d 377, 378 (Tex. App. – El Paso 1984, no writ).

k.      In order to use a seized weapon, a law enforcement agency must seek an order from the court to forfeit the weapon to the state for use by the law enforcement agency holding the weapon. Texas Code of Criminal Procedure art. 18.19.

l.      Plaintiffs' Federal law claims are governed by the Constitution of the United States, 14th Amendment; and Section 1983, U.S. Code Annotated; and recognized by *McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001).

## Defendant's Contested Propositions of Law

a.      The 14th Amendment's Due Process Clause is triggered only by affirmative government conduct and puts no duty on government officials to act to prevent a third-party from harming other plaintiffs. *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 196-197 (1989). The Supreme Court neither approved nor disapproved of a rule imposing liability if the state created the risk of harm to which it forced the claimant to suffer.

Due Process does not require government officials take action to prevent the commission of an offense. *DeShaney*, 489 U.S. at 202. There, it imposes no duty to arrest a lawbreaker to prevent further harm to the public. *Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999).

Section 1983 affords a remedy only for injury to federal rights; it creates no remedy for violations of state law. *Wyatt v. Cole*, 994 F.2d 1113, 1117-18 (5th Cir.

1993), *cert. denied*, 510 U.S. 971 (1993).  Therefore, it is irrelevant that the alleged conduct violated any state laws requiring the City provide protection.

b.    The Fifth Circuit has indicated that it will adopt the "state created" danger exception to *DeShaney*. *See, McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001, m.reh.en banc pending).  However, the Fifth Circuit is considering the motion for rehearing en banc, and has even solicited a response to it from the respondent.  Three and a half months later, the motion is still pending, which indicates a new opinion may be forthcoming.  Assuming it is affirmed, it has outlined the elements of that theory:

(1)    The state actors must create an environment that is dangerous;

(2)    The state actors must know that it is dangerous;

(3)    The state actors must have used their authority to create an opportunity that otherwise would not have existed for a third party to commit the crime;

(4)    The state must have effectively stripped a person of his or her ability to defend herself or cut off potential sources of private aid; and

(5)    The action must be done with deliberate indifference.

*Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997), *cert. denied*, 525 U.S. 183 (1998); *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001), *reh. denied*, 251 F.3d 159 (5th Cir. 2001), *cert. denied*, ____ U.S. ____ (Oct. 1, 2001).  At the time the official acted, he must have subjective knowledge of an immediate risk to a specific victim. *McClendon*, 258 F.3d at 438; *Saenz v. Heldenfels Bros., Inc.*, 183

F.3d 389, 291, 292 (5th Cir. 2000). The official must have "actual knowledge" that a serious risk of physical harm exists. *Doe v. Hillboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1998) (en banc). The official must create a risk of harm that did not exist before the state's intervention. *Piotrowski*, 237 F.3d at 584. Merely increasing the risk of harm is insufficient. *Lefall v. Dallas ISD*, 28 F.3d 521, 531 (5th Cir. 1994); *Johnson*, 38 F.3d at 531.

c.   Harlingen is not vicariously liable for the acts of its employees. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S.658, 694 (1978). To hold Harlingen liable, Plaintiffs must show that a final policy maker adopted a "policy" that caused the deprivation. *Bd. of County Comm. Bryan v. Brown*, 520 U.S.397, 403 (1997). What body or person speaks with final policy making authority is a law question for the court based on state law. *Jett v. Dallas I.S.D.*, 491 U.S. 701, 737 (1989). Whether the City's governing body has delegated final policymaking authority to a lower official is also a law question based on state law. *Id.* at 738. The City does not concede the chief of police has final policymaking authority for all of the areas identified by Plaintiffs. Therefore the court must determine this from state and local positive law as well as evidence of the City's customs and usages. *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999), *reh. en banc denied,* 193 F.3d 521 (5th Cir. 1999).

d.   The policymaker must either expressly adopt a policy or there must be a widespread practice of city police officer so common and well settled that it fairly represents a policy known to and adopted by the policymaker. *Piotrowski*, 237 F.3d at 579, 581. The failure to have a policy cannot be a "policy" unless the

failure amounts to an intentional choice, not an unintentional oversight. *City of Canton v. Harris*, 489 U.S.378, 389 (1989); *Doe v. Dallas I.S.D.*, 153 F.3d 211, 217 (5th Cir. 1998). Likewise, an unconstitutional deprivation is not ratified or approved simply because the responsible official is not sanctioned or reprimanded afterwards. *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998), *cert. dism'd*, 119 S.Ct. 1493 (1999).

e.    The alleged "policy" is not unconstitutional on its face. Therefore, Plaintiffs must show that an otherwise neutral policy was adopted with deliberate indifference to the certainty that a constitutional deprivation will result. *Piotrowski*, 237 F.3d at 578, 581; *Snyder*, 142 F.3d at 795-96. Ordinary or heightened negligence will not meet the test of deliberate indifference. *Snyder*, 142 F.3d at 579-80. The official must be aware of the facts in which an inference could be drawn that a substantial risk of harm exists and must actually draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference usually requires proof of notice of that a failure to train or instruct has failed to prevent illegal conduct, or a single incident with proof of possibility of recurring situations that present an obvious potential for violations of constitutional rights and the need for additional training and instruction. *McClendon*, 258 F.3d at 442. The Fifth Circuit has generally rejected proof of a single incident as a sufficient basis to hold a city liable. *Id.; Cozzo v. Tangipahoa Parish Council*, 262 F.3d 501, 515 (5th Cir. 2001). The Fifth Circuit has held that there must be a complete failure to train, rather than a failure to instruct in a single limited area. *McClendon*, 258 F.3d at 443. Generally the opinion testimony of single expert is insufficient to prove that a single incident

shows deliberate indifference.  *Cozzo*, 262 F.3d at 515; *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000).

f.    Because this is a Substantive Due Process claim, Plaintiffs must show that the responsible officers' actions meet the "shock the conscious" test.  *County of Sacramento v. Lewis*, 523 U.S. 833, 854-55 (1998).

g.    The City's policy must be the proximate cause of the violation of Plaintiffs' federal rights.  *Martinez v. California*, 44 U.S. 277, 285 (1980); *Doe v. Sullivan County, Texas*, 959 F.2d 545, 550 (5th Cir. 1982); *Reimer v. Smith*, 663 F.2d 1316, 1322 (5th Cir. 1981).  In order to constitute proximate cause, the constitutional violation must not be too remote from the injury.  *Martinez*, 444 U.S. at 285.  Second, the deprivation or injury must be the foreseeable result of the constitutional violation.  *Anderson v. Nosser*, 456 F.2d 835, 841 (5th Cir. 1972) (en banc) *cert. denied*, 409 U.S. 845 (1972).  Third, it must be the "cause in-fact" of the deprivation.  *Rodriguez-Cirilo v. Garcia*, 115 F3d 552 (5th Cir. 1997).  This means that the deprivation would not have occurred "but for" the constitutional violation.  *Mt. Healthy School District v. Doyle*, 429 U.S. 274, 287 (1997); *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir. 1997) *reh'g denied*, 154 F.3d 419 (5th Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999).

h.    The Plaintiffs' state law claims rely in part on negligent entrustment.  Although Texas cases have recognized a common law cause of action for negligently entrusting a firearm to an incompetent user (see, *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.–El Paso 1984, no writ) there is no case providing for liability for failing to prevent a weapon from being taken without permission.  By analogy,

Texas does not impose a duty to safeguard car keys to prevent a thief from stealing the car and hitting a third party. *See, Story Serv., Inc. v. Ramirez*, 863 S. W. 2d 491, 497-98 (Tex. App.–El Paso 1993, writ denied). There is no liability simply for failing to take adequate precautions against unauthorized use. Moreover, a city employee did not use the rifle. Therefore, Plaintiffs have the burden to show that, when the City entrusted the rifle to its employee, it knew or should have known that the employee would use poor judgment in allowing third parties to use or possess the firearm. *See, Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987).

i.    Sovereign Immunity is waived against the City only if the death or injury arises out of the use or condition of tangible personal property. TEX. CIV. P.& REM. CODE, § 101.021. Property is "used" only if it is employed or applied for a given purpose; "non-use" can not support a claim. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996). If the tangible property is not defective, then "use" requires an allegation the defendant supplied the property lacking an integral safety component. *Kerrville*, 923 S.W.2d at 585; *Ramos v. City of San Antonio*, 974 S.W.2d 112, 116 (Tex. App.–San Antonio, 1998, no pet.). It is not enough that some property was involved; there is no waiver of immunity unless the use of property must actually caused the injury. *Texas Dept. of Crim. Justice v. Miller*, 51 S.W. 3d 583, 588 (Tex. 2001).

It is a government employee that must misuse the property. *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623 (Tex. App.–El Paso 1998, no pet.). The "use" by a third party is insufficient. *City of Columbus v. Barnstone*, 921 S.W.2d 268, 272 (Tex.

App.–Houston [1ˢᵗ Dist.] 1995, no writ); *Ramos v. City of San Antonio*, 974 S.W.2d at 116.

The use or failure to convey information is not a use of tangible property that waives immunity. *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994). There, an alleged failure to train or instruct does not fall within the waiver. *Texas Dept. of Public Safety v. Petta*, 44 Tex. S. Ct. J. 597, 600 (Tex. 2001). Likewise there is no waiver for failing to use communication devices to convey information. *City of El Paso v. Hernandez*, 16 S.W.3d 409, 416-17 (Tex. App.–El Paso 2000, no pet.).

j.    Many of Plaintiffs' allegations arise out of alleged improper policies or the failure to have policies. There is no waiver of sovereign immunity for injuries arising from the policy decisions over the matter of providing police protection. TEX. CIV. PRAC. & REM. CODE ANN., § 101.055(3)(Vernons Supp. 2001); *Orrozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 297-98 (Tex. App.–Dallas 1998, no pet.); *Gonzales*, 978 S.W.2d at 622-23. The acts arise out of an intentional tort, sovereign immunity is not waived. TEX. CIV. PRAC. & REM. CODE ANN., § 101.057 (Vernons Supp. 2001); *Petta*, 44 Tex. S. Ct. J. at 600. Because Ernest Moore's actions are intentional torts, there is no waiver of immunity under section 101.055. *Gonzales*, 978 S.W.2d at 623; *Barefield v. City of Houston*, 846 S.W.2d 399, 406 (Tex. App.–Houston [14ᵗʰ Dist.] 1992, writ denied).

k.    Plaintiffs assert various violations of state administrative regulations concerning the maintenance of proficiency of weapons, as well as violations of local directives concerning issuing weapons. The adoption of statutes or regulations to define the

common law duties for negligence are discretionary with the Court. *Perry v. S. N.*, 973 S.W.2d 301, 304-5 (Tex. 1998). Before a statute can even qualify as a standard of care, Plaintiff must belong to the class of person the statute or law seeks to protect and his injury must be of the type the statute was written to prevent. *Id.* at 305. Even so, the Court must then determine whether the statute creates an appropriate standard for tort liability. *Id.* at 305-6. The Courts need not accept every administrative regulation as a standard for civil liability. *Continental Oil Co. v. Simpson*, 604 S.W.2d 530 (Tex. Civ. App.–Amarillo 1980, writ ref'd n.r.e.).

