189

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 21 2002 8:20 A.

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-161 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-99-70 |
| | { | |
| CITY OF HARLINGEN | { | |

**DEFENDANT'S REPLY TO REQUEST FOR AMENDMENT
OF EXPERT REPORT AND/OR REQUEST FOR DAUBERT HEARING**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, **CITY OF HARLINGEN** ("City"), and files this its Reply to

Request for Amendment of Expert Report and or Request for Daubert Hearing and would

respectfully show the Court as follows:

# I.

## STATUS OF CASE AND ISSUES PRESENTED

At 4:55 p.m. Plaintiff served defense counsel with a written request for amendment of report of Dr. George Kirkham with the attached new opinions.

This case was originally scheduled to go to trial in August, 2001. The case was rescheduled to start trial in February, 2002; trial began on February 19, 2002.

On February 7, 2002, Plaintiffs agreed to several parts of Defendant's Motion in Limine, including ¶ III.2. (Dkt. # 152, 171). It, in part provided that Plaintiffs' not "attempt to offer any opinions or the basis and reasons therefore which were not contained in Plaintiffs' expert reports." Because Plaintiffs have delayed over ten (10) months to supplement this report, it is untimely under FED. R. CIV. PROC. 26(a)(2). Therefore FED. R. CIV. PROC. 37(c)(1) requires the Court to exclude the new opinions and informations which are not timely or properly disclosed.

# II.

## Factual Background

The Court's Scheduling Order (Dkt. No. 91) set February 28, 2001, as the deadline for Plaintiffs to designate their experts. The Court's Order (Dkt. No. 94) signed March 5, 2001, extended the close of discovery to May 31, 2001. By letter agreement dated March 30, 2001, the deadline for Plaintiffs' experts to be named with a report furnished was extended until May 5, 2001. Discovery closed in June, 2001.

On May 4, 2001, Plaintiffs served Mr. Kirkham's report. In that report, Mr. Kirkham *did not* give an opinion that (1) a municipal customer policy exposed citizens to serious injury or death, or (2) the failure of the Harlingen Police Department to file certain policy was "causally connected" to the two killings and the serious injury of Deputy Rodriguez, or (3) that Officers Moore and

Scheopner and the HPD had "unmistakable culpability." These opinions first appeared in his report served on counsel at 4:55 p.m. on February 20, 2002.

Defendant's Motion in Limine, ¶ III.2. requested the Court order Plaintiffs "not attempt to offer any opinions for the basis and reasons therefore which were not contained in Plaintiffs' experts' reports." (Dkt. #152). At the pre-trial hearing on February 7, 2002, Plaintiffs in open court *agreed* to this part of Defendant's Motion. (Dkt. # 171).

The proposed supplement mentions that Kirkham has been in the Court to hear the testimony of Officers Moore and Scheopner and that he is considering the Robenson report and Texas Ranger Jaramillo's report. However, Kirkham's May, 2001 report states he was provided with the depositions of Moore and Scheopner. Ranger Jaramillo's report was attached as Exhs. 8A, 8C, and 8D to Scheopner's May, 2000 deposition. Exh. 1. Kirkham's May 3, 2001, report admits that he received "Scheopner Exhs. 1-14 and 22-27." Therefore he has had Jaramillo's report when he wrote his May, 2001 report. Robenson's report was provided to opposing counsel in the latter part of July, 2001. Plaintiffs offer no reason why they waited until February 20, 2002, to supplement.

## III.

### Arguments and Authorities

A.   Standard For Late Supplementation

Rule 26(a)(3)(B) requires that Plaintiffs' expert's written report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore.

