19=

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 22 2002  1:26P·

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | JURY DEMANDED |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-161 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-99-70 |
| | { | |
| CITY OF HARLINGEN, ET AL | { | |

---

## MOTION UNDER RULE 50 FOR JUDGMENT AS A MATTER OF LAW

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, **CITY OF HARLINGEN** ("Harlingen"), and files this

its Motion Under Rule 50 for Judgment As a matter of Law and would show the Court as

follows:

# I. NATURE AND STAGE OF THE PROCEEDINGS

The nature of Plaintiffs claims and the procedural history of this case are set out in this Court's orders signed March 31, April 11, August 2, and October 18, 2001. (Dkt # 41, 43, 134 142).  Trial began February 19, 2002, Plaintiffs have rested and the evidence has closed.

# II. GROUNDS FOR JUDGMENT AS A MATTER OF LAW

Defendant Harlingen is entitled to judgment as a matter of law that all Plaintiffs take nothing against it on the following grounds:

a.  No Harlingen policy decision or policymaker action intentionally created any dangerous situation which would not have otherwise existed;

b.  No Harlingen policy or policymaker decision thrust Border Patrol Agents S. Rodriguez and Salinas or Plaintiff Raul Rodriguez into that danger or stripped them of the ability to defend themselves;

c.  No Harlingen policy or policymaker decision was made with knowledge of immediate danger to known victims;

d.  No Harlingen policy, decision or custom was made or adopted with deliberate indifference;  *No un lawful custom, policy or action was ratified by the Harlingen little deliberate indifference*

e.  The law enforcement team Cameron County Sheriff Department (CCSD) and U.S. Border Patrol (BP) knew of the danger;

f.  No Harlingen policy decision nor policymaker action was a proximate cause of the deprivation, deaths, and injuries at issue;

g.     No action by Harlingen officials was a proximate cause of the deaths or injuries;

h.     There is no proximate cause to support the state law claims;

i.     Harlingen is entitled to sovereign immunity against the state law claim; the immunity is not waived under the Texas Tort Claims Act because Plaintiffs' claims do not arise from a "use or condition" of tangible personal property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(a) (Vernon 1997);

j.     Alternatively, immunity is not waived because Plaintiffs' claims arise from an intentional tort or from a decision about the manner of providing police protection. TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(3), -.057 (Vernon Supp. 2001);

k.     There is no evidence of negligence or negligent entrustment.

## III.  ARGUMENT AND AUTHORITIES

### A.  Standard of Review

Judgement as a Matter of Law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue on which that party has been fully heard. FED. R. CIV. P. 50(a)(1). The court should consider all of the evidence in the light most favorable to the party opposed to the motion. *Mosley v. Excel Corp.*, 109 F.3d 1006, 1008-09 (5th Cir. 1997), *quoting Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). If the facts and inferences point so strongly in favor of the movant that reasonable jurors could not arrive at a contrary verdict, granting the motion is proper. *Id.* On the other

hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded people might reach different conclusions, then the motion should be denied. *Id*. There must be a conflict in substantial evidence to create a jury question sufficient to justify denying a motion for judgment as a matter of law. *Id*.

**B.     Law and Facts of this Case**

**1.     State-Created Danger Claim**

The Court's rulings have dismissed all § 1983 claims against the City, save for a potential "state created" danger claim under Substantive Due Process. One Fifth Circuit panel has indicated that it will adopt the "state created" danger exception to *DeShaney*. *McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001, m. reh. en banc pending). However, the Fifth Circuit is considering the motion for rehearing en banc, and has even solicited a response to it from the respondent. Six months later, the motion is still pending, which indicates a new opinion may be forthcoming. Assuming *arguendo* it is affirmed, the Fifth Circuit has outlined the elements of that theory:

a.     The state actors must create an environment that is dangerous;

b.     The state actors must know that it is dangerous;

c.     The state actors must have used their authority to create an opportunity that otherwise would not have existed for a third party to commit the crime;

d.     The state must have effectively stripped a person of his or her ability to defend herself or cut off potential sources of private aid; and

e.     The action must be done with deliberate indifference.

