*208*

United States District Court
Southern District of Texas
FILED

MAR 0 4 2002

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| Vs. | § | |
| | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL. | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS; | § | |
| | § | |
| And | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| | § | (Consolidated with B-98-162) |
| CITY OF HARLINGEN, TEXAS. | § | |

## PLAINTIFFS' MOTION FOR JUDGMENT

**COMES NOW** Giberto M. Rodriguez, individually and on behalf of his minor

daughter, Megan Suzanne Rodriguez and the Estate of his wife, Susan Lynn Rodriguez,

deceased; Stephen L. Williams and Robyn S. Williams, surviving parents of Susan Lynn

Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, individually

and on behalf of the Estate of their son, Ricardo Guillermo Salinas, deceased, Raul

Rodriguez, Plaintiffs, and file this Motion for Entry of Judgment upon the verdict of the

jury in this case.

1

**I.**

The grounds for this motion are that this case was submitted to a jury along with instructions to the jury and questions for the jury to answer.

**II.**

The jury returned its unanimous verdict, signed by Rachel Garcia Zuniga, Presiding Juror.  The questions submitted to the jury and the jury's answers are attached hereto as Exhibit "A."

**III.**

The verdict of the jury was in favor of the Plaintiffs, and Plaintiffs move the Court to enter judgment on each of the jury's answers and on behalf of and in the amount awarded by the jury to each Plaintiff respectively.

**IV.**

A proposed form of judgment is submitted along with this Motion for Judgment.

Respectfully submitted,

**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, TX  78701
512+474-6061
512+474-1605 (fax)

By _____
        Broadus A. Spivey
        State Bar No. 00000076
        Federal I.D. No. 11146
        Price Ainsworth
        State Bar No. 00950300
        Federal I.D. No. 8065
        Francis Pan
        State Bar No. 15443300
        Federal I.D. No. 26385

2

Richard Pena
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747
512+327-6884
512+327-8354 (fax)

**ATTORNEYS–IN-CHARGE FOR PLAINTIFFS
ARTURO G. SALINAS, ET AL and GILBERTO M.
RODRIGUEZ, ET AL**

**LAW OFFICES OF RAMON GARCIA, P.C.**
222 West University Drive
Edinburg, TX 78539
956+383-7441
956+381-0825 (Fax)

By _____
Sonia I. Lopez
State Bar No. 24003862
Federal I.D. No. 23501
Ramon Garcia
State Bar No. 07641800
Federal I.D. No. 3936

**ATTORNEYS-IN-CHARGE FOR PLAINTIFF
RAUL RODRIGUEZ**

3163P.053

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL., | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-98-162 |
| | § | |
| CITY OF HARLINGEN, ET AL., | § | JURY DEMANDED |
| | § | |
| and | § | |
| | § | |
| GILBERTO M. RODRIGUEZ, ET AL., | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-98-161 |
| | § | |
| CITY OF HARLINGEN, ET AL., | § | |
| | § | |
| and | § | |
| | § | |
| RAUL RODRIGUEZ | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-99-70 |
| | § | |
| CITY OF HARLINGEN, ET AL., | § | |

## FINAL JURY INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the

course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Opening statements and closing arguments are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. You may not consider exhibits, testimony, or other evidence which during the trial you were instructed to disregard.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

-2-

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget somethings or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinions on those technical matters. However, you

-3-

are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he or she testifies regularly as an expert witness and his or her income from such testimony represents a significant portion of his or her income.

Additionally, do no assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges-judges of facts. Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence. Select your Presiding Juror and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Presiding Juror must fill in your answers to the

-4-

written questions and sign and date the verdict form.  Use one of the jury note forms to advise the Court Security Officer that you have reached a verdict. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by meeting with you in the courtroom.  I will always first show the attorneys your question and my response before I answer your question.


DONE this 25th day of February, 2002, at Brownsville, Texas.



                              _____
                              Hilda G. Tagle
                              United States District Judge

# I. DEFINITIONS

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

An "employee" is a person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.

-6-

An employee is acting "in the scope of his employment" if he is acting in the furtherance of the business of his employer.

