223

United States District Court
Southern District of Texas
FILED

MAY 0 3 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-163 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-99-70 |
| | { | |
| CITY OF HARLINGEN | { | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

TABLE OF CONTENTS

Page

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  NO WAIVER BY THE CITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Rule 50(b) Waiver: Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Preservation Of The Contention That The Three-Judge Panel
          Opinion In *McClendon* Is An Incorrect Statement Of
          The State-Created Danger Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   Preservation Of The Contention That The Shock-The-Conscience
          Standard of Culpability Applies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.   Preservation Of The Sufficiency-Of-The-Evidence
          Challenge To Any Finding Of Ratification . . . . . . . . . . . . . . . . . . . . . . 6

     E.   Preservation Of The Sufficiency-Of-The-Evidence Challenge
          To Any Finding Of Foreseeablity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. STATE-CREATED DANGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   No Evidence Of A Liberty Interest Deprivation By A State Actor . . . . . . . . . . . . 7

     B.   No Evidence Of Proximate Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          1.   Cause-in-Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.   Foreseeability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     C.   No Evidence Of Ratification/Policymaker Involvement . . . . . . . . . . . . . . . . . . 15

          1.   Identity of the Final Policymaker . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          2.   Chief Schoepner's Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.  NO EVIDENCE OF NEGLIGENCE UNDER STATE TORT LAW . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TABLE OF AUTHORITIES

<u>Cites</u>                                                                                  <u>Page</u>

*Alcatel USA, Inc. v. DGI Technologies, Inc.,*
     166 F.3d 772 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Alton v. Texas A&M Univ.*, 168 F3d 196 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Arabesque Studios v. Academy of Arts,* 529 S.W.2d 564
     (Tex. App.–Dallas 1975, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Askanase v. Fatjo,* 828 F.Supp. 465 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bay Colony Ltd. v. Trendmaker, Inc.*, 121 F.3d 998 (5th Cir. 1997) . . . . . . . . . . . . . . . . . 3

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984),
     *cert. denied*, 472 U.S. 1016 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Berry v. McLemore*, 670 F.2d 30 (5th Cir.1982)),
     *cert. denied*, 506 U.S. 973 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brennan v. Stewart*, 834 F.2d 1248 n. 11 (5th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 17

*City of St. Louis v. Psapotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Coleman v. Houston ISD*, 113 F3d 528 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Crawford v. Falcon Drilling Co., Inc.,*
     131 F.3d 1120 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*De Jesus Benavides v. Santos*, 883 F.2d 385 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 8

*DeShaney v. Winnebago County Dept. of Soc. Serv.,*
     489 U.S. 189 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*FM Properties Operating Co. v. City of Austin,*
    93 F.3d 167 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fraire v. City of Arlington,* 957 F.2d 1268 (5th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gosnell v. City of Troy,* 59 F.3d 654 (7th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir. 1985),
    *cert. denied,* 480 U.S. 916 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Greenwood v. Societe Francaise De,*
    111 F.3d 1239 (5th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hogan v. City of Houston,* 819 F.2d 604 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198 (5th Cir.1994)
    (emphasis added)), *cert. denied,* 122 S. Ct. 53 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. United States,* 520 U.S. 461,
    117 S.Ct. 1544 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Kennedy v. Baird,* 682 S.W.2d 377
    (Tex. App.—El Paso 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kirby v. Cruce,* 688 S.W.2d 161 (Tex. App.–Dallas 1985,
    writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*La Sara Grain Co. v. First Nat. Bank of Mercedes,*
    673 S.W.23d 558 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McClendon v. City of Columbia,*
    258 F.3d 432 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*McGuiness v. Brink's Inc.,* 60 F.Supp.2d 496 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . 19

*Neuwirth v. Louisiana State Bd. of Dentistry,*
    845 F.2d 553 (5th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Piotrowski v. City of Houston,* 237 F.3d 567 (5th Cir.)
    (*Piotrowski II*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Polanco v. City of Austin,* 78 F.3d 968 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Prather v. Brandt*, 981 S.W.2d 801 (Tex. App.—Houston
  [1st Dist.] 1998, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*S.S. v. McMullen,* 225 F.3d 960, 165 (8th Cir. 2001)(en banc),
  *cert. denied*, 121 S.Ct. 1227 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schuster v. City of New York*, 180 N.Y.S.2d 265,
  154 N.E.2d 534 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. City of Picayune*, 795 F.2d 482 (5th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998),
  *cert. granted on other grounds*, 525 U.S. 1098,
  *cert. dism'd*, 526 U.S. 1083 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052 (5th Cir.1985)
  (en banc), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957,
  90 L.Ed.2d 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Taylor v. Phelan*, 9 F.3d 882 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*,
  100 F.3d 429 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Williams v. Runyon*, 130 F.3d 568 (3d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


Texas Practices & Remedies Code

§ 101.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


Federal Rules of Civil Procedure

Rule 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Rule 50(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4, 6

Rule 50(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

Rule 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Federal Rules of Evidence</u>

Rule 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Federal Statutes</u>

28 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 17

223

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 3 2002

Michael N. Milby
Clerk of Court

ARTURO G. SALINAS, ET AL       {
                                     {
V.                                   {      CIVIL ACTION NOS. B-98-162,
                                   {          B-98-163, B-98-164
CITY OF HARLINGEN         {
                                     {

### DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant City of Harlingen ("Harlingen" or the "City") files this **REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**.

