United States District Court
Southern District of Texas
FILED

AUG 1 6 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| V. | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| V. | § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS; | § | (Consolidated with B-98-162) |
| And | § | |
| RAUL RODRIGUEZ | § | |
| V. | § | CIVIL ACTION NO. B-99-70 |
| CITY OF HARLINGEN, TEXAS. | § | (Consolidated with B-98-162) |

**PLAINTIFF RAUL RODRIGUEZ' MOTION FOR LEAVE TO FILE PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF HARLINGEN'S MOTION FOR NEW TRIAL ON DAMAGES OR IN THE ALTERNATIVE, FOR REMITTITUR AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Raul Rodriguez, Plaintiff, and files this Motion for Leave to File Plaintiff's Response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and Memorandum in Support Thereof and in support thereof will respectfully show as follows:

## I.
## Factual Background

On July 12, 2002, Defendant City of Harlingen filed its Motion for New Trial on Damages, or in the Alternative, for Remittitur. ("Motion"). Plaintiff filed a response to Defendant's motion on August 9, 2002. Defendant's filed a Reply in Support of Motion for New Trial on Damages or for Remittitur on August 6, 2002, but was not received by Plaintiff until August 13, 2002 and was never faxed to Plaintiff as represented in the Certificate of Service.

The court should allow Plaintiff Raul Rodriguez leave to file its response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, For Remittitur and Memorandum in Support Thereof because good cause exists and Defendant will not be prejudiced by the filing of Plaintiff's response. Ex. A. Plaintiff's failure to file a timely response was not intentional or the result of conscious indifference, but due to an inadvertent error.

Plaintiff's counsel, Sonia I. Lopez, left the Law Office of Ramon Garcia, P.C. on June of 2002. She rejoined the firm on August 5, 2002, and was unaware of the filing of Defendant's Motion. She is the lawyer within the law firm who has been principally in charge of this case. A response was filed eight days after the deadline had passed on August 9, 2002.

## II.

For these reasons, Plaintiff Raul Rodriguez asks the Court to grant his Motion for Leave to Plaintiff's Response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and Memorandum in Support Thereof and grant any and all further relief that justice requires.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, TX 78539
(956) 383-7441
(956) 381-0825 Fax

By _____
RAMON GARCIA
State Bar No. 07641800
Federal Id. No. 3936

Of Counsel

SONIA I. LOPEZ
State Bar No. 24003862
Federal Id. No. 23501

**ATTORNEYS FOR PLAINTIFF
RAUL RODRIGUEZ**

## CERTIFICATE OF SERVICE

I, SONIA I. LOPEZ, do hereby certify that on this 16th day of August, 2002, a true and correct copy of the above and foregoing Plaintiff Raul Rodriguez' Motion for Leave to File Plaintiff's Response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and Memorandum in Support Thereof was sent to the following:

Mr. Tom Lockhart            FACSIMILE
Mr. Jim Denison             CM R/R/R  7001 1140 0002 5107 7167
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
*ATTORNEYS FOR DEFENDANT CITY OF HARLINGEN*

_____
RAMON GARCIA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| Vs. | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS; | § | (Consolidated with B-98-162) |
| And | § | |
| RAUL RODRIGUEZ | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| CITY OF HARLINGEN, TEXAS. | § | (Consolidated with B-98-162) |

**PLAINTIFFS RAUL RODRIGUEZ' RESPONSE TO DEFENDANT
CITY OF HARLINGEN'S MOTION FOR NEW TRIAL
ON DAMAGES OR IN THE ALTERNATIVE, FOR REMITTITUR AND
MEMORANDUM IN SUPPORT THEREOF**

**COMES NOW** Raul Rodriguez, Plaintiff, and files this Response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and Memorandum in Support Thereof.

**I.
NATURE AND STAGE OF THE PROCEEDINGS**

On July 12, 2002, Defendant City of Harlingen filed its Motion for New Trial on Damages, or in the Alternative, for Remittitur. ("Motion"). Defendant seeks a new trial on

1



damages by arguing that the damage awards are excessive under the current federal case law and the verdict was the result of passion or prejudice. (Motion at p. 8). Defendant's argument is without merit and the motion should be denied.

## II.
## ARGUMENT AND AUTHORITIES

There is a strong presumption in favor of affirming a jury award of damages. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). The jury's award is not to be disturbed unless the verdict was excessive or the jury was influenced by passion or prejudice. *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). As Judge Rubin expressed in *Caldarera* an award is "clearly excessive" only under extraordinary circumstances:

> We do not reverse a jury verdict for excessiveness except on "the strongest off showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injuries sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption or other improper motive," or as "clearly exceed[ing] that amount that any reasonable man could feel the claimant is entitled to."

