IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 4 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-98-163 |
| | { | |
| CITY OF HARLINGEN | { | |
| | { | |
| and | { | |
| | { | |
| RAUL RODRIGUEZ | { | CIVIL ACTION NO. B-99-70 |
| | { | |
| V. | { | |
| | { | |
| CITY OF HARLINGEN | { | |

---

**SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO RECONSIDER RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, **CITY OF HARLINGEN** and files this its Second

Supplemental Brief in Support of Defendant's Motion to Reconsider Renewed Motion for

Judgment as a Matter of Law, and would show the Court as follows:

## I.

Attached is a recent decision of the Fifth Circuit in *Morin v. Moore*, Case No. 01-40752 (5th Cir. October 23, 2002). There, the Fifth Circuit upheld a motion to dismiss under Federal Rule of Civil Procedure 12(b)6 in the Rio Hondo shootings on the "state created danger" theory. *Id.* at pp. 12, 19.

The circumstances surrounding the shootings at the Morin residence are well known to this court from the evidence at trial.

First, the court reiterated that the Fifth Circuit has yet to adopt and apply the "state created danger" theory. *Id.* at pp. 7-8.

Second, if the court were to adopt the doctrine, it would have required at a minimum proof that the state actors acted with "deliberate indifference." *Id.* at p. 8. At a minimum, this requires the state actor know of and disregard an excessive risk to a victim's health and safety. *Id.* at p. 8. A failure to alleviate a risk the actor should have known about but did not, is not deliberate indifference . *Id.* The allegations failed to establish actual knowledge of a risk of harm to a known victim. *Id.* at p. 9.

Finally, the court concluded that the Morins failed to plead deliberate indifference because they alleged no facts to establish that Det Moore used his authority to create an opportunity for Ernest to commit a crime that otherwise did not exist. *Id.* at pp. 11-12, *citing*

*Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 53 (2001). The saw the allegations as claims that:

1.      Det. Moore knew his son was psychologically unstable,

2.      Det. Moore knew his son was upset at his ex-girlfriend's new boyfriend,

3.      Det. Moore knew his son was looking for Morin,

4.      Det. Moore knew that a confrontation would occur, and

5.      his son took the rifle and shot the Morins.

*Id.* at p. 11. These specific allegations were insufficient. *Id.* at pp. 11-12.

Morin bears on this case for three reasons. First, it shows that the Fifth Circuit has yet to adopt the "state created danger" theory under Substantive Due Process, even on facts nearly identical to this case.

Second, deliberate indifference required the Morins prove that, before Ernest obtained the rifle, the City had actual knowledge of a substantial risk to a known victim. Here, there was no evidence that the City's alleged policy-maker, Chief Schoepner, had such actual knowledge concerning the border patrol agents at any time. "Should have known" is not acceptable.

Third, it shows that there is no deliberate indifference unless the defendant's acts intentionally created a dangerous situation that would not have otherwise existed. If the allegations in the Morin petitions failed to clear this hurdle, the facts in this case must fail as well.

Therefore, this Court should reconsider its earlier ruling and grant Defendants' Renewed Motion for Judgment as a Matter of Law as to the federal theories.

Respectfully submitted,

By: _____

ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY OF HARLINGEN, TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 24th day of October, 2002, to the following counsel of record and interested parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and
ARTURO GUILLERMO SALINAS, et al:

Mr. Broadus A. Spivey                          **Via Facsimile: 512/474-1605**
Mr. Price Ainsworth                                  **& Ordinary Mail**
**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, Texas 78701-4320

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

Mr. Ramon Garcia                                   **Via Facsimile: 956/381-0825**
Ms. Sonia Lopez                                            **& Ordinary Mail**
**LAW OFFICES OF RAMON GARCIA, P.C.**
222 West University Drive
Edinburg, Texas  78539

ROGER W. HUGHES

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 01-40752

---

DAN MORIN, Individually and
as Representative of the Estate of
Margarita Flores, Deceased,

Plaintiff-Appellant,

versus

RALPH D. MOORE; JOSEPH VASQUEZ;
JIM SCHOEPNER; CITY OF HARLINGEN,

Defendants-Appellees.

