United States District Court
Southern District of Texas
FILED

SEP 1 2 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| Vs. | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| GILBERTO M. RODRIGUEZ, ET AL. | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS; | § | (Consolidated with B-98-162) |
| And | § | |
| RAUL RODRIGUEZ | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| CITY OF HARLINGEN, TEXAS. | § | (Consolidated with B-98-162) |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF THE JURY'S VERDICT**

TO THIS HONORABLE COURT:

Plaintiffs, Gilberto M. Rodriguez, individually, on behalf of his minor daughter Megan Suzanne Rodriguez; Stephen L. Williams and Robyn S, Williams, Surviving Parents of Susan Lynn Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, Surviving Parents of Ricardo Guillermo Salinas, deceased, in the above consolidated cases would respectfully bring to this Court's attention a recent decision of the Fifth Circuit: *Scanlan v. Texas A & M University*, --- F.3d ----, 2003 WL 21961422 (5th Cir.(Tex.) Aug 19, 2003) (NO. 02-41166, 02-41204, 02-41173, 02-41222, 02-41187,

1

02-41244), in which the Court reversed a district court's dismissal of the plaintiffs' complaints and held that plaintiffs had adequately stated a 42 U.S.C. § 1983 claim for relief under the "state-created danger" theory, arising out of the deaths of students building the bonfire at Texas A & M. This case supports the jury's verdict in Plaintiffs' case and warrants entry of judgment on that verdict. A copy of the case is attached hereto for the Court's convenient reference as Appendix "A."

Therefore, Plaintiffs re-urge the Court to reinstate the Final Judgment entered on June 28, 2002 and the Writ of Mandamus and Clarification of Judgment entered on July 11, 2002 in accordance with the jury's verdict of $35 million. The copies of the Final Judgment and Writ of Mandamus and Clarification of Judgment are attached hereto for the Court's convenient reference as Appendices "B" and "C."

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court reinstate the Final Judgment entered on June 28, 2002 and the Writ of Mandamus and Clarification of Judgment entered on July 11, 2002.

Respectfully submitted,

**SPIVEY & AINSWORTH, P.C.**
48 East Avenue
Austin, TX 78701
512+474-6061
512+474-1605 (fax)

By _/s/ Broadus A. Spivey_
Broadus A. Spivey
State Bar No. 00000076
Federal I.D. No. 11146
Price Ainsworth
State Bar No. 00950300
Federal I.D. No. 8065

Richard Pena
Law Offices of Richard Pena, P.C.
Barton Oaks Plaza Two
901 MoPac, Suite 325
Austin, Texas 7746-5747
512+327-6884
512+327-8354 (fax)

**ATTORNEYS–IN-CHARGE FOR PLAINTIFFS ARTURO G. SALINAS, ET AL and GILBERTO M. RODRIGUEZ, ET AL**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing document was forwarded to following counsel of record via facsimile and United States mail on this 9th day of September, 2003:

Mr. Tom Lockhart
Mr. Roger W. Hughes
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
Harlingen, Texas 78551-1429
ATTORNEYS-IN-CHARGE FOR
DEFENDANT CITY OF HARLINGEN

Mr. Ramon Garcia
Ms. Sonia I. Lopez
LAW OFFICES OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, TX 78539
ATTORNEYS-IN-CHARGE FOR PLAINTIFF RAUL RODRIGUE

_____
Price Ainsworth

3163P.070

3

2003 WL 21961422  
--- F.3d ---  
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

Page 1

**H**  
Only the Westlaw citation is currently available.

United States Court of Appeals,  
Fifth Circuit.

