267

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 2 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| V. | { | CIVIL ACTION NO. B-98-162 |
| CITY OF HARLINGEN | { | |
| and | { | |
| GILBERTO M. RODRIGUEZ, ET AL | { | |
| V. | { | CIVIL ACTION NO. B-98-163 |
| CITY OF HARLINGEN | { | |
| and | { | |
| RAUL RODRIGUEZ | { | CIVIL ACTION NO. B-99-70 |
| V. | { | |
| CITY OF HARLINGEN | { | |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITIES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, **CITY OF HARLINGEN** and files this its Notice of Supplemental Authorities, and would show the Court as follows:

# I.

The Court has pending a motion for entry of final judgment. Dkt #257. Previously, the Court vacated the judgment on the federal claims, indicating that it would enter a judgment under state law. Dkt # 253. Recently, the Plaintiffs brought to this Court's attention the U.S. Fifth Circuit's decision in *Scanlan v. Texas A & M University*, 343 F.3d 533 (5th Cir. 2003, pet. rehearing *en banc* denied). Dkt #264.

# II.

This letter/notice is to bring to this Court's attention (1) the Fifth Circuit overruled the petition for rehearing and a petition for rehearing en banc in *Scanlan*; and (2) another Fifth Circuit decision. *See Rivera v. Houston I.S.D.*, __ F.3d __, 2003 WL_____ (5th Cir. November 7, 2003) [attached].

In *Rivera*, the Fifth Circuit affirmed summary judgment for the school district in the state created danger doctrine. *Id.* at *1. Eighth grader Samuel Avila was stabbed by another eighth grader during a gang related fight at a public middle school in Houston. *Id.* at *. His parents filed a wrongful death action, arguing that the school district had tolerated "gang activity" in and around the schools. *Id.* at *6.

Affirming a summary judgment for the school district, the opinion made two important statements for this case. First, the court reemphasized that the Fifth Circuit has still *not* recognized the "state created danger" doctrine under the Due Process clause.

"We have never recognized state-created danger as a trigger of State

affirmative duties under the Due Process clause. [citation omitted]. We again decline to do so. Even if we were to review this case under the state-created danger theory, it would fail."

*Id.* at *6. Second, the panel stated that in *Scanlan* the court did not explicitly adopt the state created danger theory. *Id.* at *6, n. 5. The opinion went on to state:

"Despite remanding [*Scanlan*] to the district court for further proceedings, *we did not recognize the state created danger theory.*"

*Id.* at *6, n. 5 [emphasis added]. Therefore, despite *Scanlan*, the state created danger doctrine still has not been recognized by the Fifth Circuit.

Respectfully submitted,

By: _____
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY OF HARLINGEN, TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this \_\_\_ day of November, 2003, to the following counsel of record and interested parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

| | |
|---|---|
| Mr. Broadus A. Spivey<br>**SPIVEY & AINSWORTH, P.C.**<br>48 East Avenue<br>Austin, Texas 78701-4320 | *CM/RRR 7001 25 7 0 0004 2063 6456* |
| Ms. Sydney K. Powell<br>**LAW OFFICE OF SYDNEY POWELL**<br>1920 Abrams Parkway, Suite 369<br>Dallas, TX 75214 | *CM/RRR 7001 25 7 0 0004 2063 6463* |

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

| | |
|---|---|
| Mr. Ramon Garcia<br>Ms. Sonia Lopez<br>**LAW OFFICES OF RAMON GARCIA, P.C.**<br>222 West University Drive<br>Edinburg, Texas 78539 | *CM/RRR 7001 25 7 0 0004 2063 6470* |

_____
ROGER W. HUGHES

United States Court of Appeals
Fifth Circuit
**F I L E D**
November 7, 2003
Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 10, 2003

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

No. 03-20098

---

ANDRES AVILA RIVERA; ANA MARIA AVILA, Individually,
and on Behalf of the Estate of Samuel Avila

Plaintiffs-Appellants,

versus

HOUSTON INDEPENDENT SCHOOL DISTRICT

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before JOLLY, SMITH and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The parents of a stabbing victim at a middle school brought this § 1983 action alleging the school district violated their son's due process rights by creating the danger that led to his death. The district court granted summary judgment in favor of the defendants. We AFFIRM.

I

Eighth grader Samuel Avila ("Avila") was killed by seventh grader Estanislao Balderas

("Balderas") during a fight at James S. Deady Middle School ("Deady") in Houston. Balderas stabbed Avila with a screwdriver he brought to Deady in violation of school policy. The fight was apparently gang related.

The altercation occurred in a part of Deady called the "tunnel," a windowless hallway with no classrooms. The fight between Avila and Balderas was part of a larger altercation involving several students. Multiple teachers attempted to break up the fights, but were unable to prevent the stabbing.

