United States District Court
Southern District of Texas
FILED

FEB 2 3 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO G. SALINAS, ET AL | { | |
| | { | |
| V. | { | CIVIL ACTION NOS. B-98-162, |
| | { | B-98-163, B-98-164 |
| CITY OF HARLINGEN | { | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER
THE COURT'S MARCH 13, 2003 ORDER**

**-- AND --**

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO RECONSIDER DENIAL OF JUDGMENT
ON STATE LAW CLAIMS**

Defendant City of Harlingen ("Harlingen" or the "City") appears both to respond to the Plaintiffs' motion for the Court to reinstate the judgment on Plaintiffs' § 1983 state-created danger claims and to reply to the Plaintiffs' response to the City's motion for reconsideration of its motion for judgment on Plaintiffs' state-law negligence claims.

A.   **Response to Plaintiffs' Motion to Reconsider March 13 Order.**

The Court will recall the procedural history of this case leading to its decision, on March 13, 2003, to reconsider and grant the City's renewed motion for judgment as a matter of law. As the March 13 order itself recites, the Fifth Circuit's intervening decisions in *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1232 (2003) and particularly in *Morin v. Moore*, 309 F.3d 316 (5th Cir. 2002), provided

new legal guideposts for analyzing the sufficiency of the evidence on the element of deliberate indifference. In light of those new authorities, this Court assumed for the purpose of its analysis the validity of the state-created danger theory, and then decided, after a carefully-reasoned review of the trial record, that the evidence is legally insufficient to support the jury's finding of deliberate indifference on the part of the City.[1]

Nothing the plaintiffs have argued in their motion for reconsideration of that order undermines the logic upon which it is based. Plaintiffs have not seriously challenged the Court's analysis of the record; they have not pointed to any of the Court's factual recitations as inaccurate. Rather, citing *Scanlan v. Texas A & M University*, 343 F.3d 533 (5th Cir. 2003) (the Aggie Bonfire case), Plaintiffs merely re-assert what this Court expressly assumed to be true at the outset of its analysis — that the state-created danger theory is a viable theory of recovery in the Fifth Circuit.[2]

Accordingly, plaintiffs have not offered new basis for the Court to reconsider its

---

1   See Order, at p. 7 ("[T]he Court assumes the state created danger is a viable cause of action in this circuit . . . [but] grants the Defendant's Motion because there was insufficient evidence presented at trial to demonstrate the facts of this case fit into the contours of the theory elucidated by the Fifth Circuit.").

2   The Court will note that plaintiffs, on Sept. 12, 2003, filed a notice of supplemental authorities in which plaintiffs alerted the Court to the existence of *Scanlan* and requested reentry of the judgment on their § 1983 claims. (See Dkt # 264). The City filed a response on September 25, 2003 (Dkt # 265), distinguishing *Scanlan* factually. In that case the plaintiffs alleged the University knew the structure was dangerous, knew the identity of the students working on it, and encouraged them to work on it. Here, by contrast, the proof showed that the City (Schoepner) did not encourage E. Moore to misappropriate his father's rifle; and the City did not know the identities of E. Moore's intended victims or encourage them to put themselves in harm's way. In *Scanlan*, the plaintiffs were hurt by a state created structure; E. Moore, by contrast, was not a state actor. *See Kinzie*, cited in footnote 3 below.

October 13 order. The argument is simply a red herring. And in any event, *Scanlan* does not definitively adopt the state-created danger theory, as Plaintiffs contend. Shortly after *Scanlan* was decided, the Fifth Circuit again stated, as it has so many times: "We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause." *Rivera v. Houston Independent School District,* 349 F.3d 244, 249 (5th Cir. 2003).[3/]

That statement appears in the body of the *Rivera* opinion and is immediately following by footnote 5, which directly refutes the Plaintiffs' present argument:

> A panel of this Court adopted the state-created danger theory. *McClendon v. City of Columbia,* 258 F.3d 432, 436 (5th Cir. 2001). However, after *en banc* review, the panel's ruling was vacated and with it our recognition of the theory. *See McClendon v. City of Columbia,* 305 F.3d 314, 333 (5th Cir. 2002); Fifth Circuit Rule 41.3. **In *Scanlan v. Texas A&M University,* 343 F.3d 533 (5th Cir. 2003), we found that "this Court has never explicitly adopted the state-created danger theory."** *Id.* **at 537. Despite remanding that case to the district court for further proceedings, we did not recognize the state created danger theory.**

*Id.,* at 249 n.5 (emphasis added).

The point the Fifth Circuit appears to be making in *Rivera* is this: Federal courts resist

---

3   Similar pronouncements can be found in other more recent authorities: *See Priester v. Lowndes County,* 354 F.3d 414, 422 (5th Cir. 2004) ("we have clearly stated that this court has neither adopted nor rejected the state-created danger theory."); *Kinzie v. Dallas County Hosp. Dist.,* No. 03-10111, 2003 U.S. App. LEXIS 22301, at *4-5 (5th Cir. Oct. 30, 2003)[unpublished]("Kinzie also argues that his complaint stated the elements of constitutional deprivations resulting from a state-created danger. A review of the complaint reveals that Kinzie did not allege that he was harmed by a third party. Therefore, *even assuming the existence of the state-created danger theory in this court,* Kinzie has not alleged the requisite elements.") (emphasis added). One of the panel members in *Kinzie* was the same Judge Prado who authored the *Scanlan* opinion.

reaching constitutional questions in advance of the necessity of deciding them.[4] The Fifth Circuit has not decided as a matter of constitutional law whether the Due Process Clause affords protections to persons not in a custodial relationship with the state because it has not yet *needed* to make that decision. What the Court has told us is that *if* the state-created danger theory were to be adopted, the plaintiff would need to prove all of the *Johnson* elements[5]; and where a plaintiff has sufficiently pled the *Johnson* elements (which occurred in *Scanlan* but not in *Morin*) the Fifth Circuit will allow such plaintiff to develop a factual record. This approach has allowed the Court to avoid deciding the constitutional question, and it is exactly the approach taken in the *Piotrowski* litigation: the case was dismissed on the pleadings; the Fifth Circuit permitted the plaintiff to replead and proceed with her case; but after a trial on the merits the Fifth Circuit avoided deciding the constitutional question by holding that the plaintiff had failed to prove the *Johnson* elements.[6]

---

4    *Three Affiliated Tribes v. Wold Engineering, P.C.*, 467 U.S. 138, 104 S. Ct. 2267, 81 L. Ed. 2d 113 (1984); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S. Ct. 466, 483, 80 L. Ed. 688 (1936) (Brandeis, J., concurring).

5    As the Fifth Circuit stated in *Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir 1994): "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus, the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur."

6    In *Piotrowski I*, the Fifth Circuit observed that the plaintiff had failed to "allege that a causal link existed between a City policy or custom and *the alleged state-created danger*." See *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). The court noted that while her pleading deficiency warranted dismissal, it was possible that Piotrowski could allege such a causal connection between a city custom and the *alleged* constitutional tort. Hence, the Court

Accordingly, the Court has indicated that until all of the *Johnson* elements have been *proved*, it need not (and thus presumably will not) decide whether the state-created danger theory is valid. So for now the question must remain hypothetical. Plaintiffs in the instant case have not proved the *Johnson* elements, as this Court correctly decided on March 13; thus it is entirely immaterial in this case whether in *Scanlan* the families of the students killed in the Bonfire tragedy will ultimately recover on their due process claims.