Before adopting a regulation as a standard for common law duty, the Court should consider whether or not that the statute or regulation creates a new duty or reformulates a common law standard, whether the defendant would have adequate notice of the prohibited conduct, the consequences of imposing civil liability, the possibility of disproportionate fault, etc. *Perry*, 973 S.W.2d at 307-8; *Praesel v. Johnson*, 967 S.W.2d 391, 395-96 (Tex. 1998).

As a general rule, there is no common law duty to protect Plaintiffs from the criminal acts of third parties or to otherwise come to their aid. *Perry*, 973 S.W.2d at 306; *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 317 (Tex. App.–Corpus Christi 2000, no pet.). Here, the administrative regulations and directives are not a suitable basis. They are obviously written for the purpose of ensuring that officers be able to correctly fire their weapons and to determine to what officers what weapons are assigned. There is nothing in the language of the regulations showing they were intended to cover safeguarding weapons or otherwise prevent weapons from falling into the hands of criminals. They were

not intended to protect the public from the acts of non-police personnel who take the weapons.

l.   The alleged promise to Pirtle to destroy the rifle creates no duty in favor of the deceased Border Patrol Agents or Plaintiff Raul Rodriguez. The failure to perform a gratuitous promise makes the Defendant liable only if he knows that the services are necessary for the protection of a third party and (1) negligence in the performance of the promise increases the risk of harm to that party, or (2) the third party detrimentally relies on the alleged promise to perform. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991). At the time the rifle was delivered to the City, it would have had no basis to realize destruction was necessary to protect either the Border Agents or Deputy Rodriguez. Next, because the City did nothing towards destroying the rifle, it undertook no affirmative course of action which increased the risk. *Id.* at 396-7. Because none of this was either communicated to either Deputy Rodriguez or the Border Patrol Agents, they could not have relied on it. *Id.* at 397.

m.   State law limits the City's liability for state tort claims to $250,000.00 each person and $500,000.00 for each single occurrence for bodily injury or death. TEX. CIV. P. & REM. CODE ANN., § 101.023(c) (Vernons 1990). The deaths of the two Border Patrol Agents and the injury to Deputy Rodriguez constitute a "single occurrence" for the purpose of section 101.023(c).

n.   Plaintiffs are not entitled to an instruction on the spoliation with regard to the dispatch tapes, nor are they entitled to offer evidence that the tapes were taped over. First, the instruction on the spoliation inference requires proof that the City

destroyed the tapes in bad faith. *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000). The inference is predicated on bad conduct. *Vick v. Texas Empl. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). Mere negligence or adherence to routine retention practices is insufficient. *Vick*, 514 F.2d at 737. Second, to be admissible, evidence concerning the inadvertent loss of evidence must be relevant and that relevancy must not be outweighed by the danger of unfair prejudice and confusions of issues. FED.R.EVID. 402, 403; *Caparotta v. Entergy Corp.*, 168 F.3d 755, 756, 758 (5th Cir. 1999). Here, there is no bad faith conduct. The City provided the Texas Rangers with the copies it requested. There is a widespread practice to reuse tapes after thirty days. Next, relevancy is questionable. Plaintiffs have not been able to identify what would have been on the tape that was in fact helpful to their case. Finally, any probative value is minuscule compared with the substantial danger of confusing the issues and unfair prejudice.

o.   The affidavits from Julie Cox obtained by Plaintiffs' counsel are not admissible to prove the truth of their contents; Plaintiffs should not be allowed to call her primarily to put the prior statements before the jury. At trial, Ms. Cox's first two affidavits would be classified as hearsay under FED. R. OF EVID. 801(d). *United States v. Dietrich*, 854 F.2d 1056, 1061-62 (7th Cir. 1988); *United States v. Livingston*, 661 F.2d 239, 241 (D.C. Cir. 1981); *United States v. Ragghinti*, 560 F.2d 1376, 1380-81 (9th Cir. 1977); *Martin v. United States*, 528 F.2d 1157, 1159-60 (4th Cir. 1975). There is no basis to admit a prior inconsistent statement that would be otherwise inadmissible as hearsay. See, e.g. *United States v. Hogan*, 763 F.2d 697, 701 (5th Cir. 1985); *Whitehurst v. Wright*, 592 F.2d 834, 839-40 (5th Cir. 1979).

If a prior inconsistent affidavit will be classified as hearsay at trial, then it is not admissible to prove the substance of the affidavit and can be used solely for the purposes of impeachment. *Hogan*, 763 F.2d at 701; *Whitehurst*, 592 F.2d at 839-40. The courts have prevented parties from calling the witness at trial where it is apparent that the sole purpose is to offer a prior inconsistent statement which would be inadmissible for its substance. See, e.g. *Hogan*, 763 F.2d at 703; *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358, n. 2 (11th Cir. 1986). Therefore, Plaintiffs should not be permitted to call Ms. Cox if they cannot obtain any favorable testimony other than her prior inconsistent statement. If their sole purpose is to put before the jury her prior statements, then her entire testimony should be excluded as unfair prejudice and a danger of misleading the jury. FED. R. EVID. 403. Alternatively, Defendant is entitled to a limiting instruction that the prior statements are not admissible to prove the truth of their contents.

10.   **Exhibits**

See Attachment "A" for Plaintiffs.

See Attachment "B" for Defendant.

11.   **Witnesses**

See Attachment "C" for Plaintiffs.

See Attachment "D" for Defendant.

12.   **Settlement**

The parties agree that settlement efforts will not be productive with regard to the state-created danger cause of action.

13.  **Trial**

Five to seven 8-hour days of evidence.

14.  **Attachments**

(1)  Proposed questions for the voir dire examination

See Attachment "E" for Plaintiffs.

See Attachment "F" for Defendant.

(2)  Proposed charge, including instructions, definitions, and special interrogatories, with authority

See Attachment "G" for Plaintiffs.

See Attachment "H" for Defendant.

(3)  Designation of portions of written and video depositions to be read or shown by citing page and line numbers

See Attachment "I" (Designation of Portion of Natalie F. Prim deposition to be shown);

See Attachment "J" (Designation of Portion of Joe LaBeau deposition to be read);

See Attachment "K" (Designation of Portion of George Hupp deposition to be read);

See Attachment "L" (Designation of Portion of James Michael Riley deposition to be read).

_____     Date: _____
United States District Judge

# JOINT PRETRIAL ORDER

**Approved:**

_____
for Broadus Spivey
Attorney-in-Charge, Plaintiffs Gilberto
M. Rodriguez, et al. and Arturo G.
Salinas, et al.

Date: _____8 Feb 02_____

# JOINT PRETRIAL ORDER

**Approved:**

Date: _8 Feb 02_

Attorney-in-Charge, Plaintiff
Raul Rodriguez

# JOINT PRETRIAL ORDER

**Approved:**

_____
Attorney-in-Charge, Defendant City of
Harlingen

Date: ___8 Feb 2002___

| UNITED STATES DISTRICT COURT | * | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| Arturo G. Salinas et al<br><br>Versus<br><br>City of Harlingen, TX | Case Nos. B-98-162<br>98-163<br>99-70<br>Consolidated as #B-98-162<br><br>EXHIBIT LIST |
|---|---|
| Judge Hilda G. Tagle | Case Manager: Stella Cavazos<br>Court Reporter: Breck Record |
| List of<br>Plaintiffs' Exhibits | Proceeding        Date<br>Jury Trial        February 11, 2000 |

| No. | Description | Admitted | Exd |
|---|---|---|---|
|  |  |  |  |
| 6. | Capital of The Lower Rio Grande Valley Statement from The City Manager regarding the actions and progress that the city has undertaken relating to the shooting incident that took place in San Benito earlier this summer. |  |  |
| 14. | 009035 Interoffice Memorandum to Jim Scheopner, Chief of Police from Natalie Prim, City Manager re Administrative Leave (11-5-98) |  |  |
| 18. | 10-14-98 Harlingen Police Association letter (2 pgs.) to Sheryl Reed, Civil Service Director; Cesar Maldonado, Chairman-Civil Service Commission; Greg Powers, Civil Service Commissioner; Herman Wise, Civil Service Commissioner, City of Harlingen, signed by Jose Rubio Jr; Antonio Sanchez; Dennis M. Zamarron; Roberto Silva; with Attachment (3 pgs.); Law Enforcement Code of Ethics (1 pg.); Harlingen Police Department Employee Standard (1 pg.); Goals (1 pg.); Rules (1 pg.) Management of Personnel (4 pgs.) Professional Conduct and Community Relations (2 pgs.) |  |  |
| 20. | 11-29-98 Harlingen Police Association Letter to the citizens of this community, signed by Jose Rubio, Jr.; Robert Silva; Dennis M. Zamarron; Antonio Sanchez |  |  |
| 53. | 6-18-98 Statement of Earnings and Leave for Susan Lynn Rodriguez for the official pay date |  |  |

| 54. | 1-4-98 Susan Lynn Rodriguez=s Federal Employee Retirement System benefit statement dated | | |
|---|---|---|---|
| 55A-C | 1995, 1996, & 1997 U.S. Income Tax Returns for Susan & Gilberto Rodriguez | | |
| 56. | Birth Certificate of Susan Lynn Williams (Rodriguez) | | |
| 58. | Susan Lynn Rodriguez=s Death Certificate | | |
| 59. | Birth Certificate of Megan Suzanne Rodriguez, daughter of Susan Lynn Rodriguez & Gilberto Rodriguez | | |
| 60-A-H | Ricardo Salinas' Statement of Earning for several pay periods | | |
| 62. | Death Certificate of Ricardo Salinas (This records are missing from the file) | | |
| 64. | 5-3-01 George L. Kirkham=s Report to Plaintiffs= Counsel | | |
| 65. | George L. Kirkham's Professional Vita | | |
| 66. | 5-1-01 Phyllis R. Silverman's Report to Plaintiffs' Counsel | | |
| 67. | Phyllis R. Silverman's Curriculum Vitae | | |
| 70. | Investigative Affidavit & the Report of Javier Reyna of CCSD | | |
| 78. | 11-9-98 Retention Agreement whereby The City of Harlingen retained James M. Robenson | | |
| 85. | 7-7-99 Cameron County Sheriff's Dept. Case Report re Dennis Zamarron | | |
| 87. | Statement of Funeral Goods & Services for Susan L. Rodriguez | | |
| 88. | Worklife Expectancy Manual | | |
| 90. | Statement of Funeral Expenses for Ricardo Salinas | | |
| 91. | 5-18-98 Statement of Earnings and Leave for Ricardo Salinas for official pay date | | |
| 100. | 7-8-98 HPD Police Radio Call PL102002 Ex. 2 of Scheopner depo | | |
| 102. | HPD memorandum from Scheopner to La Beau Ex. 4 of Scheopner depo | | |
| 104. | Sylvia Pirtle Receipt Ex. 6 of Scheopner depo | | |
| 105. | HPD Manual Provisions on Weapons 4.03.004-4.05.002 Ex. 7-A of Scheopner depo | | |