Rule 37(c) provides that a party who fails to disclose information required by Rule 26(a) without substantial justification shall not be permitted to use it at trial, unless such failure is harmless. The Court's ruling on a motion concerning late supplementation is reviewed for abuse of discretion based on the following factors:

1.    The explanation for the failure to timely disclose;

2.    The prejudice to the opposing party if the witness is allowed;

3.    The possibility of curing prejudice with a continuance; and

4.    The importance of the witness' testimony.

*Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).  The first factor allows the Court

to consider the diligence of counsel and the expert witness to comply with the deadlines.  95 F.3d

at 381.  The second factor allows the Court to consider the expense and disruption in preparation of

the other party.  *Id.*  The third factor allows the Court to consider whether the opposing party

requested a continuance, the possibility of future delays, and the increased expense to the parties to

further defend the suit.  *Id.*  The fourth factor (importance of testimony) cannot itself override the

enforcement of scheduling orders.  *Id.*

B.    <u>Plaintiffs Have Failed Their Burden to Justify Late Supplementation</u>

1.    <u>No Explanation for Belated Disclosure</u>

The purpose of having reports require a <u>complete</u> statement of <u>all</u> opinions is to require the

expert to set forth the substance of his testimony and opinions that would be disclosed on direct

examination.  *Sierra Club v. Cedar Point Oil*, 73 F.3d 546, 571-72 (5th Cir. 1996), *cert. denied,* 512

U.S. 811 (1996); *Advisory Committee Notes to Rule 26*, 1993 Amendments.  The old problem was

that expert reports were so sketchy and vague that it was little help in preparing to depose the expert.

*Id.*  The purpose of both the substantive requirements and the deadlines is to allow the opposing

party time to prepare cross-examination, confer with its own experts, and file any supplemental

reports before the close of discovery without inconveniencing either the Court or the opposing party.

*Congressional Air, Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 515 (D.M.D. Maryland 1997).  The

idea is to prevent "trial by ambush" and avoid "under the gun" depositions on the eve of trial.  *Id.*

at 516, 517. The report must be complete so that opposing counsel need not depose the witness to avoid ambush. *Salgado v. Gen'l. Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir. 1998).

Here, Plaintiffs offer no explanation for this supplementation in the middle of trial. The expert has had the depositions of Scheopner and Moore, together with Jaramillo's report, when he wrote the report in May, 2001. Plaintiffs have had Robenson's report since late July, 2001.

Worse, they even *agreed* to Defendant's Motion in Limine that they not offer expert opinions not contained in the original report.

## 2.    Defendant City of Harlingen is Prejudiced

There is a clear expense and disruption to meet Kirkham's new opinions. The timing of this supplementation was clearly to have the Kirkham "fill in the gap" caused when Ms. Cox did not testify as expected. Its timing prevents Harlingen from being able to adequately review his report, take his deposition if necessary, consult with its own experts or witnesses, etc. This the essence of "trial by ambush" and should b condemned.

*Congressional Air* is close in point. There, plaintiff designated and provided reports from its experts in January, 1997; defendant tendered its expert and his report at its report deadline in March, 1997. 176 F.R.D. at 514. Discovery closed the following April. In October, 1997, a few weeks before trial, plaintiffs served a new report from its expert covering new areas the expert had not covered before. *Id.* at 515.

The Maryland District Court struck the report. *Id.* at 517. The report was late under Rule 26(a)(2)'s deadline. The lengthy delay after the close of discovery showed that supplementation was an "ambush". *Id.* The defendant should not be put the election of either demanding a continuance on the eve of trial or doing an "under-the-gun" depositions. *Id.*

See also, *Brumley v. Pfizer, Inc.*, 2000 F.R.D. 596 (S.D. Tex. 2001)(Jack, J.). There, the district court disregarded plaintiff's expert's new opinions filed to oppose summary judgment in a products liability case. The expert's affidavit contained two opinions not contained in his written report and was filed the day before the discovery deadline. First, the court noted that an expert report must be "detailed and complete" in order to avoid disclosure of only sketchy or vague opinions. *Id.* at 603. Second, the purpose of its discovery cut off dates was to allow the orderly preparation for trial; it was not intended to enable a party to withhold expert witnesses until the last minute to hinder another party from filing proper summary judgment motions. *Id.* at 604.

      3.      Not Possible to Cure Prejudice Without a Continuance

It is not reasonably feasible to halt the trial in order to allow Defendant to depose Kirkham on his new opinions so it can consult with its experts, and make reasonable preparations to meet these new opinions. In part, this is due to Plaintiffs' own actions in approving the Motion in Limine and then waiting until the night before their expert testifies to supplement his opinions. The delay of trial and increased expense the City cannot possibly justify this.