*Piotrowski v. City of Houston,* 237 F.3d 567, 585 (5th Cir. 2001), *reh. denied,* 251

F.3d 159 (5th Cir. 2001), *cert. denied,* 122 S. Ct. 53 (2001); *Randolph v. Cervantes,* 130 F.3d

727, 731 (5th Cir. 1997), *cert. denied,* 525 U.S. 183 (1998). At the time the official acted,

he must have subjective knowledge of an immediate risk to a specific victim. *McClendon,*

258 F.3d at 438; *Saenz v. Heldenfels Bros., Inc.,* 183 F.3d 389, 291, 292 (5th Cir. 2000). The

official must have "actual knowledge" that a serious risk of physical harm exists. *Doe v.*

*Hillboro ISD,* 113 F.3d 1412, 1415 (5th Cir. 1998)(en banc). The official must create a risk

of harm that did not exist before the state's intervention. *Piotrowski,* 237 F.3d at 584.

Merely increasing the risk of harm is insufficient. *Lefall v. Dallas ISD,* 28 F.3d 521, 531 (5th

Cir. 1994); *Johnson v. Dallas ISD,* 38 F.3d 198, 201 (5th Cir. 1994), *cert. denied,* 514 U.S.

1017 (1995). If the danger is the same as if the state had done nothing, there is no "state

created" danger. *S.S. v. McMullen,* 225 F.3d 960, 962-63 (8th Cir. 2001)(en banc), *cert.*

*denied,* 121 S.Ct. 1227 (2001).

There is no evidence:

a.    The City caused the shooting or created an opportunity to commit an offense

that would not have otherwise existed;

b.    The City stripped the Border Patrol agents and Dep. Rodriguez of the means

of self-defense or cut off all avenues of escape;

c.    Defendant's officers knew, at the time they acted, of an immediate risk of

harm to a specific person;

d.    The officers had actual knowledge of a specific risk of physical harm.

e.   Any action, custom or policy was the cause-in-fact or "but-for" cause of the deaths or injuries.

### a.   No Causation/No Creation of Otherwise Nonexistence Chance to Commit Crime

The Court concluded that Ms. Cox's prior affidavit was the only evidence available for the jury to determine whether Ernest chose the weapon deliberately or randomly. Dkt. # 146, p. 10. The Court concluded that her prior affidavit was "central to the Plaintiffs' case." Dkt. # 146, p. 11. It is the only evidence cited as changing the prior result that the City is entitled to a summary judgment.

Ms. Cox did not testify Ernest had any preference for any rifle. Although she said he shot rifles at her father's house before Ernest acquired the privately owned AR-15 rifle, she could not say what rifle he used; she could not identify the HPD rifle as the one he used at her father's house. She did not testify that he carried about the HPD rifle.

Det. R.D. Moore said Ernest's favorite rifle was the AK-47 and that was the rifle he carried in his truck. He also said Ernest has used the rifle only on one prior instance, and he shoot only three bullets.

Mr. Kirkham's opinion on causation is "no evidence." First, he testified only that the presence of the HPD weapon "substantially contributed" to the shooting. He admitted that the presence of the other rifles in the gun safe gave him equal means to commit the killings. He admitted that he doesn't specifically know why Ernest chose the HPD rifle and that there is no way of knowing if he would have chosen the other rifles if the HPD weapon were not there. He further admitted his opinion on causation based on a *hypothetical assumption* that

Ernest's prior use of the HPD rifle gave him a preference for it. There is no basis in fact for such an assumption.

Moreover, he admitted this was a unique case, the only instance he knew where a family member had a choice between a police weapon and other weapons. He had no formal studies to back up his opinion that prior use gave a preference; he had not published his opinions about this and had not subjected them to peer review.