## II. STATE LAW CLAIMS

Plaintiffs claim that the City of Harlingen was negligent and is therefore liable under the Texas Tort Claims Act for Chief Scheopner's and Detective Moore's alleged negligent and wrongful use of the AR-15 rifle in the scope and course of their employment. The City is liable for personal injury and death proximately caused by the negligent use of tangible personal property if the City would be liable to Plaintiffs if it were a private person.

Plaintiffs claim that negligent use of City property, the AR-15 rifle, by a City employee in the scope and course of his employment was the proximate cause of injury to Plaintiff Raul Rodriguez and the deaths of Susan Rodriguez and Ricardo Salinas.

As to Plaintiffs' claim that the rifle was negligently entrusted to Detective R. D. Moore by Chief Scheopner, "negligence" means entrusting the rifle to a reckless person whom the City knew or should have known was reckless. Such negligence is a proximate cause of death or injury if (1) the City knew or should have known R. D. Moore would use poor judgment in allowing another person to use the rifle, and (2) that person's negligent use of the rifle was the proximate cause of injury or death.

-8-

## III. FEDERAL LAW CLAIMS

The plaintiffs claim that the City of Harlingen is liable for depriving them of their rights under the United States Constitution. The plaintiffs claim that because of a "state created danger," they were deprived of certain substantive Due Process rights, that is, life or liberty, which are guaranteed to them under the Constitution.  A City is liable for the deprivation of a constitutional right if

    (1)    the deprivation was pursuant to a governmental custom, policy, ordinance, or regulation; or

    (2)    for an action performed pursuant to a "custom" that, although it has not been formally adopted by a final policymaker of the City, is a persistent widespread practice that is so common and well-settled as to constitute a custom that fairly represents City policy; or

    (3)    a final policymaker ratified a subordinate's decision by approving of the decision and the basis for it.

Therefore, if you find that plaintiffs were injured as the proximate or legal result of Harlingen's policy, custom, ordinance, regulation or decision as defined above, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the City of Harlingen itself will be liable.

The Chief of Police is an official whose acts constitute final official policy of the City of Harlingen.  Therefore, if you find that the acts of Chief of Police deprived the plaintiff of constitutional rights, the City of Harlingen is liable for such deprivations.

For an injury to be a proximate or legal result of a City policy there must be a direct causal link between the City's policy, custom, ordinance, regulation, or decision, and the

-9-

deprivation of the constitutional right. The policy, custom, ordinance, regulation, or decision must be the moving force behind the violation.

Plaintiffs claim they were injured as a result of one or more of the following policies, customs, regulations or decisions:

a.    the failure to enforce regulations requiring the demonstration of proficiency with assigned weapons;

b.    the assignment of the AR-15 rifle in question to Detective R.D. Moore;

c.    the failure to instruct or train police officers concerning storage, safeguarding, or assignment of weapons;

d.    the failure to have a policy requiring written assignment of weapons to officers; or

e.    the failure to destroy the AR-15 rifle in question.

Plaintiffs claim that their injuries resulted from a failure to have or enforce certain policies as described above. The failure to adopt a policy cannot qualify as a policy unless the failure amounts to an intentional choice and is not merely an unintentional oversight.

To find that the policy or custom caused a "state created" danger you must find:

A.    The policy, custom, or the failure to have a policy were so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the certainty that a constitutional violation would result; and

B.    The actions were a proximate cause of injury to the plaintiffs.

Plaintiffs claim that they were injured as a result of the City of Harlingen's failure to properly train its officers as described above.

To find that a failure to train caused a "state created" danger you must find:

-10-

A.    That the City's training program was inadequate to train its officers and
      employees to carry out their relevant duties;

B.    The need for more training or different training is so obvious, and the
      inadequacy so likely to result in the violation of constitutional rights, that the
      policymakers of the City can reasonably be said to have been deliberately
      indifferent to the need for such training; and

C.    The failure to provide proper training was a proximate cause of injury to the
      plaintiffs.

Proof of simple or heightened negligence, alone, is not enough to prove deliberate
indifference. The official must be aware of facts from which an inference could be drawn
that a substantial risk of serious harm exists and he must also draw that inference.