**I.**    **INTRODUCTION**

Plaintiffs Response struggles because it admits Harlingen's key points: (1) whether Ernest would or would not have selected another rifle absent the HPD rifle is pure speculation, and (2) Det. Moore's and Chief Scheopner's conduct was, at worst, negligence. Response, pp. 3, 28-29; Dkt. No. 222. To avoid the effect of these concessions, they either ignore testimony from their own key witnesses or put the burden of proof on the wrong party. Their remaining arguments go without any record citation or are just bombast.

The City will instead reply selectively to certain of the plaintiffs' main themes and will rely on its opening brief to state its position with respect to issues not covered here. In Section II below, the City will address in some detail the plaintiffs' argument that the City waived four of the grounds it asserted in its Rule 50(b) motion. In Section III the City will respond to the plaintiffs' contentions concerning three of the elements of their state-created

1

danger claim pursuant to § 1983: (1) deprivation of liberty, (2) causation (including both cause-in-fact and foreseeability), and (3) policymaker involvement. In Section IV, the City will very briefly respond to plaintiffs' contention that the Texas Tort Claims Act waives immunity to state law tort liability in this case.

## II.    NO WAIVER BY THE CITY

In their response, the plaintiffs contend that the City waived the following *specific* issues: "(1) no state created danger exception exists or applies in this case; (2) the standard is shock the conscience, not deliberate indifference, and this did not occur; (3) lack of foreseeability; and (4) no ratification." *See* Response, at p. 6, 7 n.1; Dkt. No. 222. The plaintiffs further contend that this "waiver list" is not meant to be exhaustive (*id.*, at 7, n.2), suggesting that "perhaps" other issues have been waived as well, but not specifying what they are.

Plaintiffs have waived the "waiver" argument as to all points not specifically challenged. To preserve their argument the City's Rule 50 motion waived a particular ground, they must specify what that ground is; otherwise the contention of waiver is itself waived. *Williams v. Runyon*, 130 F.3d 568 (3d Cir.1997) (holding that where a party did not object to a movant's Rule 50(b) motion *specifically* on the ground that *the issue* was waived by an inadequate Rule 50(a) motion, the party's right to object on that basis is itself waived); *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir.

1996) (holding that failure to assert an objection to a Rule 50(b) motion constitutes waiver of the objection).[1]

## A.    Rule 50(b) Waiver: Generally

The Fifth Circuit has repeatedly emphasized that the application of Rule 50(b) "should be examined in the light of the accomplishment of its particular purposes as well as in the general context of securing a fair trial for all concerned in the quest for truth." *Bay Colony Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997). The Rule is applied "with a liberal spirit," *see Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 781 (5th Cir.1999), and excuse technical noncompliance with the Rule "where the purposes of the rule are satisfied." *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996).

Rule 50(b) "serves two basic purposes: to enable the trial court to re-examine the sufficiency of the evidence as a matter of law if, after the verdict, the court must address a motion for judgment as a matter of law, and to alert the opposing party to the insufficiency of his case before being submitted to the jury." *Polanco*, 78 F.3d at 974. "These purposes [of Rule 50(b)] are met when the court and the plaintiff are alerted to the grounds on which the defendant contends the evidence is insufficient prior to the submission of the case to the jury." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1244 (5th Cir.1997).

Plaintiffs suggest that the City's failure to urge objections to charge on the same grounds as its Rule 50(a) Motion somehow waived these paints or precludes it from reurging

---

1    Alternatively, out of an abundance of caution, the City has attached to this reply an appendix which restates verbatim all of the legal-sufficiency-of-the-evidence grounds set out in the City's renewed motion for judgment as a matter of law under Rule 50(b), and for each such ground the City has referenced the specific page number and passage in the City's original Rule 50(a) motion where the argument was first made and preserved.

them now.  Response p. 6; Dkt. No. 222.  Rule 51 provides that an objection for failing to

give an instruction is waived if not urged.  FED. R. CIV. P. 51.  However, a failure to object

to the charge does not make it the law of the case or preclude review of a Rule 50 motion.

*City of St. Louis v. Prapotnik*, 485 U.S. 112, 120 (1988); *Thompson and Wallace of Memphis,*

*Inc. v. Falconwood Corp.*, 100 F3d 429, 432 (5th Cir. 1996).