Id. at 784. The jury's verdict was not based upon passion and prejudice, but on proper evidence submitted. Further, in evaluating whether a jury's award is excessive, a court must be mindful that assessment of damages is for the trier of fact. *In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 767 F.2d 1151, 1155 (5th Cir. 1985).

A.   **The Jury's Award to Raul Rodriguez is Not Excessive**

   1. **Defendant incorrectly Limits "Relevant Jurisdiction" for Application of "Maximum Recovery Rule" to the Fifth Circuit Cases.**

2

Based on the "maximum recovery rule" under *Salinas v. O'Neil*, 286 F.3d 827, 830 (5th Cir. 2002), *reh. denied*, ____F.3d__ (2002) and *Thomas v. Tex. Dept. of Crim. Justice*, 2002 WL 1404709, *6 (5th Cir. July 1, 2002), Defendant argues that the damages, which the jury awarded to Raul Rodriguez are excessive. (Motion at p. 10) In making the argument, defendant incorrectly asserts that "[f]or federal cases, the 'relevant jurisdiction' are federal cases decided within the Fifth Circuit. *Salinas*, 286 F.3d at 831." (Motion at p. 10) The holding of *Salinas* was more limited. *Salinas* held that "[t]he 'relevant jurisdiction for federal discrimination law can only mean cases decided by this court." The holding of *Salinas* is limited to race discrimination and retaliations action under Title VII.

2. **"Relevant Jurisdiction" for Application of "Maximum Recovery Rule" to the Civil Rights Cases Includes Texas State Cases**

These consolidated cases are civil rights actions under 42 U.S.C. § 1983. 42 U.S.C. § 1988 authorizes federal courts to extend the common law as modified by constitution and statutes of states wherein it sits when federal statutes for protection of civil rights do no provide suitable remedies.

The Fifth Circuit has followed § 1988 in civil rights cases, holding that federal courts should use that combination of federal law, common law and state law to facilitate and not to hinder proceedings in vindication of civil rights. *Brown v. City of Meridian,*, 356 F.2d 602, 605 (5th Cir. 1966); *See, also, Lefton v. City of Hattiesburg, Miss*, 333 F.2d 280, 284 (5th Cir. 1964). In *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985), the Fifth Circuit held that in 42 U.S.C. § 1983 action, the state law governed damages recoverable for the death of innocent victim, whom city police officers mistook for a fugitive and killed. Similarly, in *Pressey v. Patterson*, 898 F.2d 1018, 1026 (5th Cir. 1990), the Court held that state law governed the calculation of prejudgment interest in Section 1983 claims personal injury actions.

3

Therefore, in applying the "maximum recovery rule" to civil rights actions, the "relevant jurisdiction" refers to not only federal cases but also to state cases in the pertinent jurisdiction.

### 3. The Jury's Awards to Raul Rodriguez are Allowed under "Maximum Recovery Rule."

Because the law described above was incorrectly interpreted, the Defendant failed to fulfill its ethical obligation to cite state cases for comparison. In *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1344 (5th Cir. 1990), the court held:

> Delta dismisses it obligations to cite all relevant authority, including adverse case law, under the theory that *Larsen* [*Larsen v. Delta Air Lines, Inc.*, 692 F.Supp. 714 (S.D.Tex. 1988)] was never appealed to the Fifth Circuit. That is, until awards are reviewed by the courts of appeal, they are legally insignificant for purposes of the maximum recovery rule. We dismiss this argument as frivolous and reaffirm the ethical obligation that all relevant state wrongful-death cases, and all such federal cases turning upon state substantive law, must be presented to the reviewing court where an award is challenged for excessiveness. [FN16] Awards imposed by district courts do not, as Delta suggested, serve as precedent only upon review.
>
>> FN16.  *See* Texas Code of Professional Responsibility, Ethical Consideration 7-23 ("Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so.") In other words, Delta's attorneys should have known better.

Had the Defendant's attorneys fulfilled their obligation, the Defendant would not have argued that the jury's award to Raul Rodriguez is excessive because the awards are within the maximum amount of recovery allowed under the "maximum recovery rule." The operation of the rule is described in *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002):

> "[W]e apply the loosely defined 'maximum recovery rule' when deciding whether a Remittitur is in order. This judge-made rule essentially provides that we will decline to reduce damages where the amount awarded is not disproportionate to at least one *factually similar* case from the relevant jurisdiction." *Douglass*, 897 F.2d at 1344 (emphasis in original). [FN3] The rule applies regardless of whether the award was made by a jury. *Id. At* 1337, 1339 n. 3, 1344. The rule "does not necessarily limit an award to the highest amount previously recognized in the

4

state; indeed, the rule "does not become operative unless the ward exceeds 133% of the highest previous recovery in the [relevant jurisdiction]" for a factually similar case. *Id* at 1344 n. 14. Because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited "if unique facts are presented that are not reflected within the controlling case law." *Id*. At 1339. *See Wheat v. United States*, 860 F2d 1256, 1260 (5th Cir. 1988); *Wakefield v. United States*, 765 F.2d 55, 59-60 (5th Cir. 1985).