--------------------------------------------------------------------------------------------------------------

DONALD MORIN; DIANA MORIN;
JENNIFER MAY GWIN; DANNY MORIN;
RUBEN RIOS, SR., as next friend of Ruben Rios,
a minor; MARIA D. LOPEZ, as next friend of
Brian Morin, a minor,

Plaintiffs-Appellants,

versus

RALPH D. MOORE; JOSEPH VASQUEZ;
JIM SCHOEPNER; CITY OF HARLINGEN,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas

---

October 23, 2002

Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

1

CARL E. STEWART, Circuit Judge:

Dan Morin, individually and as a representative of the Estate of Margarita Flores (the "Dan Morin plaintiffs"), and Donald Morin, Diana Morin, Jennifer May Gwin, Danny Morin, Ruben Rios, Sr., as next friend of Ruben Rios, and Maria D. Lopez, as next friend of Brian Morin (the "Donald Morin plaintiffs") (collectively, the "Morins"), appeal from the district court's Rule 12(b)(6) dismissal of their 42 U.S.C. § 1983 and state tort law claims. For the reasons set forth below, we AFFIRM in part, REVERSE in part, and REMAND.

## FACTUAL AND PROCEDURAL HISTORY

The Morins filed separate complaints for damages pursuant to § 1983 against the City of Harlingen, Texas ("the City"), two of its police officers, and its police chief for alleged violations of their Fourth and Fourteenth Amendment rights.[1] The Morins alleged that prior to 1994, defendant Officer Joseph Vasquez wrongfully came into possession of an "AK-47" assault rifle with the permission of Police Chief Jim Schoepner during Officer Vasquez's employment with the Harlingen Police Department–the rifle having been given to the police department by a private citizen to be destroyed. In September of 1997, Officer Vasquez allegedly "transferred" or "made available" the weapon to Officer Ralph Moore (collectively with Officer Vasquez, the "officers"). Officer Moore allegedly stored the weapon in his son's, Ernest Moore's ("Ernest's") bedroom. According to the Morins, the officers knew that Ernest was a psychologically unstable drug user that revered the Nazi ideology.

The Morins alleged that on July 7, 1998, Ernest procured the weapon from his bedroom and opened fire on Dan Morin, Margarita Flores, and Delia Morin, killing both Margarita Flores and

---

[1] The Morins separate actions were subsequently consolidated.

Delia Morin. Allegedly, Ernest was upset that his ex-girlfriend, Julie Cox, was in a relationship with Dan Morin. The Morins further alleged that the City and Police Chief Schoepner created a dangerous environment and maintained unconstitutional polices and procedures, which ultimately allowed the officers to take possession of the assault rifle, despite their lack of training on use and storage of the weapon.

The Morins filed state law claims for negligent entrustment, ordinary negligence, and misuse of property under section 1.01 of the Texas Tort Claims Act ("TTCA"). The Donald Morin plaintiffs also alleged that Officer Moore breached his duty as a Harlingen police officer by not taking the necessary steps to prevent the commission of the crime at issue.

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as on qualified immunity grounds. The magistrate judge issued a report recommending that the complaint be dismissed because the Morins failed to plead a constitutional injury. Specifically, the magistrate judge determined that the Morins failed to state a claim under the Fourth Amendment because there was no allegation that the defendants deliberately directed force toward the Morins.

Regarding the Fourteenth Amendment claim, the magistrate judge noted that the "state-created danger" theory had yet to be adopted by the Fifth Circuit. Nevertheless, the magistrate judge concluded that even analyzing the qualified-immunity issue under the "state-created danger" theory, the Morins were not denied their due process rights because Officer Vasquez's transfer of the rifle to Officer Moore could not be characterized as a governmental decision within the meaning of the theory. As a result, the magistrate judge determined that the individual defendants were entitled to qualified immunity. The magistrate judge also determined that the City could not be held liable.

3

Regarding the state-law claims, the magistrate judge dismissed the Morins' negligent entrustment claim because the claim was lacking proof of a positive act, i.e. that Officer Moore gave Ernest the rifle. The magistrate judge further held that Texas law does not impose liability on the police for failing to take action to prevent a crime.

The Dan Morin plaintiffs objected to the magistrate judge's report and recommendation. After conducting a *de novo* review, the district court adopted the recommendations of the magistrate judge and dismissed the Morins' claims with prejudice. The Donald Morin plaintiffs filed a timely notice of appeal from the portion of the judgment dismissing their § 1983 claims and upholding the qualified-immunity defense. The Dan Morin plaintiffs filed a timely notice of appeal from the district court's order granting the motion to dismiss.