Howard SCANLAN; Denise Scanlan; and Lauren Scanlan, Plaintiffs-Appellants,  
v.  
TEXAS A&M UNIVERSITY; et al., Defendants,  
Texas A&M University; J. Malon Southerland, in his individual capacity; Russell Thompson, in his individual capacity, Ray Bowen, in his individual capacity;  
William L. Kibler, in his individual capacity; and John J. Koldus, III, in his individual capacity, Defendants-Appellees.  
Sean Breen, as Administrator of the Estate of Christopher Breen; Christopher Breen; John E. Breen; Marian K. Breen, Plaintiffs-Appellants,  
v.  
Texas A&M University; J. Malon Southerland, in his individual capacity; Russell Thompson, in his individual capacity; Ray Bowen, in his individual capacity, Defendants-Appellees.  
James Kimmel, as Representative of the Estate of Lucas Kimmel; James Kimmel; Walieta Kimmel, Plaintiffs-Appellants,  
v.  
Texas A&M University; et al., Defendants,  
Texas A&M University; J. Malon Southerland, in his individual capacity; Russell J. Thompson, in his individual capacity; Ray Bowen, in his individual capacity;  
William L. Kibler, in his individual capacity; and John J. Koldus, III, in his individual capacity, Defendants-Appellees.  
Jacquelynn Kay Self, Individually and as Administratrix of the Estate of Jerry Don Self, Deceased; Kathy McClain Escamilla, Individually and as Administratrix of the Estate of Bryan A. McClain, Deceased; Phil R. McClain; Andrea Heard, Individually and as Administratrix of the Estate of Christopher Lee Heard, Deceased; Leslie G. Heard; Gregory Anthony Powell, Individually and as Administrator of the Estate of Chad D. Powell, Deceased; Beverly Jill Powell; Matthew Lynn Robbins; Dominic Braus; and Nancy Braus, Plaintiffs-Appellants,  
v.  
Texas A&M University; et al., Defendants; Texas A&M University; Ray Bowen; J. Malon Southerland; William L. Kibler; Russell W. Thompson; John J. Koldus, III; M.T. Hopgood, Jr., Major General; Donald J. Johnson; Zack Coapland; Kevin Jackson; James R. Reynolds; Robert Harry Stiteler, Jr.; and Michael David Krenz, Defendants-Appellees.  
John Andrew Comstock and Dixie Ann Zinneker, Plaintiffs-Appellants,  
v.  
Texas A&M University; et al., Defendants,  
Texas A&M University; J. Malon Southerland, in his individual capacity; Russell Thompson, in his individual capacity; Ray Bowen, in his individual capacity, Defendants-Appellees.  
Bill Davis, Plaintiff-Appellant,  
v.  
Texas A&M University; et al., Defendants,  
Texas A&M University; J. Malon Southerland, in his individual capacity; Russell Thompson, in his individual capacity; Ray Bowen, in his individual capacity;  
William L. Kibler, in his individual capacity; and John J. Koldus, III, in his individual capacity, Defendants-Appellees.

Nos. 02-41166, 02-41173, 02-41187, 02-41204, 02-41222 and 02-41244.

Aug. 19, 2003.

In six separate actions, representatives of students at state university filed § 1983 and negligence claims against university and officials, claims which arose when a university bonfire stack collapsed, killing 12 students and injuring 27 others. The United States District Court for the Southern District of Texas, Samuel B. Kent, J., 267 F.Supp.2d 646, dismissed all of the claims and entered a final judgment in each lawsuit. Representatives appealed. The Court of Appeals, Prado, Circuit Judge, held that: (1) district court's adoption of final report of university's investigation into bonfire stack collapse was error, and (2)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 21961422
--- F.3d ---
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

Page 2

representatives stated a § 1983 claim under the state-created danger theory.

Reversed and remanded.