Avila and Balderas were involved in a similar gang related fight the afternoon before the stabbing, but it did not occur on school grounds or during school hours. The fight resulting in Avila's death was the first known altercation between the two boys at Deady, and neither student, as of that time, was considered a disciplinary problem.[1]

Deady, part of the Houston Independent School District ("HISD"), is located in a part of Houston where there is significant crime and gang related activity. HISD maintains its own police force including two officers assigned to Deady. Additionally it has a student tip line, conducts random drug and weapons searches, and maintains K-9 patrol and drug searches units. HISD also sponsors the Gang Education Awareness Resistance ("GEAR") program designed to provide training and facilitate referrals of gang activity to law enforcement officers. Deady is involved in all of these programs.

Avila's parents, Andres Avila Rivera and Ana Maria Avila (collectively "the Parents") filed the instant action against HISD for violating their son's due process rights under the Fourteenth

---

[1] There is no evidence that Avila had any recent disciplinary problems at Deady. Balderas had three disciplinary infractions that year for dress code violations, fighting, and skipping school. Balderas was punished for each violation.

2

Amendment of the United States Constitution. The district court dismissed both the Parents' due process 'special relationship' claim and their claim for punitive damages. It subsequently granted HISD's motion for summary judgment on the Parents' due process claim under 'state created danger' theory. The Parents now appeal that summary judgment ruling.

II

We review a grant of summary judgment *de novo,* applying the same standard as the district court. *Dickerson v. Bailey,* 336 F.3d 388, 394 (5th Cir. 2003). The moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); FED. R. CIV. P. 56(c). Once the moving party has met its burden, the non-moving party must show that summary judgment is inappropriate by setting "forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Morris,* 144 F.3d at 380 (internal quotations omitted). In reviewing all of the evidence, we must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Dickerson,* 336 F.3d at 394.

A

Municipal liability under 42 U.S.C. § 1983 requires proof of "1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 584 (5th Cir. 2001) (citing *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)).

The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik,* 485

3

U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Municipal liability cannot be sustained under a theory of *respondeat superior*. *Bd. Of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Piotrowski*, 237 F.3d at 584. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 584. Therefore to sustain liability under § 1983, the Parents must point to more than the actions of a HISD employee, they must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation.

The Parents identify two policymakers: Pablo Rios, the principal at Deady; and, HISD's Board of Trustees ("the Board"). Only the latter is a policymaker. "[W]hether a particular official has final policymaking authority is a question of *state law*." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (internal quotations omitted). Both parties agree that Texas law unequivocally delegates to the Board "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE. § 11.151(b).[2]

Despite acknowledging the Board's exclusive policymaking authority under Texas law, the Parents assert that the Board delegated policymaking discretion for the safety and security of Deady Middle School to its principal Pablo Rios, thus labeling Rios, rather than the Board, as the final policymaking authority.

---

[2] "The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district. All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees." TEX. EDUC. CODE. § 11.151(b).

4

The Parents cite no Texas law empowering the Board with the authority to delegate its exclusive policymaking authority. Although TEX. EDUC. CODE. § 11.151(b) does not explicitly restrict the Board's ability to delegate its power, the Board's own policies do. HISD policy number 111.500 provides that "the power to enact policy cannot be delegated to an employee or agent."[3] The policy does recognize that "[p]olicies may be developed through the cooperation of faculty and students as well as the administration and other employees," but makes clear that "the final authority for adoption rests solely with this Board as an official body."

The Parents cite no official document or edict where the Board delegated any of its policymaking authority to Rios, or any other principal. They do refer generally to a "site-based management policy." However, they provide no official documentation of this policy, nor do they explain how it delegated the Board's final policymaking authority to Rios. The district court referred to TEX. EDUC. CODE. § 11.253(a)[4] as the source of this policy, but distinguished the decision-making authority it provides from the policymaking authority required to sustain liability under § 1983. Furthermore, this education code provision explicitly requires that "each school district," rather than each principal, maintain the relevant policy. *See* TEX. EDUC. CODE. § 11.253(a). Even if that authority were allocated to principals, it relates to academic performance, not school security. *See* TEX. EDUC. CODE. § 11.253(a)-(d). Additionally, this delegation of decision-making authority does

---

[3] "It is the responsibility of the Board to adopt policies for governing schools. The statutes prohibit boards of trustees from relinquishing or delegating their authority to govern schools. Hence, the power to enact policy cannot be delegated to an employee or agent such as the Superintendent of Schools or a singe member of the Board of Education." HISD Policy 111.500.

[4] "Each *school district* shall maintain current policies and procedures to ensure that effective planning and site-based *decision-making* occur at each campus to direct and support the improvement of student performance for all students." TEX. EDUC. CODE. § 11.253(a) (emphasis added).

not negate the fact that both under Texas law, and the Board's own policies, final policymaking authority lies exclusively with the Board.

"[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 925. We make no such assumption. The Board is the one and only policymaker for HISD.