**B.   Reply to Plaintiffs' Response to City's Motion to Reconsider Motion For Judgment On State Tort Claims.**

In their response to the City's motion, plaintiffs urge three grounds on which to distinguish this case from the holding of the Texas Supreme Court in *Cowan*[7]: (1) the property in this case, the AR-15, is, they contend, "inherently unsafe," unlike the suspenders and walker in *Cowan*; (2) the gun here belonged to the City, unlike the property in *Cowan*, which belonged to the decedent, and (3) and the placement of the AR-15 in the Moore family gun vault is a "use" of the gun, unlike the hospital's act of furnishing the suspenders and walker to the mental patient in *Cowan*. Each of these arguments will be addressed, and

---

modified the judgment to preserve Piotrowski's right to file an amended complaint, which she did. For our purposes here, the important aspect of this ruling was what it did not do: the Court could have affirmed the dismissal of the complaint *with prejudice* on the ground that there is no such constitutional tort. One could have assumed, as Piotrowski, did, that the Fifth Circuit tacitly adopted the theory by allowing her to replead, but any such assumption was rejected in *Piotrowski II*, where the Court stated that the theory had not been adopted. *Piotrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001) (noting that the Fifth Circuit has never adopted the state-created danger theory).

7 *San Antonio State Hosp. v. Cowan*, __ S.W.3d __, 2004 WL 74441 (Tex. Jan. 9, 2004).

rebutted, in turn.

1. <u>The AR-15 Is Not a Defective Product</u>. Analysis of the Tort Claims Act waiver in *Cowan* began, as it must here, with the language of the Act itself: the Tort Claims Act waives a city's immunity for death "so caused by a *condition or use* of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021(2). In short, there are two categories of claims involving tangible property: those involving its "use," and those involving its "condition."

In the *Cowan* opinion, the Court, in its recitation of the facts, was careful to explain why the complaint did not raise a claim involving the *condition* of Cowan's walker and suspenders: "Respondents do not complain of the condition of Cowan's walker and suspenders. They do not assert, for example, that the walker and suspenders were defective or that they lacked some safety feature." 2004 WL 74441 at *1. The Court then again distinguished the line of cases that permit a claim for furnishing defective property:

> In *Lowe,* a football coach was alleged to have required a player to wear a uniform without a knee brace. The allegation was that the coach prescribed the uniform to be worn, not merely that he allowed the player to choose what to wear. Similarly, in *Robinson,* employees of a mental health center gave a patient swimwear without a life preserver. As we explained in *Kerrville State Hospital v. Clark:* "The precedential value of [*Lowe* and *Robinson*] is . . . limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiffs injuries." As already noted, respondents make no such claim in this case.

*Id.,* at *2.

As the jury charge in the present case reflects, this case was tried only on the theory of a negligent "use" of the AR-15 by the City, not the condition of the property. Furthermore, as a matter of law, there was no evidence that the AR-15 was defective in the sense of lacking an integral safety component. Therefore, the judgment cannot be sustained on the theory that the rifle was inherently dangerous.[8]

2. <u>Ownership of the Gun is Immaterial</u>. As stated above, the Tort Claims Act waives immunity for the city's negligent "use" of tangible property; it does not further provide that the property must be owned by the City. Hence, in *Cowan*, the Texas Supreme Court found no waiver of immunity because the state did not "use" Cowan's walker and suspenders simply by returning that property to him. The Court did not devote a single word to whether Cowan's ownership of the property was in any way material, and the logic of the opinion clearly suggests ownership to be immaterial. Had ownership mattered, the unanimous Court could have stopped there without answering whether the state's act of returning Cowan's own property to him constituted "use" within the meaning of the Act.