| 106. | HPD letter from Victor Rodriguez re regulations and policies<br>Ex. 7-B of Scheopner depo | | |
|---|---|---|---|
| 113. | Statement of George Hupp<br>Ex. 9-A of Scheopner depo | | |
| 156 – 157 | Photographs –<br>156-D; AA; FF; GG; LL; VV; XX<br>157-L; C | | |
| 158-160. | Photographs –<br>158-J<br>159-F; H; I; K; L; M; N; R<br>160-B; E; L | | . |
| 169. | Map of R.D. Moore=s property and scene of shootings in San Benito<br>Ex. 29 of Hupp depo | | |
| 170. | Map of R.D. Moore's property and scene of shootings in San Benito<br>Ex. 30 of Riley depo | | |
| 182. | Receipt for gun sale<br>Ex. 11 of Vasquez depo | | |
| 191. | Draft form of report given to La Beau from Scheopner re officer involved in shooting<br>Ex. 1 of La Beau=s depo | | |
| 192. | Memo to Scheopner from La Beau re officer possession and loss of assault rifle<br>Ex. 2 of La Beau=s depo | | |
| 193. | Memo to Prim from La Beau re shooting incident/recommendations for action<br>Ex. 3 of La Beau=s depo | | |
| 195. | Memo to La Beau from Scheopner re departmental weapons<br>Ex. 5 of La Beau=s depo | | |
| 197. | Preliminary draft of city manager=s report concerning the 7th of July, 1998 shooting incident<br>Ex. 7 of La Beau=s depo | | |
| 208. | Transcript of radio traffic<br>Ex. 58 of Jones= depo | | |
| 209. | Transcript of EMS calls<br>Ex. 59 of Jones= depo | | |
| 210. | Transcript of phone calls-HPD<br>Ex. 60 of Jones= depo | | |
| 217 | Teletype message-sheriff=s office<br>Ex. 65 of Jones= depo | | |

3163D.083(A)-Plaintiffs' Exhibit List          Page 3

| 224. | Transcript-Tape No. 1<br>Ex. 4 of Ledezma=s depo | | |
|------|---------------------------------------------------|--|--|
| 225. | Transcript-Tape No. 3<br>Ex. 5 of Ledezma=s depo | | |
| 226. | Transcript-Tape No. 2<br>Ex. 6 of Ledezma=s depo | | |
| 231. | Map of survey and improvements of the Moore<br>residence<br>Exh. 34 of Patsy Moore depo | | |
| 255. | Photo of Ricardo Salinas and fiancé | | |
| 256. | Salinas family photo | | |
| 257. | Gilberto Rodriguez family photo | | |
| 258. | Photos of the crime scenes, autopsies & injuries | | |
| 262. | Texas Rangers= San Benito Murder Report | | |
| 277. | Robenson Report | | |
| 283. | 2 Photos of Megan Suzanne Rodriguez | | |
| 285. | Maps | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |

---

### DEFENDANT'S EXHIBIT LIST

---

| No. | Description | Admitted | Exd |
|---|---|---|---|
| | | | |
| 1. | Gun List Inventory at R.D. Moore's home | | |
| 2. | Statement of George Hupp | | |
| 3. | Statement of Michael James Riley | | |
| 4. | Statement of Orlando Sanchez | | |
| 5. | Statement of Raul E. Rodriguez | | |

| No. | Description | Admitted | Exd |
|-----|-------------|----------|-----|
|  |  |  |  |
| 6. | Statement of Ronald K. Saenz |  |  |
| 7. | Videotape of recreation of chase scene |  |  |
| 8. | Cassette tape of HPD dispatch |  |  |
| 9. | Photographs from Texas Ranger and CCSD |  |  |
| 10. | Autopsy report on Susan Rodriguez |  |  |
| 11. | Autopsy report on Ricardo Salinas |  |  |
| 12. | 7-page HPD dispatcher log |  |  |
| 13. | Two transcripts of cassette on HPD dispatch recordings |  |  |
| 14. | Cameron County Sheriff Department teletype message |  |  |
| 15. | Three cassette tapes of Cameron County Sheriff Department dispatch on July 7, 1998 |  |  |
| 16. | Three transcripts of cassette tapes of Cameron County Sheriff Department Dispatch on July 7, 1998 |  |  |
| 17. | Raul Rodriguez personnel and payroll records from Cameron County Sheriff Department |  |  |
| 18. | Javier Reyna investigative records affidavit with Case Report |  |  |
| 19. | Rodolfo C. Jaramillo aff.davit with Reports of Investigation and scale drawings |  |  |
| 20. | Cardiovascular Associates of Harlingen medical records on Raul Rodriguez |  |  |
| 21. | Dr. Bliss W. Clark's medical records on Raul Rodriguez |  |  |
| 22. | DPS Firearms examiner William Sorrow's 6-page report |  |  |
| 23. | Statement of CCSD Deputy Robert Rodriguez |  |  |
| 24. | Copy of handwriting on HPD cassette tape in the possession of Texas Rangers |  |  |
| 25. | HPD miscellaneous report, receipt, property tag and index card referencing the cassette tape and dispatcher log |  |  |

| No. | Description | Admitted | Exd |
|-----|-------------|----------|-----|
|     |             |          |     |
| 26. | Privately owned Colt AR-15 (in the possession of R.D. Moore) |          |     |
| 27. | Julie Cox's Affidavit dated November 29, 2001 (subject to Motion in Limine and Objection to Plaintiffs calling Julie Cox). |          |     |
| 28. | Leslie Cox's Affidavit dated November 13, 2001 (subject to Motion in Limine and Objection to Plaintiffs calling Leslie Cox). |          |     |
| 29. | November 1999 HPD Rules, Regulations and Policies |          |     |

| UNITED STATES DISTRICT COURT | * | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| Arturo G. Salinas et al<br><br>Versus<br><br>City of Harlingen, TX | Case Nos. B-98-162<br>98-163<br>99-70<br>Consolidated as #B-98-162<br><br>WITNESS LIST |
|---|---|
| Judge Hilda G. Tagle | Case Manager:  Stella Cavazos<br>Court Reporter:  Breck Record |
| List of<br>Plaintiffs' Witnesses | Proceeding          Date<br>Jury Trial          February 11, 2000 |

| BAS | 1. | Pirtle, Sylvia | 17 | Salinas, Art |
|---|---|---|---|---|
| PA | 2. | Jaramillo, Rodolfo C. | 18 | Salinas, Elsa |
| BAS | 3. | Schoepner, Jim | 19 | Williams, Stephen |
| PA | 4. | Moore, R. D. | 20 | Williams, Robyn |
| PA | 5. | LaBeau, Joe (by depo) | 21 | Rodriguez, Gilbert |
| BAS | 6. | Cox, Julie | 22 | Silverman, Dr. Phyllis |
| PA | 7. | Reyna, Javier | 23 | Rubio, Joe |
| BAS | 8. | Foist, Shawn | 24 | Perry, Albert |
| PA | 9. | Robenson, James | 25 | Rodriguez, Victor |
| BAS | 10. | Rodriguez, Arnold | 26 | Garcia, Miguel (Mike) |
| PA | 11. | Rodriguez, Robert | 27 | Ladezma, Chris |
| BAS | 12. | Prather, Lucy | 28 | Moore, Patsy |
| PA | 13. | Kirkham, George | 29 | Saenz, Ronald |
| BAS | 14. | Hupp, George A. | 30 | Walence, Jason |

| BAS | 15. | Brinning, John C. | 31 | Matlock, Melody |
|-----|-----|-------------------|----|-----------------|
| P.A | 16. | Rodriguez, Raul | 32 | Prim, Natalie |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ARTURO G. SALINAS, ET AL        {
       {
V.        {            CIVIL ACTION NO. B-98-162
       {
CITY OF HARLINGEN        {            JURY DEMANDED
       {
and        {
       {
GILBERTO M. RODRIGUEZ, ET AL        {
       {
V.        {            CIVIL ACTION NO. B-98-162
       {
CITY OF HARLINGEN        {
       {
and        {
       {
RAUL RODRIGUEZ        {
       {
V.        {            CIVIL ACTION NO. B-98-162
       {
CITY OF HARLINGEN        {