Indeed, Defendant cannot make an adequate *Daubert* challenge on the new opinions without deposing Kirkham.

## IV.

## Daubert Challenge to New Opinions

Upon request, the Court can make an evaluation of the expert's opinion, either pre-trial or out of the presence of the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); FED. R. EVID. 104; FED. R. CIV. PROC. 16(c). Defendant moves to determine both Mr. Kirkham's qualifications to make these new opinions and the reliability or relevance of his own opinions.

Mr. Kirkham states that:

1.     He expects to be able to impeach Officers Scheopner and Moore,

2.     The failure to follow certain policies and following other policies were "causally connected" to the killing of Officers Rodriguez and Salinas and injuring Deputy Rodriguez on July 7, 1998,

3.     A municipal custom or policy exposed citizens to serious injury or death,

4.     Serious incompetence or misbehavior was widespread on July 7, 1998, and

5.     There was "unmistakable culpability" on the part of Officers Moore and Scheopner and the Harlingen Police Department before and on July 7, 1998.

First, Kirkham proposes to testify concerning matters which are not subjects for expert testimony and will not assist the jury. Whether certain policies are "causally connected" is not a subject of scientific or technical knowledge nor will it assist the jury to understand or determine causation. Whether a custom or policy exists is not a subject of scientific or technical knowledge nor does the jury need any expert assistance to determine such a question. Whether there was "unmistakable culpability" is not a question of technical or scientific subject matter nor does the jury need any assistance on it. It is in effect the ultimate issue or a legal opinion.

Second, Kirkham has not established he has the requisite qualifications to determine "causal connection", existence of "municipal custom or policy", or "culpability" for anyone. Kirkham has no background in the capability of or forensic analysis of rifles or other firearms, or crime scene analysis. Therefore, Kirkham does not have the expert background to determine causation, existence of policy, or "culpability."

Third, Kirkham does not have an adequate factual or evidentiary basis for his opinions so that his opinions are reliably connected to the relevant facts, or otherwise has a reliable basis in fact.

Respectfully submitted,

By: _____

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY OF
HARLINGEN, TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was

forwarded on this 21st day of February, 2002, to the following counsel of record and interested

parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and
ARTURO GUILLERMO SALINAS, et al:

Mr. Broadus A. Spivey                                    Hand Delivery
**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, Texas  78701-4320

Moreover, the Fifth Circuit has repeatedly said that mere expert opinion is insufficient to establish deliberate indifference. *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000).

Finally, an opinion about "unmistakable culpability" is of no assistance to the jury. It does not address itself to any of the elements of "state created danger." It is simply a bare opinion on the ultimate issue. In essence it expresses a legal conclusion that the Defendant is liable.

**WHEREFORE, PREMISES CONSIDERED**, Defendant City of Harlingen prays the Court take this matter under submission and:

1   deny Plaintiffs' Request for Amendment of Written Expert Report;

2.   direct that Kirkham may only testify concerning those opinions expressly contained in his May 3, 2001 report;

3.   alternatively grant Defendant a continuance to depose Kirkham concerning his new opinions in order that Defendant may supplement with rebuttal expert testimony as needed and that Defendant can prepare a proper <u>Daubert</u> motion;

4.   alternatively, determine the admissibility of his new opinions, and direct that he not be allowed to testify to all or any of these opinions; and,

5.   any other such further relief at law and equity to which Defendant may show itself entitled to receive.

Next, the Court must consider whether these opinions are based on sound accepted principles and reasoning. *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir.). These include:

a.  Whether the technique or theory used in the expert's methodology can and has been tested;

b.  Whether the expert's methodology has been subjected to peer review and publication;

c.  The degree of acceptance within the relative scientific or technical community.

Here, Kirkham does not explain what techniques or methodology he possesses that allows him to:

a.  Impeach witnesses;

b.  Determine "causal connection" between City policies and specific criminal wrongdoing;

c.  Determine the existence of municipal customs or policies, or when they will result in injury; or

d.  Determine how the conduct of particular persons gives them "unmistakable culpability,"

He does not explain how his methodology for reaching these conclusions is well accepted and that he properly used it.