Furthermore, the City's policy must have proximately caused the violation of the plaintiffs' federal rights. *Martinez v. California*, 444 U.S. 277, 285 (1980); *Doe v. Sullivan County, Texas*, 956 F.2d 545, 550 (5th Cir. 1992); *Reimer v. Smith*, 663 F2d 1316, 1322 (5th Cir. 1981). Implicit in the 'deprivation' of liberty or property is a causal link between the constitutional violation and the deprivation. *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274, 286 (1977); *Martinez*, 444 U.S. at 285; *Reimer*, 663 F.2d at 1322. First, the constitutional violation must not be too remote from the injury. *Martinez*, 444 U.S. at 285. Second, the deprivation must be a foreseeable result. *Anderson v. Nosser*, 456 F.2d 835, 841 (5th Cir. 1972)(en banc), *cert. denied*, 409 U.S. 845 (1972). Third, it must be the 'cause-in-fact' of the deprivation. *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997). This means that the deprivation would not have occurred 'but-for' the constitutional violation. *Mt. Healthy School Dist.*, 429 U.S. at 287; *Hart v. O'Brien*, 127 F.3d 424, (5th Cir. 1997), *reh. denied*, 154 F.3d 419 (5th Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999). Causation is especially important in the context of state-created danger exception cases, where frequently it is

difficult to identify to what extent the danger faced by the plaintiff was caused by the state versus a private actor.

Ernest's preference is immaterial to whether the HPD rifle gave him his only chance to shoot the agents and Dep. Rodriguez. The question is whether the presence of the HPD rifle created an opportunity to shoot them, one that would not otherwise exist. Plaintiffs must offer some evidence that, "but for" the presence of the HPD rifle in the gun safe, Ernest would have taken no weapon from the safe when he opened it. Whatever his preferences, other rifles of equal power were there when he went to the gun vault. Whatever impulse that caused him to seek a rifle would have motivated him to take the privately owned AR-15 or the other rifles. His preference for one rifle does not establish that, in its absence, he would have taken no rifle.

None of the alleged policies or customs can be the "but for" cause. If the HPD AR-15 had been absent from Moore's safe, Ernest could have taken the privately owned AR-15, SKS or M-1 Carbine. These privately owned weapons would have inflicted the same deaths and injuries.

The second alleged policy decision (Scheopner's alleged failure to warn, i.e., the law enforcement team) is not the cause-in-fact of the events and injuries. Whether or not he failed to tell them whatever he knew, they already knew or assumed that Ernest was homicidal, carrying an assault rifle, and close by. The law enforcement team took the precautions they deemed best in light of that information; no lack of precaution resulted from any lack of information.

*Compare, Hart,* 127 F.3d at 446; *Rodriguez-Cirilo,* 115 F.3d at 52. In *Hart,* a DPS trooper O'Brien arrested Hart and took him before the magistrate for arraignment. O'Brien told the magistrate that Hart had a federal warrant out (which was untrue) which caused the magistrate to deny Hart bail; the next day the magistrate set bail for Hart, but Hart was unable to raise the bond for two weeks. 127 F.3d at 434. The Fifth Circuit found that there was no cause-in-fact for any unlawful detention caused by the false statement; had a reasonable bond been set, Hart could not have met it and would have remained in jail. *Id.* at 446.

In *Rodriguez-Cirilo,* after Francisco Cirilo had threatened to kill himself or his brother, Celso, family members obtained a order requiring Francisco to be detained at a local hospital for 2 days for psychiatric testing. 115 F.3d at 51. Police officers declined to enforce the arrest order and told the family to take Francisco to the hospital, but he refused to go. *Id.* at 51. Two weeks later he argued with Celso and stabbed him. The First Circuit found no causation. There was no showing that, but-for the failure to arrest, Francisco would not have stabbed Celso. Because the order was for only two days and there was nothing to show he would have been held longer, there was no proof Francisco would not have been released before the stabbing. *Id.* at 53.