With respect to a failure to train, Plaintiffs may prove deliberate indifference in two
ways: (1) by showing that the City's policymaker deliberately or consciously chose not to
train the Harlingen police officers despite being on notice that the current training regimen
had failed to prevent wrongful conduct by its officers, or (2) by proving a single incident of
wrongful conduct with proof of the possibility of recurring situations that present an obvious
potential for violation of constitutional rights and the need for additional or different police
training. Under the "single incident" test there must be a complete failure to provide any
training or supervision and it should have been obvious that the failure to train was likely
to lead to the injury.

Plaintiffs claim the City of Harlingen violated their substantive Due Process rights
by creating a dangerous situation which was a proximate cause of the death of Susan L.
Rodriguez and Ricardo G. Salinas and serious injuries to Raul Rodriguez through arbitrary

-11-

abuse of its governmental power, and that the City of Harlingen violated their substantive Due Process rights through a "state created danger." There is "state created" danger if:

1.   City officials increased the danger to Susan Lynn Rodriguez, Ricardo Salinas and Raul Rodriguez;

2.   City officials acted with deliberate indifference.  To establish deliberate indifference, Plaintiffs must show:

    A.   The City officials created a dangerous environment;

    B.   The City officials knew it was dangerous; and

    C.   The City officials used their authority to create an opportunity that would otherwise not have existed for the third party's crime to occur.

Put otherwise, the City must have been at least deliberately indifferent to the plight of Susan Lynn Rodriguez, Ricardo Salinas, and Raul Rodriguez; and

3.   The City officials affirmatively placed Susan Lynn Rodriguez, Ricardo Salinas, and Raul Rodriguez in that dangerous environment, effectively stripping them of the ability to defend themselves or cutting off potential sources of private aid.

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual.  The City's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause.

For the actions to be a "proximate cause," Plaintiffs must prove that:

1.   the deprivation of life or liberty was not ~~too~~ too remote a consequence of the City's actions;

-12-

2.    the deprivation of life or liberty was the foreseeable result of those actions;
      and,

3.    the deprivation of life or liberty would not have occurred but for the
      constitutional violation.

## IV. DAMAGES

If any plaintiff has proven his or her claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiffs are entitled to recover money from the defendant.

If you find that the defendant is liable to any plaintiff, then you must determine an amount that is fair compensation for all of that plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole--that is, to compensate a plaintiff for the damage that he or she has suffered. Compensatory damages are not limited to expenses that the plaintiff may have incurred because of his or her injury. If you find for the plaintiffs, they are entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, lost earning capacity, and medical expenses that they have suffered because of the defendant's conduct.

If you find for the plaintiffs, they are entitled to compensatory damages for loss of services and support, loss of companionship, mental anguish, medical expenses, and funeral expenses they have suffered because of the defendant's conduct.

You may award compensatory damages only for injuries that the plaintiffs prove were proximately caused by the defendant's allegedly wrongful custom, policy, or practice, if they were indeed wrongful. The damages that you award must be fair compensation for all of the plaintiffs' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should

-14-

not award compensatory damages for speculative injuries, but only for those injuries which the plaintiffs have actually suffered or that the plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstance permits.

You must use sound discretion in fixing an award of damages if you award damages drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A.    Damages Accrued

If you find for a plaintiff, he or she is entitled to recover an amount that will fairly compensate him or her for any damages he or she has suffered to date.

B.    Calculation of Future Damages

If you find that a plaintiff is reasonably certain to suffer damages in the future from his or her injuries, then you should award him or her the amount you believe would fairly compensate him or her for such future damages.