### B.  Preservation Of The Contention That The Three-Judge Panel Opinion In *McClendon* Is An Incorrect Statement Of The State-Created Danger Theory

In its Rule 50(a) motion, the City alerted the Court to the pendency of the motion for

rehearing en banc in *McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001), the

controlling precedent in the Fifth Circuit at the time the case was tried, and in that motion the

City assumed only "*arguendo*" that *McClendon* would be affirmed.  *See* Motion, p.4.  The

City therefore did not concede that *McClendon* was a correct interpretation of the

Constitution and left open its present argument ( now that the three-judge panel opinion has

been vacated by the en banc Court) that this case should be decided instead under a proper

reading of the Due Process Clause.

The argument is clearly ripe at this time for the additional reason that it attacks the

*materiality* of the jury's answer to Question No. 2 — there is no constitutional cause of action

on the theory submitted to the jury — not the *sufficiency* of the evidence supporting that

answer.  Thus, the waiver provision of Rule 50(b) is not implicated.

Finally, even under a plain error analysis, the result is the same: it is plain error to

enter judgment against the City on a clearly invalid theory of law that was "valid" at the time

of trial.  *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1548-49 (1997) ("Where

the law at the time of trial was settled and clearly contrary to the law at the time of appeal — it is enough that an error be 'plain' at the time of appellate consideration."); *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1125 (5th Cir. 1997) (applying *Johnson* plain error analysis to civil judgment entered prior to material change in the governing law).

### C. Preservation Of The Contention That The Shock-The-Conscience Standard of Culpability Applies

The City's argument concerning the applicability of the shock-the-conscience culpability standard is a subset of its challenge to materiality of the jury's answer to Question No. 2. With *McClendon* off of the books it is now proper for the Court to resolve the controlling question of law dictated by the Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998): Was the City of Harlingen's assignment of the AR-15 to Det. R.D. Moore a "conscience shocking" abuse of governmental power, that is, arbitrary in a constitutional sense? That question is answered by focusing on *the City*'s action in question (the assignment of a gun to a police officer), not on Ernest Moore's actions. *S.S. v. McMullen*, 225 F.3d 960, 165 (8th Cir. 2001)(en banc), *cert. denied*, 121 S.Ct. 1227 (2001).

The Plaintiffs try to solve this by slapping emotion laden labels on the HPD rifle. In Due Process terms, assigning a semi-automatic rifle to a police officer is rationally related to the City's legitimate governmental purpose of providing police protection to its citizens, making the jury's finding of "deliberate indifference" legally immaterial. Criminals can obtain AR-15s and cities must be able to arm police officers with the same.[2] Any gun is

---

2    As the evidence of this case showed, the AR-15 in question had been legally owned for years by a private citizen, Dr Pirtle. If private citizens can own these semi-automatic rifles for personal use, protection, and enjoyment, it does not make sense for federal courts to hold that the Constitution is offended by cities assigning such guns to veteran police officers like R.D. Moore.

deadly. Cities assign guns to police officers for use in law enforcement, since deadly force

can be an appropriate law enforcement tool. At the ranges in this case, most standard police

handguns are lethal. The 14th Amendment Due Process analysis does not change with

relative firepower of particular weapons.

### D.    Preservation Of The Sufficiency-Of-The-Evidence Challenge To Any Finding Of Ratification

The City preserved its challenge to any finding of ratification expressly by its written

motion (see City's Rule 50(a) Motion, at p.2, [Dkt. No. 193] stating "No unlawful policy,

custom, or action was ratified by Harlingen with deliberate indifference"), and by oral

argument of counsel in support of that motion at the close of the evidence. See R. 870 (l. 14-

22) ("I don't think there is ratification on this evidence").

### E.    Preservation Of The Sufficiency-Of-The-Evidence Challenge To Any Finding Of Foreseeablity

In its written Rule 50(a) motion, the City preserved its challenge to any finding of

proximate cause, which includes a foreseeablity component. *See* City's Rule 50(a) motion,

at p.2, stating "No Harlingen policy decision or policymaker action was a proximate cause

of the deprivation, deaths, and injuries at issue"; at p.3 stating "No action by Harlingen

officials was a proximate cause of the deaths or injuries" and "There is no proximate cause

to support the state law claims." Dkt. No. 193. In the body of its Rule 50(a) motion, the City

specifically defined proximate cause (for state and federal claims) to have cause-in-fact *and*

foreseeability components, and argued that "plaintiffs in this case, as a matter of law, cannot

establish proximate cause between any action of the city or its employees, and the tragic

events that occurred on July 7, 1998." Motion, at p. 18; Dkt. No. 193. Elsewhere the City also noted: "Any decision or 'policy' that somehow allowed the HPD rifle to fall into Ernest's hands was too remote." (p. 9). Dkt. No. 193.