The Fifth Circuit has increased the multiplier from 33% to 50%. *Salinas*, 286 F.3d at 831, n.6. In other words, the "maximum recovery rule" does not become operative unless the award exceeds 150% of the highest previous recovery in the relevant jurisdiction for a factually similar case.

**B.     Jury Award to Raul Rodriguez Proper Under the Law**

The jury awarded the sum of $10,000,000.00 to Raul Rodriguez for physical pain, mental anguish, loss of earning capacity, physical impairment, physical disfigurement, medical care, and loss of enjoyment of life. A jury verdict for excessiveness should not be reversed except on "the strongest of showings." *Martin v. City of New Orleans*, 678 F.2d 1321, 1327 (5th Cir. 1982); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir. 1982). The damages awarded to Raul Rodriguez, although substantial, should not be disturbed because they are not "entirely disproportionate" to the injuries he sustained. *Caldarera*, 705 F.2d at 784.

In *Olin Corp. v. Smith*, 990 S.W.2d 789 (Tex. App. – Austin, 1999, writ denied), the plaintiff filed suit against the defendant for marketing defective ammunition and for failing to warn users that the ammunition was subject to delayed firing. After attempting to shoot a pig, Joshua heard a click. Assuming his revolver was empty, he brought it into the vehicle to reload. He placed the revolver on his right thigh with its muzzle pointed toward the floorboard. He reached for more ammunition and the gun accidentally discharged striking him in the leg. Due to the injury sustained, the plaintiff lost his leg below the knee. The jury awarded the plaintiff

5

$5,580,000.00 for physical pain and mental anguish, disfigurement and physical disability. *Olin Corp.*, 990 S.W.2d at 798.

The physical injuries sustained by Raul Rodriguez were arguably more severe than those suffered by the plaintiff in *Olin Corp.* and the circumstances involving those injuries were undeniably more traumatic. The plaintiff in *Olin Corp.* did not sustain life-threatening injuries, was only injured at the leg, and did not introduce any evidence of loss of enjoyment of life. Unlike *Olin Corp.*, Deputy Rodriguez suffered severe physical injuries, physical impairment, and physical disfigurement to several parts of his body, and severe mental anguish and pain and suffering during the shootout and after. Deputy Rodriguez was shot with the intent of being killed and had to have emergency surgery performed in order to save his life.

Deputy Raul Rodriguez was nearly shot to death in a rapid exchange of gunfire on the morning of July 7, 1998, in San Benito, Texas. Prior to arriving in San Benito, Deputy Rodriguez was assisting in an earlier shooting that occurred in Rio Hondo where two females were killed and one male left paralyzed from gunshot wounds inflicted by Ernest Moore. Repetitive abuses of police power by Chief Scheopner and Detective R.D. Moore led to this tragedy that caused Deputy Rodriguez to be placed on life-support for five days following the shooting incident in San Benito, Texas. Deputy Rodriguez brush with death was due to the physical injuries he sustained to his hand, shoulder, heart, lung, and ribs. 4 RR 843, 845. The emotional injuries he suffered and will continue to suffer for the remainder of his life were equally, if not more, devastating than his physical injuries.

Specifically, his inability to cope with the circumstances involving his near death experience caused his marriage of fourteen years to fail and his outlook on life to dramatically change for the worse. 4 RR 833, 847. Raul was sprayed with bullets from an AR-15 with the

intent of being killed and was 15 or 20 yards from the perpetrator who was looking at him and walking right in front of him. 4 RR 840. Raul was shot and began yelling for help. 4 RR 840, 841. Because of his devastating injuries, Raul believed he was going to die and told Robert Rodriguez, another Cameron County Sheriff's Deputy, to tell his wife and kids that he loved them. 4 RR 841, 842.