## STANDARD OF REVIEW

We review a Rule 12(b)(6) dismissal *de novo*, accepting all well-plead facts as true. <u>Mowbray v. Cameron County, Tex.</u>, 274 F.3d 269, 276 (5th Cir. 2001). Questions of fact are viewed in the light most favorable to the plaintiffs, and questions of law are reviewed *de novo*. <u>Id</u>. "Rule 12(b)(6) motions should not be granted unless it appears beyond a doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." <u>Castro Romero v. Becken</u>, 256 F.3d 349, 353 (5th Cir. 2001) (internal quotations and citations omitted).

## DISCUSSION

The following three issues raised on appeal are: whether the district court erred in (1) determining that the Morins did not state a federal claim against the City under the state-created danger theory, (2) granting the individual defendants qualified immunity, and (3) dismissing the

4

Morins' state-law claims. We now turn to these issues.

### I.    State-Created Danger Theory of Liability

The Morins argue that the district court's dismissal of their federal claims against the City was erroneous in light of this Court's decision in <u>McClendon v. City of Columbia,</u> 258 F.3d 432, 436 (5th Cir. 2001) (adopting the state-created danger theory of liability) ("<u>McClendon I</u>"). The Morins also argue that the district court erred in its determination that, even if the state-created danger theory was viable, the plaintiffs did not plead sufficient allegations to support the theory.

### A.    Procedural Issues

Before we can reach the merits of the Morins' claims, we must first address two procedural issues. First, we must determine whether the Dan Morin plaintiff's non-specific objection to the magistrate judge's report and recommendation is sufficient. The City and the officers argue that such a blanket objection is insufficient to preserve an objection. Thus, the City and officers urge us to apply a plain error standard of review, despite the district court's statement that it conducted a *de novo* review of the entire file.

An issue reviewed *de novo* by the district court will ordinarily be held to have been properly objected to before it was reviewed. <u>Douglass v. United Servs. Auto. Ass'n,</u> 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). The district court in this case conducted a *de novo* review of the Dan Morin plaintiffs' objections. Therefore, the City and officers' assertion that plain-error review applies is not supported. <u>See also</u> <u>Meister v. Tex. Adjutant Gen's Dep't,</u> 233 F.3d 332, 336 (5th Cir. 2000) ("[W]hen the district court has engaged in *de novo* review, we do not require . . . specific objections to the magistrate judge's report as a prerequisite to full review."). As such, we will apply a *de novo* standard of review to the Dan Morin plaintiffs' claims.

Despite being warned of the consequences for failing to timely object, the Donald Morin plaintiffs did not file objections, timely or otherwise, to the magistrate judge's report and recommendations. Ordinarily, the failure to file written objections to the magistrate judge's report within ten days of service mandates plain-error review on appeal. Douglass, 79 F.3d at 1429. However, because the district court conducted a *de novo* review of the objections raised by the Dan Morin plaintiffs, and these objections were equally applicable to the Donald Morin plaintiffs, we will apply a *de novo* standard of review to the Donald Morin plaintiffs' claims as well.

Second, the Donald Morin plaintiffs argue to this Court that the dismissal of their state-law claims was erroneous despite the fact that this argument was not included in their notice of appeal. The Donald Morin plaintiffs' notice of appeal states that they appealed "from the final judgment and order dismissing Plaintiffs' complaint for failure to state a cause of action based on 42 U.S.C. § 1983 and based on qualified immunity that was entered in this cause on the 16th Day of May, 2001." Federal Rule of Appellate Procedure 3(c)(1)(B) requires that the notice of appeal "designate the judgment, order, *or part thereof* being appealed." (emphasis added). This Court broadly construes Rule 3(c)'s requirement that the notice of appeal designate the judgment or order from which the appeal is taken. N.Y. Life Ins. Co. v. Deshotel, 142 F.3d 873, 884 (5th Cir. 1998); United States v. Ramirez, 932 F.2d 374, 375 (5th Cir. 1991). If a mistake is made in the designation of the order to be appealed, a technical error does not bar review "if the intent to appeal a particular judgment can be fairly inferred and if the appellee is not prejudiced or misled by the mistake." Deshotel, 142 F.3d at 884. This Court has applied this standard where the plaintiff appealed only a portion of the judgment. Ramirez, 932 F.2d at 376. Thus, because (1) the Donald Morin plaintiffs identified the judgment appealed from, (2) briefed the denial of their state-law claims, and (3) the appellees did

6

not suffer any prejudice because they briefed the state-law issues in response to the arguments posed by the Dan Morin plaintiffs, who properly appealed the entire judgment, we will broadly construe the Donald Morin plaintiffs' notice of appeal. Id. (considering the same factors).