West Headnotes

[1] Federal Courts ⇌776
170Bk776 Most Cited Cases

[1] Federal Courts ⇌794
170Bk794 Most Cited Cases

The Court of Appeals reviews a district court's dismissal for failure to state a claim de novo, taking the allegations of the complaint to be true. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Federal Civil Procedure ⇌1832
170Ak1832 Most Cited Cases

District court's consideration of final report of university's investigation into bonfire stack collapse, which caused the deaths of 12 university students and injured 27 others, as the basis for granting university officials' motion to dismiss claims brought by representatives of the students on a finding that the officials did not act with deliberate indifference was error; although the representatives relied on the report in their complaints, the report alone was not central to their claims, and the representatives did not accept the final report as true, and, the university officials did not attach the final report to their motion to dismiss, but instead, only quoted portions of the report in their motions and provided an internet cite. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[3] Civil Rights ⇌1395(2)
78k1395(2) Most Cited Cases

Representatives of state university students killed in collapse of bonfire structure stated a § 1983 claim under the state-created danger theory by alleging that the bonfire grew over the years from a pile of burning trash to a structure weighing over 3 million pounds, that university officers were aware of the dangers posed by the bonfire stack but did not use their control to see that bonfire stack was built in a safe manner, that through their action and inaction created a dangerous condition, and that the university had a vested interest in the bonfire because they used it as a marketing tool to lure prospective students and to secure donations from alumni. 42 U.S.C.A. § 1983.

Steven K. DeWolf, Todd R. Hixon, Bellinger & DeWolf, Dallas, TX, for Lauren Scanlan, Howard Scanlan, Denise Scanlan, Sean Breen, Christopher Breen, Marian K. Breen, James Kimmel, Walista Kimmel and Bill Davis.

James C. Todd, Asst. Atty. Gen., Austin, TX, for Defendants-Appellees.

Darrell L. Keith, Fort Worth, TX, Jeffrey H. Kobs, Law Office of Jeff Kobs, Fort Worth, TX, for Jacquelynn Kay Self, Kathy McClain Escamilla, Phillip McClain, Andrea Heard, Leslie G. Heard, Matthew Lynn Robbins, Dominic M.V. Braus and Nancy Braus.

Eugene Borchardt, McGartland & Borchardt, Fort Worth, TX, for Gregory Anthony Powell and Beverly Jill Powell.

Scott Joseph Scherr, Jay Davis Watson, Payne, Watson, Miller & Malecheck, Bryan, TX, for John Andrew Comstock and Dixie Ann Zinneker.

Appeals from the United States District Court for the Southern District of Texas.

Before WIENER, CLEMENT and PRADO, Circuit Judges.

PRADO, Circuit Judge.

*1 The above numbered and styled appeals arise from six lawsuits filed in the Southern District of Texas by, and on behalf of, those injured and killed during the Texas A&M University bonfire disaster that occurred on November 18, 1999. The district court dismissed all of the plaintiffs' claims and entered a final judgment in each lawsuit. The plaintiffs appealed to challenge the dismissal orders. After considering the parties' arguments on appeal, this Court reverses the district court's judgments.

*Background Facts*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 21961422                                                                                           Page 3
--- F.3d ---
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

On November 18, 1999, the Texas A&M University bonfire stack collapsed, killing 12 students and injuring another 27. After the accident, the president of Texas A&M University (the University) convened a special commission to investigate the collapse. The investigating commission documented its findings and conclusions in the Final Report of the Special Commission on the 1999 Texas A&M Bonfire (Final Report). Subsequently, the appellants filed six lawsuits. In the lawsuits, the plaintiffs alleged section 1983 claims under the state-created danger theory and various state law claims against the University and various University officials (the University Officials) whom the plaintiffs hold responsible for their injuries.

From the outset, the district court limited discovery to the issue of qualified immunity. The district court allowed five weeks to conduct discovery on that issue and set the deadline for dispositive motions four weeks later. Eight weeks after the deadline for dispositive motions, the district court issued the orders challenged in these appeals, dismissing all of the plaintiffs' claims. The court issued the same order in each case.

The district court's orders were quite clear. The court first dismissed the plaintiffs' claims against the University as a state entity on Eleventh Amendment immunity grounds. No plaintiff appeals that action.

Next, the district court adopted the Final Report and determined the actions of the University Officials did not, as a matter of law, rise to the level of deliberate indifference. Based on that determination, the district court dismissed the plaintiffs' section 1983 claims against the University Officials for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each plaintiff challenges that action.