### B

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." The Clause "was intended to prevent government from abusing its power, or employing it as an instrument of oppression." *Deshaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct 998, 1003, 103 L.Ed.2d 249 (1989) (internal quotations omitted). It generally provides "no affirmative right to government aid." *Id.* Consequently, the Supreme Court has "conclude[d] that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct at 1004.

"[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct at 1004. While the Supreme Court has not annunciated every circumstance in which this duty attaches, it has held that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200, 109 S.Ct at 1005-06. The Supreme Court has further held that "[i]t is the State's affirmative act of restraining the individual's freedom

6

to act on his own . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interest against harms inflicted by other means." *Id.* at 200, 109 S.Ct at 1006.

Several circuit courts have recognized that when state actors knowingly place a person in danger, the Due Process Clause renders them accountable for the foreseeable injuries resulting from their conduct. *See, e.g., Currier v. Doran,* 242 F.3d 905, 919-22 (10th Cir. 2001); *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1067 (6th Cir. 1998); *Kneipp v. Tedder,* 95 F.3d 1199, 1208-09 (3d Cir. 1996); *Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir 1993); *Freeman v. Ferguson,* 911 F.2d 52, 55 (8th Cir. 1990); *Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir. 1989).

We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause.[5] *Piotrowski,* 237 F.3d at 584. We again decline to do. Even if we were to review this case under the state created danger theory, it would fail. *See id.; Johnson v. Dallas Ind. School Dist.,* 38 F.3d 198, 201 (5th Cir. 1994). The basic requirements of the state-created danger theory are: "First, a plaintiff must show that the state actors increased the danger to [him]. Second, a plaintiff must show that the state actors acted with deliberate indifference." *Piotrowski,* 237 F.3d at 584. The "key to the state-created danger cases . . . [is] the state actors culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping the person of [his] ability to defend [him]self, or cutting off potential sources of private aid." *Johnson,* 38 F.3d

---

[5] A panel of this Court adopted the state-created danger theory. *McClendon v. City of Columbia,* 258 F.3d 432, 436 (5th Cir. 2001). However, after *en banc* review, the panel's ruling was vacated and with it our recognition of the theory. *See McClendon v. City of Columbia,* 305 F.3d 314, 333 (5th Cir. 2002); Fifth Circuit Rule 41.3. In *Scanlan v. Texas A&M University,* 343 F.3d 533 (5th Cir. 2003), we found that "this Court has never explicitly adopted the state-created danger theory." *Id.* at 537. Despite remanding that case to the district court for further proceedings, we did not recognize the state created danger theory.

7

at 201 (internal quotations omitted). "[T]o be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.*

Rather than pointing to an annunciated Board policy that was the "moving force" behind the alleged due process violation, the Parents argue the Board established a custom of tolerating gang activity such that it constituted official Board policy, and this custom increased the danger to their son. *See Jett*, 491 U.S. at 735-737 (equating custom and policy for purposes of sustaining liability under § 1983); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (defining "official policy" as including a "practice . . . so common and well settled as to constitute a custom that fairly represents municipal policy.").

However, even if such a custom existed, there is no evidence showing the Board had actual or constructive knowledge of its existence. *See Moore*, 958 F.2d at 94 ("Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."). Taking the Parents' evidence that certain teachers did not adequately respond to "rule infractions involving gang activity" or the wearing of "gang wear" as true, it only demonstrates that those teachers were acting in violation of Board policy designed to combat gang activities. There is no evidence that the Board knew of this behavior or condoned it. In fact, its official policies of providing school security and encouraging teachers and students to report gang activity through the GEAR program and tip line suggest a policy that was, at minimum, antagonistic to gang related activity.

Furthermore, even if the Parents could show that the Board was not assiduous at fighting gang activity, this does not demonstrate that it was "deliberately indifferent" to the danger that gang activity might have posed to Avila. Nor does it show that the Board affirmatively placed Avila in

a position of danger, namely in the situation where Balderas was a greater threat to him than he would have been otherwise. *See Johnson*, 38 F.3d at 201; *see also Deshaney*, 489 U.S. at 203, 109 S.Ct at 1007 ("The most that can be said of the state functionaries in this case is that they stood by and did nothing . . . ."). Deady is in a neighborhood where gang activity has existed for years. The Board had policies designed to combat those activities as they may have existed at Deady and other schools, and to hold HISD responsible for the ultimate ineffectiveness of those policies would turn the Due Process Clause's limited duty of care and protection into a guarantee of shelter from private violence. This result would be inimical to the Supreme Court's conclusion that the Due Process Clause does not require the State to protect individuals from private violence. *See DeShaney*, 489 U.S. at 197, 109 S.Ct at 1004.

The Parents failed to identify either a policy or custom of the HISD Board of Trustees that "created an opportunity that would not otherwise have existed" for Avila's killing. *See Johnson*, 38 F.3d at 201. The district court judgment is AFFIRMED.

9