3. <u>Who Put The Gun Into Service Is The Material Inquiry</u>. In their response the plaintiffs have mischaracterized the City's argument in order to set up a straw man to knock

---

8  Indeed, Texas law does not recognize any heightened duty in negligence cases on the theory that a gun is inherently dangerous. *See Prather v. Brandt*, 981 S.W.2d 801, 804 (Tex. App.— Houston [1st Dist.] 1998, pet. denied) (rejecting claim of strict liability on theory that a shotgun is an inherently dangerous instrumentality); *Luval v. City of Eagle Pass*, 408 S.W.2d 149 (Tex. Civ. App. — Corpus Christi 1966, no writ) (claim that tear gun which was safe if used for its intended purpose and not defective was not inherently dangerous; plaintiff's claim was thus one for misuse of the gun, based on the theory of negligent entrustment).

down. They contend, wrongly, that it is the City's position that a city actor must always inflict the injury directly, and to refute this proposition plaintiffs have cited a variety of Texas cases holding that injuries directly inflicted by a private actor can also support a claim under the Tort Claims Act. All of these cases, however, are easily distinguishable.

Before looking at these cases it will be worthwhile to restate the City's actual argument. The City has relied on *Cowan* for the gloss it placed on the statutory word "use": "[a] governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more. If all 'use' meant were 'to make available', the statutory restriction would have very little force." *Cowan*, 2004 WL 74441 at *1.

On this basis, Plaintiffs' lead case, *Borrego v. City of El Paso*, 964 S.W.2d 954 (Tex. App. — El Paso 1998, writ denied), is easily distinguishable. Unlike the instant case, it did not involve a claim for negligent entrustment. Rather, in *Borrego*, a city EMS unit had strapped the plaintiff to a gurney and had left him helpless in the path of an oncoming car which struck him. The unit's "use" of the gurney consisted in putting it into service and employing it for a given purpose. In the present case, by contrast, Det. Moore had stored the AR-15 in a family gun vault, thereby taking it out of service and out of employment altogether. The gun thus remained out of service until E. Moore, the non-city actor, misappropriated it.

Plaintiffs' remaining cases involve injuries sustained by persons in a custodial relationship with the state, and in all of these cases the gravamen of the complaint was an

insecure condition of the premises which afforded an assailant access to the plaintiff. *See TMHMR v. McClain*, 947 S.W.2d 694 (Tex. App.—Austin 1997, writ denied) (finding it "significant that McClain was *involuntarily committed* to the state's care" and further noting that "the state has a duty to exercise reasonable care to prevent a third person from intentionally harming or creating an unreasonable risk of harm to a person whom it has taken custody of, if it knows or has reason to know that it has the ability to control the conduct of the third person, and knows or should know of the necessity and opportunity for exercising such control.") (emphasis added); *City of Waco v. Hester*, 805 S.W.2d 807 (Tex. App.—Waco 1990, writ denied) (city jailers "used" jail cell by allowing violent inmate to have access to plaintiff).

**WHEREFORE, PREMISES CONSIDERED**, Defendant moves for judgment as a matter of law, that the remaining claims of all Plaintiffs in these causes be dismissed and that they take nothing against Defendant.

Respectfully submitted,

By: _____
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
ADAMS & GRAHAM, L.L.P.
P.O. Drawer 1429

Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant, CITY OF HARLINGEN, TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this February 23, 2004, to the following counsel of record and interested parties:

Attorneys of record for Plaintiffs, GILBERTO M. RODRIGUEZ, et al and ARTURO GUILLERMO SALINAS, et al:

| | |
|---|---|
| Mr. Broadus A. Spivey<br>**SPIVEY & AINSWORTH, P.C.**<br>48 East Avenue<br>Austin, Texas 78701-4320 | *CMRRR # 7003 0500 0002 3843 9048* |
| Ms. Sydney K. Powell<br>**LAW OFFICE OF SYDNEY POWELL**<br>1920 Abrams Parkway, Suite 369<br>Dallas, TX 75214 | *CM/RRR # 7003 0500 0002 3843 9055* |

Attorney of record for Plaintiff, RAUL RODRIGUEZ:

| | |
|---|---|
| Mr. Ramon Garcia<br>Ms. Sonia Lopez<br>**LAW OFFICES OF RAMON GARCIA, P.C.**<br>222 West University Drive<br>Edinburg, Texas 78539 | *CM/RRR # 7003 0500 0002 3843 9062* |

_____
TOM LOCKHART