## DEFENDANT'S WITNESS LIST

| | Name | Brief Statement of Nature of Testimony |
|---|---|---|
| 1. | Captain Joseph Vasquez<br>1306 High St.<br>Harlingen, Texas 78550 | Assignment and handling of the subject AR-15 and opinions concerning Ernest's use of privately owned rifles |

| | Name | Brief Statement of Nature of Testimony |
|---|---|---|
| 2. | Ronald K. Saenz<br>Personnel & Safety Risk<br>Office<br>964 E. Harrison<br>Brownsville, Texas 78520 | Shooting incident |
| 3. | George A. Hupp<br>Tucson INS Investigations<br>P. O. Box 17221<br>Tucson, AZ 85731 | Shooting incident |
| 4. | Javier Reyna<br>Cameron County Sheriff's<br>Department<br>954 E. Harrison<br>Brownsville, Texas 78520 | Shooting incident and follow up investigation |
| 5. | Rodolfo C. Jaramillo<br>Texas Department of Public<br>Safety<br>1630 N. 77 Sunshine Strip<br>Harlingen, Texas 78550 | Shooting incident and follow up investigation |
| 6. | Dr. DeWitt Davenport<br>Pathology<br>P. O. Drawer 2588<br>Harlingen, Texas 78551 | Autopsies of Susan Rodriguez and Ricardo Salinas |
| 7. | Dr. Marion Lawler, Jr.<br>2310 N. Ed Carey Drive<br>Harlingen, Texas 78550 | Medical opinions on Raul Rodriguez |
| 8. | Michael James Riley<br>U.S. Border Patrol Agent<br>McAllen Sector<br>McAllen, Texas 78501 | Shooting incident |
| 9. | Orlando Sanchez<br>U.S. Border Patrol Agent<br>McAllen Sector<br>McAllen, Texas 78501 | Shooting incident |

| | Name | Brief Statement of Nature of Testimony |
|---|---|---|
| 10. | Kris Ledezma<br>Dispatcher<br>Cameron County Sheriff<br>Department<br>954 E. Harrison<br>Brownsville, Texas 78520 | Shooting incident |
| 11. | Melody Matlock<br>Harlingen EMS<br>1705 Vermont<br>Harlingen, Texas 78550 | Shooting incident |
| 12. | R.D. Moore<br>City Harlingen Police<br>Department<br>1102 S. Commerce St.<br>Harlingen, Texas 78550 | Relationship with Ernest Moore, assignment and possession of HPD AR-15, shooting incident and follow up activities |
| 13. | Patsy Moore<br>1604 Preston Trail<br>Harlingen, Texas 78552 | Personal relationship with Ernest Moore and shooting incident |
| 14. | James Joseph Scheopner<br>City Harlingen Police<br>Department<br>1102 S. Commerce St.<br>Harlingen, Texas 78550 | Assignment and handling of the subject AR-15, activities on July 7, 1998, follow up investigation and activities |
| 15. | Miguel Garcia<br>City Harlingen Police<br>Department<br>1102 S. Commerce St.<br>Harlingen, Texas 78550 | Shooting incident |
| 16. | Natalie Flores Prim<br>410 Tanglewood Drive<br>Pensacola, FL 32503 | Follow up investigation and action |
| 17. | Joe LaBeau<br>City Hall of Midlothian<br>104 West Avenue E.<br>Midlothian, Texas 76065 | Follow up investigation and action |

| | Name | Brief Statement of Nature of Testimony |
|---|---|---|
| 18. | Robert Rodriguez<br>Cameron County Sheriff's<br>Department<br>954 E. Harrison<br>Brownsville, Texas  78520 | Deputy Cameron County Sheriff's Department<br>shooting incident |
| 18. | Gale Lynn Jones<br>City Harlingen Police<br>Department<br>1102 S. Commerce St.<br>Harlingen, Texas  78550 | Dispatch procedures for reuse of master tapes |
| 19. | Antonio Medina<br>Rt. 1, Box 50<br>San Benito, Texas  78586 | Personal friend of Ernest Moore |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| Vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL. | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162 for all purposes) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162 for all pre-trial matters) |
| CITY OF HARLINGEN, TEXAS. | § | |

## PLAINTIFFS' PROPOSED VOIR DIRE QUESTIONS

1.      Have you or a close family member been employed by the city of Harligen or any other city government?  If so, in what capacity and for whom?

2.      Does your employment involve close dealings with Harligen City Officials (such as business sales to the city or contracts to provide services)?  If so, please describe those dealings and whether or not such ties would make it difficult for you to serve as a fair juror in this case.

3.      Do you or a close family member have any work experience in law enforcement?  If so, what is that experience?

4.      Have you or a close family member been employed in a job where you handled or adjusted claims?  If so what was that employment?

5.      Do you keep any guns in your home?  If so, what type and how are they stored?

6.      Are you or a close family member licensed to sell guns, or have you or a close family member worked at a job where guns were sold? If so, describe that operation (trade shows, sporting goods store, etc.).

7.      Have you or a close family member received training in handling weapons or marksmanship? If so, what type of training have you received?

8.      Do you or a close family member own or possess any assault-type rifles, such as an AK-47 or an AR-15? If so, how long have you owned the gun or guns; how are they stored; and what type of training have you had in their use?

9.      Have you or a close family member been wounded or injured in a shooting incident? If so, please describe the incident briefly. Will you be able to set aside your personal experience, which may or may not have resulted in a lawsuit upon which you made a recovery, and judge the facts of this case as they are presented at trial? Will you hold it against the Plaintiffs in this case because they seek compensation from an event similar to one in which you were involved in a suit and may not have been compensated?

10.     Are you now or have you ever been a member of the National Rifle Association? If you were a member but are no longer a member, why not?

11.     Have you ever read *The Turner Diaries* by Andrew MacDonald?

12.     Are you a collector of World War II memorabilia? If so, what types of things do you collect? Specifically, do you collect Nazi memorabilia?

13.     Have you or a close family member ever been a party to a lawsuit? If so, please describe whether you were the Plaintiff (the person bringing the suit) or the Defendant (the person being sued) and the nature of the case.

14.     Have you ever served on a jury? If so, was it a criminal or civil jury; did you serve as foreperson of the jury; and did you reach a verdict?

15.     The law provides that, if the Plaintiffs prove their case, they are entitled to have the jury assess damages for such intangible items as mental anguish and loss of companionship. Do you have a strongly held belief that would prevent you from awarding substantial money damages, if proved, for such intangible elements? If so, please describe that belief or conviction.

16.     There has been a great deal of press coverage about the events that give rise to this lawsuit. There has been some discussion in the community about those events as well. Will you be able to set aside what you have read or heard and base your verdict on the evidence that is presented in this trial?

17.     If you live in the City of Harligen, can you assess money damages in this case if proven without regard to concern as to how those damages would be paid? There has been media coverage

about the applicable insurance coverage available to the City of Harlingen for this incident. If you have seen such reports, will you be able to set aside such information and base your verdict on the evidence presented in this trial?

18.    Are you, or any member of your immediate family a member of Citizens Against Lawsuit Abuse?

19.    Plaintiffs are seeking substantial money damages in this wrongful death action. Do you have strongly held personal beliefs that would prevent you from awarding an amount of money, however great the amount as determined by the evidence, in cases based on the wrongful death of a family member?

20.    There are many witnesses that may potentially be called to testify in this case. Please listen to the following list of potential witnesses, stand if you recognize a name with whom you are well acquainted, and after I finish the list I'll ask each one of you if there is something about that relationship that would cause you to have a leaning, one way or the other, in considering the testimony in this case:

| | |
|---|---|
| Gilberto M. Rodriguez | (Husband of Susan Rodriguez) |
| Arturo Guillermo Salinas | (Father of Ricardo Salinas) |
| Robyn S. Williams | (Mother of Susan Rodriguez) |
| Stephen L. Williams | (Father of Susan Rodriguez) |
| Arnold Rodriguez | (Former Human Resources Director for the City of Harlingen) |
| Raul Rodriguez | (Cameron County Sheriff's Deputy) |
| Jim Schoepner | (Harlingen Chief of Police at the time of the shooting) |
| R.D. Moore | (Harlingen police officer & father of Ernest Moore) |
| Mrs. R. D. Moore | (Mother of Ernest Moore) |
| Gilbert Briones | (Cameron County Sheriff's Deputy) |
| Samuel Motemayor | (Cameron County Sheriff's Deputy) |
| Leroy Rincones | (Cameron County Sheriff's Deputy) |
| Robert Rodriguez | (Cameron County Sheriff's Deputy) |
| Robert Rodriguez | (Cameron County Sheriff's Investigator) |
| Ronald K. Saenz | (Sergeant Cameron County Sheriff's Department) |
| Rodolfo C. Jaramillo | (Texas Ranger) |
| Israel Pacheco | (Texas Ranger) |
| Shawn Foist | (Sergeant Harlingen Police Department) |
| Victor Rodriguez | (Chief of Police Harlingen Police Department) |
| Jose Rubio | (Former detective Harlingen Police Department) |
| Luciano Rubio | (Captain Harlingen Police Department) |
| Roberto Silva | (Secretary of the Harlingen Police Officers Association) |
| Joseph Vasquez | (Captain Harlingen Police Department) |
| John C. Brinning | (U.S. Border Patrol Agent) |
| George A. Hupp | (U.S. Border Patrol Agent) |
| Michael James Riley | (U.S. Border Patrol Agent) |
| Orlando Sanchez | (U.S. Border Patrol Agent) |

| | |
|---|---|
| Joseph LaBeau | (Former Harlingen Assistant City Manager) |
| Doel Nicholas Anders | (Friend and co-worker of Ernest Moore) |
| Rudy Cavazos | (Friend of Ernest Moore) |
| Sylvia Pirtle | (Original owner of the AR-15) |
| James Robenson | (Floresville management auditor) |
| Victor Rodriguez | (Former Harlingen Police Chief) |
| Daniel Winn | (Friend of Ernest Moore) |
| Julie Lynn Cox | (Ex-girlfriend of Ernest Moore) |
| Mrs. Prather | (Witnessed two men get into Ernest Moore's pick-up) |
| William Arthur Morin | (Witnessed shootings in Rio Hondo) |
| George Kirkham | (Plaintiffs' Expert witness on Police procedure) |
| Dr. Phyllis Silverman | (Plaintiffs' Expert witness on Death and Bereavement) |

21.     The parties are represented by counsel. The families of the slain Border Patrol Agents are represented by Broadus Spivey, Price Ainsworth and Francis Pan of the firm Spivey & Ainsworth, P.C. in Austin and Richard Pena who has offices here and in Austin. The Defendant City of Harligen is represented by Tom Lockhart of the firm Adams & Graham, L.L.P. in Harligen. Do you know any of these lawyers, and is there anything about that relationship that would make it difficult for you to serve as a juror in this case?

22.     Is there anything in past dealing with Border Patrol Agents that would cause you to have a leaning, one way or the other, as we begin this case that involves the families of slain Border Patrol Agents? If so, please describe that dealing with Border Patrol Agents.

23.     Have you received any training in law or medicine? If so, please describe such training.

24. You are not to base your verdict on sympathy. This means that your verdict must not be based on sympathy for the victims or for the entities that may have to respond in money damages. Can you follow the law without concern for sympathy for the victims or in considering who will have to pay damages, however substantial the amount of the verdict?

25.     Is there anything that you are aware of that might affect your serving as a fair juror in this case?

Respectfully submitted,

SPIVEY & AINSWORTH, P.C.
48 EAST AVENUE
AUSTIN, TEXAS 78701
512/474-6061
512/474-1605  fax


By _____
Broadus A. Spivey
State Bar No. 00000076
Price Ainsworth.
State Bar No. 00950300

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on January 23, 2002, to all counsel of record and interested parties via Certified mail return receipt requested:

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
ATTORNEYS FOR DEFENDANT


_____
Broadus A. Spivey

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| Vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL. | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

## PLAINTIFFS' PROPOSED
## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you in the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the fact. Do not consider any statement that I have made in the course of the trial or make in these instructions as an indication that I have any opinion about the facts of this case. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.  You must answer all questions from a preponderance of the evidence.   By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them.