Finally, it is not here clear how these specific opinions will assist the jury. "Causal connection" is not the test. It does not express any opinion on any of the elements of proximate cause, i.e. direct and immediate cause, "but for" causation, etc.

Moreover, the existence of a municipal custom that "exposes" citizens to injury or death is not the test. There must be deliberate indifference to the certainty that such violations will result.

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

    Mr. Ramon Garcia                                        Hand Delivery
    Ms. Sonia Lopez
    **LAW OFFICES OF RAMON GARCIA, P.C.**
    222 West University Drive
    Edinburg, Texas  78539

TOM LOCKHART

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ARTURO GUILLERMO SALINAS ) ( | |
| AND ELISA HERNANDEZ       ) ( | |
| HERRERA SALINAS           ) ( | |
|                           ) ( | |
| VS.                       ) ( | CIVIL ACTION NO. B-98-162 |
|                           ) ( | |
| CITY OF HARLINGEN, TEXAS, ) ( | |
| R.D. MOORE, AND           ) ( | |
| JIM SCHEOPNER             ) ( | |
|                           ) ( | |
|         AND               ) ( | |
|                           ) ( | |
| GILBERTO M. RODRIGUEZ,    ) ( | |
| INDIVIDUALLY AND ON       ) ( | |
| BEHALF OF HIS MINOR       ) ( | |
| DAUGHTER, MEGAN SUZANNE   ) ( | |
| RODRIGUEZ, AND STEPHEN L. ) ( | |
| WILLIAMS AND WIFE, ROBYN  ) ( | |
| S. WILLIAMS, SURVIVING    ) ( | |
| BENEFICIARIES OF THE      ) ( | |
| DECEASED                  ) ( | |
|                           ) ( | |
| VS.                       ) ( | CIVIL ACTION NO. B-98-163 |
|                           ) ( | |
| CITY OF HARLINGEN, TEXAS, ) ( | |
| R.D. MOORE, AND           ) ( | |
| JIM SCHEOPNER             ) ( | |
|                           ) ( | |
| AND                       ) ( | |
|                           ) ( | |
| RAUL RODRIGUEZ            ) ( | |
|                           ) ( | |
| VS.                       ) ( | CIVIL ACTION NO. B-99-070 |
|                           ) ( | |
| CITY OF HARLINGEN,        ) ( | |
| R.D. MOORE, AND           ) ( | |
| JIM SCHEOPNER             ) ( | |

EXHIBIT VOLUME 1
SCHEOPNER EXHIBITS 1 - 14 AND 22 - 27
AND MOORE EXHIBIT 28

COPY

BRYANT & STINGLEY, INC.
McAllen        Harlingen        Brownsville
(956)618-2366  (956)428-0755   (956)542-1020

1

## DOCUMENTARY EVIDENCE

**Scheopner**
**Ex. No.**       **Description**

1-A            Personnel file of R.D. Moore

1-B            Personnel file of R.D. Moore

2              HPD Police Radio Call PL102002

3              Record of Handguns destroyed

4              HPD memorandum

5              Gun List Inventory

6              Sylvia Pirtle Receipt, 6-23-95

7-A            HPD Manual Provisions on Weapons
               4.03.004 - 4.05.002

7-B            10-4-99 HPD letter from Victor
               Rodriguez re regulations and
               policies

8-A            10-21-98 Texas Department of Public
               Ranger Safety, Texas Ranger Division
               report

8-B            8-11-99 Texas Department of Public Safety,
               Texas Ranger Division report

8-C            7-26-98 Texas Department of Public Safety,
               Texas Ranger Division report

8-D            7-26-98 Texas Department of Public Safety,
               Texas Ranger Division report

8-E            7-13-98 Texas Department of Public Safety,
               Texas Ranger Division report

8-F            7-14-98 Texas Department of Public Safety,
               Texas Ranger Division report

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS RANGER DIVISION**

Scheopner
EXHIBIT NO. 8A
5-18-00
Maureen Stingley

REPORT OF INVESTIGATION                          Date:    10-21-98

FILE TITLE

1 Capital Murder – FC – 1900
2 Rio Hondo, Cameron County, 031
3 DELIA MORIN, W/F, Age 31
4 07-07-98

THIS REPORT IS THE PROPERTY OF TEXAS DPS-TEXAS RANGER DIVISION. NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.