Any decision or "policy" that somehow allowed the HPD rifle to fall into Ernest's hands was too remote. The assignment of the weapon to R.D. Moore occurred in 1997, several months before the shooting. *Compare, Martinez,* 444 U.S. at 285; *Rodriguez-Cirilo,* 115 F.3d at 52. In *Martinez* plaintiffs sued the state board of pardons over the murder of a

girl by a parolee. The criminal had been convicted as an insane, violent sex offender, with

a recommendation against parole; after 5 years the board paroled him, with full knowledge

of his history and the likelihood he would commit violent crimes. *Id.* at 279. Five months

after his release, he tortured and murdered plaintiff's daughter. *Id.* at 280. The Supreme

Court concluded that the release five months earlier was too remote in time to be a proximate

cause of her death. *Id.* at 285.

In *Rodriguez-Cirilo*, family members had obtained an order to detain Francisco Cirilo

for two days of pscyhological exams; two weeks after police refused to enforce the order or

arrest Francisco, he stabbed his brother. 115 F.3d at 51. The First Circuit concluded the two

week delay between the failure to arrest and the stabbing made the causal link too remote.

*Id.* at 52, citing *Martinez* 444 U.S. at 285.

### b.      City Did Not Strip Agents/Deputy of Means of Self-Defense or Escape

The Court initially concluded that the City did not strip Dep. Rodriguez or the agents

of the means of defense or escape because they knew they were in a manhunt for a person

who had murdered two others, was armed and was in the vicinity. (Dkt. # 134, p. 29). In

light of Ms. Cox's early affidavit, the Court reconsidered, reasoning that evidence of his

preferences showed why he went on a shooting spree. (Dkt. #146, p. 10). The Court

distinguished *Piotrowski*, because there the ex-boyfriend had already made attempts on

plaintiff's life. (Dkt. #146, pp. 10-11).

Cox did not testify Ernest Moore had a preference . Moreover, *Piotrowski* is apposite

because the victim knew of her danger. The Fifth Circuit held that her claim failed on this

element because she knew of the threat and the City did nothing to prevent her from defending herself. 237 F.3d at 585, 585 n. 33. While Ernest Moore did not fire warning shots at the agents, it is uncontroverted they knew his intent, believed him armed and nearby, and debated what steps to take to protect themselves. They came to the Moore residence to apprehend an armed and dangerous person they believed was there.

*Compare, Salas v. Carpenter,* 980 F.2d 389, 308 (5th Cir. 1992); *Johnson v. Dallas ISD,* 38 F.3d 198, 202 (5th Cir. 1994), *cert. denied,* 514 U.S. 1017 (1995). In *Salas,* a distraught husband took his wife hostage in a judge's office. 980 F.2d at 302. Sheriff Carpenter took control of the situation, surrounding the office with his deputies. He declined to allow the local police to assist in any way, although they had a SWAT team and trained hostage negotiators; his office had neither. *Id.* After six hours, the husband shot his wife and committed suicide. *Id.* at 303. The plaintiffs urged that the sheriff cut off all means of escape or self-defense because his people were incompetent to either negotiate the wife's release or storm the office to rescue her, and because he refused to let competent officers intervene. *Id.* at 309. The Fifth Circuit held this was insufficient evidence to show the sheriff deprived her of all means of escape or self-defense. The fact his deputies failed to rescue her did not mean she had no meaningful sources of protection. *Id.* at 308.

In *Johnson,* a non-student entered a high school campus with a handgun, started a disturbance, and shot a student. 38 F.3d at 199. The Fifth Circuit held that simply because the victim was a student at school was insufficient to prove school officials stripped him of the means of self-defense or aid. *Id.* at 202. The claim failed because there was nothing to

show the officials placed him in a confrontational encounter with a violent criminal or put the criminal in front of him. *Id.*

### c. City Had No Actual Knowledge of Immediate Danger to a Known Victim

The "state created danger" doctrine will not apply where the government actor is not subjectively aware of any immediate danger facing the victim. *Saenz*, 183 F.3d at 391. There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim. *Id.* at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver. 183 F.3d at 390. About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id.* The Fifth Circuit affirmed, holding that allegations the officers were aware of the danger posed by the drunk and made plaintiffs more vulnerable were insufficient to state a claim. *Id.* at 391. The officers did not deny life or liberty if they were not subjectively aware the plaintiffs were there. *Id.* They did not violate Due Process by increasing the risk of harm to unidentified members of the public. *Id.* at 392. The identity of the person endangered must be known to the officer at the time he acts. *Id.* Here, at the time the rifle was assigned to Moore, no one at the City had actual awareness of any risk to the agents or Dep. Rodriguez.