C.    Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the

-15-

plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1.      You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

2.      If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if he or she made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiff if he or she receives it today than in the future, when he or she would otherwise have earned it. It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date he or she would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with the loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

A.      <u>Survivors' Damages</u>:

1.      <u>Lost Support and Services in the Past and Future Due to the Death of Susan Lynn Rodriguez</u>

-16-

You must determine the duration of any future loss suffered by Plaintiff, Gilbert Rodriguez by considering the joint life expectancy of Susan Rodriguez and Gilbert Rodriguez. Joint life expectancy means the number of years that both Susan Rodriguez and Gilbert Rodriguez could have been expected to be alive together, considering the ages and life expectancy of each at the time of Susan Rodriguez's death.

You must determine the duration of any future loss suffered by Plaintiff Megan Rodriguez by considering the joint life expectancy of Susan Rodriguez and Megan Rodriguez. Joint life expectancy means the number of years that both Susan Rodriguez and Megan Rodriguez could have been expected to be alive together, considering the ages and life expectancy of each at the time of Susan Rodriguez's death.

You must determine the duration of any future loss suffered by Plaintiff Stephen Williams by considering the joint life expectancy of Susan Rodriguez and Stephen Williams. Joint life expectancy means the number of years that both Susan Rodriguez and Stephen Williams could have been expected to be alive together, considering the ages and life expectancy of each at the time of Susan Rodriguez's death.

You must determine the duration of any future loss suffered by Plaintiff Robyn Williams by considering the joint life expectancy of Susan Rodriguez and Robyn Williams. Joint life expectancy means the number of years that both Susan Rodriguez and Plaintiff, Robyn Williams could have been expected to be alive together, considering the ages and life expectancy of each at the time of Susan Rodriguez's death.

2.      Lost Support and Services in the Past and Future Due to the Death of Ricardo Salinas

You must determine the duration of any future loss suffered by Plaintiff, Arturo Salinas considering the joint life expectancy of Ricardo Salinas and Arturo Salinas. Joint

-17-

life expectancy means the number of years that both Ricardo Salinas and Arturo Salinas could have been expected to be alive together, considering the ages and life expectancy of each at the time of Ricardo Salinas' death.

You must determine the duration of any future loss suffered by the Plaintiff, Elisa Salinas by considering the joint life expectancy of Ricardo Salinas and Elisa Salinas. Joint life expectancy means the number of years that both Ricardo Salinas and Elisa Salinas could have been expected to be alive together, considering the ages and life expectancy of each at the time of Ricardo Salinas' death.

In evaluating past and future loss of support and services, you must consider the Plaintiffs' relationship to Susan Rodriguez or Ricardo Salinas, the amount of Susan Rodriguez's and Ricardo Salinas' probable net income available for distribution to the Plaintiffs. "Support" includes contributions in kind as well as sums of money. "Services" means tasks that they had regularly performed that now will be a necessary expense to the Plaintiffs because of Susan Rodriguez's or Ricardo Salinas' death.

3.    Surviving Spouse

In determining the duration of the Plaintiff Gilbert Rodriguez's loss of companionship and protection, and his mental anguish that resulted from Susan Rodriguez's death, you must consider the join life expectancy of Susan Rodriguez and Gilbert Rodriguez.

4.    Surviving Minor Child

In determining the duration of the loss of parental companionship, instruction, and guidance, and the mental anguish Megan Rodriguez sustained because of Susan Rodriguez's death, you must consider the joint life expectancy of Susan Rodriguez and Megan Rodriguez.

-18-

5.   Loss of Companionship and Society

"Loss of companionship and society" means the loss of positive benefits flowing from the love, comfort, companionship and society:

    a.   Gilbert Rodriguez, Megan Rodriguez, Stephen Williams and Robyn Williams, respectively, would in reasonable probability have received from Susan Rodriguez had she lived; and

    b.   Arturo Salinas and Elisa Salinas, respectively, would in reasonable probability have received from Ricardo Salinas had he lived.

6.   Mental Anguish

"Mental Anguish" means the emotional pain, torment and suffering experienced by:

    a.   Gilbert Rodriguez, Megan Rodriguez, Stephen Williams and Robyn Williams, because of the death of Susan Rodriguez ;

    b.   Arturo Salinas and Elisa Salinas, respectively, because of the death of Ricardo Salinas.