## III.    STATE-CREATED DANGER

### A.    No Evidence Of A Liberty Interest Deprivation By A State Actor

Plaintiffs' analysis entirely ignores the constitutional dimension of this case. To invoke due process protection, procedural or substantive, a plaintiff must first show that the state has "deprived" him of "life, liberty, or property"; otherwise no "process" is "due." The Supreme Court's opinion in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189 (1989), stands for the proposition that when a private criminal kills or injures an individual, it is the criminal's independent volitional act that has "deprived" the individual of "life" or the "liberty." *DeShaney* recognizes that the state may become constitutionally responsible for protecting an individual from privately-inflicted injury if "by the affirmative exercise of its power [the state] so restrains an individual's liberty that it renders him unable to care for himself." *Id.*, at 200.

This key element was submitted to the jury without objection by the Plaintiffs. The Court instructed the jury that Plaintiffs had to prove:

> The City officials *affirmatively placed* Susan Lynn Rodriguez, Ricardo Salinas, and Raul Rodriguez in that dangerous environment, effectively stripping them of the ability to defend themselves or cutting off potential sources of private aid.

See Jury Charge, p. 12 (emphasis added); Dkt. No. 203. The Fifth Circuit has repeatedly stated that, if the "state created" danger doctrine is ever accepted, its key element is the

affirmative placement of plaintiff in the dangerous environment by the state actor. *See Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir.) (*Piotrowski II*) ("'*The key to the state-created danger cases* . . . lies in the state actors' culpable knowledge and conduct in *affirmatively placing an individual in a position of danger*, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.'")(emphasis added), *cert. denied*, 122 S. Ct. 53 (2001), (quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994)).

Plaintiffs failed on this key element because there is no evidence that any city actor *affirmatively placed* the deceased Agents or Deputy Rodriguez at the scene of the Moore home. They affirmatively placed *themselves* there as part of their job; the City of Harlingen did not place them there.

Plaintiffs do not discuss the two controlling Fifth Circuit cases on this very point: *De Jesus Benavides v. Santos*, 883 F.2d 385 (5th Cir. 1989), and *Hogan v. City of Houston*, 819 F.2d 604 (5th Cir. 1987). Both reject the due process claims of law enforcement officials shot in the line of duty by criminals who misappropriated guns from police officers - officers who were allegedly deliberately indifferent in allowing criminals to have access. *De Jesus Benavides* and *Hogan*, no defendant state actor affirmatively placed the plaintiffs in the line of fire. The holdings of these Fifth Circuit cases control the outcome in this case.

Plaintiffs' next argument is the HPD rifle is the culprit that forced them into the position of danger and then held them there defenseless. Shorn of rhetoric, the argument is that rifle's firepower made them "sitting ducks." Response, pp. 31-33.

8

The main premise of this argument is invalid; therefore, its conclusion is unsound. First , the claim glosses over the critical 'affirmative placement' component of the liberty interest violation.    The HPD rifle did not force their presence.    Had they not voluntarily come to search for a murderer, the Agents and Dep. Rodriguez would have had no reason to defend themselves. They made the tactical decision to expose themselves to ambush in order to arrest the gunman in his own backyard.

For 14th Amend. purposes, the HPD rifle is a weapon like other firearms. It *is* just a rifle — a legal, commercially available, semi-automatic rifle. R. 102 (l. 4-23).  Like all rifles, it is capable of killing and maiming, but it does not literally or figuratively "strip" all those in firing range of their defenses.  The fire-fight between Ernest and the officers occurred at very close range, where all of the participants (with different type weapons) were within easy killing range of one another.  R. 448 (l. 1-3), R. 679 (l. 1-9), and R. 840 (l. 6) - 841 (l. 10).  Plaintiffs' Exh. 10 (last 2 pages - scale drawings).  In short, Plaintiffs cannot single out the HPD rifle as constitutionally significant because all weapons in some circumstances may give the assailant an advantage.

Plaintiffs then argue Det. Moore forced the Patrol Agents into danger by denying them entrance to his home, suggesting that this exposed them to Ernest's ambush.  The CCSD entered the Moore residence to search for Ernest Moore, not to seek shelter; and the shooting occurred after that search ended and all of the CCSD officers exited the house. R. 189 (l. 1-24).  Dep. Rodrugez was not excluded (R. 673 (l. 8-19)) and was still injured.  Thus, even if Moore had allowed the Agents in, they would have been outside when the shooting started.

Second, Plaintiffs made no attempt to causally link R.D. Moore's exclusion of the Border Patrol agents from his private residence to any custom or policy of the City.[3/] Critically, there is no proof that exclusion stripped the deceased Agents of their means of self defense or escape. There is no proof that Det. Moore denied them entrance due to a City policy, particularly as his house is outside Harlingen city limits.

Lacking Fifth Circuit or federal precedent, Plaintiffs then claim this Court should read the Constitution as coterminous with state tort law about the duty to provide police protection to specific informants. Response, pp. 36-7 [Dkt. No. 222], citing *Schuster v. City of New York*, 180 N.Y.S.2d 265,154 N.E.2d 534 (1958); *Taylor v. Phelan*, 9 F.3d 882 (10th Cir. 1993)(diversity case applying Kansas law). Bluntly, the Supreme Court in *DeShaney* rejected the argument that Due Process requires the state to provide any specific level of protection from private criminals.