Raul was conscious when riding in the ambulance on his way to Valley Baptist Medical Center and began making peace with God because he knew in his heart that he was going to die. 4 RR 842. When he arrived at the hospital he could not feel his arm or breathe. 4 RR 842. He remembers hearing the nurses and doctors say that they were going to lose him and that his blood pressure had dropped to 90 over 30. 4 RR 843, 844. The medical records reveal that Raul Rodriguez sustained a gunshot wound to the left chest, including the left upper lobe and left ventricle, a gunshot wound to the left shoulder deltoid area, a gunshot wound to the left hand, and a gunshot wound to the left lung with interparenchymal bleeding. PX-40 (VBMC 7/7/98 Operative Records, pp. 0066, 0069). Accordingly, emergency open heart surgery, (i.e., median sternototmy), and suture of the left ventricle, (i.e., ventricular cardiorrhaphy), were performed. PX-40, p. 066. Dr. Marion Lawler, determined that the "high-velocity missile grooved across the deltoid muscle of the left shoulder, entered the chest where it completely fractured approximately the third rib, through and through the left upper lobe with extensive interlobar hemorrhage, with a large penetrating hole on the left anterolateral aspect of the pericardium and anteriorly partially traversed the left ventricular myocardium just 0.5 cm to the right lateral aspect of the left anterior descending coronary artery." PX-40, p. 0066. He was placed on life-support and was in surgery for approximately 10 hours. 4 RR 845. When he awoke he was informed that he had suffered a punctured lung, two broken ribs, and that doctors had performed

open-heart surgery because the bullet had hit his heart. 4 RR 845. Following open-heart surgery, Deputy Rodriguez was transported to the Cardiovascular Intensive Care Unit where he remained for six days until being transferred to the surgical floor. PX-40, pp. 0067, 302-368. Today, the bullet that nearly killed Raul is still lodged in his abdomen. 4 RR 845.

Dr. Bliss Clark, an orthopedic surgeon, found Deputy Rodriguez had suffered a laceration of the left shoulder and left hand. As such, non-viable tissue from these areas was removed and the patient was sutured. PX-40, p 071. Following his discharge from Valley Baptist Medical Center, Raul returned to the emergency room on July 24, 1998 complaining of abdominal pain and subsequently began a few months of rigorous rehabilitation at Valley Baptist Medical Center Round Outpatient Rehabilitation. PX-40, pp. 001-0030. Raul complained of weakness to the left shoulder and hand plus an inability to groom, dress, or feed himself. PX-40, p. 007. He has decreased hypersensitivity to the left hand with a grip strength to the right of 90 and to the left of 30, pinch strength on the right of 17 and left of 8. PX-40, p. 020. Deputy Rodriguez also has a pain level of 4 out of 10 and has decreased range of motion of left index finger and thumb to fifty percent and decreased range of motion and strength in left shoulder. PX-40, p. 020.

Because of these traumatic events, Raul was no longer sociable or outgoing. 4 RR 847. He did not want to do anything with his family, always wanted to stay home, and was angry at the world. 4 RR 847. Even his children complained because of his conduct. 4 RR 847. He is very upset and very bitter, and this experience has made him believe that his life can end at any moment. 4 RR 846. As a result, Raul is a changed man who suffers nightmares and is reminded daily when he looks at the mirror at the traumatic event he went through and at the multiple scars left by the serious injuries he sustained. 4 RR 846, 847, 849; PX-40, p. 006. Based on Joshua's recovery in *Olin Corp*. and 50% multiplier in Salinas, 286 F.3d at 831, n 6, Raul's recovery of

mental anguish, pain and suffering, physical impairment and physical disfigurement, and loss of enjoyment of life should be, at least, in the amount of $8,370,000.00 ($5,580,000.00 x 150%= $8,370,000.00].

## III.
## RELIEF REQUESTED

Plaintiff Raul Rodriguez requests that this Honorable Court deny Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and grant any and all further relief that justice requires.

By

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, TX 78539
(956) 383-7441
(956) 381-0825 Fax

RAMON GARCIA
State Bar No. 07641800
Federal Id. No. 3936

Of Counsel

SONIA I. LOPEZ
State Bar No. 24003862
Federal Id. No. 23501

**ATTORNEYS FOR PLAINTIFF
RAUL RODRIGUEZ**

## CERTIFICATE OF SERVICE

I, SONIA I. LOPEZ, do hereby certify that on this 8th day of August, 2002, a true and correct copy of the above and foregoing Plaintiff Raul Rodriguez' Response to Defendant City of Harlingen's Motion for New Trial on Damages or in the Alternative, for Remittitur and Memorandum in Support Thereof was sent to the following:

| | |
|---|---|
| Mr. Tom Lockhart | FACSIMILE |
| Mr. Jim Denison | CMR/R/R   7001 1940 0004 1544 7173 |
| Mr. Roger W. Hughes | |
| ADAMS & GRAHAM, L.L.P. | |
| 222 E. Van Buren, West Tower | |
| Harlingen, Texas 78551-1429 | |
| ***ATTORNEYS FOR DEFENDANT CITY OF HARLINGEN*** | |

_____
SONIA I. LOPEZ