B.    Substantive Issues

"To plead a constitutional claim for relief under § 1983, [a plaintiff must] allege a violation of a right secured . . . by the Constitution or laws of the United States and a violation of that right by one or more state actors." Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 200 (5th Cir. 1994). The Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).   One exception to this general rule, is the state created danger theory adopted by some of our sister circuits. See, e.g., Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) ("We have held the Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."). In other words, if a governmental actor knowingly places a citizen in danger, he or she may be accountable for the foreseeable injuries that result. Id.

At the time of the district court's decision, this Court had recognized but never adopted the state-created danger theory. See Johnson, 38 F.3d at 200-01. In McClendon I, which was decided during the pendency of the present appeal, a panel of this Court "explicitly adopted and enforced this theory"and held that because McClendon demonstrated a genuine issue of material fact regarding each element of the state-created danger theory, his § 1983 claim against the defendant

7

police officer for violation of his substantive due process right should not have been dismissed on summary judgment. 258 F.3d at 436. In our recent rehearing of <u>McClendon I</u> en banc, however, we neither adopted nor rejected the state created danger theory. <u>McClendon v. City of Columbia</u>, _ F.3d _ (5th Cir. 2002 (en banc) (<u>McClendon II</u>). In <u>McClendon II</u>, the en banc Court did make clear, however, that at the time of the events in <u>McClendon I</u>, a state-created danger theory was not clearly established in this Circuit such as to sustain a § 1983 claim. <u>Id</u>. Any statements to the contrary in <u>McClendon I</u> were expressly vacated. <u>Id</u>.

In order to recover under the state-created danger theory, we assume that a plaintiff would have to show, at a minimum, that: (1) the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference. <u>See</u> <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 515 (5th Cir. 1995) ("<u>Piotrowski I</u>") (citation and internal quotations omitted). To establish deliberate indifference, "a state actor must know[] of and disregard[] an excessive risk to the [the victim's] health and safety....The state actor's actual knowledge is critical to the inquiry. A state actor's failure to alleviate 'a state significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." <u>McClendon II</u>, _ F.3d at _ (citations omitted).

The magistrate judge concluded that, based on the allegations in the Morins' complaints, no valid claim was pled because the Morins failed to allege that any state actor had actual knowledge of a specific risk of harm to a known victim. The Morins contend that consistent with the companion case of <u>Rodriguez v. City of Harlingen</u>, the officers and the City had knowledge of the risk of harm to the Morins. No. B-98-163, (S.D. Tex., Apr. 11, 1990) (nunc pro tunc order denying the Defendant's motion to dismiss as to the plaintiffs' state-created danger claim against the City).

8

In <u>Rodriguez</u>, which involved Ernest's subsequent shooting of two border patrol agents, the district court refused to dismiss the City on the defendants' Rule 12(b)(6) motion based on the state created theory of liability. The district court distinguished <u>Rodriguez</u> from previous state-created danger cases based on the following:

> [T]he plaintiffs have pled facts that indicate that the particular predicament faced by the decedent was not one normally faced by a Border Patrol agent. The policies of the City of Harlingen allowed a civilian version of a military assault rifle to fall into the hands of a person who was not a police officer and who was extremely dangerous. It is reasonable to infer that [Ernest] would not have been able to cause the death of the decedent with a less powerful weapon and that a military style rifle would not have been available to [Ernest] if [Officer Moore] had not kept one in his home. In addition, one can reasonabl[y] infer that the police department's final policymaker, Defendant Schoepner, knew that [Ernest] posed a real threat to the decedent. Given that [Officer Moore] told the first person who walked up to his house that his son was on the verge of killing himself or a third person, had taken his father's missing weapon and had committed a prior crime, it would be reasonable to infer that he conveyed the same information to Defendant Police Chief Schoepner, a long-time friend, in the telephone conversation they had before the decedent was killed. If Defendant Police Chief Schoepner knew of the real threat posed by [Ernest] before the decedent was killed, he could have avoided the danger he created by warning the law enforcement team surrounding the house to take necessary precautions to secure their safety.

<u>Id</u>. at 21-22.