The district court then declined to exercise supplemental jurisdiction over the plaintiffs' state law claims and dismissed those claims without prejudice. No plaintiff appeals that action.

*The Plaintiffs' Issues on Appeal*

*2 [1] The plaintiffs' issues on appeal can be summarized as follows: (1) Whether the district court erred by relying on documents outside the complaints to determine the plaintiffs failed to state a claim, and (2) whether the district court erred by dismissing the plaintiffs' claims against the University Officials for failure to state a claim. This Court reviews the district court's dismissal under Rule 12(b)(6) *de novo*, taking the allegations of the complaint to be true. *See Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir.1996); *Eason v. Holt*, 73 F.3d 600, 601 (5th Cir.1996).

*Rule 12(b)(6)*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994). Accordingly, this Court has consistently disfavored dismissal under Rule 12(b)(6). *See Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir.1999); *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir.1988). In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 147 (5th Cir.1997); *Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc.* 30 F.3d 627, 629 (5th Cir.1994).

Although the district court may not go outside the complaint, this Court has recognized one limited exception. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000), this Court approved the district court's consideration of documents attached to a motion to dismiss. In that case, the district court relied on an agreement and an assessment about a potential merger between two companies in determining the contract was not intended to benefit the plaintiffs/stock option holders. *See Collins v. Morgan Stanley Dean Witter*, 60 F.Supp.2d 614 (S.D.Tex.1999). The fact that the plaintiffs did not object to, or appeal, the district court's consideration of those documents was central to this Court's approval of that practice. *See Collins*, 224 F.3d at 498-99 (5th Cir.2000). In approving the district court's consideration of the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 21961422
--- F.3d ---
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

Page 4

documents attached to the motion to dismiss, this Court restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

*Whether the District Court Erred By Relying on the Final Report*

*3 [2] The district court relied on *Collins* as its authority to consider the Final Report in dismissing the plaintiffs' claims. Like *Collins*, the plaintiffs in the instant case referred to the Final Report in their complaints. But unlike *Collins*, the University Officials did not attach the Final Report to their motion to dismiss. Instead, the University Officials quoted portions of the Final Report in their motions and provided an Internet cite. As a result, the district court had to seek out the report in order to consider it in making the factual determinations that served as the basis of the court's conclusion about deliberate indifference.

The University Officials maintain on appeal that because they provided the Internet citation for the report, and because the report is appropriate for judicial notice under Rule 201 of the Federal Rules of Evidence, the plaintiffs had sufficient notice of the document so that it was not necessary for the University Officials to attach it to their motion to invoke the *Collins* exception. The district court's order, however, does not indicate the court took judicial notice of the report. Even if the district court had taken judicial notice of the report, that action would have been improper because "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Final Report cannot be characterized as generally known within the Southern District of Texas or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Instead, the Final Report is essentially a defendant-created report that focuses on the causes of the bonfire collapse and thanks at least one of the University Officials for supporting the special commission's efforts to investigate the disaster.

In addition to the Final Report not being attached to the motion, the plaintiffs did not accept the Final Report as true in district court, and complain about the district court's consideration of the Final Report on appeal. Notably, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs and Plaintiff Bill Davis objected to the Court's reliance on *Collins* in their response to the defendants' motion for summary judgment. These plaintiffs distinguished *Collins* from their case stating,

> *Collins* is unlike the present case in many respects: (1) the Commission Report was not attached to the Motion to Dismiss; (2) the Commission Report refers to, incorporates and includes numerous other documents that have not been presented to the Court or referenced by Plaintiffs; (3) the Commission Report, while insightful, is not central to the Plaintiffs' claims; and (4) the other documents contained on the website referenced in Defendants' Motion are not even mentioned by Plaintiffs in their complaint.

Although the plaintiffs rely on the Final Report in their complaints, certainly the report alone is not central to their claims. Indeed, it is much more central to the University Officials' defenses. The plaintiffs rely on substantial, other evidence to support their claims. [FN1] Consequently, the district court's first error was going outside the plaintiffs' complaints and considering the Final Report. Even if the Final Report fell under the *Collins* exception, the district court failed to construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs.