In determining the weight to give the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because, as you all know, people forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether the misstatement was intentional falsehood or simply an innocent lapse of memory; and the significance of that misstatement may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified

in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- for instance, the testimony of an eyewitness. The other is indirect or circumstantial evidence, meaning the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires you find the facts from preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has a special training or experience in the technical field -- he or she is generally referred to as an expert witness -- is permitted to state his opinions on those technical matters. However, you are under no obligation to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Additionally, do not assume from anything I may have done or said during the trials that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts. [1]

The Plaintiffs claim that the City of Harlingen, a municipality, is liable for certain alleged constitutional deprivations, including violations of the Plaintiffs' substantive due process rights via a "state created danger." A city is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom, policy, ordinance, regulation, or for a decision performed pursuant to a "custom" that has not been formally adopted by an appropriate decision make may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have force of law, or for a final policymaker who made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. Therefore, if you find that the Plaintiffs were injured as a the proximate or legal result of the City of Harlingen's policy, custom, ordinance, regulation or decision, as defined above, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the City of Harlingen itself will be responsible.

The Plaintiffs claim the City of Harlingen violated their civil rights guaranteed by the Constitution. They claim the City of Harlingen violated their rights to procedural or substantive due process by creating a dangerous situation which was a proximate cause of the death of Susan Lynn Rodriguez and Ricardo Guillermo Salinas and serious injuries to Raul Rodriguez by arbitrarily abusing its governmental power and that the City of Harlingen violated their rights to substantive due process through a "state created

---

[1]   Fifth Circuit Pattern Jury Instructions, Civil, (1999)

danger." Where the City knowingly places the law enforcement officers in danger, or makes them more vulnerable to it, the due process clause of the Constitution'renders the City of Harlingen accountable for foreseeable deaths and injuries from the City's conduct. To establish the existence of a "state created danger," the Plaintiff must show (1) the environment created by the City was dangerous; (2) the City knew it was dangerous; and (3) the City used its authority to create an opportunity that would not otherwise have existed for the third party's crime to have occurred.[2]

The Plaintiffs also assert that the City of Harlingen is liable under the Texas Tort Claims Act for Chief Scheopner's and Detective Moore's negligent and wrongful use of the AR-15 rifle in the scope of their employment. According to Texas law, the City is liable for personal injury and death so caused by the use of tangible personal property if the City would, were it a private person, be liable to Plaintiffs.[3]

A firearm is a deadly weapon per se under Tex. Penal Code §. 1.07(a)(11)(A) (Vernon 1974). The City has a duty to properly store and safeguard such a highly dangerous instrumentality. The City is charged with the responsibility for the safe use and storage of the AR-15 rifle in question where the control of the weapon has passed to another negligently.[4]

Negligence means that Chief Scheopner and Detective Moore entrusted the AR-15 rifle to a person who was not qualified in its use or storage, and Detective Moore failed to properly store and safeguard the AR-15 rifle from being easily accessible to

---

[2]   Patterned the Court's Charge to the Jury used in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) because *Piotrowski* is a state-created danger case. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997); *Johnson v. Dallas Independent School District*, 38 F.3d 198, 201 (5th Cir. 1994).

[3]   Tex. Civ. Prac. & Rem Code § 101.021(2)

[4]   *Kennedy v. Baird*, 682 S.W.2d 377, 378 (Tex. App. – El Paso 1984, no writ).

others, including his son, Ernest Moore. The City is liable for the deaths of Agents Susan
Lynn Rodriguez and Ricardo Guillermo Salinas and the personal injury of Deputy Raul
Rodriguez if such deaths and personal injury were proximately caused by the negligence
of Chief Scheopner and Detective Moore acting within their scope of employment.

If the Plaintiffs have proven their claim against the Defendant by a preponderance
of the evidence, you must determine the damages to which the Plaintiffs are entitled.
You should not interpret the fact that I have given instructions about the Plaintiffs'
damages as an indication in any way that I believe that the Plaintiff should, or should not,
win this case. It is your task first to decide whether the Defendant is liable. I am
instructing you on damages only so that you will have guidance in the event you decide
that the Defendant is liable and that the Plaintiffs are entitled to recover money from the
Defendant.

If you find that the Defendant is liable to the Plaintiffs, then you must determine
an amount that is fair compensation for all of the Plaintiffs' damages. These damages are
called compensatory damages. The purpose of compensatory damages is to make each of
the Plaintiffs whole; that is, to compensate each of the Plaintiffs for the damage that the
Plaintiff has suffered. Compensatory damages are not limited to expenses that the
Plaintiffs may have incurred because of their injuries. If the Plaintiffs win, they are
entitled to compensatory damages for physical injury, pain and suffering, mental anguish,
shock and discomfort, lost earning capacity, medical expenses and loss of enjoyment of
life that they have suffered because of the Defendant's conduct.

You may award compensatory damages only for injuries that the Plaintiffs prove
were proximately caused by the Defendant's allegedly wrongful custom, policy, or

practice -- if they were indeed wrongful. The damages that you award must be fair compensation for all of the Plaintiffs' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant. You should not award compensatory damages for speculative injuries and damages, but only for those injuries and damages which the Plaintiffs have actually suffered and that the Plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiffs prove the amount of their losses with mathematical precision, but only with as much certainty and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages if you award damages drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A.    Survivors' Damages:

    a.    Lost Support and Services

        The loss of Susan Lynn Rodriguez's support and services that the Plaintiff Gilberto M. Rodriguez has sustained and will sustain in the future because of Susan Lynn Rodriguez's death. You must determine the duration of any future loss by considering the joint life expectancy of Susan Lynn Rodriguez and Plaintiff Gilberto M. Rodriguez. Joint life expectancy means the number of years that both Susan Lynn Rodriguez and Plaintiff

Gilberto M. Rodriguez could have expected to be alive together, considering the ages and life expectancy of each at the time of Susan Lynn Rodriguez's death.

The loss of Susan Lynn Rodriguez's support and services that her child, the Minor Plaintiff, Megan Suzanne Rodriguez has sustained and will sustain in the future because of Susan Lynn Rodriguez's death. You must determine the duration of any future loss by considering the joint life expectancy of Susan Lynn Rodriguez and Minor Plaintiff Megan Suzanne Rodriguez. Joint life expectancy means the number of years that both Susan Lynn Rodriguez and Minor Plaintiff Megan Suzanne Rodriguez could have expected to be alive together, considering the ages and life expectancy of each at the time of Susan Lynn Rodriguez's death.

The loss of Susan Lynn Rodriguez's support and services that the Plaintiff Stephen L. Williams has sustained and will sustain in the future because of Susan Lynn Rodriguez's death. You must determine the duration of any future loss by considering the joint life expectancy of Susan Lynn Rodriguez and Plaintiff Stephen L. Williams. Joint life expectancy means the number of years that both Susan Lynn Rodriguez and Plaintiff Stephen L. Williams would have expected to be alive together, considering the ages and life expectancy of each at the time of Susan Lynn Rodriguez's death.

The loss of Susan Lynn Rodriguez's support and services that the Plaintiff Robyn S. Williams has sustained and will sustain in the future because of Susan Lynn Rodriguez's death. You must determine the duration of any future loss by considering the joint life expectancy of Susan Lynn Rodriguez and Plaintiff Robyn S. Williams. Joint life expectancy means the number of years that both Susan Lynn Rodriguez and Plaintiff

Robyn S. Williams could have expected to be alive together, considering the ages and life expectancy of each at the time of Susan Lynn Rodriguez's death.

The loss of Ricardo Guillermo Salinas' support and services that the Plaintiff Arturo Guillermo Salinas, if any, sustained as a result of the death of has sustained and will sustain in the future because of Ricardo Guillermo Salinas' death. You must determine the duration of any future loss by considering the joint life expectancy of Ricardo Guillermo Salinas and Plaintiff Arturo Guillermo Salinas. Joint life expectancy means the number of years that both Ricardo Guillermo Salinas' and Plaintiff Arturo Guillermo Salinas could have expected to be alive together, considering the ages and life expectancy of each at the time of Ricardo Guillermo Salinas' death.

The loss of Ricardo Guillermo Salinas' support and services that the Plaintiff Elisa Hernandez Herrera, if any, sustained as a result of the death of has sustained and will sustain in the future because of Ricardo Guillermo Salinas' death. You must determine the duration of any future loss by considering the joint life expectancy of Ricardo Guillermo Salinas and Plaintiff Elisa Hernandez Herrera. Joint life expectancy means the number of years that both Ricardo Guillermo Salinas' and Plaintiff Elisa Hernandez Herrera could have expected to be alive together, considering the ages and life expectancy of each at the time of Ricardo Guillermo Salinas' death.

b.    Surviving Spouse

The Plaintiff Gilberto M. Rodriguez's loss of companionship and society, and his mental pain and suffering that resulted from Susan Lynn Rodriguez's death. In determining the duration of these losses, you must consider the joint life expectancy of the decedent and the Plaintiff Gilberto M. Rodriguez.

c.    Surviving Minor Child

The loss of parental companionship and society, instruction, and guidance, and the mental anguish and emotional pain and suffering Minor Plaintiff Megan Suzanne Rodriguez sustained because of Susan Lynn Rodriguez's death.   In determining the duration of these losses, you must consider the joint life expectancy of the decedent and the surviving child.[5]

Under Texas state law, the survivors are entitled to loss of companionship and society, which means the loss of the positive benefits flowing from the love, comfort, companionship, and society the survivors, in reasonable probability, would have received from deceased had she lived.

d.    Loss of Companionship and Society

"Loss of companionship and society" means the loss of positive benefits flowing from the love, comfort, companionship and society:

1.)    Gilberto M. Rodriguez, Megan Suzanne Rodriguez, Stephen L. Williams and Robyn S. Williams, respectively, would in reasonable probability have received from Susan Lynn Rodriguez, had she lived; and

2.)    That Arturo Guillermo Salinas and Elisa Hernandez Salinas, respectively, would in reasonable probability have received from Ricardo Guillermo Salinas, had he lived.

e.    Mental Anguish

"Mental anguish" means the emotional pain, torment and suffering experienced by:

1.)    Gilberto M. Rodriguez, Megan Suzanne Rodriguez, Stephen L. Williams and Robyn S. Williams, respectively, experienced because of the death of Susan Lynn Rodriguez; and

2.)    That Arturo Guillermo Salinas and Elisa Hernandez Salinas, respectively, experienced because of the death of Ricardo Guillermo Salinas.

B.    Estate Damages:

a.    Lost accumulations, or loss of inheritance.