ACTIVE: X   INACTIVE: ___   CLOSED: X   RESTRICTED: ___
STATIONED: Harlingen
SUBMITTING INVESTIGATOR
INV-ID-NR:    5801    BY: RODOLFO C. JARAMILLO, Sergeant
SUP-ID-NR:    3079    BY: RAY CANO, Lieutenant
CPT-ID-NR:            BY:
SEC-ID-NR:            DATE:

| FILE NR | TYPE | PROGRAM |
|---|---|---|
| RD098312A | O | Criminal |
| DISSEMINATION | | CX RELATED FILES |
| D1 | | F1 |
| D2 | | F2 |
| D3 | | F3 |
| D4 | | F4 |
| D5 | | F5 |

RPT-RE: Initiated – Investigation Report

SYNOPSIS

On Wednesday 07-29-98, this writer accompanied by Cameron County Sheriff's investigator, JAVIER REYNA met with gunshot victim DAN MORIN DOB 01-25-76 (hereinafter referred to as MORIN). MORIN was still considered in serious but stable condition and was in the Intensive Care Unit at Valley Baptist Medical Center. In the room while MORIN was being interviewed by this writer were, Investigator REYNA, and Security for Valley Baptist Medical Center, JUAN DELGADO. This writer received consent from MORIN to tape record his interview. In the interview, MORIN describes the events that took place that night that he got shot and his mother and sister were murdered. This writer gave the audio-recorded tapes to FBI File Supervisor, STACI H. GUTIERREZ on that same afternoon in McAllen. This writer received the audio tape and transcription by FedEx delivery on 10-21-98. (Refer to Attachment A, transcription of DAN MORIN'S audio taped interview.)

DETAILS

1.  On Wednesday 07-29-98, this writer accompanied by Cameron County Sheriff's Investigator, JAVIER REYNA met with gunshot victim DAN MORIN DOB 01-25-76. MORIN was still in the Intensive Care Unit, in serious but stable condition. He was in room 216 on the second floor of the Valley Baptist Medical Center.

2.  Investigator REYNA was present during the interview as well as hospital security, JUAN DELGADO. This writer received consent from MORIN to audio tape the interview.

3.  The interview started at approximately 12:55 PM and terminated at approximately 1:10 PM. MORIN was in pain and discomfort so the interview was not prolonged any more than needed. (Refer to Attachment A, transcription of DAN MORIN'S audio taped interview.)

4.  That afternoon after the interview, this writer relinquished the audio tape recording of MORIN'S interview to FBI File Supervisor, STACI H.

DPS SENSITIVE

CLE-1 (Rev. 6/91)

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

EXHIBIT NO. 8-B
5-18-00
Maureen Stingley

REPORT OF INVESTIGATION                          Date:     08-11-98

**FILE TITLE**

1 Capital Murder -FC-1900
2 San Benito, Cameron County, 031
3 RICARDO GUILLERMO SALINAS, DOB 04-29-74
4 07-07-98

THIS REPORT IS THE PROPERTY OF TEXAS
DPS-TEXAS RANGER DIVISION.  NEITHER IT
NOR ITS CONTENTS MAY BE DISSEMINATED
OUTSIDE THE AGENCY TO WHICH LOANED.

ACTIVE:___XX__INACTIVE:____ CLOSED:____RESTRICTED:___
STATIONED: BROWNSVILLE
SUBMITTING INVESTIGATOR
INV-ID-NR:     4543          BY: ROLANDO CASTANEDA, Sergeant
SUP-ID-NR:     3079          BY: RAY CANO, Lieutenant
CPT-ID-NR:                   BY:
SEC-ID-NR:                   DATE:

| FILE NR | TYPE | PROGRAM |
|---|---|---|
| RD098338B | O | CRIMINAL |
| DISSEMINATION | | CX RELATED FILES |
| D1 | | F1 |
| D2 | | F2 |
| D3 | | F3 |
| D4 | | F4 |
| D5 | | F5 |

RPT-RE: Initiated - Investigative Report

## SYNOPSIS

On Thursday, 08-06-98, this writer accompanied by Cameron County Sheriff's
Investigator JAVIER REYNA and Federal Bureau of Investigation Special Agent
FREDDIE VELA, interviewed wounded Cameron County Sheriff's Deputy RAUL
RODRIGUEZ, H/M, DOB 01-28-66, reference this investigation. This
investigation will continue.