### 2. No Decision or Policy Adopted with Deliberate Indifference

The alleged "policy" is not unconstitutional on its face. Therefore, Plaintiffs must show that an otherwise neutral policy was adopted with deliberate indifference to the

certainty that a constitutional deprivation will result. *Piotrowski*, 237 F.3d at 578, 581; *Snyder*, 142 F.3d at 795-96. The policy's existence and deliberate indifference are two different issues; there is no liability if the policy was adopted or ratified without deliberate indifference. *Cozzo v. Tangipahoa Parish Council,* ___ F.3d, 2002 WL 32810, * ____ (5th Cir. 2002).

The August 2, 2001, order concludes that it was "eminently foreseeable" that poor weapons accountability would eventually result in a HPD weapon falling into the wrong hands. Dkt. # 134, p. 26. However, foreseeability is not the entire test. Ordinary or heightened negligence will not meet the test of deliberate indifference. *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998), *cert. dism'd by agreement*, 119 S.Ct. 1493 (1999). The official must be aware of the facts in which an inference could be drawn that a substantial risk of harm exists and must actually draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A claimant proves deliberate indifference by showing either (1) the City consciously chose to not train officers after being on notice that its current regimen had failed to prevent misconduct and injuries; or (2) a single incident with proof of the possibility of recurring situations that presents an obvious potential for violations of constitutional rights and the need for training. *McClendon,* 258 F.3d at 442; *Conner v. Travis County,* 209 F.3d 794, 797 (5th Cir. 2000); *Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir. 2000), *en banc reh. denied,* 211 F.3d 127 (5th Cir. 2000). The Fifth Circuit has generally rejected proof of a

single incident as a sufficient basis to hold a city liable. *Cozzo,* 2002 WL 32810 at * ____;

*McClendon,* 258 F.3d at 442; *Snyder,* 142 F.3d at 798-99.

The fact that there are no other instances of harm undercuts the deliberate indifference

claim. *Cozzo, 2002 WL 32810 at * ____; Conner,* 209 F.3d at 797. The Fifth Circuit has

found the "single instance" theory viable only where there is a complete failure to provide any

training on any subject to an inexperienced officer with a record of recklessness. *McClendon,*

258 F.3d at 442 citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000). It must be

obvious that the failure to train would lead to injury; this stringent standard requires

unmistakable culpability and clearly connected causation. *Id.* at 442.

In *McClendon* the failure to train officer Carney on a specific subject did not meet this

rigorous standard. 258 F.3d at 443. Likewise, McClendon failed to show that the police

chief's failure to act when informed Loftin was implicated in an earlier shooting caused

Officer Carney to loan a gun to Loftin. *Id.*

In *Cozzo,* a sheriff's deputy misinterpreted a TRO to require the eviction of plaintiff

from her residence. 2002 WL 32810 at * _____. Although the deputy had completed

various training programs, he had not taken an eight week course required by state law that

would have taught him the proper interpretation. *Id.* at * ____. The Fifth Circuit concluded

this was some evidence that the sheriff had failed to train him. *Id.* However, there had been

no prior incidents of deputies wrongfully evicting people or dispossessing citizens of their

property. *Id.* at * ____. The Fifth Circuit reversed, holding that there was no evidence of

deliberate indifference under the "single incident" exception. *Id.* at 515-16.

At its best, Plaintiffs' evidence could be no more than ordinary or heightened negligence which is insufficient. Because Det. Moore had some training in weapons and had not previously shown himself incompetent to handle weapons, this case fails to meet the rigorous standard for the "single incident" exception.

The testimony of Mr. Kirkham, Plaintiffs' expert, does not solve their problem. Generally the opinion testimony of a single expert is insufficient to prove that a single incident shows deliberate indifference. *Conner,* 209 F.3d at 798.