7.   Estate Damages: Lost of Inheritance

"Loss of Inheritance" means the loss of net accumulations, that is, that part of the deceased's net income from salary after taxes, including pension benefits that the decedent after paying personal expenses and monies for the support of the decedent's survivors, would have remaining as part of the estate if the decedent had lived to his or her normal life expectancy.

B.   Bodily Injury Damages for Raul Rodriguez

You may award damages for any bodily injury that the Plaintiff Raul Rodriguez has sustained, any pain and suffering, disability, disfigurement, mental anguish and/or loss of capacity for enjoyment of life that he experienced in the past or will experience in the future

-19-

as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate this plaintiff for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

"Mental Anguish" means the emotional pain, torment and suffering experienced by Raul Rodriguez because of his injury.

You may award the reasonable expense of hospitalization and medical and nursing care and treatment that the Plaintiff Raul Rodriguez has incurred and will require because of his injuries which were caused by the defendant's wrongful conduct.

-20-

# V. INTERROGATORIES

## QUESTION NO. 1

Was any negligent use of the Harlingen Police Department rifle by an employee of the City of Harlingen in the scope of his employment for the City a proximate cause of the deaths of  Susan Rodriguez and Ricardo Salinas and bodily injury to Raul Rodriguez?

Answer "Yes" or "No": _____Yes_____

## QUESTION NO. 2

Did a custom or policy made or adopted by the City of Harlingen with deliberate indifference cause a "state created" danger that was a proximate cause of the deaths of Susan Rodriguez and Ricardo Salinas and bodily injury to Raul Rodriguez?

Answer "Yes" or "No": _____Yes_____

**If you answered "yes" to Question No. 1 or Question No. 2, then answer Question No. 3. Otherwise, do not answer Question No. 3.**

## QUESTION NO. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs Gilbert Rodriguez, Megan Rodriguez, Stephen Williams and Robyn Williams for their injuries, if any, resulting from the death of Susan Rodriguez?

*Consider the following elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.*

Answer separately, in dollars and cents, for damages, if any.

**A.   Gilbert Rodriguez**
Funeral expenses paid or incurred; loss of support and services; loss of companionship and society; and mental anguish:

Answer: $ 5,000,000.

**B.   Megan Rodriguez**
Loss of support and services; loss of companionship, instruction and guidance; mental anguish; loss of inheritance:

Answer: $ 10,000,000.

**C.   Stephen Williams**
Loss of support and services; loss of companionship and society; mental anguish:

Answer: $ 2,500,000.

**D.   Robyn Williams**
Loss of support and services; loss of companionship and Society; mental anguish:

Answer: $ 2,500,000.

-22-

**If you answered "yes" to Question No. 1 or Question No. 2, then answer Question No. 4. Otherwise, do not answer Question No. 4.**

## QUESTION NO. 4

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs Arturo Salinas and Elisa Salinas for their injuries, if any, resulting from the death of Ricardo Salinas?

Consider the following elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.

Answer separately, in dollars and cents, for damages, if any.

> **A.    Arturo Salinas**
> Funeral expenses paid or incurred; loss of support and services; loss of companionship and society; mental anguish:
>
>    Answer: $____2,500,000._____
>
> **B.    Elisa Salinas**
> Loss of support and services; loss of companionship and society; mental anguish
>
>    Answer: $____2,500,000._____

-23-

**If you answered "yes" to Question No. 1 or Question No. 2, then answer Question
No. 5.  Otherwise, do not answer Question No. 5.**

### QUESTION NO. 5

What sum of money, if paid now in cash, would fairly and reasonably compensate Raul
Rodriguez for his injuries, if any, resulting from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element
separately.  Do not include interest on any amount of damages you may find.

Answer in dollars and cents, for damages, if any.

Physical pain; mental anguish; loss of earning capacity; physical impairment; loss of
enjoyment of life; physical disfigurement; medical care:

Answer: $ 10,000,000.

-24-

# VI. CERTIFICATE

**SO SAY WE ALL**

s/ Rachel Garcia Zuniga

**Presiding Juror**

February 26, 2002

**Date**