Plaintiffs then argue that Due Process is offended because state law imposed a duty on R.D. Moore as a police officer to prevent his son from committing crime. Putting aside the fact that R.D. Moore did seize a gun to use against his own son to end the gun battle, this argument mistakes what state law may require of police officers and what the federal Constitution requires. The Fifth Circuit has repeatedly distinguished these concepts:

> "[T]he due process clause does not require a state to implement its own law correctly[, nor does] [t]he Constitution ... insist that a local government be right." *Gosnell v. City of Troy*, 59 F.3d 654, 658 (7th Cir.1995) (citations omitted). Indeed, "[c]onverting alleged violations of state law into federal ...

---

3    Plaintiffs do not suggest, and would be hard pressed to show, precisely what kind of policy the City could have implemented which would have both respected the Fourth Amendment rights of city employees to be free of warrantless searches of their homes *and* compelled R.D. Moore to open his home to a warrantless search by the Border Patrol Agents.

due process claims improperly bootstraps state law into the Constitution." *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). [A] violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment. *See id.; see also Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 558 (5th Cir.1988), *Brennan v. Stewart*, 834 F.2d 1248, 1255 n. 11 (5th Cir.1988); *Smith v. City of Picayune*, 795 F.2d 482, 488 (5th Cir.1986).

*FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).   This

attempt to transmute a state law duty to protect into a *constitutional* duty is precisely the

same bootstrap argument that the U.S. Supreme Court considered and rejected in *DeShaney*.[4/]

## B.    No Evidence Of Proximate Cause

### 1.    Cause-in-Fact

Plaintiffs admit it is speculation whether, absent the HPD rifle in the gun vault, Ernest

would have chosen another or none.  Response, p. 28, 29; Dkt. No. 222.  To avoid the effect

of this concession, Plaintiffs first put the burden to disprove causation on Defendants and

then ignore their own evidence that the other rifles gave Ernest the same opportunity.

It was plaintiffs' burden at trial to prove 'but for' causation: but for the City's

assigning the AR-15 to R.D. Moore, Ernest Moore would not have killed the deceased

Agents or wounded Dep. Rodriguez.  The evidence adduced at trial showed that on the day

of the incident, many guns of comparable fire power were available to Ernest, and there was

no evidence adduced to show that Ernest would not have ambushed the officers if the City

AR-15 had been unavailable.  Ranger Jaramillo inspected Ernest's room shortly after the

---

4       This Court will recall that in *DeShaney* the Supreme Court rejected the argument that because
        state child protective service laws imposed a duty on case workers to protect young Joshua
        DeShaney, the Due Process Clause should be read to impose the same duty.

shooting incident and found inside the family gun vault a cache of other weapons including Moore's privately owned Colt AR-15. R. 132 (l. 20-25); PX 8F. The inventory of guns in the gun vault R. 354 (l. 19) - 355 (l. 10); DX 1, showed there to be twenty guns inside the gun vault, fourteen rifles and six handguns, along with ammunition for each. Indeed, the Colt AR-15 was a trial exhibit which plaintiffs could have tested at any time.

Plaintiffs' own expert agreed that there were other available weapons in the gun vault that would have done the same damage.    R. 600 (l. 10) - 601 (l. 4), 640 (l. 3-6).

The evidence cited by the plaintiffs in their response is insufficient to establish 'but for' causation.

- The Colt AR-15 Had Clips.  Citing testimony of Ranger Jaramillo, plaintiffs point out that the Colt AR-15 could not be fired on July 7, 1998 because it had no ammunition clip in it.  What Plaintiffs fail to mention is that Ernest had taken all of the interchangeable clips to use in the HPD AR 15. R. 198 (l. 10) - 199 (l. 21), 442 (l. 8) - 443 (l. 17).

- "Display" Weapons In Ernest's Room.    Citing Ranger Jaramillo's testimony, the plaintiffs make the following patently misleading statement: "the other unusual weapons in Ernest's room were for display," to suggest that the guns were merely decorative and incapable of shooting.  Response, at 17. A careful reading of the Ranger's testimony reveals that the word "display" in this context meant (and only meant) guns outside of the vault. R. 171 (l. 7-17).

- The Claim that Ernest Moore Shot The HPD Rifle  "Many Times Before." For this flagrant misrepresentation of the record plaintiffs cite page 503, where former Assistant City Manager Joe LeBeau testified that Detective Moore had told him that he, Det. Moore, had practiced with the weapon in his yard "on occasion" and that he, Det. Moore, had allowed his son to use it on one occasion. R. 502 (l. 15) - 503 (l. 17).  Plaintiffs presented no evidence that Ernest Moore established his efficiency with an AR 15 by shooting on that one occasion and to the contrary Ernest Moore had owned and fired an assault weapon prior to Det. Moore bringing the HPD AR 15 home. R. 363 (l. 3-19).