In this case, the magistrate judge distinguished <u>Rodriguez</u> because in that case the defendant had knowledge of Ernest's criminal intent based on the fact that he shot Dan Morin, Margarita Flores, and Delia Morin prior to the events leading up to the death of Rodriguez. Thus, the magistrate judge reasoned that even if the state created danger theory was viable, the Morins' reliance on <u>Rodriguez</u> is unpersuasive. We agree with the district court's conclusion that the allegations in this case do not show specific knowledge of a harm to a known victim.

The Morins, however, insist that they did set forth allegations tending to show knowledge of risk and harm. The Morins contend that Officer Moore and Police Chief Schoepner had actual

9

knowledge of the risk of harm posed to the Morins. These allegations, however, are not found in either their original or amended complaints. The Donald Morin plaintiffs allege that Officer Moore kicked Julie Cox out of his home, that he knew she had a new boyfriend, and that he knew his son was looking for them the night before the murders. The Donald Morin plaintiffs, however, do not cite to the record for any of these allegations. It appears that these allegations were raised for the first time in the amended complaint in opposition to the defendants' motion to dismiss. Although arguably these allegations should not be considered, this Court has held, that in the interest of justice a revised theory of the case set forth in the plaintiff's opposition should be construed as a motion to amend the pleadings filed out of time and granted by the district court pursuant to the permissive command of Rule 15. <u>Sherman v. Hallbauer</u>, 455 F.2d 1236, 1241 (5th Cir. 1972). Accordingly, we will analyze the propriety of the dismissal in light of these subsequent allegations.

Issues raised for the first time on appeal are generally not reviewed, save "exceptional circumstances," and then for plain error only. <u>Kinash v. Callahan</u>, 129 F.3d 736, 739 n.10 (5th Cir. 1997). This case does not present such a circumstance. Here, the Dan Morin plaintiffs' allegations that Officer Moore and Police Chief Schoepner knew that the Morins, a Hispanic family, was a target due to Ernest's extreme racial beliefs are not found in either the original or first amended complaint. Although the complaint alleges that Ernest was a collector of Neo-Nazi propaganda, the specific allegations concerning Officer Moore's and Police Chief Schoepner's knowledge of racial animus directed toward the Morins are not found on the pages of the record cited by the Dan Morin plaintiffs. While "reasonable inferences" are allowed to be drawn from the complaint's allegations regarding Ernest's Neo-Nazi ideology, the Dan Morin plaintiffs did not allege that Officer Moore knew the identity of Julie Cox's boyfriend, or his race. <u>See Gen'l Star Indem. Co. v. Vesta Fire Ins.</u>

10

Corp., 173 F.3d 946, 950 (5th Cir. 1999) (permitting reasonable inferences to be drawn from the complaint). Thus, the allegations that Officer Moore had knowledge of Ernest's racial animus and the attack on the Morins are being raised for the first time on appeal. The Dan Morin plaintiffs did not plead these allegations in their first amended complaint, did not raise this objection to the magistrate judge's report, or raise these allegations in the district court. As a result, these allegations will not be considered.

Even if we were to consider all of the Morins' allegations, they fail to satisfy the "state-created-danger" theory because the Morins have failed to demonstrate that the officers acted with deliberate indifference. Viewed in their entirety and taken as true, the Morins' allegations establish that (1) Officer Moore knew that his son was a psychologically unstable drug user who decorated his room with Neo-Nazi paraphernalia; (2) Officer Moore knew his son was upset that his ex-girlfriend had moved in with her new boyfriend, an Ala-Texas Restaurant employee; (3) Officer Moore knew, on the night prior to the murders, that Ernest requested a telephone number that was written on the back of a Ala-Texas Restaurant business card; (4) because Officer Moore was cognizant of his son's drug abuse, the break-up with his girlfriend, and the girlfriend's new relationship, he was also cognizant of the fact that a "confrontation" between his son, the ex-girlfriend, and "her new boyfriend" would ensue; and (5) that on July 7, 1998, his son took the AK-47 from the safe in his bedroom and killed or injured Dan Morin, Margarita Flores and Delia Morin. Notwithstanding the above recital, the Morins' allegations do not demonstrate that Officer Moore "used [his] authority to create an opportunity that would not otherwise have existed." Piotrowski v. City of Houston, 237 F.3d 567, 585 (5th Cir. 2001) ("Piotrowski II"), cert. denied, 122 S.Ct. 53 (2001). The Morins' case is similar to Piotrowski II, where jury-trial evidence revealed that

11

members of the Houston Police Department had actually shielded and protected the plaintiff's wealthy boyfriend and his accomplices as they harassed the plaintiff and plotted to kill her. Id. at 573-75. This Court determined that "no matter what official protection [the assailants] received, the City actors did not create the danger [that the plaintiff] faced . . . [T]he City at most left her in an already dangerous position." Id. at 584. Thus, the Morins have failed to allege facts that would satisfy the state-created danger theory and the district court did not err in dismissing this claim.[2]

## II.    State-Law Causes of Action

Having disposed of the Morins' federal claims, we will now address the Morins' various state-law claims in turn.