*Construing the Allegations in the Plaintiffs' Favor*

*4 Although this Court has never explicitly adopted the state-created danger theory, the Court set out the elements of a state-created danger cause of action in *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir.1994). In *Johnson*, the Court explained that a plaintiff must show the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff. *See Johnson*, 38 F.3d at 201. Later, the Court explained what is required to establish deliberate indifference. In *Piotrowski v. City of Houston*, the Court explained that to establish deliberate indifference, the plaintiff must show the "environment created by the state actors must be dangerous; they must know it is dangerous; and ... they must have used their authority to create

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 21961422  
--- F.3d ---  
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

Page 5

an opportunity that would not otherwise have existed for the third party's crime to occur." *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir.2001)(quoting *Johnson v. Dallas Indep. Sch. Dist.*). Even a cursory review of the complaints shows the plaintiffs pleaded facts to establish deliberate indifference.

[3] The plaintiffs filed a very similar complaint in each of the underlying lawsuits. In the complaints, the plaintiffs discussed how the bonfire grew over the years from a pile of burning trash to a structure weighing over 3 million pounds. The plaintiffs asserted that the defendants were well aware of the dangers posed by the construction of the bonfire stack and that it had been characterized by one of the University Officials as the "most serious risk management activity at the University." The plaintiffs further asserted that:

> The Defendants however, did not use their control to see that the Bonfire stack was built in a safe manner. Instead, they allowed the Bonfire to grow into a massive, complex and dangerous structure. The Defendants, through their action and inaction, created a terrible peril that clearly could not, and should not, have been designated and built solely by students.

The plaintiffs claimed that the University Officials "created this dangerous condition. They knew it was dangerous. Despite that, they like ostriches, put their heads in the sand and pretended the peril did not exist."

The plaintiffs explained that the defendant had a vested interest in keeping their heads in the sand and not exercising supervision over the bonfire because they "used the Bonfire experience and tradition as a huge marketing tool to lure prospective students to A&M as well as to secure millions of dollars in donations from alumni." The plaintiffs went on to claim that the University Officials "actively encouraged and enticed students and alumni to work on the Bonfire stack while they turned a blind eye to the peril."

*5 In stating their section 1983 claims, the plaintiffs included the language "deliberate indifference" to describe a particular University Official's conduct. Although the plaintiffs relied on the Final Report for their characterization of the danger posed by the bonfire, the introductory paragraph of five of the complaints makes it clear that the plaintiffs rely on more than the Final Report. In that paragraph, the plaintiffs allege that "despite clear and overwhelming evidence of their culpability, including, *but not limited to*, the independent Bonfire Commission's ('Commission') Report, the Defendants have failed to take or accept any responsibility whatsoever." (emphasis added).

If these allegations were construed in the light most favorable to the plaintiff, the district court should have determined the plaintiffs had pleaded sufficient factual allegations to show the bonfire construction environment was dangerous, the University Officials knew it was dangerous, and the University Officials used their authority to create an opportunity for the resulting harm to occur. As a result, the district court should have concluded that the plaintiffs stated a section 1983 claim under the state-created danger theory.

If the district court was going to consider the Final Report, the court should have converted the motion to dismiss to a motion for summary judgment, given the parties notice, and then considered all of the evidence presented. [FN2] *See* Fed. R. Civ. P. 12(b)(6). Had the district court done that, the court would have been faced with the questions of fact the evidence presents. Indeed, the introductory paragraphs of five complaints clearly indicate the plaintiffs are relying on more than the Final Report as evidence for their claims.