The estate's loss of net accumulations, that is, that part of the decedent's net income from salary after taxes, including pension benefits that the decedent, after paying personal expenses and monies for the support of the decedent's survivors, would have remaining as part of the estate if the decedent had lived her normal life expectancy.

If you find for the Plaintiffs, Megan Suzanne Rodriguez is entitled to recover an amount that will fairly compensate her for any damage she has suffered to date.[6]

If you find that the Plaintiffs are reasonably certain to suffer damages in the future from her injuries, then you should award them the amount that you believe would fairly compensate them for such future damages.

An award for future damages necessarily requires that payment be made now for a loss that the Plaintiffs will not actually suffer until some future date. If you should find that the Plaintiffs are entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

---

[5]    Fifth Circuit Pattern Jury Instructions, Civil, (1999) at 196-197.

[6]    Fifth Circuit Pattern Jury Instructions, Civil, (1999) at 195.

1.      You should reduce any award by the amount of expenses that the Plaintiffs would have incurred in making those earnings.

2.      If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the Plaintiffs could earn on the amount of the award if they made a relatively risk-free investment.  The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiffs if they receive it today than if they received it in the future when they would have otherwise earn it.  It is more valuable because the Plaintiffs can earn interest on it for the period of time in between the date of the award and the date they would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the Plaintiffs can earn on the amount in the future.

You must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach  agreement if you can do so.  Each of you must decide the case for yourself  but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges -- the judges of facts.  Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Use one of the jury note forms to advise the Marshal that you have reached a verdict. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

You may now retire to the jury room to conduct your deliberations.[7]

---

[7]   Fifth Circuit Pattern Jury Instructions, Civil, (1999);

**INTERROGATORY NO. 1[8]**

Did the City of Harlingen, Texas, as a result of a custom, policy or practice, violate the civil rights of Susan Lynn Rodriguez, Ricardo Guillermo Salinas, and Raul Rodriguez by creating a "state created danger," which resulted in the deaths of Susan Lynn Rodriguez, Ricardo Guillermo Salinas and serious injuries to Raul Rodriguez?

ANSWER "YES" OR "NO"

ANSWER: _____

---

[8]    Patterned the Court's Interrogatories used in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) because *Piotrowski* is a state-created danger case

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| Vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL. | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162 for all |
| purposes) | | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162 for all pre-trial |
| matters) | | |
| CITY OF HARLINGEN, TEXAS. | § | |

## INTERROGATORIES

## INTERROGATORY NO. 2[9]

Did the City of Harlingen, Texas' negligence proximately cause the death of Susan Lynn Rodriguez and Ricardo Guillermo Salinas, and injury to Raul Rodriguez?

ANSWER "YES" OR "NO"

ANSWER: _____

---

[9]   PJC 7.12 of Texas Pattern Jury Charges (2000).

IF YOU HAVE ANSWERED "YES" TO INTERROGATORY 1 OR
INTERROGATORY 2, THEN ANSWER THE FOLLOWING INTERROGATORIES;
OTHERWISE, SIGN AND DATE THE VERDICT FORM BELOW.

## INTERROGATORY NO. 3[10]

What sum of money, if any, if paid now in cash by this Defendant, do you find

would fairly and reasonably compensate Gilberto M. Rodriguez for his damages, if any,

past and future, sustained as a result of the death of Susan Lynn Rodriguez?

Answer in dollars and cents or "none" for each of the following:

1.  Lost Support and Services      ANSWER:_____

2.  Loss of companionship and Protection

    ASWER:_____

3.  Mental Pain and Suffering and anguish

    ANSWER:_____

4.  Funeral Expenses

    ANSWER:_____

---

[10]   All the damages questions are patterned the Court's Interrogatories used in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) because *Piotrowski* is a state-created danger case in accordance with damage instructions set forth in pages 195-197 of Fifth Circuit Pattern Jury Instructions, Civil, (1999) and PJC 9.2, 9.3, and 9.5 of Texas Pattern Jury Charges, General Negligence (2000).

**INTERROGATORY NO. 4**

What sum of money, if any, if paid now in cash by this Defendant, do you find would fairly and reasonably compensate Megan Suzanne Rodriguez for the damages, past and future, if any, sustained as a result of the death of Susan Lynn Rodriguez?

Answer in dollars and cents or "none" for each of the following:

1.    Lost Support and Services

        ANSWER:_____

2.    Loss of Parental companionship, instruction, and guidance

        ANSWER:_____

3.    Mental Pain and Suffering

        ANSWER:_____

4.    Loss of inheritance

        ANSWER:_____

**INTERROGATORY NO. 5**

What sum of money, if any, if paid now in cash by this Defendant, do you find

would fairly and reasonably compensate Stephen L. Williams and Robyn S. Williams for

the damages, if any, sustained as a result of the death of Susan Lynn Rodriguez?

Answer in dollars and cents or "none" for each of the following:

Stephen L. Williams

1.      Lost Support and Services

        ANSWER:_____

2.      Loss of Companionship and Society

        ANSWER:_____

3.      Mental Anguish

        ANSWER:_____

Robyn S. Williams

1.      Lost Support and Services

        ANSWER:_____

2.      Loss of Companionship and Society

        ANSWER:_____

3.      Mental Anguish

        ANSWER:_____

**INTERROGATORY NO. 6**

What sum of money, if any, if paid now in cash by this Defendant, do you find would fairly and reasonably compensate Arturo Guillermo Salinas and Elisa Hernandez Herrera Salinas for the damages, if any, past and future, sustained as a result of the death of Ricardo Guillermo Salinas?

Answer in dollars and cents or "none" for each of the following:

Arturo Guillermo Salinas

1.      Lost Support and Services

        ANSWER:_____

2.      Loss of Companionship and Society

        ANSWER:_____

3.      Mental Anguish

        ANSWER:_____

4.      Funeral Expenses

        ANSWER:_____

Elsia Hernandez Herrera Salinas

1.      Lost Support and Services

        ANSWER:_____

2.      Loss of Companionship and Society

        ANSWER:_____

3.      Mental Anguish

        ANSWER:_____

**INTERROGATORY NO. 7**

What sum of money, if any, if paid now in cash by this Defendant, do you find would fairly and reasonably compensate Raul Rodriguez for the damages, if any, past and future, sustained as a result of Defendant's conduct?

Answer in dollars and cents or "none" for each of the following:

1.  Physical pain              ANSWER:_____

2.  Medical expenses           ANSWER:_____

3.  Lost earnings and benefits ANSWER:_____

4.  Mental anguish             ANSWER:_____

5.  Loss of enjoyment of life  ANSWER:_____

**INTERROGATORY NO. 8**

What sum of money, if any, if paid now in cash by this Defendant, do you find would fairly and reasonably compensate Ricardo Guillermo Salinas for the damages, if any, sustained as a result of Defendant's conduct?

Answer in dollars and cents or "none" for each of the following:

1.  Lost Accumulations

    ANSWER:_____

DATE SIGNED:_____          SIGNED:_____
                                        (FOREPERSON)

3163J.003

Respectfully submitted,

SPIVEY & AINSWORTH, P.C.
48 EAST AVENUE
AUSTIN, TEXAS 78701
512/474-6061
512/474-1605  fax

By: _____

Broadus A. Spivey
State Bar No.18955000
Price Ainsworth
State Bar No. 00950300

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on January 23, 2002, to all counsel of record and interested parties via Certified mail return receipt requested:

Mr. Tom Lockhart
Mr. Jim Denison
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
ATTORNEYS FOR DEFENDANT

_____
Broadus A. Spivey

3163J.003

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |

---

## DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS TO THE JURY PANEL

---

1.   Is there any member of the jury panel who knows the Plaintiffs:

   a.   Arturo Guillermo Salinas;
   b.   Elisa Hernandez Herrera Salinas;
   c.   Gilberto M. Rodriguez, Individually and on behalf his Minor Daughter,
        Megan Suzanne Rodriguez;
   d.   Robyn S. Williams;
   e.   Stephen L. Williams; and
   f.   Raul Rodriguez.

2.   Plaintiffs will call a number of witnesses in this case.  I will read to you the names

of those witnesses.  If you know any of the them, please raise your hands.  (Read the names.)

3.      Please describe the nature of your knowledge of these witnesses.  Do you feel that because you know these people that you would tend to believe them, rather than someone else?

4.      The parties are represented by counsel.  The families of the slain Border Patrol Agents are represented by Broadus Spivey, Price Ainsworth and Francis Pan of the firm of Spivey & Ainsworth, P.C. in Austin and Richard Pena who has offices here and in Austin.  The Defendant City of Harlingen is represented by Tom Lockhart and Roger W. Hughes of the firm Adams & Graham, L.L.P. in Harlingen.  Do you know any of these lawyers, and is there anything about that relationship that would make it difficult for you to serve as a juror in this case?

5.      Is there anything in past dealing with Border Patrol Agents that would cause you to have a leaning, one way or the other, as we begin this case that involves the families of slain Border Patrol Agents?  If so, please describe that dealing with Border Patrol Agents.

6.      Is there any member of the jury panel who knows or is related to anyone who works for the Border Patrol or Cameron County Sheriff's Department?

7.      Has anyone ever served as a juror or witness in a case?  If so:

        a.      What was the nature of the case?

        b.      What Court?

        c.      Was the verdict for the Plaintiff or Defendant?

        d.      Is there anything about that case that would influence you in this case?

8.      Has anyone on the jury panel or a family member or close friend filed a personal injury or wrongful death case?

9.      Have any of you, a member of your family or close friend ever filed a lawsuit against a federal, state or local government agency?

10.     Have any of you, or a member of your family or close friend ever been shot with a gun?

11.     Is there any member of the jury panel who has a reservation or concern about holding the Plaintiffs to their burden of proof in this lawsuit?

12.     Does anyone here have any negative feelings towards the City of Harlingen for whatever reason that may affect your attitude towards the Defendant in this case?

13.     Is there any member of the jury panel who would be likely to decide this case on the basis of sympathy for the families of the deceased Border Patrol Agents or injured Raul Rodriguez, rather than on the basis of a fair and objective evaluation of all the evidence?

14.     The Court will instruct you concerning the nature of Plaintiffs' claims and the law which governs these claims. It might be that the Court's instructions on the law regarding these claims and any rights which Plaintiffs may have will differ from your views. In such a circumstance, is there anyone on the jury panel who cannot follow the Court's instructions?

15.     Has anyone formed or expressed an opinion that the Plaintiffs in this case should recover from Defendant City of Harlingen.

16.     Does any member of the jury panel feel that just because a lawsuit is filed and goes to trial, that Plaintiffs are entitled to win or that Plaintiffs' claims have some merit?