## DETAILS

1.   On Monday, 08-03-98, this writer was contacted by Harlingen based Texas
     Ranger RUDY JARAMILLO.

2.   Ranger JARAMILLO, was requesting this writer's assistance in obtaining
     a written statement from Cameron County Sheriff's Deputy RAUL
     RODRIGUEZ, reference this investigation.

3.   On 08-06-98, this writer accompanied by the mentioned investigators met
     with Cameron County Sheriff's Deputy RAUL RODRIGUEZ at the Brownsville
     F.B.I. office.

4.   On same date, a written statement was obtained from RODRIGUEZ, (refer to
     Attachment A).

5.   This investigation will continue.

## DESCRIPTION OF EVIDENCE

1.   All evidence to be retained by Texas Ranger RUDY JARAMILLO.

CLE-1 (Rev. 6/91)                          DPS SENSITIVE

CONTINUATION

| | | | |
|---|---|---|---|
| | DATE:  07-26-98 | PAGE: 3 | |

| FILE TITLE .        MASTER FILE | FILE NO.<br>RD098338 | TYPE<br>O | PROGRAM CODE<br>Criminal |
|---|---|---|---|
| ↘1 Capital Murder - FC - 1900<br>2 San Benito, Cameron County, 031<br>3 RICARDO GUILLERMO SALINAS, W/M, 04-29-74<br>4 07-07-98 | ACTIVE_X__INACTIVE___CLOSED___RESTRICT__ | | |
| | BY:  RODOLFO C. JARAMILLO, Sergeant # 5801 | | |

passenger side and toward the rear of the previously mentioned Border Patrol unit.  A trail of blood could be seen in front of the previously mentioned oleander bush to the back of the same bush, toward the house.

8. This writer met with Ranger CASTANEDA and was briefed on the investigation.  Ranger CASTANEDA stated that a suspect by the name of ERNEST LANE MOORE, DOB 12-23-72 (hereinafter referred to as MOORE), son of R.D. MOORE, shot three (3) persons at a residence in Rio Hondo.  Ranger CASTANEDA stated that MOORE went to 311 Catherine St. in Rio Hondo looking for his ex-girlfriend. He stated that MOORE fatally shot two (2) female and one (1) male subject. Ranger CASTANEDA stated that there were possibly two other suspects involved and a manhunt was being conducted on the property across the road from the MOORE residence.

9. This writer learned later that MOORE had killed a female by the name of MARGARITA FLORES, age 52, her daughter DELIA MORIN, age 31, and critically wounded her son DAN MORIN, age 22, at the address previously mentioned in Rio Hondo (refer to Texas Ranger CASTANEDA'S CLE-1/ Offense Report RD098312).

10. Ranger CASTANEDA and this writer came to the agreement that he would be in charge of the Rio Hondo shooting and this writer would be in charge of the shooting there in San Benito. Ranger CASTANEDA stated that FBI Special Agent, JOHN WOOD was in charge of the crime scene for the FBI. This writer met with Agent WOOD to find out what the FBI's involvement was and their direction of investigating the crime scene. After discussion with Agents FREDDY VELA, WOOD and Special Agent In-Charge KEVIN STAFFORD, an agreement was made that the Texas Rangers would be in charge of the crime scene and utilize the DPS McAllen Crime Lab to process the scene.

11. Ranger CASTANEDA stated that the U.S. Border Patrol Agent SUSAN LYNN RODRIGUEZ, DOB 07-11-69 had died on her way to the hospital by Air Care Helicopter. RICARDO GUILLERMO SALINAS, DOB 04-29-74 was the U.S. Border Patrol Agent covered with the white sheet at the crime scene. RAUL RODRIGUEZ, DOB 01-28-66 was the Cameron County Deputy who had been wounded.  He was transported by ambulance to Valley Baptist Medical Center.  MOORE was also transported to Valley Baptist Medical Center.