Assuming arguendo Chief Schoepner was a the policymaker, none of his alleged polices were adopted by him with deliberate indifference to a known or obvious risk that a private citizen would take an HPD rifle without permission and use it to harm others. The first alleged policy rests on the assignment of the rifle to R.D. Moore and an alleged failure to instruct on safeguarding it. The point is that policy must focus on rifle *safeguarding*; therefore, R.D. Moore's proficiency to *use* the weapon is not relevant. There is no evidence that a widespread problem existed with private citizens stealing HPD weapons, or that R.D. Moore had been irresponsible about safeguarding other assigned weapons. Likewise, the failure to have policies that forbid storing weapons at home was not intentionally adopted with deliberate indifference to any known or obvious risk they would be stolen to commit crimes. *Compare, Huffman v. County of Los Angeles,* 147 F.3d 1054, 1060 (9th Cir. 1998) (county policy to require deputies to carry weapon at all times without warning them to not carry guns while drunk and off-duty, held not adopted with deliberate indifference).

The second "policy" fails for the same reason. Chief Scheopner had no reason to think that CCSD had need of information or lacked fire power or means of defense. He knew nothing about the tactical situation at the Moore residence, and he did not know Agents S. Rodriguez and Salinas and Deputy Raul Rodriguez were there. *Compare Shrum v. Kluck,* 249 F.3d 773, 780-81 (8th Cir. 2001) (school's decision to give a neutral reference letter to teacher dismissed on charges of child molestation, held not to be deliberate indifference when school lacked concrete proof teacher would molest children in the future). Most important, CCSD was in charge, not Scheopner. The whole manhunt was outside his jurisdiction.

### 3.    State Law Claims Barred by Sovereign Immunity

The Plaintiffs have alleged state claims under Texas Tort Claims Act based upon negligence.

Sovereign Immunity against state tort claims is waived against the City only if the death or injury arises out of the use or condition of tangible personal property. TEX. CIV. P.& REM. CODE, § 101.021. Property is "used" only if it is employed or applied for a given purpose; "non-use" cannot support a claim. *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex. 1996). If the tangible property is not defective, then "use" requires an allegation the defendant supplied the property lacking an integral safety component. *Kerrville,* 923 S.W.2d at 585; *Ramos v. City of San Antonio,* 974 S.W.2d 112, 116 (Tex. App.–San Antonio, 1998, no pet.). It is not enough that some property was involved; sovereign immunity is not waived unless the use of property actually caused the injury. *Texas Dept. of Crim. Justice v. Miller,* 51 S.W.3d 583, 588 (Tex. 2001).

It is a government employee that must misuse the property. *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623-24 (Tex. App.–El Paso 1998, no pet.)(no waiver when private citizen shot the plaintiff). The "use" of property by a third party is insufficient. *City of Columbus v. Barnstone*, 921 S.W.2d 268, 272 (Tex. App.–Houston [1st Dist.] 1995, no writ); *Ramos v. City of San Antonio*, 974 S.W.2d at 116.

The use or failure to convey information is not a use of tangible property that waives immunity. *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 179 (Tex. 1994). There, an alleged failure to train or instruct does not fall within the waiver. *Texas Dept. of Public Safety v. Petta,* 44 S.W.3d 575, 580 (Tex. 2001). Likewise there is no waiver for failing to use communication devices to convey information. *City of El Paso v. Hernandez,* 16 S.W.3d 409, 416-17 (Tex. App.–El Paso 2000, no pet.).

If the injury arises from an intentional tort, sovereign immunity is not waived. TEX. CIV. PRAC. & REM. CODE ANN., § 101.057 (Vernons Supp. 2001); *Petta,* 44 S.W.3d at 580. Because Ernest Moore's actions are intentional torts, there is no waiver of immunity under section 101.055. *Gonzales*, 978 S.W.2d at 623 (intentional tort committed by third party barred under section 101.057); *Barefield v. City of Houston*, 846 S.W.2d 399, 406 (Tex. App.–Houston [14th Dist.] 1992, writ denied).