- The Other Rifles in the Vault Were Operational and Ernest Moore Could Operate Them.  Although it was the plaintiffs' burden to prove 'but for'

12

causation, not the City's burden to negate it, plaintiffs contend that they have satisfied their burden by virtue of the City's failure to "put on evidence of the condition of the other weapons." Response, at 17. This argument is easy to refute. First, as indicated, it was the plaintiffs' burden to show that the other guns would not shoot; therefore the absence of proof is fatal to the plaintiffs' case. Second, there is unrefuted independent evidence that:

> the Colt AR-15 was operational and that Ernest was proficient with it. R. 443 (l. 1-11);

> SKS semi-automatic rifle and M-1 carbine semi-automatic rifle (other assault rifles in the vault) were fully operational, with ammunition and Ernest was proficient with them. R. 444 (l. 25), 446 (l. 6)

• Other Guns Could Penetrate Kevlar. The ability to penetrate Kevlar vest is irrelevant. There is no evidence of penetration of a Kevlar vest worn by any of the victims. Agents Salinas and Rodriguez were shot in the head and neck, respectively. PX-28,32. Vests would not cover those areas from any bullet. Additionally, the Colt AR-15 clearly could penetrate Kevlar as well as the City's AR-15.

## 2.    Foreseeability

To prove foreseability, Plaintiffs adopt the rhetorical device they condemn —

according to plaintiffs "This Court can, and should, take judicial notice of the Nazi mentality,

the corresponding attitude of intensely hating minorities, and the predisposition of such 'hate

groups' to use violence to injure and kill minorities." See Response, at p. 36; Dkt. No. 222.

Because they must prove the Police Chief acted with deliberate indifference, plaintiffs make,

as they must,  another gigantic leap of logic:  "In light of Chief Schopner's close working

relationship with Detective Moore and the telephone conversation he had with Detective

Moore in the critical moments before the tragic incident in question, the jury was entitled to

infer that *Chief Schoepner had possession of the same information that Detective Moore had*.

Response, at 36 (emphasis added); Dkt. No. 222.

Boiled down to its essentials, plaintiffs' forseeability argument is this:

1.    Ernest Moore = Nazi = minority hater = person likely to murder minorities *as a matter of law.*

2.    Det. Moore = Ernest's father =knowledge that Ernest will murder minorities.

3.    Police Chief=colleague of Det. Moore=knowledge that colleague's son will murder minorities.

Each of these unsupported assumptions will be addressed and rebutted in turn.

Though racial prejudice may be common, racially motivated murders are rare. Courts should not automatically and officially declare prejudiced people to be potential murderers. The Court must reject their rhetorical request to notice that persons of specific "mentality" are likely to commit murder. Courts can take notice of certain facts without formal proof but only where the fact in question is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Their request for a declaration as to which "hate groups" are likely to murder people relies on the kind of emotional bias and suspicion it condemns.

Morever, the investigation of a combined federal and state agencies rejected Plaintiffs claim. Ranger Jaramillo, an independent investigating officer of apparent Hispanic ancestry, very carefully investigated the murders in question and concluded, correctly, that this was not a hate crime at all. Ernest Moore was found to have had many Hispanic friends. R. 185 (l. 12-13). His shooting rampage at the Morin home obviously grew out of a lover's triangle

— a "crime of passion" as Ranger Jaramillo aptly called it, and the subsequent shootings at the Moore residence were, as he concluded, a form of "suicide by cop." R. 185 (l. 14) - 186 (l. 1). There is not the slightest bit of evidence Ernest knew the racial identity of his victims at the Moore residence.

Plaintiffs have even less factual support for their contention that Chief Schoepner is charged with whatever knowledge Det. Moore had, simply because the two had a "close working relationship." This effectively admits Chief Scheopner had no such knowledge and imputes Det. Moore's knowledge to him. Imputed intent and knowledge is tantamount to vicarious liability and will not support section 1983 liability. *See e.g., Coleman v. Houston I.S.D.*, 113 F3d 528, 534, 536 (5th Cir. 1997); *Alton v. Texas A&M Univ.*, 168 F3d 196, 200-201 (5th Cir. 1999). There is no evidence to justify any such inference. No proof was adduced to show that Det. Moore ever told Chief Schoepner anything about Ernest. There was no evidence that Ernest had ever had any previous brushes with the law for violent conduct.

### C.   No Evidence Of Ratification/Policymaker Involvement

#### 1.   Identity of the Final Policymaker

Two points will be made here in reply to plaintiffs' argument concerning the jury instruction on the identity of the relevant final policymaker. First, the charge does not limit the relevant policymaker to the office of the police chief. It says that the chief is "an" official whose acts constitute final policy for the City. It does not say the chief is "the" final policymaker to the exclusion of all others. Furthermore, the charge identifies other relevant policymakers as the City's "lawmakers" — necessarily the City Council — and "those

15

officials whose edicts or acts may represent official policy" (see Charge, at p. 6), which the City has shown to include the City Manager and the Civil Service Commission.