### A.    The Donald Morin Plaintiffs' Claim for Negligent Entrustment

The Donald Morin plaintiffs first argue that the district court erred in dismissing their state-law claim for negligent entrustment.

#### i)    Officer Moore's Negligent Entrustment

In analyzing a Texas state law claim, we have a duty to apply Texas law. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In making an Erie determination, "[w]e are emphatically not permitted to do merely what we think best; we must do that which we think the [Texas] Supreme Court would deem best." Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 397 (5th Cir. 1986) (en banc). The Texas Supreme Court has not yet spoken on the issue of negligent entrustment of a

---

[2] The Dan Morin plaintiffs filed a motion with this Court seeking a remand to amend their pleadings so that they may further outline their § 1983 claim. Because the motion fails to set forth allegations that would change our analysis, and because they have already amended their complaint twice, and did not seek leave to amend further, we conclude that a remand is not warranted. See FED. R. CIV. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . [o]therwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."). We therefore deny the motion. We also need not consider the Dan Morin plaintiffs request for limited discovery on the qualified immunity issue given our affirmance of the dismissal of the Morins § 1983 claim.

firearm.  To satisfy our Erie duty, we turn to Texas's appellate court case law. To establish a claim for negligent entrustment of a firearm, a plaintiff must prove that the owner entrusted the firearm to a person who he knew, or had reason to know, would be likely "because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the [owner] should expect to share in or be endangered by its use." Kennedy v. Baird, 682 S.W.2d 377, 379 (Tex. App. 1984).

The magistrate judge determined that negligent entrustment under Texas law required a positive act, which was found to be absent in this case because Officer Moore did not give Ernest the rifle.[3]  Contrary to the magistrate judge's determination, the Donald Morin plaintiffs alleged that Officer Moore "permitt[ed] the weapon to be used by Ernest."  The magistrate judge erroneously ignored this allegation.  Under the circumstances of this case, we are confident that Texas courts would allow a negligent entrustment claim.  In Kennedy, two plaintiffs, who were intentionally shot by the defendant's adult son, sued for negligent entrustment.  Id. at 377.  The court noted that "[a] firearm is a deadly weapon  per se, and [that] under certain circumstances, the owner may be charged with responsibility for the use made of it where the control of the weapon is passed to another."  Id. at 378 (internal citation omitted).  The court then explained negligent entrustment cases as follows:

> Most of the cases involve entrustment of the weapon to a minor child, but there are exceptional cases where the entrustment of the weapon was to an adult.  Thus, a cause of action [is] recognized where there [is a] sale of a firearm to a person obviously demented who immediately use[s] the weapon to kill a third person. . . . Potential liability in such a situation is recognized by [the] Restatement of Torts  [wherein it states that] [o]ne who supplies directly or through a third person a chattel for the use of another whom the supplier

---

[3]  Texas's appellate courts have analogized claims for negligent entrustment of a firearm to a claim for negligent entrustment of an automobile. E.g., Prather v. Brandt, 981 S.W.2d 801, 806 (Tex. App. 1998).

> knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Id. at 379. (citations omitted).

Ultimately, the court in Kennedy granted the defendant's summary judgment motion, concluding that the plaintiffs could not prove the requisite knowledge of the entrustee's incompetency. It is clear, however, that such a claim would lie if the defendant had knowledge of the entrustee's incompetency. In the case at hand, the Donald Morin plaintiffs alleged that Ernest "was known to be psychologically unstable, a cocaine user and the recipient of prescription drugs." See Prather v. Brandt, 981 S.W.2d 801, 806 (Tex. App. 1998) (explaining that an entrustment of a firearm is negligent if the defendant is aware that the entrustee is "incompetent, reckless, or otherwise likely to act negligently with the []gun"). Under these circumstances, the district court erred in dismissing this claim against Officer Moore.

ii)    Police Chief Schoepner and Officer Vasquez's Negligent Entrustment

Because the Donald Morin plaintiffs have not alleged that Police Chief Schoepner knew that the officers were incompetent or reckless, they cannot state a claim against Police Chief Schoepner or Officer Vasquez for negligently entrusting the weapon. Id.