By simply adopting the Final Report as the basis for determining the University Officials did not act with deliberate indifference, the district court deferred to a defendant-created commission rather than presenting the questions of material fact to a trier of fact. Whether deliberately delegating the construction of the bonfire stack to students the University Officials allegedly knew were not qualified to handle such a dangerous project, and whether deliberately providing no supervision to students in building the bonfire even though they knew the students were not qualified to build the stack, constituted deliberate indifference presents fundamental questions of material fact. Oddly, the district court acknowledged in a footnote that the existence of deliberate indifference is often a factual determination, but stated

> because the Final Report affirmatively discloses that the University Officials in this case lacked the requisite culpability with respect to the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2003 WL 21961422  
--- F.3d ---  
(Cite as: 2003 WL 21961422 (5th Cir.(Tex.)))

Page 6

alleged violation of the Bonfire victims' constitutional rights, it is not only appropriate, but mandatory in this instance to conclude that the University Officials failed to act with deliberate indifference, as a matter of law.

*6 Although the district court stated in its orders that "the Parties have accepted the Final Report," most of the plaintiffs objected to the district court's reliance on the Final Report in their responses to the defendants' motions for summary judgment. In particular, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs, the Self plaintiffs, and Plaintiff Bill Davis complained:

> The Defendants assert that the Plaintiffs have accepted the Commission's final [sic] Report and findings. (State's Brief, p. 2.) That statement is untrue and the Defendants have cited no support for that position. The Plaintiffs, however, are entitled to rely on portions of the Report as admissions by the Defendants as it is essentially an A&M report and has been adopted by the Defendants.

Certainly, reasonable minds could differ about the Final Report's conclusions about the University Officials' roles in the collapse of the bonfire stack. If *all* of the summary judgment evidence presents genuine issues of material fact, those roles should be decided by a trier of fact, not the defendants themselves. Consequently, the district court erred because it went outside the complaints and did not construe the plaintiffs' allegations in favor of the plaintiffs.

*Conclusion*

Because the district court erred in dismissing the plaintiffs' claims against the University Officials, the Court REVERSES the district court's judgments and REMANDS the cases to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

FN1. Although the Self plaintiffs and Comstock plaintiffs did not specifically object to the *Collins* exception, those plaintiffs presented substantial summary judgment evidence that placed the district court on notice that they were relying on much more than the Final Report.

FN2. Apparently, most of the plaintiffs saw the hand-writing on the wall. In their responses to the defendants' motions to dismiss, the Scanlan plaintiffs, the Breen plaintiffs, the Kimmel plaintiffs, and Plaintiff Bill Davis objected to the defendants' reliance on the Final Report. In particular, these plaintiffs asserted that because the defendants were relying on facts and documents not contained within the pleadings, the Court must convert the motion to dismiss to a motion for summary judgment, and asserted that they were entitled to discover evidence central to their claims before the Court ruled on the motion to dismiss. Although the Self plaintiffs and the Comstock plaintiffs did not make this particular objection, they presented substantial summary judgment evidence that placed the district court on notice that plaintiffs were relying on much more than the Final Report.

2003 WL 21961422 (5th Cir.(Tex.))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 28 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

Arturo Guillermo Salinas, et al, §
          Plaintiffs §
 §
v. § CIVIL CASE NO. B-98-162
 § (consolidated with B-98-163 & B-99-70)
 §
City of Harlingen, §
          Defendant. §

## FINAL JUDGMENT

BE IT REMEMBERED that on June 28, 2002, the Court issued its **FINAL JUDGMENT** in this case.

### Background

The Court called this case for trial on February 11, 2002, and the jury returned a verdict in favor of Plaintiffs Gilberto Rodriguez, individually and on behalf of his minor daughter, Megan Suzanne Rodriguez and the estate of his wife, Susan Lynn Rodriguez, deceased; Stephen L. Williams and Robyn S. Williams, surviving parents of Susan Lynn Rodriguez, deceased; Arturo Guillermo Salinas and Elisa Herrera Salinas, individually and on behalf of their son, Ricardo Guillermo Salinas, deceased; and Raul Rodriguez.