17.     Is there any member of the jury panel that feels the City of Harlingen should not have the right to have a jury decide this case?

18.     Does any member of the jury panel have any knowledge of this case other than what you have heard in the Courtroom? If so, please describe the source of your knowledge.

19.     How many of you have subscribed to the Valley Morning Star since July 7, 1998 - please raise your hands.

20.     How many of you have read any articles in the Valley Morning Star about this

shooting or litigation - please raise your hands.

21.     How many of you have read or heard anything about this shooting or this

litigation on the t.v., radio or newspaper - please raise your hands.

22.     Is there anyone here, that because of media coverage feels they cannot be fair and

impartial to the parties and decide this case only on the facts admitted during the trial and

instructions by this Court?

23.     Is there anyone here, that because of media coverage of the shooting or litigation,

is leaning towards one side or the other or is predisposed to the position of one side or the other

of this lawsuit?

24.     Based upon what you know about this case so far, is there anything in your

background or experience that would affect your ability to be impartial in this case?

## INDIVIDUAL VOIR DIRE QUESTIONS OUTSIDE THE PRESENCE
## OF THE REMAINDER OF THE PANEL

25.     What have you read or heard?

26.     How does this affect your attitude towards the trial?

Respectfully submitted,

By: _____

Tom Lockhart
Admissions ID No. 2257
Texas State Bar No. 12473500
**Roger W. Hughes**
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant,
CITY OF HARLINGEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document

was forwarded on this 23rd day of January, 2002, to the following counsel of record and

interested parties:

Attorneys-in-Charge for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and
ARTURO GUILLERMO SALINAS, et al:

    Mr. Broadus A. Spivey          Via CMRRR# 7000 1670 0000 0477 0472
    **SPIVEY & AINSWORTH, P.C.**
    48 East Avenue
    Austin, Texas  78701-4320

Attorney-in-Charge for Plaintiff, RAUL RODRIGUEZ:

    Ms. Sonia Lopez              Via CMRRR# 7000 1670 0000 0477 0489
    **LAW OFFICES OF RAMON GARCIA, P.C.**
    222 West University Drive
    Edinburg, Texas  78539

TOM LOCKHART

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |

---

**DEFENDANT'S PROPOSED COURT'S CHARGE TO THE JURY**

---

MEMBER OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments in this case. Opening statements and closing arguments are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

---

ADAMS & GRAHAM, L.L.P.

Your verdict must be unanimous and you must answer all questions from a preponderance of the evidence which means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget somethings or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an international falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witness may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence-such as testimony of an eyewitness. The other is indirect or

circumstantial evidence–the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he is called an expert witness) is permitted to state his opinions on those technical matters.  However, you are not required to accept that opinion.  As within any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he testifies regularly as an expert witness and his income form such testimony represents a significant portion of his income.

**[Fifth Circuit Pattern Jury Instructions, 3.1, 1999.]**

## FEDERAL CLAIMS

The plaintiffs claim that the City of Harlingen, a municipality, is liable for the alleged constitutional deprivations. A City is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom, policy, ordinance, regulation or decision. Therefore, if you find that plaintiffs were injured as the proximate or legal result of Harlingen's policy, custom, ordinance, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the City of Harlingen itself will be liable.

The _____ is an official whose acts constitute final official policy of the City of Harlingen. Therefore, if you find that the acts of _____ deprived the plaintiff of constitutional rights, the City of Harlingen is liable for such deprivations.

[Fifth Circuit Pattern Jury Charges, § 10.3, 1999]

For an injury to be a proximate or legal result of a City policy there must be a direct causal link between the City's policy, custom, ordinance, regulation, or decision, and the deprivation of the constitutional right. The policy, custom, ordinance, regulation, or decision must be the moving force behind the violation.

[*Monell v. Dep't of Social Service,* 436 U.S. 658, 695 (1978); *Piotrowski v. City of Houston,* 237 F.3d 567, 579-580 (5th Cir. 2001), *pet. for cert. filed.*]

Plaintiffs claim they were injured as a result of the City of Harlingen's entrustment of a rifle to Det. R.D. Moore and the failure to have a policy concerning the safeguarding or handling of weapons assigned to police officers.

To find that the policy caused a "state created" danger you must find:

A.      These actions were a policy, custom or decision of the City of Harlingen, and

B.      The entrustment or the failure to have a policy were so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the certainty that a constitutional violation would result; and

C.      The actions were a proximate cause of injury to the plaintiff. [Plaintiff's injury was the proximate result of the actions.]

[ *Snyder v. Trepagnier,* 142 F.3d 791, 795-96 (5th Cir. 1998), *cert. dism'd,* 119 S. Ct. 1493 (1999).]

Plaintiffs alleged that their injuries resulted from a failure to have a policy [an express procedure] concerning _____. The failure to adopt a policy cannot qualify as a policy unless the failure amounts to an intentional choice and is not merely an unintentional oversight.

*[City of Canton v. Harris,* 489 U.S. 378, 389 (1989); *Doe v. Dallas I.S.D.,* 153 F.3d 211, 217 (5th Cir. 1998)]

Plaintiffs claim that they were injured as a result of the City of Harlingen's failure to properly train its officers and that the alleged failure can be considered to be the official policy of the city.

To find the alleged failure to train caused a "state created" danger you must find:

A.     That the City's training program was inadequate to trains its officers and employees to carry out their duties;

B.     The need for more training or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need for such training;

C.     The failure to provide proper training was a proximate cause of injury to the plaintiff. [Plaintiff's injury was the proximate result of the failure to train]

**[Modified from Devitt, Blackmar, and Wolff, 3 FED. JURY PRAC. AND INSTRUCTIONS, § 103.11A (SUPP. 2000)]**

Deliberate indifference is a stringent test.  Proof of simple or heightened negligence will not suffice. The official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference.

[*Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Piotrowski v. City of Houston,* 237 F.3d 567, 579-580 (5th Cir. 2001), *pet. for cert. filed.*]

The Due Process Clause, 14th Amend. U.S. Constitution, confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual. The City's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. The Due Process Clause permits liability only if the City's officials created the danger to Plaintiffs and they acted with deliberate indifference. There is "state created" danger only if:

A.      The City officials intentionally created a dangerous environment;

B.      The City officials used their authority to create an opportunity for a third party to commit a crime which would not otherwise exist;

C.      The City officials knew that the environment is dangerous;

D.      The identity of the persons facing the danger was known to the City official when they created the danger;

E.      The City officials affirmatively placed that individual in that dangerous environment, effectively stripping that person of the ability to defend himself or herself or cutting off potential sources of private aid;

F.      The City officials' action must shock the conscience; and

G.      The actions must be a proximate cause of the plaintiff's injury or death.

[*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Johnson v. Dallas I.S.D.*, 38 F.3d 198, 201 (5th Cir. 1994); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th 1997), *cert. denied*, 119 S.C. 1493 (1999); *Saenz v. Heldenfels Brothers*, 183 F.3d 389, 392 (5th Cir. 1999); *Piotrowski v. City of Houston*, 237 F.3d 567, 583-85 (5th Cir. 2001), *pet. for cert. filed.*]

An official's act "shocks the conscience" if it is so egregious and outrageous that it shocks the contemporary conscience. Only the most egregious official abuse of powers can be said to be conscience shocking. It includes a deliberate decision to deprive a person of life or liberty. When time and circumstances permit actual deliberation to be possible, it includes deliberate indifference. It does not include negligent acts.

[*County of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998).]

The actions must be the proximate cause of the deprivation of the life or liberty.

For the actions to be a "proximate cause," Plaintiffs must prove that:

A.     the deprivation of life or liberty must not be too remote a consequence of the City's actions;

B.     the deprivation of life liberty must be the foreseeable result of those actions; and,

C.     the deprivation of life or liberty would not have occurred but for the constitutional violation.

*Mt. Heathly City School Dist. V. Doyle*, 429 U.S. 274, 285-87 (1977); *Martinez v. California*, 444 U.S. 277, 285 (1980); *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir. 1997), reh. denied, 154 F.3d 419 (5th Cir. 1998), cert. denied, 525 U.S. 1103 (1999); *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 42-3 (1st Cir. 1997); *Gonzalez v. Ysletta I.S.D.*, 996 F.2d 745, 761 n. 12 (5th Cir. 1993), reh. denied, 20 F.3d 471 (5th Cir. 1994).

## STATE LAW CLAIMS

Plaintiffs claim that the City of Harlingen was negligent.

Plaintiffs claim that negligent use of City property, the Police Department rifle, by a City employee in the scope and course of his employment was the proximate cause of injury to Plaintiff Raul Rodriguez and the deaths of Susan Rodriguez and Richard Salinas.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

**[Texas Pattern Jury Charges, PJC 2.1 (1998)]**

ADAMS & GRAHAM, L.L.P.

Respectfully submitted,

SPIVEY & AINSWORTH, P.C.
48 EAST AVENUE
AUSTIN, TEXAS 78701
512/474-6061
512/474-1605  fax

By: *[signature]*

Broadus A. Spivey
State Bar No.18955000
Price Ainsworth
State Bar No. 00950300

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded on January 23, 2002, to all counsel of record and interested parties via Certified mail return receipt requested:

  Mr. Tom Lockhart
  Mr. Jim Denison
  Mr. Roger W. Hughes
  ADAMS & GRAHAM, L.L.P.
  222 E. Van Buren, West Tower
  Harlingen, Texas 78551-1429
  ATTORNEYS FOR DEFENDANT

*[signature]*

Broadus A. Spivey

3163J.003

"Proximate cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

**[Texas Pattern Jury Charges, PJC 3.1 (1998)]**

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

**[Texas Pattern Jury Charges, PJC 3.2 (1998)]**

An "employee" is a person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.

**[Texas Pattern Jury Charges, PJC 7.1 (1998)]**

An employee is acting in the scope of his employment if he is acting in the furtherance of the business of his employer.

**[Texas Pattern Jury Charges, PJC 7.6 (1998)]**

As to Plaintiffs' claim that the rifle was negligently entrusted to R. D. Moore, "negligence" means entrusting the rifle to a reckless person if the City knew or should have known that R.. D. Moore was reckless. Such negligence is a proximate cause of death or injury if (1) the City knew or should have known R. D. Moore would use poor judgment in allowing another person to use the rifle, and (2) that person's negligent use of the rifle was the proximate cause of injury or death.