12. Ranger CASTANEDA stated that he was at the crime scene in Rio Hondo when the shooting took place there on Gamble Rd.  He stated that the DPS Crime Lab was processing the crime scene in Rio Hondo and that he was going back to continue his investigation. This writer contacted Ranger CASTANEDA by mobile telephone, a few minutes later to notify the Crime Lab to contact this writer in reference to processing the crime scene there.

13. This writer coordinated with Cameron County Sheriff's Investigator, ROMAN GRACIA to tape off more of the crime scene and to inform the other officers to keep out of the yellow taped area. At one point this writer informed investigator GRACIA if he could arrange for an investigator to start taking statements from

EXHIBIT NO. 8 C
5-18-00
Maureen Stingley

## TEXAS DEPARTMENT OF PUBLIC SAFETY
## TEXAS RANGER DIVISION

**REPORT OF INVESTIGATION**                          **Date:    07-26-98**

| FILE TITLE                    MASTER FILE | |
|---|---|
| 1 Capital Murder - FC - 1900<br>2 San Benito, Cameron County, 031<br>3 RICARDO GUILLERMO SALINAS, W/M, 04-29-74<br>4 07-07-98 | **THIS REPORT IS THE PROPERTY OF TEXAS DPS-TEXAS RANGER DIVISION. NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.** |

| | | | |
|---|---|---|---|
| ACTIVE:__X__ INACTIVE:____  CLOSED:____  RESTRICTED:____<br>STATIONED: Harlingen<br>SUBMITTING INVESTIGATOR | **FILE NR** | **TYPE** | **PROGRAM** |
| | RD098338 | O | Criminal |
| | DISSEMINATION | | CX RELATED FILES |
| INV-ID-NR:    5801     BY: RODOLFO C. JARAMILLO, Sergeant | D1 | | F1 |
| SUP-ID-NR:   3079     BY: RAY CANO, Lieutenant | D2 | | F2 |
| CPT-ID-NR:            BY: | D3 | | F3 |
| SEC-ID-NR:            DATE: | D4 | | F4 |
| | D5 | | F5 |

RPT-RE: Offense Report (3 Offenses)

### SYNOPSIS

This is a Master File containing three (3) offenses. On Tuesday 07-07-98, at approximately 5:50 A.M., this writer was contacted by Harlingen DPS Communications Operator LINDA ARCHER who stated that there had been a double or triple homicide in Rio Hondo. She stated that she had contacted Texas Ranger ROLANDO CASTANEDA and that he stated he would handle the investigation. At approximately 7:20 AM this writer was contacted by Communications Operator ARCHER stating that Ranger CASTANEDA was needing some assistance right away. This writer contacted Ranger CASTANEDA via mobile telephone. Ranger CASTANEDA advised two (2) US Border Patrol Agents had been killed and one (1) Cameron County Deputy had been wounded. This writer arrived at the crime scene on Gamble Rd. at approximately 9:55 AM. This writer learned that the suspect, ERNEST LANE MOORE, DOB 12-23-72, (hereinafter referred to as MOORE) shot three (3) people in Rio Hondo and three (3) more there at the scene . He stated that four persons died of gunshot wounds including the two (2) US Border Patrol Agents. US Border Patrol Agent, SUSAN LYNN RODRIGUEZ, DOB 07-11-69 died on the way to the hospital and US Border Patrol Agent RICARDO GUILLERMO SALINAS, DOB 04-29-74 was still there at the scene covered with a white sheet. Justice of the Peace SALLIE GONZALEZ arrived at the scene at approximately 12:25 PM. Judge GONZALEZ pronounced US Border Patrol Agent RICARDO GUILLERMO SALINAS, dead at 12:35 PM. That afternoon at approximately 5:15 PM MOORE died after surgery. The investigation continues.

### DETAILS

Master Offenses:

      Offense #1: As noted above.

      Offense #2: Capital Murder - FC - 1900
                San Benito, Cameron County, 031
                SUSAN LYNN RODRIGUEZ, W/F, Age 28
                07-07-98



EXHIBIT NO. 8 D
5-18-00
Maureen Stingley