Many of Plaintiffs' allegations arise out of alleged improper policies or the failure to have policies. There is no waiver of sovereign immunity for injuries arising from the policy decisions over the matter of providing police protection. TEX. CIV. PRAC. & REM. CODE

ANN., § 101.055(3)(Vernons Supp. 2001); *Orrozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 297-98 (Tex. App.–Dallas 1998, no pet.); *Gonzales,* 978 S.W.2d at 622-23.

### 4.    No Evidence of Proximate Cause on State Law Negligence Claims

To prevail on a negligence cause of action Defendant must prove proximate cause. The state law definition of proximate cause parallels the federal definition. Plaintiffs must prove cause in fact which requires proof that "but for" and "without which" defendant's conduct, the event would not have occurred and plaintiffs must prove that defendant's conduct is not too remote from the event. *Missouri Pac. RR Co. v. American Statesman,* 552 S.W.2d 99, 103-4 (Tex. 1977); *Mosley v. Excel Corp.,* 109 F.3d 1006, 1009 (5th Cir. 1997), *reh. denied,* 114 F.3d 1185 (5th Cir. 1997). As discussed in the previous section entitled Federal Claims, plaintiffs in this case, as a matter of law, cannot establish proximate cause between any action of the city or its employees, and the tragic events that occurred on July 7, 1998.

### 5.    No Evidence to Support State Law Claims

The Plaintiffs' state law claims rely, in large part, on negligent entrustment. In this case, there was no deliberate entrustment of the rifle by Det. Moore to his son. Although Texas cases have recognized a common law cause of action for negligently entrusting a firearm to an incompetent user (see, *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.–El Paso 1984, no writ) there is no case providing for liability for failing to prevent a weapon from being taken without permission. By analogy, Texas does not impose a duty to safeguard car keys to prevent a thief from stealing the car and hitting a third party. *See, Story Serv., Inc.*

*v. Ramirez*, 863 S. W. 2d 491, 497-98 (Tex. App.--El Paso 1993, writ denied). There is no liability simply for failing to take adequate precautions against unauthorized use.

Moreover, a city employee did not use the rifle. Therefore, Plaintiffs have the burden to show that, when the City entrusted the rifle to its employee, it knew or should have known that the employee would use poor judgment in allowing third parties to use or possess the firearm. *See, Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987). There is no evidence that Det. Moore's superiors knew or should have known he would exercise bad judgment.

The alleged promise to Pirtle to destroy the rifle creates no duty in favor of the deceased Border Patrol agents or Deputy Raul Rodriguez. The failure to perform a gratuitous promise makes the defendant liable only if he knows that the services are necessary for the protection of a third party and (1) negligence in the performance of the promise increases the risk of harm to that party, or (2) the third party detrimentally relies on the alleged promise to perform. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991). At the time the rifle was delivered to the City, it would have had no basis to realize destruction was necessary to protect either the Border Agents or Deputy Rodriguez. Next, because the City did nothing towards destroying the rifle, it undertook no affirmative course of action which increased the risk. *Id.* at 396-7. Because none of this was communicated to Deputy Rodriguez or the Border Patrol Agents, they could not have relied on it. *Id.* at 397.

**WHEREFORE, PREMISES CONSIDERED**, Defendant moves for judgment as

a matter of law that the remaining claims of all Plaintiffs in these causes be dismissed and

they take nothing against Defendant.

Respectfully, submitted,

By: _____

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
ADAMS & GRAHAM, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY
OF HARLINGEN, TEXAS

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 22th day of February, 2002, to the following counsel of record and interested parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

Mr. Broadus A. Spivey                                Via Hand Delivery
**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, Texas  78701-4320

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

Mr. Ramon Garcia                                     Via Hand Delivery
Ms. Sonia Lopez
**LAW OFFICES OF RAMON GARCIA, P.C.**
222 West University Drive
Edinburg, Texas  78539

TOM LOCKHART