The second critical point to be made about the charge is that in designating the chief of police as a final policymaker, the charge designates the *office* of chief, not the *person* of Chief Schoepner. This is important because, as the evidence shows, Schoepner resigned as Chief on January 4, 1999. R. 291 (l. 16, 17). Accordingly, City Manager Prim's actions in removing Schoepner as the chief and Victor Rodriguez's actions as chief in amending the City's weapons policies are supportive of the City's overall contention that the City did not "ratify" any alleged state-created danger at issue in this case.

### 2.    Chief Schoepner's Actions

Plaintiffs do not attempt to justify their rhetorical claim Chief Schoepner "put" the HPD rifle in the hands of murderer. Their real problem is that they did not prove the police chief (or anyone above him) ratified or adopted a policy with deliberate indifference to the certainty that a constitutional violation would result.

Their argument falters in trying to identify what and how the Chief "ratified." Plaintiffs concede that their ratification argument is not based "purely on the Chief's refusal to reprimand." Response, at 40[5]. "[A] city's custom or policy authorizing or encouraging police misconduct 'cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278-79 (5th Cir.) (quoting *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir.1982)),

---

5    Indeed, it couldn't be based on a failure to reprimand because they did not request this theory be in the charge.

16

*cert. denied*, 506 U.S. 973 (1992). Instead, citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987), Plaintiffs argue that the City ratified the shootings by "[c]onscious difference to widespread incompetence or misbehavior." Response, at 40 (quoting *Grandstaff*, 767 F.2d at 170).

Proof of "widespread" employee incompetence is no proof that the policymaker previously made a decision and the employees were complying with it. *Grandstaff* has been limited to its peculiar, unique egregious facts. *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986); *see also Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998) ("*Grandstaff* has not enjoyed wide application in this Circuit."), *cert. granted on other grounds*, 525 U.S. 1098, *cert. dism'd*, 526 U.S. 1083 (1999).

The "custom" Plaintiffs cite amounts to nothing but isolated unrelated incidents. There was no pattern of officers permitting third parties access to their weapons. A single incident does not prove prior custom of widespread unconstitutional conduct, much less deliberate indifference. "'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984), *cert. denied*, 472 U.S. 1016 (1985)). If these facts prove a Due Process violation (which the City vehemently denies), this was the first and only one of its type that plaintiffs could show.

Nothing in the City's post-shooting investigation showed that it previously condoned lawless conduct or adopted policies with deliberate indifference. The evidence before Chief Scheopner was that Ernest stole the AR-15 from a locked gun vault. The Assistant City

17

Manager, not satisfied with Chief Scheopner's explanation, instituted his own investigation and reached conclusions that changes in the City's weapons policy needed to be made. The City Manager required Chief Schoepner to step down, and the new chief implemented changes. As a matter of law, ratification did not occur: the City did not approve the commission of any constitutional tort, let alone the basis for it.

## IV.    NO EVIDENCE OF NEGLIGENCE UNDER STATE TORT LAW

Plaintiffs miscite *Prather v. Brandt*, 981 S.W.2d 801 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) and *Kennedy v. Baird*, 682 S.W.2d 377 (Tex. App.—El Paso 1984, no writ), for the proposition that § 101.021 of the TTCA waives immunity where "a municipality negligently failed to prevent a weapon from being taken from the municipality." Response, at p. 45; Dkt. No. 222. These cases discuss liability of private parties for negligent entrustment of a firearm. These cases do not address municipal liability under the Tort Claims Act.

Even if immunity were waived on such claims, there is no evidence to support *municipal* liability on the theory of negligent entrustment. *Prather* and *Kennedy* require a showing analogous to what Texas courts have elsewhere required in a automobile negligent entrustment cases. 981 S.W.2d at 806; 682 S.W.2d at 379. This would include (1) the owner or person having the right of control of the gun entrusted it to a third person, (2) the borrower was a reckless, incompetent or negligent person with a gun, (3) the entrusting person knew or should have known the borrower was incompetent, reckless, or otherwise "likely to act negligently" with the gun, (4) the borrower used the gun negligently, and (5) and the borrower's negligence proximately caused the accident and the plaintiff's injuries. *Id.*

18

Plaintiffs do not confront their first problem. No one entrusted (i.e., deliberately transferred physical possession) the rifle to Ernest. In Texas, there is no claim for negligently failing to safeguard one's car from being stolen and used by a thief to commit a tort. The same rationale applies to rifles.

Even assuming there were some evidence that R.D. Moore did entrust the rifle to Ernest, that act of entrustment cannot be attributed to the City because it expressly forbade its police officers from permitting non-police personnel to use police weapons. Any entrustment of the gun by R.D. to Ernest would have been outside of the course and scope of R.D.'s employment by the City; and there is no evidence that R.D. Moore knew or should have known of any propensity on the part of Ernest to commit murder. *See McGuiness v. Brink's Inc.*, 60 F.Supp.2d 496, 498-501 (D. Md. 1999) (security company not liable where live-in friend of company's employee misappropriates company weapon and shots plaintiff).