B.    The Donald Morin Plaintiffs' Claim for Ordinary Negligence

The Donald Morin plaintiffs first argue that the district court erred in dismissing their state-law claim for ordinary negligence.

i)    Officer Moore's Negligence

We conclude that the Donald Morin plaintiffs have stated a valid claim against Officer Moore for ordinary negligence. The Donald Morin plaintiffs assert that the magistrate judge

14

glossed over their allegations of negligence. A review of the magistrate judge's report and recommendation, however, reveal that the magistrate judge did not address the negligence claim. In the Donald Morin plaintiffs' original complaint, they clearly allege that the officers were "negligent in various acts and omissions, each of which singularly and collectively were proximate causes of the deaths of the decedents."

To state a claim for negligence in Texas, a plaintiff must show duty, breach, causation, and damages. Ambrosio v. Carter's Shooting Ctr., Inc., 20 S.W.3d 262, 265 (Tex. App. 2000). "[W]hen determining whether a duty exists, the foremost and dominant consideration is the foreseeability and likelihood of the risk." Wal-Mart Stores, Inc. v. Tamez, 960 S.W.2d 125, 130 (Tex. App. 1997). In Wal-Mart Stores, Inc., the Texas appellate court concluded that there was no duty owed to a plaintiff injured by ammunition sold by Wal-Mart. Id. However, the Texas appellate court's inquiry centered around "whether Wal-Mart acted unreasonably in selling ammunition to Salinas." Id. at 131. Concluding that Wal-Mart had no reason "to anticipate the negligent or careless use of a handgun, shotgun, or rifle on the part of Salinas," no action for negligence arose. Id. In the instant action, if the Donald Morin plaintiffs can show that Officer Moore was aware of Ernest's reckless tendencies, then they can show a corresponding duty to act. Id. at 130 ("Negligence rests primarily upon the existence of reason to anticipate injury and [the] failure to perform the duty arising on account of that anticipation." (citation omitted)).

"To establish proximate cause, a plaintiff must prove foreseeability and cause in fact." Ambrosio, 20 S.W.3d at 265. To establish foreseeability, a plaintiff must show that a defendant should have anticipated the danger that his or her negligent act or omission created for others. Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). Foreseeability does not require a person

15

to anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence. Id.; see also Ambrosio, 20 S.W.3d at 265 ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable.").

In Diggles v. Horwitz, the Texas Court of Appeals reversed a summary judgment granted in favor of the defendant on a claim of negligence arising out of the sale of a weapon to a man with a "history of mental problems," who later used the gun to commit suicide. 765 S.W.2d 839, 840-41 (Tex. App. 1989). The court determined that there were issues of fact as to "whether selling the gun and giving the ammunition to the deceased was negligence." Id. at 841. Like Diggles, there are allegations, which if proven true, could show that Officer Moore was negligent. We conclude that if the Donald Morin plaintiffs can prove the allegations in their complaint, then Officer Moore should have foreseen the dangerous situation he created. Moreover, if the Donald Morin plaintiffs' allegations prove true, then Officer Moore's actions were also the cause in fact of the Morins' injuries. Doe v. Boys Club of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995) (explaining that the test for cause in fact is whether the negligent act was a substantial factor in bringing about the injury).[4]

Finally, it is undisputed that there are allegations in the complaint that satisfy the breach (e.g., failure to properly store the weapon) and damages prongs (e.g., physical injuries) of the negligence claim.

---

[4] We recognize that under Texas law, ordinarily, intervening criminal conduct negates foreseeability. Cowart v. Kmart Corp., 20 S.W.3d 779, 783 (Tex. App. 2000) ("The defendant negates the ordinary foreseeability element of proximate cause when the defendant presents evidence that the plaintiff's injuries resulted from intervening criminal conduct that rises to the level of a superseding cause based on factors like those in . . . the Restatement (Second) of Torts."). "However, when the third party's criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability." Id.

16

ii)    Officer Vasquez and Police Chief Schoepner's Negligence

Officer Vasquez and Police Chief Schoepner cannot be liable under a theory of negligence because their conduct could not have been the proximate cause of the Morins' injuries. <u>Ambrosio</u>, 20 S.W.3d at 268 ("In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . . The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." (citation omitted)).