The jury returned a verdict for Plaintiffs and awarded money damages totaling $35,000,000.00 as follows:

1. Gilberto M. Rodriguez, Individually                $5,000,000.00
2. Gilberto M. Rodriguez, on behalf of his minor daughter,
   Megan Rodriguez                                    $10,000,000.00
3. Stephen Williams                                   $2,500,000.00
4. Robyn Williams                                     $2,500,000.00

1

5. Arturo Salinas                $2,500,000.00
6. Elisa Salinas                 $2,500,000.00
7. Raul Rodriguez                $10,000,000.00

**State Law Damages Cap Under the Texas Tort Claims Act**

The award was not segregated into amounts for state and federal damage claims. The Court notes that any damages awarded on state law claims under the Texas Tort Claims Act are capped at $250,000 per person and $500,000 per occurrence. See Tex. Civ. Prac. & Rem. Code Ann. § 101.023(c) (Vernon's Supp. 2002). The Parties do not dispute that "person" refers to each person killed or injured rather than each claimant. See City of Austin v. Cooksey, 570 S.W.2d 386, 389 (Tex. 1978). The state law damages are therefore capped at $250,000.00 per person for each of the three "person[s]" killed or injured: Raul Rodriguez, Susan Rodriguez, and Ricardo Salinas.

However, the Parties disagree on the number of occurrences. "[T]he number of occurrences is not based on the number of wrongful acts; it is based on the cause for injuries in question." Texas Dep't of Mental Health v. Petty, 817 S.W.2d 707, 720 (Tex. App. Austin 1991) aff'd 848 S.W.2d 707 (Tex. 1992). Here, the occurrence giving rise to liability was not the shooting, or the number of injuries sustained during the shooting, but the City's act of causing the weapon to become available to Ernest Moore. This was the one cause for all the injuries at issue, constituting one occurrence under the statute. Damages awarded on state law claims are therefore capped at $500,000.00 for the one occurrence.

**Prejudgment Interest**

Defendant argues that Plaintiffs waived entitlement to prejudgment interest when they requested that damages be submitted globally to the jury rather than segregating past from future economic losses.

2

Defendant is mistaken in arguing that Plaintiffs must segregate past from future economic losses to be entitled to prejudgment interest in this case.[1] The cases cited by Defendant are admiralty cases, and limitations on prejudgment interest for those types of cases are not applicable here.

In civil rights cases, prejudgment interest is calculated under state law. Pressey v. Patterson, 898 F.2d 1018, 1026 (5th Cir. 1990) ("[S]tate law governs the calculation of prejudgment interest in section 1983 claims.") see also Grandstaff v. City of Borger, 846 F.2d 1016 (5th Cir. 1988). The civil rights claim here is based on personal injury.

Under Texas law, prejudgment interest may be awarded on both past and future damages for personal injury claims. The governing statute states that "[a] judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." Tex. Fin. Code Ann § 304.102. The Texas Supreme Court has interpreted significantly similar language to include prejudgment interest on both past and future damages where, as here, the statute made "no distinction between damages awarded in the judgment for past damages and damages awarded for future damages." See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315 (Tex. 1994).[2] Plaintiffs were therefore not required to segregate the past and future damage claims in order to be entitled to prejudgment interest.

---

[1] Although the Court here awards prejudgment interest on the entire award because the damage amounts for federal and state law claims were not segregated, the Court notes for purposes of any future appeal only that prejudgment interest does not accrue on the state law claims because the amount of the award exceeds the cap. Weller v. State, 682 S.W.2d 234, 234-35 (Tex. 1984); University of Texas at Austin v. Hinton, 744 S.W.2d 197 (App. 3 Dist. 1991).

[2] C & H discussed Tex. Rev. Civ. Stat. Ann. Art. 5069-1.05, § 6(a), which was repealed in 1997 see Acts 1997, 75th Leg., ch. 1008, § 6(a) eff. Sept. 1, 1997. Former Tex. Rev. Civ. Stat. Ann. Art 5069-1.05, § 6(a) stated: "Judgments in wrongful death, personal injury and property damage cases must include prejudgment interest." That statue, dealing with consumer credit, was superseded as stated in Samples v. Graham, 2002 WL 484879 (Tex. App.-Corpus Christi Mar 28, 2002).