[*Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); **Tex. Pattern Jury Charges PJC 7.12 (1998)**]

## DAMAGES

If any plaintiff has proven his or her claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

**[Fifth Circuit Pattern Jury Instruction 15.1, 1999.]**

If you find that the defendant is liable to any plaintiff, then you must determine an amount that is fair compensation for all of that plaintiff's damages. These damages are call compensatory damages. The purpose of compensatory damages is to make the plaintiff whole–that is, to compensate the plaintiff for the damage that the plaintiff has suffered. Compensatory damages are not limited to expenses that the plaintiff may have incurred because of his injury. If the Plaintiff Raul Rodriguez wins, he is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, lost earning capacity, and medical expenses that he has suffered because of the defendant's conduct.

If Plaintiffs [list the border patrol survivor plaintiffs] win, they are entitled to compensatory damages for loss of services and support, loss of companionship, mental anguish, medical expenses, and funeral expenses they have suffered because of the Defendant's conduct.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful custom, policy, or practice, if any. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstance permits.

You must use sound discretion in fixing an award of damages if you award damages drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

**[Fifth Circuit Pattern Jury Instruction, 15.2, 1999.]**

A.    Damages Accrued

   If you find for a plaintiff, he or she is entitled to recover an amount that will fairly compensate him or her for any damages he or she has suffered to date.

B.    Calculation of Future Damages

   If you find that a plaintiff is reasonably certain to suffer damages in the future from his or her injuries, then you should award him or her the amount you believe would fairly compensate him or her for such future damages.

C.    Reduction of Future Damages to Present Value

   An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the plaintiff will not actually suffer until some future date. If you should find that the plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

   If you award damages for loss of future earnings, you must consider two particular factors:

1.    You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

2.    If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with the loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

**[Fifth Circuit Pattern Jury Instruction, § 15.3, 1999.]**

## BODILY INJURY DAMAGES FOR RAUL RODRIGUEZ

You may award damages for any bodily injury that the Plaintiff Raul Rodriguez has sustained any pain and suffering, disability, disfigurement, mental anguish and/or loss of capacity for enjoyment of life that the Plaintiff, Raul Rodriguez experienced in the past or will experience in the future as a result of the bodily injury. No value of intangible things, such as mental or physical pain and suffering has been or need by introduced. You are not trying to determine a value, but an amount that will fairly compensate the plaintiff for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

**[Fifth Circuit Pattern Jury Instruction, § 15.4, 1999.]**

You may award the reasonable expense of hospitalization and medical and nursing care and treatment that the Plaintiff Raul Rodriguez will require because of his injuries which were caused by the defendant's wrongful conduct.

**[Fifth Circuit Pattern Jury Instruction, § 15.7, 1999.]**

## WRONGFUL DEATH AND SURVIVOR DAMAGES FOR
## PLAINTIFFS ARTURO SALINAS AND ELISA SALINAS

You may award Arturo Salinas and Elisa Salinas damages they may have sustained, for lost support and services, medical and funeral costs, loss of companionship, and mental anguish as follows:

1.     Lost Support and Services

The loss of Richard Salinas' support and services that the Plaintiffs, Arturo Salinas and Elisa Salinas have sustained because of Richard Salinas' death. You must determine the duration of any future loss by considering the joint life expectancy of Richard Salinas and the Plaintiffs, Arturo Salinas and Elisa Salinas. Joint life expectancy means the number of years that both Richard Salinas and Plaintiffs, Arturo Salinas and Elisa Salinas could have been expected to be alive together, considering the ages and life expectancy of each at the time of Richard Salinas' death.

In evaluating past and future loss of support and services, you must consider the Plaintiffs, Arturo Salinas and Elisa Salinas' relationship to Richard Salinas, the amount of Richard Salinas' probable net income available for distribution to the Plaintiffs Arturo Salinas and Elisa Salinas and the replacement value of Richard Salinas' services to the Plaintiffs, Arturo Salinas and Elisa Salinas. "Support" includes contributions in kind as well as sums of money. "Services" means tasks that Richard Salinas regularly performed that now will be a necessary expense to the Plaintiffs, Arturo Salinas and Elisa Salinas because of Richard Salinas' death.

2.     Medical and Funeral Expenses

Medical and/or funeral expenses due to Richard Salinas' injury or death paid by the Plaintiffs, Arturo Salinas and Elisa Salinas.

3.     Surviving Parent of Child

The Plaintiffs Arturo Salinas and Elisa Salinas' mental anguish resulting from the death of their child. In determining the duration of this mental pain and suffering, you must consider the life expectancies of the Plaintiffs Arturo Salinas and Elisa Salinas.

**[Fifth Circuit Pattern Jury Instruction, § 15.12, 1999.]**

### WRONGFUL DEATH AND SURVIVOR DAMAGES FOR PLAINTIFFS

### GILBERT RODRIGUEZ, MEGAN RODRIGUEZ,

### STEPHEN WILLIAMS AND ROBIN WILLIAMS

You may award Plaintiff Gilbert Rodriguez, Megan Rodriguez, Stephen Williams and Robin Williams damages they may have sustained for lost support and services, medical and funeral services, loss of companionship, and mental anguish as follows.

1.    Lost Support and Services

The loss of Susan Rodriguez' support and services that the Plaintiff, Gilbert Rodriguez have sustained because of Susan Rodriguez' death. You must determine the duration of any future loss by considering the joint life expectancy of Susan Rodriguez' and the Plaintiff, Gilbert Rodriguez. Joint life expectancy means the number of years that both Susan Rodriguez' and Plaintiff, Gilbert Rodriguez could have been expected to be alive together, considering the ages and life expectancy of each at the time of Susan Rodriguez' death.

In evaluating past and future loss of support and services, you must consider the Plaintiff, Gilbert Rodriguez' relationship to Susan Rodriguez, the amount of Susan Rodriguez' probable net income available for distribution to the Plaintiff, Gilbert Rodriguez and the replacement value of Susan Rodriguez' services to the Plaintiff, Gilbert Rodriguez. "Support" includes contributions in kind as well as sums of money. "Services" means tasks that Richard Salinas regularly performed that now will be a necessary expense to the Plaintiff, Gilbert Rodriguez because of Susan Rodriguez' death.

2.    Medical and Funeral Expenses

Medical and/or funeral expenses due to Susan Rodriguez' injury or death paid by the Plaintiff, Gilbert Rodriguez.

3.    Surviving Spouse

The Plaintiff Gilbert Rodriguez' loss of companionship and protection, and his mental anguish that resulted from Susan Rodriguez' death. In determining the duration of these losses, you must consider the join life expectancy of the decedent and the Plaintiff, Gilbert Rodriguez.

4.    Surviving Minor Child

The loss of parental companionship, instruction, and guidance, and the mental anguish Megan Rodriguez sustained because of Susan Rodriguez' death. In determining the duration of these losses, you must consider the joint life expectance of the decedent and Megan Rodriguez.

5.    Surviving Parent of Child

The Plaintiffs Stephen Williams and Robin Williams' mental anguish resulting form the death of their child. In determining the duration of this mental pain and suffering, you must consider the life expectancies of the Plaintiffs Stephen Williams and Robin Williams and Susan Rodriguez.

**[Fifth Circuit Pattern Jury Instruction, § 15.12, 1999.]**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges-judges of facts. Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Use one of the jury note forms to advise the CSO that you have reached a verdict. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the CSO, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

You may no retire to the jury room to conduct your deliberations.

Respectfully submitted,

By: _____

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant,
CITY OF HARLINGEN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was

forwarded on this 23rd  day of January, 2002, to the following counsel of record and interested

parties:

Attorneys-in-Charge for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and
ARTURO GUILLERMO SALINAS, et al:

Mr. Broadus A. Spivey          **Via CMRRR# 7000 1670 0000 0477 0472**
**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, Texas  78701-4320

Attorney-in-Charge for Plaintiff, RAUL RODRIGUEZ:

Ms. Sonia Lopez          **Via CMRRR# 7000 1670 0000 0477 0489**
**LAW OFFICES OF RAMON GARCIA, P.C.**
222 West University Drive
Edinburg, Texas  78539

Plaintiffs' Requested Charge
and Interrogatories

Salinas v. City of Harlingen
CIVIL ACTION NO. B-98-162

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF NATALIE F. PRIM
## VIDEO DEPOSITION TO BE SHOWN

---

By Plaintiffs:

All Except:

p. 12, (ll. 8-19);

p. 13, (ll. 2-4);

p. 13, (ll. 7, 8);

p. 16, (l. 23) – p. 17, (l. 11);

p. 21, (ll. 10-13);

p.21, (ll. 18-25);

p. 51, (ll. 21-24);

p. 63, (l. 7);

p. 90, (l. 25) – p. 91, (l. 11);

p. 95, (ll. 5-8);

p. 98, (l. 21) – p. 99, (l. 13).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF JOSEPH LABEAU
## DEPOSITION TO BE READ

---

By Plaintiffs:

All Except:

      p. 19, (ll. 23, 24);

      p. 21, (ll. 7, 8);

      p. 37, (ll. 2-6);

      p. 38, (ll. 7, 8);

p. 42, (ll. 16-19);

p. 48, (ll. 9, 10);

p. 60, (ll. 8, 9);

p. 60, (l. 22) – p. 61, (l. 6);

p. 61, (ll. 15-19);

p. 64, (ll. 7-14);

p. 67, (l. 23);

p. 69, (ll. 21, 22);

p. 72, (ll. 13-17);

p. 74, (ll. 5-7);

p. 77, (ll. 1-18);

p. 80, (ll. 20, 21);

p. 82, (l. 4);

p. 84, (ll. 14-16);

p. 85, (ll. 24, 25);

p. 88, (ll. 11, 12);

p. 90, (ll. 9, 10);

p. 91, (ll. 13, 14).

**K**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF GEORGE HUPP
## DEPOSITION TO BE READ

---

By Plaintiffs:

        Pg. 9, (l. 24) – p.35, (l. 19)
        Pg. 36, (l. 12) – p. 43, (l. 17)
        Pg. 43, (l. 21) – p. 64, (l. 6).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF GEORGE HUPP
## DEPOSITION TO BE READ

---

By Defendant:

P. 4, (ll. 5-14);

P. 5, (l. 11) - p. 7, (l. 16);

P. 7, (l. 22) - p. 9, (l. 11);

P. 9, (l. 24) - p. 16, (l. 25);

P. 65, (l. 7) - p. 68, (l. 25);

P. 69, (l. 11) - p. 70, (l. 21).

L

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF JAMES MICHAEL RILEY DEPOSITION TO BE READ

---

By Plaintiffs:

P. 20, (l. 22) - p. 29, (l. 8);

P. 29, (l. 19) - p. 36, (l. 6).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| vs | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

---

## DESIGNATION OF PORTION OF JAMES MICHAEL RILEY DEPOSITION TO BE READ

---

By Defendant:

   Pg. 4, (l. 5) - p. 20, (l. 18).