Plaintiffs then drop back to their "double negligent entrustment" theory, i.e. that the City knew or should have known that Det. Moore would be reckless in entrusting the HPD rifle to incompetent third parties. Plaintiffs' "constructive knowledge" argument concedes they failed to prove that Chief Schoepner and Capt. Vasquez knew anything about Ernest Moore when the rifle was assigned to Moore. It fails because it ignores the relevant knowledge and is not legally correct.

First, the issue is not what Det. Moore knew about his son. The key issue is what the Chief or Vasquez knew about Det. Moore, i.e. whether he was likely to loan police weapons to incompetent third parties. There was no evidence that Det. Moore did so generally. Chief

Schoepner did not know about the one time Det. Moore let his son use the HPD rifle until after the lawsuit was filed.

Second, the imputed/constructive knowledge theory is legally flawed. The actual knowledge of the employee is imputed to the employer only as to information concerning the employer's business learned by the employee while transacting business for the employer. *La Sara Grain Co. v. First Nat. Bank of Mercedes,* 673 S.W.23d 558, 563 (Tex. 1991). Information acquired apart from transacting the employer's business is not imputed. *Kirby v. Cruce,* 688 S.W.2d 161, 168 (Tex. App.–Dallas 1985, writ ref'd n.r.e.). There is no imputation if the agent has an adverse interest in not disclosing the matter to the employer. *Askanase v. Fatjo,* 828 F.Supp. 465 , 470 (S.D. Tex. 1993); *Arabesque Studios v. Academy of Arts,* 529 S.W.2d 564, 568 (Tex. App.–Dallas 1975, no writ). There is no knowledge imputed from Det. Moore to the City about his home life, because it is not learned by him in the course of his police duties. Otherwise, every public employer will be charged with knowledge of every employee's personal affairs. The City (to protect itself) would have to interrogate employees about their family life, which would be an invasion of privacy. Moreover, there should be no imputed knowledge of Det. Moore's alleged misuse of the rifle. Assuming these acts occurred, he had an adverse interest in not disclosing them.

**WHEREFORE, PREMISES CONSIDERED**, Defendant moves for judgment as a matter of law, that the remaining claims of all Plaintiffs in these causes be dismissed and that they take nothing against Defendant.

Respectfully submitted,

ADAMS & GRAHAM, L.L.P.
P.O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

By: _____
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500

Attorney-in-Charge for Defendant, CITY
OF HARLINGEN, TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on May 3, 2002, to the following counsel of record and interested parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

> Mr. Broadus A. Spivey          CMRRR # 7001 2510 0004 2061 2306
> **SPIVEY & AINSWORTH, P.C.**
> 48 East Avenue
> Austin, Texas  78701-4320

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

> Mr. Ramon Garcia                CMRRR # 7001 2510 0004 2061 2313
> Ms. Sonia Lopez
> **LAW OFFICES OF RAMON GARCIA, P.C.**
> 222 West University Drive
> Edinburg, Texas  78539

TOM LOCKHART

APPENDIX 1

| Renewed Rule 50 Grounds | | | Rule 50 Motion |
|---|---|---|---|
| 1. | A) | No "state created danger" theory exists | p. 4 |
| | B) | No evidence that: | p. 2, 5 |
| | | - City knew of risk of harm to specific person | p. 5 |
| | | -City increased risk of harm | p. 5 |
| | | -City was deliberately indifferent | p. 2, 12-16 |
| | | -City created risk of crime that did not previously exist | p. 5 |
| | | -City affirmatively put Plaintiffs in harm's way and deprived them of means of escape/defense | p. 2 |
| | | -City's acts were proximate cause | p. 2, 6 |
| 2. | A) | No Final Policymaker directly involved | p. 2, 15 |
| | B) | No policy or custom caused the deprivation | p. 2, 3 |
| | C) | No evidence that policymaker was deliberately indifferent | p. 2, 12-16 |
| | D) | No failure to train | p. 13-15 |
| | E) | No evidence of ratification | p. 2 |
| 3. | | No Tort Claims Act Waiver | |
| | A) | No "use or condition" of tangible property | p. 3 |
| | B) | No waiver for intentional torts | p. 3 |

-1-

|   |   |   |   |
|---|---|---|---|
| | C) | No waiver for discretionary acts or police protection | p. 3 |
| 4. | A) | No evidence of negligent entrustment | p. 3 |
| | B) | No evidence of entrustment to Ernest Moore | p. 18-19 |
| | C) | No evidence that Det. Moore was negligent | p. 18-19 |
| | D) | No evidence of proximate cause | |
| | | -not foreseeable | p. 3, 7, 9, 18 |
| | | -no "but for" causation | p. 3, 18 |