C.    Prevention of the Crime at Issue

The Donald Morin plaintiffs also argue, without citation to authority, that the officers breached their duty as Harlingen police officers to take the necessary steps to prevent the commission of the crime at issue. The district court correctly dismissed the Morins' claim that the officers and the City were liable for the alleged failure of the officers to carry out their duty as police officers to prevent Ernest from committing a crime. <u>Crider v. United States</u>, 885 F.2d 294, 297 (5th Cir. 1989) (declining to impose a tort duty on a police officer to protect the public from acts of a criminal suspect).

D.    The Dan Morin Plaintiffs' Claim for Negligent Entrustment

We conclude that the district court erred in dismissing the Dan Morin plaintiffs negligent entrustment claim against Officer Moore, but not against Police Chief Schoepner or Officer Vasquez, for the reasons stated above. Although the Dan Morin plaintiffs did not allege that Ernest

17

had permission to use the gun, as the Donald Morin plaintiffs alleged, they did allege that the gun was stored in Ernest's room and that Ernest had access to the weapon. In Texas, for purposes of a negligent entrustment claim, permission may be express or implied. Drooker v. Saeilo Motors, 756 S.W.2d 394, 399 (Tex. App. 1988) (permission to drive a motorized vehicle for purposes of a negligent entrustment claim may be express or implied); Firestone Tire & Rubber Co. v. Blacksher, 477 S.W.2d 338, 340 (Tex. App. 1972) (same). Reading the complaint broadly, as we are required to do, Officer Moore's permission can fairly be implied from his storage of the weapon in Ernest's bedroom, where Ernest had access to the weapon. See Dailey v. Quality School Plan, Inc., 380 F.2d 484, 486 (5th Cir. 1967).

E.    The Dan Morin Plaintiffs' Claim for Ordinary Negligence

The Dan Morin plaintiffs also argue that the district court erred in dismissing their negligence claim because the magistrate judge's report "ignored entirely" the claim. However, because they raise this issue for the first time in their reply brief, it must be waived. Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("[W]e do not consider issues raised for the first time in a reply brief.").

F.    The Morins' Claim Against the City

The Morins claim that the City is liable alleging that the officers misused tangible property while acting within the scope of their employment. Section 101.021 of the Texas Tort Claims Act ("TTCA") waives the sovereign immunity of governmental units for claims of "personal injury and death caused by a condition or use of tangible personal or real property." TEX. CIV. PRACTICE MANAGEMENT. & REM. CODE ANN. § 101.021(2) (Vernon 1997). To state a claim under the TTCA based on the use of non-defective tangible personal property, the plaintiff must allege "(1) that the

18

property was used or misused by a governmental employee acting within the scope of his or her employment, and (2) that the use or misuse of the property was a contributing factor to the injury. The negligence of the government employee must be the proximate cause of the injury and must involve a condition or use of tangible personal property under circumstances where there would be private liability." Gonzales v. City of El Paso, 978 S.W.2d 619, 623 (Tex. App. 1998) (citations omitted).

We conclude that the Morins have stated a claim against the City. Because we have determined that there are adequate allegations of negligent entrustment against Officer Moore, who obtained the gun from the police department, and because the plaintiffs have alleged that Officer Moore was acting within the scope of his employment, a claim under the TTCA has been properly alleged against the City. Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989) (finding that the state could be held liable for an employee's negligent provision of swimming attire that did not include life preserver). The fact that the acts that ultimately caused the injuries in this case were undertaken by a third party does not relieve the City from liability for its negligence in allowing officers, under its control, access to an assault rifle that was subsequently used in a dangerous and violent manner. Tex. Dep't of Mental Health & Mental Retardation v. McClain, 947 S.W.2d 694, 696-97 (Tex. App. 1997); see also Delaney v. Univ. of Houston, 835 S.W.2d 56, 60 (Tex. 1992) (finding that a university that failed to repair a dormitory door could be held liable even though the rapist was not a university employee).

## CONCLUSION

For the foregoing reasons, we AFFIRM as to the dismissal of the Morins' § 1983 claims. We REVERSE the dismissal of the following state-law claims: (1) the Donald Morin plaintiffs'

19

claim against Officer Moore for negligent entrustment, (2) the Donald Morin plaintiffs' claim against Officer Moore for negligence, (3) the Dan Morin plaintiffs' claim against Officer Moore for negligent entrustment, and (4) the Morins' claim against the City arising out of the TTCA. WE AFFIRM the dismissal of the remaining state-law claims. This case is REMANDED for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.