The prejudgment interest rate is equal to the post judgment interest rate applicable at the time of judgment. See Tex. Fin. Code Ann § 304.103. Therefore prejudgment interest is payable on the entire award at a rate of 2.13% per annum.

The interest shall be calculated from November 9, 1998, the day the complaint was filed [Dkt. No. 1], to June 27, 2002, the day before this judgment issues. Tex. Fin. Code Ann § 304.104. ("Prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending the day preceding the date judgment is rendered.")

**Post Judgment Interest**

Post Judgment interest is payable on all the above amounts allowable by law under 28 U.S.C. § 1961 at the rate of 2.13% (percent) per annum from the date the judgment is entered until the date the judgment is paid.

**Writ of Execution**

A federal judgment is normally enforced by a writ of execution. Fed. R. Civ. P. 69(a). However, Texas law controls execution against a municipality and no writs of execution or garnishment against a city may issue. Under Tex. Prop. Code Ann. 43.002 (Vernon Supp. 2002), city property and monies are exempt from garnishment or forced seizure. Id. The appropriate method under Texas law is a writ of mandamus to order city officials to pay the judgment from general funds or levy and collect taxes sufficient to pay the judgment. National Surety Corp. v. Friendswood I.S.D., 433 S.W.2d 690, 694 (Tex. 1968); Harris County v. Walsweer, 930 S.W.2d 659, 668 (Ct. App. Tx., Houston (1st Dist.).

The Court **ORDERS** a writ of mandamus to issue for this judgment.

The Court **DENIES** all relief not granted in this judgment.

This is a final judgment.

DONE this 28th day of June, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge

23

United States District Court
Southern District of Texas
ENTERED

JUL 11 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | § | CIVIL ACTION NO. B-98-162 |
| Vs. | § | |
| CITY OF HARLINGEN, TEXAS; | § | |
| And | § | |
| GILBERTO M. RODRIGUEZ, ET AL | § | |
| Vs. | § | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN, TEXAS; | § | (Consolidated with B-98-162) |
| And | § | |
| RAUL RODRIGUEZ | § | |
| Vs. | § | CIVIL ACTION NO. B-99-70 |
| CITY OF HARLINGEN, TEXAS. | § | (Consolidated with B-98-162) |

## WRIT OF MANADAMUS AND CLARIFICATION OF JUDGMENT

Pursuant to the Judgment entered on June 28, 2002, the Court hereby ORDERS that a Writ of Mandamus issue to order the Defendant City of Harlingen to pay to the Plaintiffs money damages as follows on their federal claims brought pursuant to 42 U.S.C. § 1983:

1)  Gilberto M. Rodriquez, Individually                          $ 5,000,000.00

2)  Gilberto M. Rodriquez, on behalf of his minor daughter
    Megan Rodriquez                                              $10,000,000.00

3)  Stephen Williams                                             $ 2,500,000.00

4)  Robyn Williams                                               $ 2,500,000.00

5)  Arturo Salinas                                               $ 2,500,000.00

| | | |
|---|---|---|
| 6) | Elisa Salinas | $ 2,500,000.00 |
| 7) | Raul Rodriquez | $10,000,000.00 |

Further, the Defendant City of Harlingen is hereby ORDERED to pay (and a writ of mandamus shall issue for) prejudgment interest on each of the above sums at the rate of 2.13% per annum from November 9, 1998 through June 27, 2002. In addition, the Defendant City of Harlingen is hereby ORDERED to pay (and a wit of mandamus shall issue for) post judgment interest at the rate of 2.13% per annum on all sums above, together with the prejudgment interest added thereto, from June 28, 2002 until this writ and judgment are paid in full.

The Court ORDERS that a writ of mandamus issue for this judgment.

This is a final judgment.

Done this 11 day of July 2002, at Brownsville, Texas.

Honorable Hilda G. Tagle
United States District Judge

3163P.056

2